
Paul White
Professional Real Estate Advisors Inc.
16 Windham Drive
S. Huntington, NY 11746

November 20, 2008

Justice Peter J. Walsh
U.S. Bankruptcy Court for the District of Delaware
824 Market Street 6th Floor
Wilmington, DE 19801-4937

REFERENCE: DBSI et al. Bankruptcy

Dear Justice Walsh,

    I am writing on behalf of myself (i.e. my family) we are creditors of DBSI. I am fully familiar with the situation and have thoroughly reviewed all of the legal documents associated with the Bankruptcy filing. To date, I have recommended numerous clients to purchase millions of dollars of DBSI sponsored Tenant-In-Common (**TIC**) properties and I am (my family) also investors. According to DBSI's salesperson's representations, marketing literature and statements contained in each Sponsored property's Private Placement Memorandum (**PPM**) filed with the SEC as well as some State authorities, there were funds collected at closing which are the asset of the investors and **NOT** DBSI. This money was supposed to be safely placed and held in "Reserve" (Refer to "Offering Reserves" in **PPM** enclosed herewith) for the investors benefit to be utilized for the purposes of "leasing commissions, tenant improvements and capital improvements including repairs and replacement". These funds "cannot be used to fund operations during the term". Furthermore it states: "Any remaining accountable reserves at the time of the termination of the master Lease will be repaid to the Purchasers". Attached hereto a sample copy of a "Use Of Proceeds" form, that I send out to all Sponsors which <u>they</u> must fill out prior to me commencing my due diligence and recommend a property to be purchased by my clients. You will notice in yellow highlight that it clearly states "Acquisition Costs Retained as Accountable $378,488". Allegedly, these funds have not been utilized as stated above, were not maintained in a separate account, may have been comingled with other funds and are no longer attainable to the detriment of the owners. I personally believe that DBSI had a fiduciary, moral and ethical responsibility to protect these owner asset funds. These funds may have been utilized for other purposes, loaned or possibly spirited out of the company.

    I request that the Honorable Court order a forensic accounting of said funds for the purpose of tracing the chain of custody of said money commencing from the time of the property sale to owners. In addition, the forensic accounting will easily determine whether DBSI et al. believed that it was their funds or the owners. If it were the owners, DBSI et al. **<u>WOULD NOT PAY TAXES</u>** on the reserve because the chain of custody of

the money came from the lender directly to the reserve account and is deemed by the IRS to be non-taxable boot (i.e. Equity overpayment prior to debt implementation) in a 1031 exchange. However, if DBSI et al. actually paid taxes on this "reserve" then DBSI would have considered the funds their property rather than the owners or some sort of quasi loan? I personally believe that you will discover the former rather than the latter.

I have carefully studied the relationship between the DBSI Master Lease (**ML**), the lender, the Tenants and the Owners. If DBSI or the owners elect to cancel the **ML** without lender pre-approval, the lender or owner of the mortgage may commence a foreclosure procedure against the owners pursuant to the loan document. The owners may also become personally liable for the debt rather maintain their "non-recourse" status. Furthermore, the owners are required to obtain a 100% unanimous vote on future matters.

I pray to this Honorable Court to carefully review each Master Leased property. You will find that some are performing above the master lease requirements and should be considered a DBSI asset. Most properties are under performing and should be considered a DBSI liability because adherence to the Master Lease would require an expenditure of DBSI funds to the detriment of other creditors. I ask as an investor and advisor to my clients that in the underperforming Master Leased properties that are considered a DBSI liability that the Honorable Court allow the owners to select a property manager of their choice and the Court order the assignment of the master lease thereto. This would eliminate the additional burden placed on the owners to obtain a 100% vote rather than simple majority. From DBSI written information to investors and my personal belief, DBSI will argue that even the underperforming leases are an asset because if the Court grants a modification to the Master Lease and then DBSI finds a willing third party to purchase same, said funds will go mostly to other creditors (i.e. Secured Note & Bond) and not the property owners. I can well assure you that I have not communicated with any DBSI investor or advisor who would accept or recommend accepting same.

Furthermore, I urge the Court to refuse to let DBSI require any releases of their other liabilities to the property owners on any ordered assignments and/or modifications of the Master Lease.

Please do not hesitate to contact me if you have any further questions.

Sincerely,