approval, which approval shall not be unreasonably withheld, of the creditworthiness and other qualifications of the proposed transferee (including, without limitation, the development, business or management expertise of the proposed transferee, if deemed relevant under the circumstances by Lender in its good faith judgment) under Lender's underwriting criteria at the time of said assumption, (3) the execution by the transferee of an assumption agreement in such form as Lender may require from time to time, and (4) payment to Lender of the Assumption Fee, the Processing Fee and the Transfer Expenses. In addition, in connection with said assumption, but subject to all of the conditions referred to above in this Subsection 1.15(j), Lender shall consent to the release of the Guarantor and Indemnitor, except for any liability arising or accruing prior to the closing of said assumption, provided that Lender approves in writing substitute guarantor(s)/indemnitor(s) acceptable to Lender in its sole discretion in terms of creditworthiness and other qualifications under Lender's underwriting criteria at the time of said assumption, and further provided that such substitute guarantor(s)/indemnitor(s) execute guaranties and/or indemnities in form and content acceptable to Lender.

**1.16    Survival of Warranties.**  Notwithstanding any investigation of the Property, Borrower, Guarantor or Indemnitor by Lender, Borrower acknowledges:  (a) that in accepting the Note, this Security Instrument and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the representations, warranties and covenants of Borrower, Guarantor and Indemnitor contained in any loan application (a "**Loan Application**") or made to Lender in connection with the Loan or contained in the Loan Documents or incorporated by reference therein (the "**Warranties**"); (b) that such reliance existed on the part of Lender prior to the date hereof; (c) that the Warranties are a material inducement to Lender in making the Loan; and (d) that Lender would not make the Loan in the absence of the Warranties. All Warranties shall survive the execution and delivery of this Security Instrument and shall remain continuing obligations, representations, warranties and covenants of Borrower so long as any portion of the Secured Obligations remain outstanding.

**1.17    Eminent Domain; Condemnation.**  Borrower shall promptly give Lender notice of the actual or threatened commencement of any condemnation or eminent domain proceeding and shall deliver to Lender copies of any and all papers served in connection with such proceedings. Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of such taking), Borrower shall continue to pay and perform the Secured Obligations at the time and in the manner provided for its payment and performance in the Note and in this Security Instrument and the Secured Obligations shall not be reduced until any award or payment therefor shall have been actually received and applied by Lender, after the deduction of expenses of collection, to the reduction or discharge of the Secured Obligations.  Lender shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided in the Note. Borrower shall cause the award or payment made in any condemnation or eminent domain proceeding, which is payable to Borrower, to be applied in accordance with Section 1.09 hereof.  In the event Borrower is not entitled to any award or payment pursuant to Section 1.09 hereof, Borrower shall cause the award or payment to be paid directly to Lender.  Except as provided in Section 1.09, Lender may apply the award or payment to the reduction or discharge of the Secured Obligations whether or not then due and payable.  If the Property is sold, through foreclosure or otherwise, prior to the receipt by Lender of the award or payment, Lender shall have the right, whether or not a deficiency judgment on the Note (to the extent permitted in the Note or herein) shall have been sought, recovered or denied, to receive the award or payment, or a portion thereof sufficient to pay the Secured Obligations.  If in the event of a total condemnation the award or payment is not sufficient to repay the Secured Obligations, Borrower shall immediately pay any remaining balance, together with all accrued interest thereon.  Nothing herein shall be construed to cure or waive any Event of Default or notice of default hereunder or under any other Loan Document or invalidate any act done pursuant to such notice.

**1.18    Additional Security.**  No other security now existing, or hereafter taken, to secure the Secured Obligations shall be impaired or affected by the execution of this Security Instrument and all additional security shall be taken, considered and held as cumulative.  The taking of additional security,

execution of partial releases of the security, or any extension of the time of payment of the Secured Obligations shall not diminish the force, effect or lien of this Security Instrument and shall not affect or impair the liability of any maker, surety or endorser for the payment of the Secured Obligations. In the event Lender at any time holds additional security for any of the Secured Obligations, it may enforce the sale thereof or otherwise realize upon the same, at its option, either before, concurrently, or after a sale is made hereunder.

**1.19     Property Use.** The Property shall be used only for commercial retail and office building use, and for no other use without the prior written consent of Lender.

**1.20     Successors and Assigns.** Without in any way limiting or affecting the provisions of Section 1.15 hereof, this Security Instrument applies to, inures to the benefit of and binds all parties hereto and their respective heirs, legatees, devisees, administrators, executors, successors and assigns. The term "Lender" shall mean the owner and holder of the Note, whether or not named as Lender herein. In exercising any rights hereunder or taking any actions provided for herein, Lender may act through its employees, agents, independent contractors or servicers authorized by Lender.

**1.21     Inspections.** Lender, or its agents, representatives or employees, are authorized to enter at any reasonable time (and with due regard for rights of tenants) upon reasonable prior notice, except in case of emergencies, upon or in any part of the Property for the purpose of inspecting the same and for the purpose of performing any of the acts Lender is authorized to perform hereunder or under the terms of any of the Loan Documents. Without limiting the generality of the foregoing, Lender shall have the same right, power and authority to enter and inspect the Property, and the right to appoint a receiver on an *ex parte* basis, to enforce this right to enter and inspect the Property.

**1.22     [RESERVED.]**

**1.23     Lender's Powers.** Without affecting the liability of any other person liable for the payment of any obligations herein mentioned, and without affecting the lien or charge of this Security Instrument upon any portion of the Property not then or theretofore released as security for the full amount of all unpaid obligations, Lender may, from time to time and without notice (i) release any person so liable, (ii) extend the maturity or alter any of the terms of any such obligation, (iii) grant other indulgences, (iv) release or reconvey, or cause to be released or reconveyed at any time at Lender's option any parcel, portion or all of the Property, (v) take or release any other or additional security for any obligation herein mentioned, or (vi) make other arrangements with debtors in relation thereto.

**1.24     Books and Records; Financial Statements.**

(a)     Borrower, any Guarantor and any Indemnitor shall keep (and Borrower shall cause any Guarantor and any Indemnitor to keep) adequate books and records of account in accordance with generally accepted accounting principles ("GAAP"), or in accordance with other methods acceptable to Lender, consistently applied and furnish to Lender:

(1)     quarterly and annual (or, if requested by Lender and the Loan has not yet been securitized or sold as a whole loan, monthly) certified rent rolls signed and dated by Borrower accompanied by an officer's certificate, detailing the names of all tenants of the Improvements, the portion of Improvements occupied by each tenant, the base rent and any other charges payable under each Lease and the term of each Lease, including the expiration date, the extent to which any tenant is in default under any Lease, and any other information as is reasonably required by Lender, within thirty (30) days after the end of each calendar month, thirty (30) days after the end of each fiscal quarter or ninety (90) days after the close of each fiscal year of Borrower, as applicable; and

(2)     quarterly and annual (or if requested by Lender and the Loan has not yet been securitized or sold as a whole loan, monthly) operating statements of the Property, prepared and certified

-27-

by Borrower in the form required by Lender, or, if required by Lender, after a monetary Event of Default, an audited annual operating statement prepared and certified by an independent certified public accountant acceptable to Lender, detailing the revenues received, the expenses incurred and the net operating income before and after debt service (principal and interest) and major capital improvements (over $10,000.00) for each month and containing appropriate year to date information, within twenty (20) days after the end of each calendar month, thirty (30) days after the end of each fiscal quarter or ninety (90) days after the close of each fiscal year of Borrower, as applicable; and

(3)     annual (or if requested by Lender and the Loan has not yet been securitized or sold as a whole Loan, quarterly) balance sheets and profit and loss statements of Borrower, any Guarantor and any Indemnitor or, if required by Lender, after a monetary Event of Default, an audited annual operating statement prepared and certified by an independent certified public accountant acceptable to Lender, in the form required by Lender, (with respect to the balance sheets of DBSI MASTER LEASECO, INC., an Idaho corporation, Lender shall require a property specific accounting of the accountable reserve for the Property), prepared and certified by the respective Borrower, Guarantor and Indemnitor within thirty (30) days after the end of each fiscal quarter or sixty (60) days after the close of each fiscal year of Borrower, Guarantor and Indemnitor, as the case may be; and

(4)     an annual operating budget presented on a monthly basis consistent with the annual operating statement described above for the Property, including cash flow projections for the upcoming year, and all proposed capital replacements and improvements at least fifteen (15) days prior to the start of each fiscal year; and

(5)     Borrower shall use its best efforts to obtain and furnish to Lender gross annual sales and sales per square foot information for tenants of the Property designated by Lender to the extent provided for by such Leases. Further, with respect to Leases under which the tenants are obligated to provide financial or sales statements/information to Borrower, as landlord under such Leases, Borrower agrees to promptly provide upon Lender's request all of the statements/information such tenants are obligated to provide to Borrower pursuant to the Lease, provided that the provisions of such Leases or any Subordination Non-Disturbance and Attornment Agreement executed by such tenants in connection with the Loan allow or authorize such statements/information to be provided to Lender or any first lienholder/mortgagee of the Property. Lender shall keep such information provided to it pursuant this Subsection 1.24(5) confidential provided such materials provided to it are stamped "CONFIDENTIAL" and they are transmitted to the Lender under a cover letter expressly indicating such information is to be kept confidential, except that the Lender may share such information with the persons/entities involved with the securitization or rating of the Loan (including without limitation any underwriter, placement agent or principal of and any rating agency rating any securities evidencing ownership interests in or secured by the Loan and any accountant or attorney for any such person or entity) or as required by law or governmental regulations.

(b)     Upon request from Lender, Borrower, any Guarantor and any Indemnitor shall furnish (and Borrower shall cause any Guarantor and any Indemnitor to furnish) in a timely manner to Lender:

(1)     if the Property is used for multi-family residential use, a property management report for the Property, showing the number of inquiries made and/or rental applications received from tenants or prospective tenants and deposits received from tenants and any other information requested by Lender, in reasonable detail and certified by Borrower (or an officer, general partner, member or principal of Borrower if Borrower is not an individual) to be true and complete, but no more frequently than quarterly; and

(2)     an accounting of all security deposits held in connection with any Lease of any part of the Property, including the name and identification number of the accounts in which such security deposits are held, the name and address of the financial institutions in which such security deposits are held and the name of the person to contact at such financial institution, along with any authority or release

-28-

necessary for Lender to obtain information regarding such accounts directly from such financial institutions.

(c)     Borrower, any Guarantor and any Indemnitor shall furnish (and Borrower shall cause any Guarantor and any Indemnitor to furnish) Lender with such other additional financial or management information (including, without limitation, state and federal tax returns) as may, from time to time, be reasonably required by Lender in form and substance satisfactory to Lender.

(d)     Borrower, any Guarantor and any Indemnitor shall furnish (and Borrower shall cause any Guarantor and any Indemnitor to furnish) to Lender and its agents convenient facilities for the examination and audit of any such books and records.

(e)     Borrower shall pay a late fee of $500 to Lender each time Borrower fails to deliver the required financial documents set forth above within the time set forth above, if such delivery delinquency continues for ten (10) days after written notice thereof.

Without limiting the generality of the definition of "Borrower" as defined herein, for the purposes of this **Section 1.24**, Borrower, shall mean Lessor and/or Lessee.  Notwithstanding the foregoing, no Secondary Borrower (as defined in **Section 1.31** below) and no TIC Owner Guarantors (as defined in the Limited Recourse Obligations Guaranty (TIC Owner)) shall be obligated to provide their respective financial statement or tax returns except as described in **Section 1.15** herein.

**1.25     Borrower Name(s); Matters Affecting Financing Statement Filings.**  At the request of Lender, Borrower shall execute a certificate in form satisfactory to Lender listing the trade-names or fictitious business names under which Borrower intends to operate the Property or any business located thereon and representing and warranting that Borrower does business under no other trade names or fictitious business names with respect to the Property.  Borrower will not change any of the following without notifying the Lender of such change in writing at least thirty (30) days prior to the effective date of such change and without first obtaining the prior written consent of the Lender:

(a)     Borrower's name or identity (including, without limitation, its trade name or names);

(b)     if Borrower is an individual, Borrower's principal residence;

(c)     if Borrower is an organization, Borrower's corporate, partnership or other structure;

(d)     if Borrower is an organization, Borrower's jurisdiction of organization (i.e., the jurisdiction, or State, under whose law the Borrower is organized); or

(e)     if Borrower is an organization, Borrower's place of business (if Borrower has only one place of business) or Borrower's chief executive office (if Borrower has more than one place of business).

Upon any change in the matters referred to above (if permitted hereunder), Borrower will, upon request of Lender, execute any financing statement amendments, additional financing statements and other documents required by Lender to reflect such change.

**1.26     Leaseholds.**

(a)     **Reserved.**

(b)     **Space Leases.**  Borrower shall deliver to Lender a signed copy of all Leases (other than residential Leases) with respect to the Property or executed counterparts thereof, now existing or hereafter made from time to time, within thirty (30) days of signing, affecting all or any part of the Property, and except as is set forth herein, all Leases now or hereafter entered into with respect to the

Property shall be in form and substance subject to the approval of Lender. Borrower shall not, without Lender's prior written consent, execute, modify, surrender or terminate any Lease now existing or hereafter made affecting all or any part of the Property; provided, however, that Borrower may enter into Leases affecting the Property without Lender's consent if such Leases (i) provide for a term of no less than three (3) years and no more than seven (7) years and at least a market rental rate for comparable properties in the geographic area of the Property (as determined by Lender); (ii) have been negotiated at arms length with a bona fide independent, third-party tenant; (iii) demise not more than fifteen (15%) percent of the lesser of gross square footage of, or total income generated by, the Improvements; (iv) do not contain material modifications from the standard form of Lease previously approved by Lender; (v) do not change the use of the Property set forth herein in effect at the time the Loan was made; (vi) do not have a materially adverse effect on the value of the Property taken as a whole; and (vii) are subject and subordinate to this Security Instrument and the lessees thereunder agree to attorn to Lender following Lender's succession to Borrower's interest in the Property, provided, further, however, that Borrower may enter into modifications of existing Leases affecting the Premises without Lender's consent if such modifications meet the requirements described in clauses (ii) through (vii) inclusive of this Section 1.26, and Borrower may terminate Leases if there is a default thereunder or if the Lease is replaced with a Lease which does not require Lender's consent or which is approved by Lender. Lender's consent under this Section 1.26 shall be deemed to have been given within ten (10) business days after Lender's receipt of Borrower's written request if Lender shall not have responded within such ten-day period; provided, however, that such request shall refer to such ten-day period in boldface type or otherwise readily distinguishable from the other text contained in such request. If the Property is multifamily, self-storage, or mobile home park, the prior consent of Lender shall not be required in connection with the making, modification or termination of Leases, other than the Master Lease, in the ordinary course of business and in the exercise of Borrower's prudent business judgment, provided (i) the term of such Leases (including any renewal or extension term) shall be no less than six (6) months and no more than eighteen (18) months and (ii) the rental rate for such Leases shall be at least a market rental rate for comparable properties in the geographic area of the Property. Borrower shall pay a late fee of $500 to Lender each time Borrower fails to deliver the required documents set forth above within the time set forth above, if such delivery delinquency continues for ten (10) days after written notice thereof.

     **1.27    Indemnity.** IN ADDITION TO ANY OTHER INDEMNITIES TO LENDER SPECIFICALLY PROVIDED FOR IN THIS SECURITY INSTRUMENT, BORROWER HEREBY INDEMNIFIES AND SAVES LENDER AND ITS AUTHORIZED REPRESENTATIVES HARMLESS FROM AND AGAINST ANY AND ALL LOSSES, LIABILITIES, SUITS, OBLIGATIONS, FINES, DAMAGES, PENALTIES, CLAIMS, COSTS, CHARGES AND EXPENSES, INCLUDING, WITHOUT LIMITATION, ARCHITECTS', ENGINEERS' AND ATTORNEYS' FEES AND ALL DISBURSEMENTS WHICH MAY BE IMPOSED UPON, INCURRED OR ASSERTED AGAINST LENDER AND ITS AUTHORIZED REPRESENTATIVE BY REASON OF: (I) THE CONSTRUCTION OF ANY IMPROVEMENTS, (II) ANY CAPITAL IMPROVEMENTS, OTHER WORK OR THINGS DONE IN, ON OR ABOUT THE PROPERTY OR ANY PART THEREOF, (III) ANY USE, NONUSE, MISUSE, POSSESSION, OCCUPATION, ALTERATION, OPERATION, MAINTENANCE OR MANAGEMENT OF THE PROPERTY OR ANY PART THEREOF OR ANY STREET, DRIVE, SIDEWALK, CURB, PASSAGEWAY OR SPACE COMPRISING A PART THEREOF OR ADJACENT THERETO, (IV) ANY NEGLIGENCE OR WILLFUL ACT OR OMISSION ON THE PART OF BORROWER AND ITS AGENTS, CONTRACTORS, SERVANTS, EMPLOYEES, LICENSEES OR INVITEES, (V) ANY ACCIDENT, INJURY (INCLUDING, WITHOUT LIMITATION, DEATH) OR DAMAGE TO ANY PERSON OR PROPERTY OCCURRING IN, ON OR ABOUT THE PROPERTY OR ANY PART THEREOF, (VI) ANY LIEN OR CLAIM WHICH MAY BE ALLEGED TO HAVE ARISEN ON OR AGAINST THE PROPERTY OR ANY PART THEREOF UNDER THE LAWS OF THE LOCAL OR STATE GOVERNMENT OR ANY OTHER GOVERNMENTAL OR QUASI-GOVERNMENTAL AUTHORITY OR ANY LIABILITY ASSERTED AGAINST LENDER WITH RESPECT THERETO, (VII) ANY TAX ATTRIBUTABLE TO THE EXECUTION, DELIVERY, FILING OR RECORDING OF THIS SECURITY INSTRUMENT OR THE NOTE, (VIII) ANY CONTEST DUE TO BORROWER'S ACTIONS OR FAILURE TO ACT, PERMITTED PURSUANT TO THE PROVISIONS OF THIS SECURITY INSTRUMENT, (IX) ANY DEFAULT UNDER THE NOTE OR THIS SECURITY INSTRUMENT, (X) ANY CLAIM BY OR LIABILITY TO ANY CONTRACTOR OR SUBCONTRACTOR

-30-

PERFORMING WORK OR ANY PARTY SUPPLYING MATERIALS IN CONNECTION WITH THE PROPERTY, (XI) ANY AND ALL CLAIMS AND DEMANDS WHATSOEVER WHICH MAY BE ASSERTED AGAINST LENDER BY REASON OF ANY ALLEGED OBLIGATIONS OR UNDERTAKING ON ITS PART TO PERFORM OR DISCHARGE ANY OF THE TERMS, COVENANTS, OR AGREEMENTS CONTAINED IN ANY LEASE; OR (XII) THE PAYMENT OF ANY COMMISSION, CHARGE OR BROKERAGE FEE TO ANYONE WHICH MAY BE PAYABLE IN CONNECTION WITH THE FUNDING OF THE LOAN.

    **1.28**     **Representations and Warranties.** Borrower covenants, represents and warrants with and to Trustee and Lender that:

    (a)     **Borrower Organization.** Borrower is duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its organization or formation, and Borrower is duly qualified to transact business and holds all licenses, registrations or other approvals (or is otherwise exempt), in each other jurisdiction in which the conduct of Borrower's business requires such qualification, licenses, registrations or other approvals. Borrower will continuously maintain its existence and good standing (if applicable) under the laws of the jurisdiction of its organization or formation, and Borrower will continuously maintain its qualification to transact business and all licenses, registrations or other approvals (unless otherwise exempt), in each other jurisdiction in which the conduct of Borrower's business requires such qualification, licenses, registrations or other approvals.

    (b)     **Borrower Authority.** Borrower has all requisite power and authority to enter into the Loan and to execute and deliver the Loan Documents, and to perform all of the obligations required of Borrower thereunder. Borrower is not required to make any filing with, or to obtain any permit, authorization, consent or approval of, any person or entity as a condition to Borrower's entering into the Loan, executing and delivering the Note, this Security Instrument, or any other Loan Documents, or performing all of the obligations required of Borrower thereunder, or if any such required permit, authorization, consent or approval is required, it has been obtained.

    (c)     **Validity of Documents.** The execution and delivery by Borrower of the Note, this Security Instrument and other Loan Documents, and the performance by Borrower of its obligations thereunder, do not violate any prohibition contained in, conflict with, result in a breach of, give rise to any right of termination, cancellation or acceleration under, constitute a default under, or require any additional approval under (i) Borrower's partnership agreement or any other organizational or constituent document or instrument pursuant to which Borrower was formed or by which Borrower's operations are governed; (ii) any material instrument or agreement to which Borrower is a part or by which Borrower is bound or that affects the Property; or (iii) any law, rule, regulation, ordinance, order, injunction or decree application to Borrower or to the Property or any portion thereof.

    (d)     **Warranty of Title.** Borrower hereby fully warrants the title to the Property and will defend the same and the validity and priority of the lien and encumbrance of this Security Instrument against the lawful claims of all persons whomsoever, and Lessee possesses all of, and fully warrants, the leasehold estate in the Property under the Master Lease (for purposes of this subsection 1.28(d) only, the term "Borrower" shall not be deemed to include Lessee). None of the Permitted Encumbrances, (defined below) individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Security Instrument and the Loan Documents, materially and adversely affect the value of the Property, impair the use or operations of the Property or impair Borrower's ability to pay its obligations in a timely manner.

    (e)     **No Liens or Transfers.** Borrower has not obtained, or agreed to obtain, any loan from any person which could result in the creation of a lien upon the Property, or any part thereof, to secure repayment thereof, except for the lien of the Loan. The Property is free and clear of all liens and encumbrances of any kind, nature or description, save and except only for those matters set forth in a schedule of exceptions to coverage in the title insurance policy approved by Lender and insuring Lender's

-31-

interest in the Property ("Permitted Encumbrances"). Further, Borrower has not made or permitted any transfer (including, without limitation, a Transfer) which will or could result in subordinate financing being placed on any portion of the Property, and there is no outstanding Sale or Pledge of an interest in a Restricted Party.

      (f)    **Litigation.**  There is not pending against Borrower (or any partner of Borrower, if and to the extent applicable) any petition in bankruptcy, whether voluntary or otherwise, any assignment for the benefit of creditors, any petition seeking reorganization, liquidation or arrangement under the bankruptcy laws of the United States or of any State thereof, or any other action brought under the aforementioned bankruptcy laws; and there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened, in any court or before any governmental agency (including, without limitation, condemnation proceedings) involving Borrower (or partner of Borrower, if and to the extent applicable) or the Property or any portion thereof, including, without limitation, any action which would draw into question the validity of the Loan or of Borrower's obligations under the terms of the Note, this Security Instrument or any other Loan Document.

      (g)    **Status of Property.**

        (1)    No portion of the Improvements is located in an area identified by the Secretary of Housing and Urban Development or any successor thereto as an area having special flood hazards pursuant to the Flood Insurance Acts or, if any portion of the Improvements is located within such area, Borrower has obtained and will maintain the flood insurance described in Section 1.07 hereof.

        (2)    The Property and the present and contemplated use and occupancy thereof are in substantial compliance with all applicable zoning ordinances, building codes, land use and Environmental Laws and other similar laws. Without limiting the foregoing, the Property is in substantial compliance with the Americans with Disabilities Act of 1990 and the Architectural Barrier Act, 23 Tex. Rev. Civ. Stat. art. 9102 (as amended from time to time and any successor statute) and all of the regulations promulgated thereunder. The Land constitutes one or more separate tax lots and one or more separate legal lots in compliance with all applicable subdivision regulations.

        (3)    All necessary certificates, licenses and other approvals, governmental and otherwise, necessary for the operation of the Property and the conduct of its business and all required zoning, building code, land use, environmental and other similar permits or approvals, are in full force and effect as of the date hereof and not subject to revocation, suspension, forfeiture or modification.

        (4)    The Property is served by all utilities required for the current or contemplated use thereof, and all utility service is provided by public utilities and the Property has accepted or is equipped to accept such utility service.

        (5)    All public roads and streets necessary for service of and access to the Property for the current or contemplated use thereof have been completed, are serviceable and all-weather and are physically and legally open for use by the public.

        (6)    The Property is served by public water and sewer systems.

        (7)    The Property is free from material damage by any cause whatsoever, and any and all repairs required by Lender have been completed.

        (8)    All costs and expenses of any and all labor, materials, supplies and equipment used in the construction of the Improvements have been paid in full.

        (9)    Borrower has paid in full for, and is the owner of, all furnishings, fixtures and equipment (other than property owned by Tenants) used in connection with the operation of the Property,

free and clear of any and all security interests, liens or encumbrances, except the lien and security interest created hereby.

(10)  All liquid and solid waste disposal, septic and sewer systems located on the Property are in a good and safe condition and repair and in compliance with all applicable laws.

(11)  All the Improvements lie within the boundaries of the Land.

(h)  **No Foreign Person.** Borrower is not a "foreign person", "foreign corporation", "foreign partnership", "foreign trust" or "foreign estate" or other foreign entity as those terms are defined in Section 1445 of the United States Internal Revenue Code, as amended, and the related United States Treasury Department regulations.

(i)  **Separate Tax Lot.** The Land is assessed for real estate tax purposes as one or more wholly independent tax lot or lots, separate from any adjoining land or improvements not constituting a part of such lot or lots, and no other land or improvements are assessed and taxed together with the Land or any portion thereof.

(j)  **Financial Condition.** Borrower is solvent, and no bankruptcy, reorganization, insolvency or similar proceeding under any state or federal law with respect to Borrower has been initiated.  No petition in bankruptcy has ever been filed by or against Borrower, any Guarantor, or any related entity, or any principal, general partner or member thereof, in the last seven (7) years, and neither Borrower, any Guarantor nor any related entity, or any principal, general partner or member thereof, in the last seven (7) years has ever made any assignment for the benefit of creditors or taken advantage of any insolvency act or any act for the benefit of debtors.  All information in all financial statements, rent rolls, reports, certificates and other documents submitted in connection with the Loan are accurate, complete and correct in all material respects.  There has been no adverse change in any condition, fact, circumstance or event that would make any such information inaccurate, incomplete or otherwise misleading.

(k)  **Business Purposes.** The Loan is solely for the business purpose of Borrower, and is not for personal, family, household, or agricultural purposes.

(l)  **Taxes.** Borrower and any guarantor of the Loan have filed all federal, state, county, municipal, and city income and other tax returns required to have been filed by them and have paid all taxes and related liabilities which have become due pursuant to such returns or pursuant to any assessments received by them.  Neither Borrower nor any guarantor of the Loan knows of any basis for any additional assessment in respect of any such taxes and related liabilities for prior years.

(m)  **No Change in Facts or Circumstances.** All information in all financing statements, rent rolls, reports, certificates and other documents submitted in connection with the Loan are accurate, complete and correct in all respects.  There has been no adverse change in any condition, fact, circumstance or event that would make any such information inaccurate, incomplete or otherwise misleading.

(n)  **Disclosure.** Borrower has disclosed to Lender all material facts and has not failed to disclose any material fact that could cause any representation or warranty made herein to be materially misleading.

(o)  **Illegal Activity.** No portion of the Property has been or will be purchased, improved, equipped or furnished with proceeds of any illegal activity, and, to the best of Borrower's knowledge, there are no illegal activities or activities relating to any controlled substance at the Property.

(p)  **Contracts.** All contracts, agreements, consents, waivers, documents and writings of every kind or character at any time to which Borrower is a party to be delivered to Lender pursuant to any

-33-

of the provisions of the Loan Documents are valid and enforceable against Borrower and, to the best knowledge of Borrower, are enforceable against all other parties thereto, and, to Borrower's actual knowledge, in all respects are what they purport to be and, to the best knowledge of Borrower, to the extent that any such writing shall impose any obligation or duty on the party thereto or constitute a waiver of any rights which any such party might otherwise have, said writing shall be valid and enforceable against said party in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization or similar laws affecting the rights of creditors generally.

(q)     **Transfer of Property.**  To the best of Borrower's knowledge, there is no concurrent or subsequent escrow to be opened or closed upon the closing of the Loan which would have the effect of transferring all or any portion of the Property.

**1.29     Single Purpose Entity.**  Notwithstanding anything to the contrary contained herein, the provisions of this Section 1.29, shall not apply to Lessee.  Borrower covenants, represents, warrants and agrees that it has not done any of the following and shall not do any of the following:

(a)     engage in any business or activity other than the acquisition, development, ownership, operation, leasing and managing and maintenance of the Property, and entering into the Loan and activities incidental thereto, including, without limitation, entering into the Master Lease and selling interests in the Property to Tenants-in-Common pursuant to approved TIC Transfers;

(b)     acquire or own any material assets other than (i) the Property, and (ii) such incidental Personal Property as may be necessary for the operation of the Property;

(c)     merge into or consolidate with any person or entity or dissolve, terminate or liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure, without in each case Lender's consent;

(d)     (i) fail to observe its organizational formalities or preserve its existence as an entity duly organized, validly existing and in good standing (if applicable) under the laws of the jurisdiction of its organization or formation, and qualification to do business in the State where the Property is located, if applicable, or (ii) without the prior written consent of Lender, amend, modify, terminate or fail to comply with the provisions of Borrower's partnership agreement, articles or certificate of incorporation, articles of organization or similar organizational documents, as the case may be;

(e)     own any subsidiary or make any investment in, any person or entity without the consent of Lender;

(f)     commingle its assets with the assets of any of its members, general partners, affiliates, principals or of any other person or entity, participate in a cash management system with any other entity or person or fail to use its own separate stationery, invoices and checks;

(g)     incur any debt, secured or unsecured, direct or contingent (including, without limitation, guaranteeing any obligation), other than the Loan, except for trade payables in the ordinary course of its business of owning and operating the Property, provided that such debt (i) is not evidenced by a note, (ii) is paid within sixty (60) days of the date incurred, (iii) does not exceed in the aggregate four percent (4%) of the outstanding principal balance of the Note, and (iv) is payable to trade creditors and in amounts as are normal and reasonable under the circumstances;

(h)     fail to pay its debts and liabilities (including, without limitation, as applicable, shared personnel and overhead expenses) from its assets as the same shall become due;

(i)     (i) fail to maintain its records (including, without limitation, financial statements), books of account and bank accounts separate and apart from those of the members, general partners, principals

-34-

and affiliates of Borrower, the affiliates of a member, general partner or principal of Borrower, and any other person or entity, (ii) permit its assets or liabilities to be listed as assets or liabilities on the financial statement of any other entity or person, or (iii) include the assets or liabilities of any other person or entity on its financial statements;

(j) except for the Master Lease, the Management Agreement (defined in **Section 1.32** [captioned "Property Management"] hereof with Manager (defined in **Section 1.32** [captioned "Property Management"] hereof) and the TIC Agreement, enter into any contract or agreement with any member, general partner, principal or affiliate of Borrower, any Guarantor, or any member, general partner, principal or affiliate thereof (other than a business management services agreement with an affiliate of Borrower, provided that (i) such agreement is acceptable to Lender, (ii) the manager, or equivalent thereof, under such agreement holds itself out as an agent of Borrower, and (iii) the agreement meets the standards set forth in this subsection (j) following this parenthetical), except upon terms and conditions that are commercially reasonable, intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties other than any member, general partner, principal or affiliate of Borrower, any Guarantor, or any member, general partner, principal or affiliate thereof;

(k) seek the dissolution or winding up in whole, or in part, of Borrower;

(l) fail to correct any known misunderstandings regarding the separate identity of Borrower or any member, general partner, principal or affiliate thereof or any other person;

(m) guarantee or become obligated for the debts of any other entity or person or hold itself out to be responsible for the debts of another person;

(n) make any loans or advances to any third party, including, without limitation, any member, general partner, principal or affiliate of Borrower, or any member, general partner, principal or affiliate thereof, and shall not acquire obligations or securities of any member, general partner, principal or affiliate of Borrower, or any member, general partner, principal or affiliate thereof;

(o) fail to file its own tax returns or, be included on the tax returns of any other person or entity except as required by applicable law, notwithstanding the foregoing, if the Borrower or a Tenant-in-Common is treated under applicable law as a disregarded entity and is therefore not required to file a separate tax return, then the entity who is required to file the return will do so;

(p) fail either to hold itself out to the public as a legal entity separate and distinct from any other entity or person or to conduct its business solely in its own name in order not (i) to mislead others as to the identity with which such other party is transacting business, or (ii) to suggest that Borrower is responsible for the debts of any third party (including, without limitation, any member, general partner, principal or affiliate of Borrower, or any member, general partner, principal or affiliate thereof);

(q) fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations;

(r) share any common logo with or hold itself out as or be considered as a department or division of (i) any general partner, principal, member or affiliate of Borrower, (ii) any affiliate of a general partner, principal or member of Borrower, or (iii) any other person or entity;

(s) fail to allocate fairly and reasonably any overhead expenses that are shared with an affiliate, including, without limitation, paying for office space and services performed by any employee of an affiliate;

(t) pledge its assets for the benefit of any other person or entity, other than with respect to the Loan;

-35-

(u)    fail to maintain a sufficient number of employees in light of its contemplated business operations;

(v)    fail to hold its assets in its own name;

(w)    if Borrower is a corporation, fail to consider the interests of its creditors in connection with all corporate actions to the extent permitted by applicable law;

(x)    have any of its obligations (other than the Loan) guaranteed by an affiliate; or

(y)    fail to provide in its (i) articles of organization, certificate of formation and/or operating agreement, as applicable, if Borrower is a limited liability company, (ii) limited partnership agreement if Borrower is a limited partnership or (iii) certificate of incorporation, if Borrower is a corporation, that for so long as the Loan is outstanding pursuant to the Note and this Security Instrument, Borrower shall not file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute, or make an assignment for the benefit of creditors without the affirmative vote of all of the general partners/managing members/directors of Borrower.

**1.30    ERISA.**

(a)    Borrower shall not engage in any transaction which would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Lender of any of its rights under the Note, this Security Instrument and the other Loan Documents) to be a non-exempt (under a statutory or administrative class exemption) prohibited transaction under either the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**") or the Internal Revenue Code.

(b)    Borrower represents and warrants that, as of the date hereof and throughout the term of this Security Instrument (1) Borrower is not and will not be an "employee benefit plan" as defined in Section 3(3) of ERISA, which is subject to Title I of ERISA, (2) Borrower is not and will not be a "governmental plan" within the meaning of Section 3(32) of ERISA; (3) Borrower is not and will not be, and transactions by or with Borrower are not and will not be, subject to state statutes regulating investments and fiduciary obligations with respect to governmental plans; and (4) one or more of the following circumstances is and will be true:

(i)    Equity interests (as defined in 29 C.F.R. §2510.3-101(b)(1)) in Borrower are publicly-offered securities within the meaning of 29 C.F.R. §2510.3-101(b)(2);

(ii)    Less than twenty-five percent (25%) of each outstanding class of equity interests in Borrower are held by "benefit plan investors" within the meaning of 29 C.F.R. §2510.3-101(f)(2); or

(iii)    Borrower qualifies as an "operating company" or a "real estate operating company" within the meaning of 29 C.F.R. §2510.3-101(c) or (e), or an investment company registered under The Investment Company Act of 1940.

At Lender's request from time to time throughout the term of this Security Instrument, Borrower shall deliver to Lender such certifications and other evidence acceptable to Lender of Borrower's compliance with the covenants, representations and warranties contained in this Section 1.30.

**1.31    Tenant-in-Common Provisions.**

(a)    **Tenant-in-Common Agreement.**  At the closing of the Loan, there shall be in full force and effect a so-called "tenants-in-common" agreement by and among DBSI COLONNADE WEST LAKE

LLC, a Delaware limited liability company ("Primary Borrower") and Secondary Borrower (defined below), (the "TIC Agreement"), which TIC Agreement shall govern the respective rights, responsibilities and obligations of each tenant-in-common of the Property. At all times after the Initial TIC Transfer Deadline the TIC Agreement shall continue in full force and effect between any and all tenants-in-common which are all of the tenants-in-common of the Property ("Secondary Borrower"). Primary Borrower and Secondary Borrower are sometimes referred to herein individually as an "Owner", and collectively as the "Owners". The TIC Agreement shall be in form and substance satisfactory to Lender, and the TIC Agreement shall not be cancelled, terminated, amended or modified without the prior written consent of the Lender. Further, each Owner hereby pledges and assigns to Lender, as additional security for the Secured Obligations, all of the respective rights of each Owner under the TIC Agreement. Additionally, each Owner hereby agrees that the TIC Agreement and any and all rights of purchase, rights of first refusal, rights of acquisition, transfer rights or similar rights each Owner may have under the TIC Agreement are subject to and subordinate to the Loan and the Loan Documents. The TIC Agreement is hereby amended to conform to the terms and conditions of this Security Instrument to the extent of any provisions relating to tenants in common or the TIC Agreement, and including without limitation as to any provisions where there are conflicts with or inconsistencies between the terms and conditions of this Security Instrument and the terms and conditions of the TIC Agreement, and the TIC Agreement is further hereby amended to make Lender an express third party beneficiary of the TIC Agreement and to grant Lender the right to enforce the provisions of the TIC Agreement, as amended hereby, which Lender deems to be for the benefit of the Lender.

(b)     **Singular Notice/Service.** Notwithstanding anything to the contrary contained herein, at all times and for all purposes (to the extent allowed by law) under the Loan Documents, Lender may notify and serve (i.e., service of process) Primary Borrower (with copy of service to Lessee) of notice is delivered on or prior to the Initial TIC Transfer Deadline or if notice is delivered after the Initial TIC Transfer Deadline the to Lessee. Lender shall be entitled to rely solely on any communications and/or notices under the Loan Documents given to or received from Primary Borrower. Primary Borrower's appointment hereunder shall not be changed without the prior written consent of Lender. Notwithstanding anything to the contrary in this Section 1.31, including without limitation the second sentence of this Section 1.31(b), Primary Borrower shall not exercise on behalf of any other Owner any rights intended to be reserved solely by such Owner pursuant to Internal Revenue Service Revenue Procedure 2002-22.

(c)     **Other Rights/Remedies.** To the extent allowed by law, if an Owner becomes a debtor in a bankruptcy or insolvency proceeding, then any one or more of the other Owner(s) shall have the right to purchase the debtor/Owner's interest in the Property at fair market value based on a then-current independent appraisal. Further, so long as the Secured Obligations remain unsatisfied, with respect to a default by an Owner, each Owner hereby permanently and irrevocably waives any right(s) or remedy(ies) it may have against any other Owner under the TIC Agreement unless the Lender has been given adequate notice and an opportunity (which shall in no event constitute an obligation) to cure the matter giving rise to any such right(s) or remedy(ies). Further, so long as the Secured Obligations remain unsatisfied, each Owner hereby further permanently and irrevocably waives, during such time period, any right(s) or remedy(ies) it may have at law or in equity or otherwise against any other Owner for the matter giving rise to any such right(s) or remedy(ies), including without limitation any lien rights that any Owner may have against the Property or the tenant-in-common interest of any other Owner. Further, so long as the Secured Obligations remain unsatisfied, each Owner hereby further subordinates such respective right(s) or remedy(ies) (including without limitation indemnity[ies]) to the Loan, and each Owner hereby further agrees to not enforce such right(s) or remedy(ies) so long as the Secured Obligations remains unsatisfied.

(d)     **Operation of Property; Master Lease.** Lessor hereby confirms Lessee's right and obligation, in accordance with the terms of the Master Lease, during the term of the Master Lease, to collect, or cause to be collected, all rents and other monies from the operation of the Property and to pay, or cause to be paid, from all such rent and other monies, all expenses and costs incurred in connection with the operation of the Property, including, without limitation, all sums due Lender under the Loan

Documents and all taxes and insurance premiums due and to become due in connection with the ownership and operation of the Property. Lessor hereby further directs Lessee to pay to Lender from the rent due Lessor under the Master Lease, the debt service, reserve payments and other amounts payable by Lessor to Lender prior to the remittance of any funds payable under the Master Lease, in excess of the debt service and reserves, and other amounts payable to Lender under the Loan, to Lessor. The Master Lease shall be in form and substance satisfactory to Lender, and without the Lender's prior written consent, the term of the Master Lease shall not expire any prior to the satisfaction of the Secured Obligations, and the Master Lease shall not be cancelled, terminated, amended or modified without the prior written consent of the Lender. Lessee shall at all times during the Loan term be solely owned (directly or indirectly) and controlled by **DBSI HOUSING INC., an Idaho corporation.** Lessee shall at all times during the term of the Master Lease control and manage the day-to-day operations of the Property. In order to facilitate the Lessee's management and operating of the Property, Lessor hereby authorizes Lessee to submit to Lender, from time to time, Requests for Release (as defined in the Reserve Agreement executed by Borrower of even date herewith) on behalf of Lessor, for the purpose of obtaining the release of Funds (as defined in the Reserve Agreement) according to the terms and conditions of the Reserve Agreement, with such released Funds to be applied and handled by Lessee in a manner consistent with the terms of the Master Lease, and Lessor hereby appoints the Lessee as its attorney-in-fact for the foregoing limited purposes described in this sentence. Further, Lessor hereby authorizes Lessee, in its reasonable judgment, to negotiate modifications of the Loan with Lender, and Lender may rely on communications from lessee with regard to such negotiations; provided however any modifications of the Loan shall be subject to the approval of the Lessor according to the terms and conditions of the TIC Agreement. Notwithstanding anything to the contrary in this **Section 1.31**, including without limitation the preceding sentence of this **Section 1.31(d)**, Lessee shall not exercise on behalf of Lessor any rights intended to be reserved solely to Lessor pursuant to Internal Revenue Service Revenue Procedure 2002-22.

**1.32    Property Management**.

(a)    **Property Management Agreement**.    Borrower represents and warrants that the Management Agreement, of even date herewith, pursuant to which DBSI REALTY CORPORATION, a(n) Idaho corporation, ("Manager") operates the Property (a true, correct and complete copy of which has been delivered to Lender) is in full force and effect and there is no default or violation by any party thereunder. The fees due under the Management Agreement, and the terms and provisions of the Management Agreement, are subordinate to this Security Instrument and the Manager shall attorn to Lender upon notice by Lender. Borrower shall not terminate, cancel or modify, amend the Management Agreement, or enter into any agreement relating to the management or operation of the Property with Manager or any other party without the prior written consent of Lender, which consent shall not be unreasonably withheld. If at any time Lender consents to the appointment of a new Property Manager, such new Property Manager and Borrower shall, as a condition of Lender's consent, execute an Assignment and Subordination of Management Agreement in a form then required by Lender.

(b)    **Management by Manager**.  Manager may continue to provide property management services for the Property pursuant to the Property Management Agreement, provided that the following conditions are satisfied:

(i)    No Event of Default has occurred and is continuing beyond any applicable notice or cure period;

(ii)    Primary Borrower (or, if the TIC Transfers occur in compliance with Section 1.15 above, in addition, the Tenants-in-Common) are the owners of the Property;

(iii)    Manager and Lessee shall continue to be solely owned (directly or indirectly) and controlled by **DBSI HOUSING INC., an Idaho corporation**. If a TIC Transfer occurs, the TIC Transfer Conditions shall continue to be satisfied;

(iv)     The Property Management Agreement is unmodified and in full force and effect and the Master Lease is unmodified and in full force and effect; and

(v)     Lessee is and remains the tenant under the Master Lease and controls and manages the day-to-day operations of the Property; and

(vi)     The Manager and Lessee execute an Assignment and Subordination of Management Agreement in the form required by Lender.

## ARTICLE 2.
## DEFAULT

**2.01     Events of Default.**  The occurrence of any of the following events shall be an Event of Default hereunder (an "**Event of Default**"):

(a)     Borrower fails to pay any interest, principal or other monies due under the Note or other Loan Documents on the date any such amount is due;

(b)     if any of the Impositions or other charges referred to in Sections 1.04 or 1.06 hereof are not paid when the same is due and payable, except to the extent sums sufficient to pay such Impositions or other charges have been deposited with Lender in accordance with the terms of this Security Instrument;

(c)     if the insurance policies required by Section 1.07 hereof are not kept in full force and effect, or if such insurance policies are not delivered to Lender upon request;

(d)     any representation or warranty made by Borrower, any Indemnitor or any person guaranteeing payment or performance of the Secured Obligations or any portion thereof (whether one or more, a "**Guarantor**") in connection with the Property, the Loan, or the application for the Loan proves to have been materially false or materially misleading when made, or Borrower or any Guarantor fails to disclose any material fact respecting the Property, the Loan, or the application for the Loan;

(e)     any governmental authority takes or institutes any action, which in the sole opinion of Lender, will adversely affect Borrower's condition, operations, or ability to repay the Loan, or will adversely affect any Guarantor's condition, operations, or ability to repay the Loan, if such action remains effective for more than thirty (30) days;

(f)     if Borrower violates or does not comply with any of the provisions of special purpose entity requirements set forth in Section 1.29 (captioned "**Single Purpose Entity**") hereof;

(g)     Lender fails to have a legal, valid, binding, and enforceable first priority lien acceptable to Lender on the Property;

(h)     Borrower becomes insolvent or there is a material adverse change in the assets, liabilities or financial position of Borrower, any general partner, or any Guarantor;

(i)     any action or proceeding is commenced by any partner, principal, or member in Borrower which seeks as one of its remedies the dissolution of Borrower or any partner, principal, or member (as applicable) in Borrower;

(j)     any governmental authority, or any court at the instance thereof, assumes control over the affairs or operations of, or a receiver or trustee is appointed over, or garnishment shall be issued or made against any substantial part of, the property of Borrower or any guarantor of the Loan;

(k)     Borrower or any Guarantor (including without limitation any Tenant-in-Common) of the Loan admits in writing its inability to pay its debts when due, or makes an assignment for the benefit of creditors; or Borrower or any Guarantor of the Loan applies for or consents to the appointment of any receiver, trustee or similar officer of Borrower or any such Guarantor, as the case may be, or for all or any substantial part of their respective property; or Borrower or any such Guarantor institutes (by petition, application, answer, consent or otherwise) any bankruptcy, insolvency, reorganization, arrangement, readjustment of debts, dissolution, liquidation, or similar proceedings relating to Borrower or any such Guarantor, as the case may be, or under the laws of any jurisdiction, provided, however, that the foregoing matters described in this Subsection 2.01(k) shall not be an Event of Default with respect to Borrower (except Lessor) if the interest of such Borrower in the Property is acquired, within ninety (90 days of such event, by any other Tenant-in-Common, pursuant to the buy/sell provisions of the TIC Agreement;

(l)     a receiver, trustee or similar officer is appointed for Borrower or any Guarantor (including without limitation any Tenant-in-Common) of the Loan or for all or any substantial part of their respective property without the application or consent of Borrower or any such Guarantor, as the case may be, and such appointment is not discharged within ninety (90) days (whether or not consecutive); or any bankruptcy, insolvency, reorganization, arrangements, readjustment of debt, dissolution, liquidation or similar proceedings is instituted (by petition, application or otherwise) against Borrower or any such Guarantor and shall not be dismissed within ninety (90) days;

(m)     any Transfer or Permitted Transfer (as defined in Section 1.15 hereof) occurs without the prior written consent of Lender, including without limitation a Sale, Pledge or an encumbrance of the Property, voluntarily or involuntarily, by any lien or encumbrance other than this Security Instrument;

(n)     the termination or dissolution of Borrower, any general partner in Borrower or any Guarantor; or any action or proceeding is commenced which seeks as one of its remedies the dissolution of Borrower or any general partner in Borrower or any Guarantor;

(o)     if any default occurs under any guaranty or indemnity executed in connection herewith (including, without limitation, the Environmental Indemnification Agreement executed by Borrower and any other Indemnitor in connection with the Loan [the "**Environmental Indemnity**"]) and such default continues after the expiration of applicable grace periods, if any;

(p)     if the Property becomes subject to any mechanic's, materialman's or other lien other than a lien for local real estate taxes and assessments not then due and payable and the lien shall remain undischarged of record (by payment, bonding or otherwise) for a period of thirty (30) days;

(q)     if any federal tax lien is filed against Borrower, any member or general partner of Borrower, any Guarantor, or any portion of the Property and same is not discharged of record within thirty (30) days after same as filed;

(r)     if any partition occurs or filing of an action to partition the Property occurs which action is not dismissed within ninety (90) days of filing, or if any Tenant-in-Common owns more than a 49% interest in the Property;

(s)     if Borrower violates or does not comply with any of the provisions as set forth in **Section 1.31** (captioned "Tenant-in-Common Provisions") hereof;

(t)     if Lessee does not remain the tenant under the Master Lease or the Master Lease is amended, modified, cancelled or terminated for any reason without Lender's prior written consent, or if a default occurs under the Master Lease, which default is not cured within any applicable time period (if any) provided under the Master Lease; or

-40-

(u)     if for more than thirty (30) days after notice from Lender, Borrower shall continue to be in default (other than the failure to pay monies due under the Note or the other Loan Documents) under any term, covenant or condition of the Note, this Security Instrument or the other Loan Documents not set forth in Subsections 2.01(a) through (t) above; provided that if such default cannot reasonably be cured within such thirty (30) day period and Borrower shall have commenced to cure such default within such thirty (30) day period and thereafter diligently and expeditiously proceeds to cure the same, such thirty (30) day period shall be extended for so long as it shall require Borrower in the exercise of due diligence to cure such default, it being agreed that no such extension shall be for a period in excess of sixty (60) days.

All notice and cure periods provided herein or in any other Loan Document shall run concurrently with any notice or cure periods provided by applicable laws. All notices and cure periods described herein or in any other Loan Documents shall not be applicable to any event which with the giving of notice, the passage of time or both would constitute an Event of Default, if such event has occurred as of the date on which Lender commences a nonjudicial foreclosure proceeding (if such proceeding is allowed by law) with respect to another Event of Default. Such event shall constitute an independent Event of Default hereunder.

### 2.02    Acceleration Upon Default; Additional Remedies.

(a)     **Remedies.**  Upon the occurrence of any Event of Default, Lender may or acting by or through Trustee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower in and to the Property, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender or Trustee may determine, in their sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender or Trustee:

(1)     declare all Secured Obligations to be immediately due and payable;

(2)     institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable state or federal law in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(3)     with or without entry, to the extent permitted and pursuant to the procedures provided by applicable state or federal law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Secured Obligations then due and payable, subject to the continuing lien and security interest of this Security Instrument for the balance of the Secured Obligations not then due, unimpaired and without loss of priority;

(4)     sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, in one or more parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(5)     subject to the provisions of Section 10 (captioned "**Exculpation**") of the Note, institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note or in the other Loan Documents;

(6)     subject to the provisions of Section 10 (captioned "**Exculpation**") of the Note, recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents;

-41-

(7)     apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Secured Obligations and without regard for the solvency of Borrower, any Guarantor, any Indemnitor or of any person, firm or other entity liable for the payment of the Secured Obligations;

(8)     subject to any applicable state or federal law, the license granted to Borrower under Section 3.02 hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all rent rolls, Leases (including, without limitation, the form Lease and amendments and exhibits), subleases (including, without limitation, the form sublease and amendments and exhibits) and rental and license agreements with the tenants, subtenants and licensees, in possession of the Property or any part or parts thereof; tenants', subtenants' and licensees' money deposits or other property (including, without limitation, any letter of credit) given to secure tenants', subtenants' and licensees' obligations under Leases, subleases or licenses, together with a list of the foregoing; all lists pertaining to current rent and license fee arrears; any and all architects' plans and specifications, licenses and permits, documents, books, records, accounts, surveys and property which relate to the management, leasing, operation, occupancy, ownership, insurance, maintenance, or service of or construction upon the Property and Borrower shall surrender possession thereof and of the Property to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) either require Borrower (A) to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower, or (B) to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vi) apply the receipts from the Property to the payment of the Secured Obligations, in such order, priority and proportions as Lender shall determine after deducting therefrom all expenses (including, without limitation, attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Impositions, Insurance Premiums and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(9)     exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limitation: (i) the right to take possession of the Personal Property and other UCC collateral or any part thereof, and to take such other measures as Lender or Trustee may deem necessary for the care, protection and preservation of the Personal Property, and other UCC collateral, and (ii) request Borrower at its expense to assemble the Personal Property and other UCC collateral and make it available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender or Trustee with respect to the Personal Property and other UCC collateral sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute commercially reasonable notice to Borrower;

(10)     apply any sums then deposited in the Impounds and any other sums held in escrow or otherwise by Lender in accordance with the terms of this Security Instrument or any other Loan Document to the payment of the following items in any order as determined by Lender:

(i)     Taxes and Other Impositions;

(ii)     Insurance Premiums;

(iii)     interest on the unpaid principal balance of the Note;

(iv)     amortization of the unpaid principal balance of the Note; and

(v)     all other sums payable pursuant to the Note, this Security Instrument and the other Loan Documents, including, without limitation, advances made by Lender pursuant to the terms of this Security Instrument;

(11)     surrender the insurance policies maintained pursuant to Section 1.07 hereof, collect the unearned Insurance Premiums and apply such sums as a credit on the Secured Obligations in such priority and proportion as Lender shall determine, and in connection therewith, Borrower hereby appoints Lender as agent and attorney-in-fact (which is coupled with an interest and is therefore irrevocable) for Borrower to collect such unearned Insurance Premiums;

(12)     apply the undisbursed balance of any Net Proceeds Deficiency deposit, together with interest thereon, to the payment of the Secured Obligations in such order, priority and proportions as Lender shall determine; or

(13)     pursue such other remedies as Lender may have under applicable state or federal law.

In the event of a sale, by foreclosure, power of sale, or otherwise, of less than all of the Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.  Notwithstanding the provisions of this Section 2.02(a) hereof to the contrary, if any Event of Default as described in clause (h), (i), (j) or (k) of Section 2.01 hereof shall occur, the entire unpaid Secured Obligations shall be automatically due and payable, without any further notice, demand or other action by Lender.

(b)     **Application of Proceeds.**  The purchase money, proceeds and avails of any disposition of the Property, or any part thereof, or any other sums collected by Lender pursuant to the Note, this Security Instrument or the other Loan Documents, may be applied by Lender to the payment of the Secured Obligations in such priority and proportions as Lender shall determine.

(c)     **Right to Cure Defaults.**  Upon the occurrence of any Event of Default or if Borrower fails to make any payment or to do any act as herein provided, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder, make or do the same in such manner and to such extent as Lender may deem necessary to protect the security hereof.  Lender or Trustee is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or collect the Secured Obligations.  The cost and expense of any cure hereunder (including, without limitation, attorneys' fees to the extent permitted by law), with interest as provided in this Section 2.02(c) hereof, shall constitute a portion of the Secured Obligations and shall be due and payable to Lender upon demand.  All such costs and expenses incurred by Lender or Trustee in remedying such Event of Default or such failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate (defined in the Note), for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender.  All such costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Secured Obligations and shall be immediately due and payable upon demand by Lender therefor.

(d)     **Actions and Proceedings.**  Lender or Trustee has the right to appear in and defend any action or proceeding brought with respect to the Property and, after the occurrence and during the continuance of an Event of Default, to bring any action or proceeding, in the name and on behalf of Borrower, which Lender decides should be brought to protect its interest in the Property.

-43-

(e)     **Recovery of Sums Required To Be Paid.** Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Secured Obligations as the same become due, without regard to whether or not the balance of the Secured Obligations shall be due, and without prejudice to the right of Lender or Trustee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Borrower existing at the time such earlier action was commenced.

(f)     **Examination of Books and Records.** Lender, its agents, accountants and attorneys shall have the right upon reasonable prior notice to Borrower (unless an Event of Default exists, in which case no notice shall be required), to examine and audit, during reasonable business hours, the records, books, management and other papers of Borrower and its affiliates or of any Guarantor or Indemnitor which pertain to their financial condition or the income, expenses and operation of the Property, at the Property or at any office regularly maintained by Borrower, its affiliates or any Guarantor or Indemnitor where the books and records are located. Lender and its agents shall have the right upon notice to make copies and extracts from the foregoing records and other papers.

(g)     **Other Rights, etc.**

(1)     The failure of Lender or Trustee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (1) the failure of Lender or Trustee to comply with any request of Borrower, any Guarantor or any Indemnitor to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (2) the release, regardless of consideration, of the whole or any part of the Property, or of any person liable for the Secured Obligations or any portion thereof, or (3) any agreement or stipulation by Lender extending the time of payment, changing the rate of interest, or otherwise modifying or supplementing the terms of the Note, this Security Instrument or the other Loan Documents.

(2)     It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for decline in value of the Property, for failure to maintain the insurance policies required pursuant to Section 1.07 hereof, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Lender shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to any portion of the Property, or collateral not in Lender's possession.

(3)     Lender may resort for the payment of the Secured Obligations to any other security held by Lender in such order and manner as Lender may elect. Lender or Trustee may take action to recover the Secured Obligations, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender or Trustee thereafter to foreclose this Security Instrument. The rights of Lender or Trustee under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender or Trustee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Neither Lender nor Trustee shall be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

(h)     **Right to Release Any Portion of the Property.** Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and may accept by assignment, pledge or otherwise any other Property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Security Instrument shall continue as a lien and security interest in the remaining portion of the Property.

(i)  **Violation of Laws.**  If the Property is not in compliance with applicable laws, Lender may impose additional requirements upon Borrower in connection herewith including, without limitation, monetary reserves or financial equivalents.

(j)  **Right of Entry.**  Lender and its agents shall have the right to enter and inspect the Property at all reasonable times.  Except in case of emergency, such entries shall be with reasonable prior notice and shall be with due regard for rights of tenants.

## ARTICLE 3.
## ASSIGNMENT OF LEASES, RENTS, INCOME AND PROFITS

**3.01  Assignment; Priority of Assignment.**  Borrower (referred to in this Article 3 as "**Assignor**") hereby irrevocably, absolutely, presently and unconditionally grants, sells, assigns, transfers, pledges and sets over to Lender (referred to in this Article 3 as "**Assignee**"):

(a)  any and all Leases, together with all of Assignor's right, title and interest in and to the Leases including, without limitation, all modifications, amendments, extensions and renewals of the Leases and all rights and privileges incident thereto and all demands or claims arising thereunder (including, without limitation, any cancellation fees or other premiums collected in connection with the Leases) or under any policies insuring against loss of rents or profits;

(b)  all Rents, including, without limitation, expenses paid by tenants; and

(c)  all security deposits, guaranties and other security now or hereafter held by Assignor as security for the performance of the obligations of the tenants under such Leases.

The foregoing assignment of Rents and Leases is intended by Assignor and Assignee to create and shall be construed to create a present and absolute assignment to Assignee of all of Assignor's right, title and interest in the Rents and in the Leases and shall not be deemed to create merely an assignment for security only for the payment of any indebtedness or the performance of any obligations of Assignor under any of the Loan Documents.  This assignment is included within the text of this Security Instrument for convenience only, but such inclusion shall not derogate from its effectiveness any other assignment of Rents or Leases contained in any other Loan Documents or otherwise and all shall be supplementary to one another.

Nothing contained herein shall operate or be construed to obligate Assignee to perform any of the terms, covenants and conditions contained in any Lease or otherwise to impose any obligation upon Assignee with respect to any Lease, including, without limitation, any obligation arising out of any covenant of quiet enjoyment therein contained in the event the tenant under any such Lease shall have been joined as a party defendant in any action to foreclose and the estate of such tenant shall have been thereby terminated. Assignor and Assignee further agree that, during the term of this Security Instrument, the Rents shall not constitute property of Assignor (or of any estate of Assignor) within the meaning of 11 U.S.C. §541, as may be amended from time to time.

Assignor hereby represents and warrants that (i) Assignor has good title to the Leases and the full power and right to assign the Leases; (ii) no other persons have any title or interest in the Leases; (iii) the Leases are in full force and effect and have not been modified except as set forth in the certified occupancy statement delivered to and approved by Assignee; (iv) there are no defaults under any of the Leases; (v) no other assignments of all or any portion of the Rents or the Leases exist or remain outstanding; (vi) all Rents due have been paid in full; (vii) none of the Rents reserved in the Leases have been assigned or otherwise pledged or hypothecated; (viii) none of the Rents have been collected for more than one (1) month in advance (except a security deposit shall not be deemed rent collected in advance); (ix) the property demised under the Leases have been completed and the tenants under the Leases have accepted the same and have taken possession of the same on a rent-paying basis; (x) there

-45-

exist no offsets or defenses to the payment of any portion of the Rents; (xi) Assignor has received no notice from any tenant challenging the validity or enforceability of any Lease; (xii) there are no agreements with the tenants under the Leases other than expressly set forth in each Lease; (xiii) the Leases are valid and enforceable against Assignor and the tenants set forth therein; (xiv) no Lease contains an option to purchase, right of first refusal to purchase, or any other similar provision; (xv) no person or entity has any possessory interest in, or right to occupy, the Property except under and pursuant to a Lease; (xvi) each Lease is subordinate to this Security Instrument, either pursuant to its terms or a recordable subordination agreement; (xvii) no Lease has the benefit of a non-disturbance agreement that would be considered unacceptable to prudent institutional lenders; (xviii) all security deposits relating to the Leases reflected on the certified rent roll delivered to Assignee have been collected by Assignor; and (xix) no brokerage commissions or finders fees are due and payable regarding any Lease.

Assignor shall take such action and execute, deliver and record such documents as may be reasonably necessary to evidence such assignment, to establish the priority thereof and to carry out the intent and purpose hereof. If requested by Assignee, Assignor shall execute a specific assignment of any Lease now or hereafter affecting all or any portion of the Property and shall cause the tenant or tenants thereunder to execute, deliver and record a Subordination, Non-Disturbance and Attornment Agreement, in form and substance reasonably satisfactory to Assignee.

Assignor shall faithfully perform and discharge all of Assignor's obligations under the Leases and to enforce all obligations undertaken by tenants thereunder. ASSIGNOR SHALL DEFEND ASSIGNEE IN ANY ACTION RELATING TO THE LEASES AND SHALL INDEMNIFY, DEFEND AND HOLD ASSIGNEE HARMLESS FROM AND AGAINST ANY CLAIMS OF TENANTS OR THIRD PARTIES WITH RESPECT TO THE LEASES. Assignor shall not receive or collect any Rents in advance of the date due or waive or defer any terms of the Leases without the consent of Assignee. Assignor shall not pledge, assign or further encumber the Leases or any Rents or (except as is permitted by Section 1.26(b) above) modify or terminate the Leases, or permit any assignment or sublease thereunder, without Assignee's prior written consent. Assignor irrevocably appoints Assignee its true and lawful attorney-in-fact, at the option of Assignee at any time and from time to time, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Assignor, Trustee or Assignee, for all such Rents, and apply the same to the Secured Obligations.

3.02    **Grant of Revocable License to Collect Rents.** So long as an Event of Default shall not have occurred and be continuing under this Security Instrument, Assignee hereby grants to Assignor a revocable license to enforce the Leases, to collect the Rents, to apply the Rents to the payment of the costs and expenses incurred in connection with the Property and to any Secured Obligations. If requested by Assignee, Assignor shall (a) give written notice to the tenants under the Leases of the assignment of Rents and Leases by Assignor to Assignee pursuant to Section 3.01 hereof, of the grant of the revocable license by Assignee to Assignor pursuant to this Section 3.02, and of the respective rights of Assignor and Assignee under this Article 3; and (b) obtain such tenants' agreements to be bound by and comply with the provisions of such assignment and grant. All Leases hereafter executed with respect to the Property shall contain a reference to the foregoing assignment and grant and shall state that the tenant executing such Lease shall be bound by and shall comply with the provisions hereof.

3.03    **Revocation of License; Assignee's Rights.** Upon the occurrence of an Event of Default and at any time thereafter during the continuance thereof, subject to applicable laws, the license granted to Assignor hereunder shall automatically be revoked. Upon such revocation, Assignor shall promptly deliver to Assignee all Rents then held by or for the benefit of Assignor. Assignee, in addition to any other rights granted to Assignee under this Security Instrument, shall have the right: (i) to notify the tenants under the Leases that Assignor's license to collect Rents has been revoked, and, with or without taking possession of the Property, to direct such tenant to thereafter make all payments of Rent and to perform all obligations under its Lease to or for the benefit of Assignee or as directed by Assignee; (ii) to enter upon the Property and to take over and assume the management, operation and maintenance of

the Property, to enforce all Leases and collect all Rents due thereunder, to amend, modify, extend, renew and terminate any or all Leases and execute new Leases; and (iii) to perform all other acts which Assignee shall determine to be necessary or desirable to carry out the foregoing. Each tenant under any Lease shall be entitled to rely upon any notice from Assignee and shall be protected with respect to any payment of Rent made pursuant to such notice, irrespective of whether a dispute exists between Assignor and Assignee with respect to the existence of an Event of Default or the rights of Assignee hereunder. The payment of Rent to Assignee pursuant to any such notice and the performance of obligations under any Lease to or for the benefit of Assignee shall not cause Assignee to assume or be bound by the provisions of such Lease including, without limitation, the duty to return any security deposit to the tenant under such Lease unless and to the extent such security deposit was paid to Assignee by Assignor. Assignor shall indemnify, defend and hold Assignee harmless from and against any and all losses, claims, damage or liability arising out of any claim by a tenant with respect thereto unless the same results from Assignee's willful misconduct or gross negligence. The foregoing notwithstanding, Assignee acknowledges that the Rents payable under the Master Lease constitute a share of the Rents, rather than a separate obligation, payable under the Leases, although Lessee shall remain obligated to pay the Rent under the Master Lease whether or not such Rents are paid by the tenants under the commercial office leases.

     **3.04    Application of Rents; Security Deposits.** All Rents received by Assignee pursuant to this Security Instrument shall be applied by Assignee, as determined by Assignee, to any of the following: (i) the costs and expenses of collection, including, without limitation, attorneys' fees and receivership fees, costs and expenses; (ii) the costs and expenses incurred in connection with the management, operation and maintenance of the Property; (iii) the establishment of reasonable reserves for working capital and for anticipated or projected costs and expenses, including, without limitation, capital improvements which may be necessary or desirable or required by law; and (iv) the payment of any indebtedness then owing by Assignor to Assignee. In connection therewith, Assignor further agrees that all Rents received by Assignee from any tenant may be allocated first, if Assignee so elects, to the payment of all current obligations of such tenant under its Lease and not to amounts which may be accrued and unpaid as of the date of revocation of Assignor's license to collect such Rents. Assignee may, but shall have no obligation to, pursue any tenant for the payment of Rent which may be due under its Lease with respect to any period prior to the exercise of Assignee's rights hereunder or which may become due thereafter. Assignor agrees that the collection of Rents by Assignee and the application of such Rents by Assignee to the costs, expenses and obligations referred to in this Section 3.04 shall not cure or waive any default or Event of Default or invalidate any act (including, without limitation, any sale of all or any portion of the Property now or hereafter securing the Loan) done in response to or as a result of such default or Event of Default or pursuant to any notice of default or notice of sale issued pursuant to any Loan Document.

     **3.05    No Mortgagee in Possession.** Nothing contained in this Security Instrument shall be construed as constituting Assignee a "mortgagee in possession" in absence of the taking of actual possession of the Property by Lender. In the exercise of the powers herein granted Lender, no liability shall be asserted or enforced against Assignee, all such liability being expressly waived and released by Assignor.

**ARTICLE 4.**
**SECONDARY MARKET**

     **4.01    Transfer of Loan.** Lender may, at any time, sell, transfer or assign the Note, this Security Instrument and the other Loan Documents, and any or all servicing rights with respect thereto, or grant participations therein or issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "**Securities**"). Lender may forward to each purchaser, transferee, assignee, servicer, participant or investor in such Securities or any rating agency ("**Rating Agency**") rating such Securities (collectively, the "**Investor**") and each prospective Investor, all documents and information which Lender now has or may hereafter acquire

relating to the Loan and to Borrower and the Master Lease, and the Property, whether furnished by Borrower, or otherwise, as Lender determines necessary or desirable. Borrower shall cooperate with Lender in connection with any transfer made or any Securities created pursuant to this Security Instrument, including, without limitation, the delivery of an estoppel certificate in accordance therewith, and such other documents as may be reasonably required by Lender. Borrower shall also furnish and Borrower consents to Lender furnishing to such Investors or such prospective Investors or Rating Agency any and all information concerning the Property, the Leases, the financial condition of Borrower as may be requested by Lender, any Investor or any prospective Investor or Rating Agency in connection with any sale, transfer or participation interest. Lender may retain or assign responsibility for servicing the Note, this Security Instrument, and the other Loan Documents, or may delegate some or all of such responsibility and/or obligations to a servicer (including, without limitation, any subservicer or master servicer) or agent. Lender may make such assignment or delegation on behalf of the Investors if the Note is sold or this Security Instrument or the other Loan Documents are assigned. All references to "Lender" in the Loan Documents shall refer to and include any such servicer or agent, to the extent applicable, in each case as designated by Lender from time to time. Without limiting the generality of the definition of "Borrower" as defined and uses in this Security Instrument, for the purposes of this Article 4, Borrower shall include Lessor and/or Lessee.

4.02    **Conversion to Registered Form.** At the request and the expense of Lender, Borrower shall appoint, as its agent, a registrar and transfer agent (the "**Registrar**") acceptable to Lender which shall maintain, subject to such reasonable regulations as it shall provide, such books and records as are necessary for the registration and transfer of the Note in a manner that shall cause the Note to be considered to be in registered form for purposes of Section 163(f) of the U.S. Internal Revenue Code. The option to convert the Note into registered form once exercised may not be revoked. Any agreement setting out the rights and obligations of the Registrar shall be subject to the reasonable approval of Lender. Borrower may revoke the appointment of any particular person as Registrar, effective upon the effectiveness of the appointment of a replacement Registrar. The Registrar shall not be entitled to any fee from Lender or any other Lender in respect of transfers of the Note and this Security Instrument (other than taxes and governmental charges and fees).

4.03    **Estoppel Certificate.** Upon any transfer or proposed transfer contemplated by Section 4.01 above, at Lender's request, Borrower, **Douglas L. Swenson or DBSI Housing Inc., an Idaho corporation,** shall provide an estoppel certificate to the Investor or any prospective Investor in such form, substance and detail as Lender, such Investor or prospective Investor may require.

## ARTICLE 5.
## FURTHER ASSURANCES

5.01    **Recording of Security Instrument; Other Assurances.** Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the Loan Documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other Loan Documents, any note or deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

-48-

**5.02     Further Acts.**  Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender and Trustee the Property and rights hereby deeded, mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all applicable laws.  Borrower, on demand, will execute and deliver and hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Lender in the Property.  Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including, without limitation, such rights and remedies available to Lender pursuant to this paragraph.  Borrower specifically agrees that all power granted to Lender under this Security Instrument may be assigned by Lender to its successors or assigns as holder of the Note.

**5.03     Changes in Laws Regarding Taxation; Documentary Stamps.**

(a)     In the event of the passage after the date of this Security Instrument of any law of the State where the Property is located deducting from the value of real property for the purpose of taxation any lien or encumbrance thereon or changing in any way the laws for the taxation of mortgages or loans secured by mortgages for state or local purposes or the manner of the collection of any such taxes, and imposing a tax, (including, without limitation, a withholding tax) either directly or indirectly, on this Security Instrument, the Note or the Loan, Borrower shall, if permitted by law, pay any tax imposed as a result of any such law within the statutory period or within fifteen (15) days after demand in Lender, whichever is less, provided, however, that if, in the opinion of the attorneys for Lender, Borrower is not permitted by law to pay such taxes, Lender shall have the right, at its option, to declare the Loan due and payable on a date specified in a prior notice to Borrower of not less than thirty (30) days.  Any prepayment made by Borrower pursuant to the terms of this paragraph shall be made without any Prepayment Charge (as defined in the Note).

(b)     If at any time the United States of America, any State thereof, or any governmental subdivision of any such State, shall require revenue or other stamps to be affixed to the Note or this Security Instrument, Borrower will, upon demand, pay for the same, with interest and penalties thereon, if any.

## ARTICLE 6.
## TEXAS PROVISIONS/MODIFICATIONS AND OTHER PROVISIONS

**6.01     Inconsistencies.** In the event of any conflicts between the terms and conditions of this Article 6 and the remainder of this Security Instrument, the terms and conditions of this Article 6 shall govern, but only to the extent of any such conflicts.

**6.02     Evasion of Prepayment Terms.**  If an Event of Default shall occur, a tender of any payment of principal by Borrower, its successors or assigns or by anyone on behalf of Borrower, its successors or assigns, in excess of the amount which would have been payable had the Event of Default not occurred, shall constitute an evasion of the prepayment terms of the Note, as incorporated herein by reference, and shall be deemed to be a voluntary prepayment thereunder and any such payment, to the extent permitted by law, must include the prepayment charge computed in accordance with the terms of the Note but subject to the terms of the Note, including without limitation Section 11 (captioned "Savings Clause"), with respect to the intent of Lender and Borrower with respect to usury.

**6.03    Remedies.** In furtherance of and not in limitation of any other provisions of this Security Instrument, including without limitation Section 2.02(a):

If an Event of Default shall occur and be continuing, Lender may, at its option, take one or more of the following actions:

(a)    take possession of the Property;

(b)    manage the same to or for the account of Borrower;

(c)    collect all income and profits arising from the Property and deduct from income profits and rents all expenses and apply the remainder to the Secured Obligations; or

(d)    have a receiver appointed by a court of competent jurisdiction to take possession of the Property and collect the rents, issues and profits arising from the Property deducting therefrom any and all sums spent by any such receiver together with the receiver's own compensation. Lender's right to a receiver shall be subject to applicable law and said receiver may be obtained in any judicial foreclosure, suit for specific performance or in any other lawsuit to enforce this Security Instrument in any manner. This right is created by this Security Instrument and is a contractual right between the parties and is cumulative of and shall not affect in any way the right of Lender given by law for the appointment of a receiver.

**6.04    Right to Collect Rents.** In furtherance of and not in limitation of any other provisions of this Security Instrument, including without limitation Section 3.03:

Upon an Event of Default which remains uncured and whether before or after the institution of legal proceedings to foreclose the lien hereof or before or after sale of the Property or during any period of redemption the Lender, and without regard to waste, adequacy of the security or solvency of the Borrower, may revoke the privilege granted Borrower hereunder to collect the Rents and may, at its option, without notice in person or by agent, with or without taking possession of or entering the Property, with or without bringing any action or proceeding, or by a duly appointed receiver, give or require Borrower to give, notice to any or all tenants under any Lease authorizing and directing the tenant to pay Rents to Lender or such receiver, as the case may be; collect all of the Rents; enforce the payment thereof and exercise all of the rights of the landlord under any Lease (as hereinafter defined) and all of the rights of Lender hereunder; enter upon, take possession of, manage and operate said Property, or any part thereof; may cancel, enforce or modify any Leases, and fix or modify Rents, and do any acts which the Lender deems proper to protect the security hereof with or without taking possession of the Property.

Any Rents whether collected by the Lender or by such receiver, as the case may be, shall be applied to the costs and expenses of operation, management and collection, including reasonable attorneys' fees, to the payment of the fees and expenses of any agent or receiver so acting, to the payment of taxes, assessments, insurance premiums and expenditures for the management and upkeep of the Property, to the performance of the landlord's obligations under the Leases and to any Secured Obligations, all in such order as the Lender may determine.

The entering upon and taking possession of the Property, the collection of such Rents and the application thereof as aforesaid shall not cure or waive any Event of Default under this Security Instrument or affect any notice of default or invalidate any act done pursuant to such notice nor in any way operate to prevent the Lender from pursuing any other remedy which it may now or hereafter have under the terms of this Security Instrument or the Note or any other security securing the same, nor shall it in any way be deemed to constitute the Lender a mortgagee-in-possession. The rights hereunder shall in no way be dependent upon and shall apply without regard to whether the Property are in danger of being lost, materially injured or damaged or whether the Property are adequate to discharge the Secured

Obligations. The rights contained herein are in addition to and shall be cumulative with the rights given in any separate instrument, assigning any Rents or Leases of the Property and shall not amend or modify the rights in any such separate agreement.

**6.05     Right to Foreclose**. In furtherance of and not in limitation of any other provisions of this Security Instrument, including without limitation Section 2.02(a):

Upon the occurrence of an Event of Default, Lender may, at Lender's option, do any one or more of the following:

(a)     Lender may request Trustee to proceed with foreclosure under the power of sale which is hereby conferred, such foreclosure to be accomplished in accordance with the following provisions:

(1)     Trustee is hereby authorized and empowered and it shall be Trustee's special duty, upon such request of Lender, to sell the Property or any part thereof for cash, with or without having taken possession of same. Any such sale (including notice thereof) shall comply with the applicable requirements, at the time of the sale, of Section 51.002 of the Texas Property Code, or, if and to the extent such statute is not then in force, with the applicable requirements, at the time of the sale, of the successor statute or statutes, if any, governing sales of Texas real property under powers of sale conferred by deeds of trust. If there is no statute in force at the time of the sale governing sales of Texas real property under powers of sale conferred by the deeds of trust, such sale shall comply with applicable law, at the time of the sale, governing sales of Texas real property under powers of sale conferred by deeds of trust.

(2)     In addition to the rights and powers of sale granted under the preceding provisions of this subsection, if default is made in the payment of any installment of the Secured Obligations, Lender may, at Lender's option, at once or at any time thereafter while any matured installment remains unpaid, without declaring the entire Secured Obligations, to be due and payable, orally or in writing direct Trustee to enforce this trust and to sell the Property subject to such unmatured Secured Obligations and to the rights, powers, liens, security interests and assignments securing or providing recourse for payment of such unmatured Secured Obligations, in the same manner, all as provided in the preceding provisions of this subparagraph. Sales made without maturing the Secured Obligations may be made hereunder whenever there is a default in the payment of any installment of the Secured Obligations, without exhausting the power of sale granted hereby, and without affecting in any way the power of sale granted under this subsection, the unmatured balance of the Secured Obligations or the rights, powers, liens, security interests and assignments securing or providing recourse for payment of the Secured Obligations.

(3)     Sale of a part of the Property shall not exhaust the power of sale, but sales may be made from time to time until the Secured Obligations are paid and performed in full. It is intended by each of the foregoing provisions of this subsection that Trustee may, after any request or direction by Lender, sell not only the real estate and improvements included within the term "Property" and the personal property and other interests constituting a part of the Property or any part thereof, along with the real estate and improvements or any part thereof, as a unit and as a part of a single sale, or may sell any part of the Property separately from the remainder of the Property. It shall not be necessary to have present or to exhibit at any sale any of the Property.

(4)     After any sale under this subsection, Trustee shall make good and sufficient deeds, assignments and other conveyances to the purchaser or purchasers thereunder, conveying the Property or any part thereof so sold to the purchaser or purchasers with general warranty of title by Borrower. It is agreed that, in any deeds, assignments or other conveyances given by Trustee, any and all statements of fact or other recitals therein made as to the identity of Lender, or as to the occurrence or existence of any default, or as to the acceleration of the maturity of the Secured Obligations, or as to the request to sell, notice of sale, time, place, terms and manner of sale, and receipt, distribution and

-51-