application of the money realized therefrom, or as to the due and proper appointment of a substitute trustee, and without being limited by the foregoing, as to any other act or thing having been duly done by or on behalf of Lender or by or on behalf of Trustee, shall be taken by all courts of law and equity as prima facie evidence that the said statements or recitals state facts and are without further question to be so accepted, and Borrower does hereby ratify and confirm any and all acts that Trustee may lawfully do in the Property by virtue hereof.

(b)     Lender may, or Trustee may upon written request of Lender, proceed by suit or suits, at law or in equity, to enforce the payment and performance of the Secured Obligations in accordance with the terms hereof and of the Note or any other security instruments, to foreclose the liens and security interests of this Security Instrument as against all or any part of the Property, and to have all or any part of the Property sold under the judgment or decree of a court of competent jurisdiction.

(c)     Lender may buy the Property or any part thereof at any public sale or judicial sale.

(d)     Lender shall have and may exercise any and all other rights and remedies which Lender may have at law or in equity, or by virtue of any other security instrument, or under the Texas Uniform Commercial Code, or otherwise.

**6.06     Lender's Right of Possession Under An Event of Default.**  In any case in which under the provisions of this Security Instrument Lender has a right to institute a trustee's sale or foreclosure proceedings, whether before or after the whole Secured Obligations are declared to be immediately due as aforesaid, or whether before or after the institution of legal proceedings to foreclose the lien hereof or before or after sale thereunder, forthwith upon written demand of Lender, Borrower shall surrender to Lender and Lender shall be entitled to take actual possession of the Property or any part thereof personally, or by its agents or attorneys, as for condition broken, and Lender in its discretion may, by process of law, enter upon and take and maintain possession of all or any part of the Property, together with all documents, books, records, papers and accounts of Borrower or then owners of the Property relating thereto, and may exclude Borrower, its agent or servants, wholly therefrom and may, as attorney-in-fact or agent of Borrower, or in its own name as Lender and under the powers herein granted, hold, operate, manage and control the Property and conduct the business, if any, thereof, either personally or by its agents, and with full power to use such measures, legal or equitable, as in its discretion or in the discretion of its successors or assigns may be deemed proper or necessary to enforce the payment or security of the avails, rents, issues and profits of the Property, including actions for the recovery of rent, actions in forcible detainer and actions in distress for rent, if an available remedy, hereby granting full power and authority to exercise each and every of the rights, privileges and powers herein granted at any and all times hereafter, without notice to Borrower, and with full power to cancel or terminate any lease or sublease for any cause or on any ground which would entitle Borrower to cancel the same, to elect to disaffirm any lease or sublease made subsequent to this Security Instrument or subordinated to the lien hereof, to make all necessary or proper repairs, betterments and improvements to the Property as to it may seem judicious, insure and reinsure the same and all risks incidental to Lender's possession, operation and management thereof and to receive all of such avails, rents, issues and profits. Lender shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under any leases AND BORROWER SHALL AND DOES HEREBY AGREE TO INDEMNIFY AND HOLD LENDER AND TRUSTEE HARMLESS OF AND FROM ANY AND ALL LIABILITY, LOSS OR DAMAGE WHICH IT MAY OR MIGHT INCUR UNDER SAID LEASE(S) OR UNDER OR BY REASON OF THE ASSIGNMENT THEREOF AND OF AND FROM ANY AND ALL CLAIMS AND DEMANDS WHATSOEVER WHICH MAY BE ASSERTED AGAINST IT BY REASON OF ANY ALLEGED OBLIGATIONS OR UNDERTAKINGS ON ITS PART TO PERFORM OR DISCHARGE ANY OF THE TERMS, COVENANTS OR AGREEMENTS CONTAINED IN SAID LEASES, EXCEPT TO THE EXTENT THE FOREGOING SOLELY RELATE TO THE LENDER'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.  Should Lender incur any such liability, loss or damage under said leases or under or by reason of the assignment thereof, or in the defense of any claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured

-52-

hereby, and Borrower shall reimburse Lender therefor immediately upon demand unless such liability, loss or damage was the result of the Lender's gross negligence or willful misconduct. Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after an Event of Default or from any other act or omission of Lender in managing the Property after an Event of Default unless such liability loss or damage is caused by the gross negligence or willful misconduct of Lender. IN CONNECTION WITH ANY ACTION TAKEN BY LENDER PURSUANT TO THIS SECTION 6.06, LENDER SHALL NOT BE LIABLE FOR ANY LOSS SUSTAINED BY BORROWER RESULTING FROM ANY FAILURE TO LET THE PROPERTY, OR ANY PART THEREOF, OR FROM ANY OTHER ACT OR OMISSION OF LENDER IN MANAGING THE PROPERTY (REGARDLESS OF WHETHER SUCH LOSS IS CAUSED BY THE NEGLIGENCE OF LENDER) UNLESS SUCH LOSS IS CAUSED BY THE INTENTIONAL MISCONDUCT OR GROSS NEGLIGENCE OF LENDER, NOR SHALL LENDER BE OBLIGATED TO PERFORM OR DISCHARGE ANY OBLIGATION, DUTY OR LIABILITY UNDER ANY LEASE COVERING THE PROPERTY OR ANY PART THEREOF OR UNDER OR BY REASON OF THIS INSTRUMENT OR THE EXERCISE OF RIGHTS OR REMEDIES HEREUNDER. BORROWER SHALL AND DOES HEREBY AGREE TO INDEMNIFY LENDER FOR, AND TO HOLD LENDER HARMLESS FROM, ANY AND ALL LIABILITY, LOSS OR DAMAGE WHICH MAY OR MIGHT BE INCURRED BY LENDER UNDER ANY SUCH LEASE OR UNDER OR BY REASON OF THIS DEED OF TRUST OR THE EXERCISE OF RIGHTS OR REMEDIES HEREUNDER AND FROM ANY AND ALL CLAIMS AND DEMANDS WHATSOEVER WHICH MAY BE ASSERTED AGAINST LENDER BY REASON OF ANY ALLEGED OBLIGATIONS OR UNDERTAKINGS ON ITS PART TO PERFORM OR DISCHARGE ANY OF THE TERMS, COVENANTS OR AGREEMENTS CONTAINED IN ANY SUCH LEASE. Nothing in this Section 6.06 shall impose any duty, obligation or responsibility upon Lender for the control, care, management or repair of the Property, nor for the carrying out of any of the terms and conditions of any such lease agreement; nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or by any other parties or for any dangerous or defective condition of the Property, OR FOR ANY NEGLIGENCE IN THE MANAGEMENT, UPKEEP, REPAIR OR CONTROL OF THE PROPERTY RESULTING IN LOSS OR INJURY OR DEATH TO ANY TENANT, LICENSEE, EMPLOYEE OR STRANGER OR ANY STRICT LIABILITY. Borrower hereby assents to, ratifies and confirms any and all actions of Lender with respect to the property taken under this Section 6.06.

6.07   **Possession After Foreclosure.**  If the lien or security interest hereof shall be foreclosed by the power of sale granted herein, by judicial or non-judicial action, or otherwise, the purchaser at any foreclosure sale shall receive, as an incident to the purchaser's ownership, the right to immediate possession of the property purchased, and if Borrower, Borrower's successors shall hold possession of such property or any part thereof subsequent to foreclosure, Borrower and Borrower's successors shall be considered as tenant-at-sufferance of the purchaser at the foreclosure (without limitation of further rights or remedies), and any party occupying the property or a portion thereafter after demand is made for possession shall be guilty of forcible detainer and shall be subject to eviction and removal.

6.08   **Application of Income Received by Lender.**  Upon the occurrence and during the continuance of an Event of Default, Lender in the exercise of the rights and powers hereinabove conferred upon it as set forth in this Section 6.08 or in Section 3.04 shall have full power to use and apply the avails, rents, issues and profits of the Property to the payment of or on account of the following, in such order as Lender may determine:

(a)   to the payment of the reasonable operating expenses of said Property, including cost of management and leasing thereof (which shall include reasonable compensation to Lender and its agent or agents, if management be delegated to an agent or agents, and shall also include lease commissions and other compensation and expenses of seeking and procuring tenants and entering into leases), established claims for damages, if any, and premiums on insurance hereinabove authorized;

(b)   to the payment of taxes and special assessments now due or which may hereafter become due on said Property;

(c)    to the payment of all repairs, decorating, renewals, replacements, alterations, additions, betterments and improvements reasonably necessary for the continued operation of said Property, including the cost from time to time of installing or replacing refrigeration and gas or electric heating therein, and of placing said property in such condition as will, in the judgment of Lender, make it readily rentable; or

(d)    to the payment of any Secured Obligations or any deficiency which may result from any foreclosure sale

Any amounts remaining after application of such income to items (a) through (d) above, shall be paid to Borrower, or applied as may be required by law.

**6.09    Application of Proceeds.**  In furtherance of and not in limitation of any other provisions of this Security Instrument, including without limitation Section 2.02:

The proceeds of any sale under this Security Instrument will be applied in the following manner:

FIRST:  Payment of the costs and expenses of the sale, including without limitation Trustee's fees, legal fees and disbursements, title charges and transfer taxes, and payment of all expenses, liabilities and advances of Trustee, together with interest on all advances made by Trustee from date of disbursement at the applicable interest rate under the Note from time to time or at the maximum rate permitted to be charged by Trustee under the applicable law if that is less.

SECOND:  Payment of all sums expended by Lender under the terms of this Security Instrument and not yet repaid, together with interest on such sums from date of disbursement at the applicable interest rate under the Note from time to time or the maximum rate permitted by applicable law if that is less.

THIRD:  Payment of all other Secured Obligations in any order that Lender chooses.

FOURTH:  The remainder, if any, to the person or persons legally entitled to it.

**6.10    Remedies Cumulative and Not Exclusive.**  In furtherance of and not in limitation of any other provisions of this Security Instrument, including without limitation Section 2.02(g):

Lender shall be entitled to enforce payment and performance of any Secured Obligations or obligations secured hereby and to exercise all rights and powers under this Security Instrument or under any Loan Document or other agreement or any laws now or hereafter in force, notwithstanding some or all of the said Secured Obligations and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise.    Neither the acceptance of this Security Instrument nor its enforcement, whether by court action or pursuant to the power of sale (to the extent allowed by law) or other rights, powers and remedies herein contained, shall prejudice or in any manner affect Lender's right to realize upon or enforce any other security now or hereafter held by Lender, it being agreed that Lender shall be entitled to enforce this Security Instrument and any other security now or hereafter held by Lender in such order and manner as it may in its absolute discretion determine.  No remedy herein conferred upon or reserved to Lender is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.  Every right, power or remedy given by any of the Loan Documents to Lender or to which Lender may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Lender and Lender may pursue inconsistent remedies.

**6.11    Expenses During Redemption Period.**  If this Security Instrument is foreclosed, the purchaser may during any redemption period allowed, make such repairs or alterations on the Property as may be reasonably necessary for the proper operation, care, preservation, protection and insuring thereof.  Any sums so paid together with interest thereon from the time of such expenditure at the default rate of interest stated in the Note or the highest lawful rate if that is less shall be added to and become a part of the amount required to be paid for redemption from such sale.

**6.12    Maximum Lawful Rate.**  As used in this Security Instrument, the "Maximum Lawful Rate" shall mean the rate of interest which may be contracted for, charged, taken, received or reserved by Lender in accordance with the applicable laws of the State of Texas (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law), taking into account all Charges (as herein defined) made in connection with the transaction evidenced by the Note and the other Loan Documents.  To the extent that Lender is relying on Chapter 303 of the Texas Finance Code to determine the Maximum Lawful Rate payable on the Note and/or any other portion of the Secured Obligations, Lender will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303, as amended.  To the extent United States federal law permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law, Lender will rely on United States federal law instead of such Chapter 303 for the purpose of determining the Maximum Lawful Rate.  Additionally, to the extent permitted by applicable law now or hereafter in effect, Lender may, at its option and from time to time, utilize any other method of establishing the Maximum Lawful Rate under such Chapter 303 or under other applicable law by giving notice, if required, to Borrower as provided by applicable law.  As used herein, "Charges" shall mean all fees, charges and/or other things of value, if any, contracted for, charged, received, taken or reserved by Lender in connection with the transactions relating to the Note and the other Loan Documents, which are treated as interest under applicable law.

**6.13    No Violation of Usury Laws.**  In furtherance of and not in limitation of (except to the extent necessary to conform strictly to any and all applicable usury laws) any other provisions of this Security Instrument, including without limitation Section 7.07:

It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply strictly with the applicable Texas law governing the maximum rate or amount of interest payable on the Secured Obligations (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law).  If the applicable law is ever judicially interpreted so as to render usurious any amount (i) contracted for, charged, taken, reserved or received pursuant to the Note, any of the other Loan Documents or any other communication or writing by or between Borrower and Lender related to the Secured Obligations or to the transaction or transactions that are the subject matter of the Loan Documents, (ii) contracted for, charged, taken, reserved or received by reason of Lender's exercise of the option to accelerate the maturity of the Note and/or any other portion of the Secured Obligations, or (iii) Borrower will have paid or Lender will have received by reason of any voluntary prepayment by Borrower of the Note and/or any other portion of the Secured Obligations, then it is Borrower's and Lender's express intent that all amounts charged in excess of the Maximum Lawful Rate shall be automatically canceled, ab initio, and all amounts in excess of the Maximum Lawful Rate theretofore collected by Lender shall be credited on the principal balance of the Note and/or any of the other Secured Obligations (or, if the Note and all other Secured Obligations have been or would thereby be paid in full, refunded to Borrower), and the provisions of the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if the Note has been paid in full before the end of the stated term of the Note, then Borrower and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Borrower that interest was received in an amount in excess of the Maximum Lawful Rate, either refund such excess interest to Borrower and/or credit such excess interest against any other Secured Obligations then owing by Borrower to Lender.  Borrower hereby agrees that

as a condition precedent to any claim seeking usury penalties against Lender, Borrower will provide written notice to Lender, advising Lender in reasonable detail of the nature and amount of the violation, and Lender shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrower or crediting such excess interest against the Note and/or the other Secured Obligations then owing by Borrower to Lender. All sums contracted for, charged, taken, reserved or received by Lender for the use, forbearance or detention of any of the Secured Obligations, including any portion of the Secured Obligations evidenced by the Note shall, to the extent permitted by applicable law, be amortized or spread, using the actuarial method, throughout the stated term of the Note and/or the other Secured Obligations (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of the Note and/or the other Secured Obligations does not exceed the Maximum Lawful Rate from time to time in effect and applicable to the Note and/or the other Secured Obligations for so long as any portion of the Secured Obligations is outstanding. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration. The terms and provisions of this paragraph shall control and supersede every other provision of all existing and future agreements between Borrower, the maker of the Note or other evidence of indebtedness if other than Borrower, and Lender.

      **6.14    Waiver of Notice.** Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Lender to Borrower and except with respect to matters for which Lender is required by applicable law to give notice, and Borrower, to the fullest extent allowed by law, hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Lender to Borrower.

      **6.15    Default Rate.** The "highest rate permitted under applicable law" referred to in Section 1.03 shall mean the Default Rate (as defined in the Note) if such a rate is not specified by applicable law.

      **6.16    Inapplicability of Credit Code.** In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to the Loan evidenced by the Loan Documents and/or secured hereby.

      **6.17    Waiver of Deficiency Statute.**

      (a)     Waiver. Notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code, and to the extent permitted by law, and subject to the limitations on liability in the Loan Documents, Borrower agrees that if an interest in any of the Property is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale Lender shall be entitled to seek a deficiency judgment from Borrower and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Property was sold pursuant to judicial or nonjudicial foreclosure sale. Borrower expressly recognizes that this section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Borrower and other persons against whom recovery of deficiencies is sought or any guarantor of the Loan ("Guarantor") independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Borrower further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Property for purposes of calculating deficiencies owed by Borrower, Guarantor, and others against whom recovery of a deficiency is sought.

      (b)     Alternative to Waiver. Alternatively, in the event the waiver provided for in subsection (a) above is determined by a court of competent jurisdiction to be unenforceable, the following shall be the

basis for the finder of fact's determination of the fair market value of the Property as of the date of the foreclosure sale in proceedings governed by Sections 51.003, 51.004 and 51.005 of the Texas Property Code (as amended from time to time): (i) the Property shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the Property will be repaired or improved in any manner before a resale of the Property after foreclosure; (ii) the valuation shall be based upon an assumption that the foreclosure purchaser desires a resale of the Property for cash promptly (but no later than twelve [12] months) following the foreclosure sale; (iii) all reasonable closing costs customarily borne by the seller in commercial real estate transactions should be deducted from the gross fair market value of the Property, including, brokerage commissions, title insurance, a survey of the Property and Improvements, tax prorations, attorneys' fees, and marketing costs; (iv) the gross fair market value of the Property shall be further discounted to account for any estimated holding costs associated with maintaining the Property pending sale, including, utilities expenses, property management fees, taxes and assessments (to the extent not accounted for in (iii) above), and other maintenance, operational and ownership expenses; and (v) any expert opinion testimony given or considered in connection with a determination of the fair market value of the Property must be given by persons having at least five (5) years experience in appraising property similar to the Property and who have conducted and prepared a complete written appraisal of the Property taking into consideration the factors set forth above.

**6.18    Exhibits.** Borrower, by executing and delivering this Security Instrument, and Lender, by accepting this Security Instrument, acknowledge and agree that the following is a list of the Exhibits to this Security Instrument, which Exhibits are hereby made a part of this Security Instrument by reference:

EXHIBIT A        Legal Description (which includes the legal description of the Property)

**6.19    TEXAS FINANCE CODE § 307.052 COLLATERAL PROTECTION INSURANCE NOTICE: (A) BORROWER IS REQUIRED TO: (i) KEEP THE COLLATERAL INSURED AGAINST DAMAGE IN THE AMOUNT EQUAL TO THE BORROWER'S INDEBTEDNESS TO LENDER; (ii) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND (iii) NAME LENDER AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF LOSS; (B) BORROWER MUST, IF REQUIRED BY LENDER, DELIVER TO LENDER A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) IF BORROWER FAILS TO MEET ANY REQUIREMENT LISTED IN CLAUSE (A) OR (B) ABOVE, LENDER MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF BORROWER AT BORROWER'S EXPENSE.**

### ARTICLE 7.
### MISCELLANEOUS

**7.01    Amendments.** This instrument cannot be waived, changed, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, change, discharge or termination is sought.

**7.02    Borrower Waiver of Rights; Waiver of Automatic Stay.**

(a)    Borrower waives to the extent permitted by law, (i) the benefit of all laws now existing or that may hereafter be enacted providing for any appraisement before sale of any portion of the Property, (ii) all rights of valuation, appraisement, stay of execution, reinstatement and redemption laws and marshaling in the event of foreclosure of the liens hereby created, (iii) all rights and remedies which Borrower may have or be able to assert by reason of the laws of the State where the Property is located pertaining to the rights and remedies of sureties, (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Security Instrument or to any action brought to enforce the Note or any other obligation secured by this Security Instrument, and (v) any rights, legal or equitable, to require marshaling of assets or to require upon foreclosure sales in a particular order. Lender shall have the right

-57-

to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which any or all portions of the Secured Obligations are satisfied from the proceeds realized upon the exercise of the remedies provided herein.

(b) WITHOUT LIMITING ANY OF THE FOREGOING SET FORTH IN SUBSECTION (a) ABOVE, BORROWER (INCLUDING, WITHOUT LIMITATION, ANY TENANT-IN-COMMON) HEREBY AGREES THAT, IN CONSIDERATION OF LENDER'S AGREEMENT TO MAKE THE LOAN AND IN RECOGNITION THAT THE FOLLOWING COVENANT IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN, IF BORROWER SHALL (i) FILE WITH ANY BANKRUPTCY COURT OF COMPETENT JURISDICTION OR BE THE SUBJECT OF ANY PETITION UNDER ANY SECTION OR CHAPTER OF THE BANKRUPTCY CODE, OR SIMILAR LAW OR STATUTE: (ii) BE THE SUBJECT OF ANY ORDER FOR RELIEF ISSUED UNDER THE BANKRUPTCY CODE OR SIMILAR LAW OR STATUTE; (iii) FILE OR BE THE SUBJECT OF ANY PETITION SEEKING ANY REORGANIZATION, ARRANGEMENT, COMPOSITION, READJUSTMENT, LIQUIDATION, DISSOLUTION, OR SIMILAR RELIEF UNDER ANY PRESENT OR FUTURE FEDERAL OR STATE ACT OR LAW RELATING TO BANKRUPTCY, INSOLVENCY, OR OTHER RELIEF FOR DEBTORS; (iv) HAVE SOUGHT OR CONSENTED TO OR ACQUIESCED IN THE APPOINTMENT OF ANY TRUSTEE, RECEIVER, CONSERVATOR, OR LIQUIDATOR; OR (v) BE THE SUBJECT OF AN ORDER, JUDGMENT OR DECREE ENTERED BY ANY COURT OF COMPETENT JURISDICTION APPROVING A PETITION FILED AGAINST ANY BORROWER FOR ANY REORGANIZATION, ARRANGEMENT, COMPOSITION, READJUSTMENT, LIQUIDATION, DISSOLUTION, OR SIMILAR RELIEF UNDER ANY PRESENT OR FUTURE FEDERAL OR STATE ACT OR LAW RELATING TO BANKRUPTCY, INSOLVENCY OR RELIEF FOR DEBTORS, THEN, SUBJECT TO COURT APPROVAL, LENDER SHALL THEREUPON BE ENTITLED AND BORROWER HEREBY IRREVOCABLY CONSENTS TO, AND WILL NOT CONTEST, AND AGREES TO STIPULATE TO RELIEF FROM ANY AUTOMATIC STAY OR OTHER INJUNCTION IMPOSED BY SECTION 362 OF THE BANKRUPTCY CODE OR SIMILAR LAW OR STATUTE (INCLUDING, WITHOUT LIMITATION, RELIEF FROM ANY EXCLUSIVE PERIOD SET FORTH IN SECTION 1121 OF THE BANKRUPTCY CODE) OR OTHERWISE AVAILABLE TO LENDER AS PROVIDED IN THE NOTE AND THE LOAN DOCUMENTS, AND AS OTHERWISE PROVIDED BY LAW, AND BORROWER HEREBY IRREVOCABLY WAIVES ITS RIGHT TO OBJECT TO SUCH RELIEF.

**7.03    Statements by Borrower.** Borrower shall, within ten (10) days after written notice thereof from Lender, deliver to Lender (or any person designated by Lender) a written statement, in form satisfactory to Lender, fully acknowledged, stating the unpaid principal of and interest on the Note and any other amounts secured by this Security Instrument and stating whether any offset, counterclaim or defense exists against such sums and the obligations of this Security Instrument.

**7.04    Loan Statement Fees.** Lender or its authorized loan servicing agent may impose a service charge for any statement requested by Borrower regarding the Secured Obligations; provided, however, that such amount may not exceed the maximum amount allowed by law at the time request for the statement is made.

**7.05    Notices.** Whenever Borrower, Trustee or Lender shall desire to give or serve any notice, demand, request or other communication with respect to this Security Instrument, each such notice, demand, request or communication shall be given in writing at the address of the intended recipient set forth below by any of the following means: (a) personal service (including, without limitation, service by overnight courier service); (b) electronic communication, whether by telex, telegram, facsimile or telecopying (if confirmed in writing sent by personal service or by registered or certified, first class mail, return receipt requested); or (c) registered or certified, first class mail, return receipt requested:

| If to Lender: | ARTESIA MORTGAGE CAPITAL CORPORATION<br>1180 NW Maple Street, Suite 202<br>Issaquah, Washington 98027<br>Attn: Servicing Department<br>Fax: (425) 313-1005 |
| --- | --- |
| with a copy to: | BEST & FLANAGAN LLP<br>225 South Sixth Street, Suite 4000<br>Minneapolis, Minnesota 55402<br>Attn: Kim JoDene Donat<br>Fax: (612) 339-5897 |
| If to Borrower: | DBSI COLONNADE WEST LAKE LLC<br>1550 South Tech Lane<br>Meridian, Idaho 83642<br>Fax: (208) 489-1501 |
| with a copy to: | DBSI MASTER LEASECO, INC.<br>1550 South Tech Lane<br>Meridian, Idaho 83642<br>Tel: (208) 955-9800<br>Fax: (208) 955-9834 |
| with a copy to: | LEGAL DEPARTMENT<br>12426 West Explorer, Suite 100<br>Boise, Idaho 83713<br>Tel: (208) 489-2500<br>Fax: (208) 489-2501 |
| If to Trustee: | PARTNERS TITLE COMPANY<br>712 Main, Suite 2000E<br>Houston, Texas 77002<br>Attn: Reno Hartfiel<br>Fax: (713) 238-9177 |

Such addresses may be changed by notice to the other parties given in the same manner as provided above. Any notice, demand or request sent pursuant to either subsection (a) or (b) hereof shall be deemed received upon such personal service or upon dispatch by electronic means, and, if sent pursuant to subsection (c) shall be deemed received five (5) days following deposit in the mail.

**7.06     Captions.** The captions or headings at the beginning of each Section hereof are for the convenience of reference only and are not a part of this Security Instrument.

**7.07     Savings Clause; Invalidity of Certain Provisions.** Notwithstanding any provisions in the Note or in this Security Instrument to the contrary, the total liability for payments in the nature of interest, including, without limitation, prepayment charges, default interest and late fees, shall not exceed the limits imposed by the laws of the State where the Property is located or the United States of America relating to maximum allowable charges of interest. Lender shall not be entitled to receive, collect or apply, as interest on the Secured Obligations, any amount in excess of the maximum lawful rate of interest permitted to be charged by applicable laws. If Lender ever receives, collects or applies as interest such amount which would be excessive, such interest shall be applied to reduce the unpaid principal balance of the Note, and any remaining excess shall be paid over to person or persons legally entitled thereto. Every provision of this Security Instrument is intended to be severable. In the event any term or provision hereof is declared to be illegal, invalid or unenforceable for any reason whatsoever by a

-59-

court of competent jurisdiction, such illegal or invalid or unenforceable term or provision shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain binding and enforceable.

**7.08    Provisions Regarding Trustees.  Either Trustee may act.** At any time, or from time to time, without liability therefore and without notice to Borrower, upon written request of Lender and presentation of this Security Instrument and the Note secured hereby for endorsement, and without affecting the personal liability of any person for payment of the Secured Obligations (subject to the limitations on recourse set forth in the Note) or the effect of this Security Instrument upon the remainder of the Property, Trustee [or the one acting] may (i) reconvey any part of the Property, (ii) consent in writing to the making of any map or plat thereof, (iii) join in granting any easement thereon, or (iv) join in any extension agreement or any agreement subordinating the lien or charge hereof.

Trustee shall not be liable for any error of judgment or act done by Trustee, or be otherwise responsible or accountable under any circumstances whatsoever.  Trustee shall not be personally liable in case of entry by it or anyone acting by virtue of the powers herein granted it upon the Property for debts contracted or liability or damages incurred in the management or operation of the Property.  All monies received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other monies (except to the extent required by law) and Trustee shall be under no liability for interest on any monies received by it hereunder.

Trustee may resign by giving of notice of such resignation in writing to Lender.  If Trustee shall die, resign or become disqualified from acting, or shall fail or refuse to exercise its powers hereunder when requested by Lender so to do, or if for any reason and without cause Lender shall prefer to appoint a substitute trustee to act instead of the original Trustee named herein, or any prior successor or substitute trustee, Lender shall have full power to appoint a substitute trustee and, if preferred, several substitute trustees in succession who shall succeed to all the estate, rights, powers and duties of the aforenamed Trustee.  Upon appointment by Lender and upon recording of the substitution in the land records of the County where the Property is located, any new Trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers and trusts of its predecessor in the rights hereunder with the same effect as if originally named as Trustee herein.

Trustee shall not be required to take any action toward the execution and enforcement of the trust hereby created or to institute, appear in, or defend any action, suit, or other proceeding in connection therewith where, in Trustee's opinion, such action would be likely to involve Trustee in expense or liability, unless requested so to do by a written instrument signed by Lender and, if Trustee so requests, unless Trustee is tendered security and indemnity satisfactory to Trustee against any and all cost, expense, and liability arising therefrom.  Trustee shall not be responsible for the execution, acknowledgment, or validity of the Loan Documents, or for the proper authorization thereof, or for the sufficiency of the lien and security interest purported to be created hereby, and Trustee makes no representation in respect thereof or in respect of the rights, remedies, and recourses of Lender.

With the approval of Lender, Trustee shall have the right to take any and all of the following actions:  (i) to select, employ, and advise with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution, and interpretation of the Loan Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his agents or attorneys, (iii) to select and employ, in and about the execution of his duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee, and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be

-60-

otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence or bad faith, and (iv) any and all other lawful action as Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder. Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property. Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting any action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine. Trustee shall be entitled to reimbursement for expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered. Borrower will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save Trustee harmless against, any and all liability and expenses which may be incurred by Trustee in the performance of Trustee's duties.

Trustee may resign by the giving of notice of such resignation in writing or verbally to Lender. If Trustee shall die, resign, or become disqualified from acting in the execution of this trust, or if, for any reason, Lender shall prefer to appoint a substitute Trustee or multiple substitute Trustees, or successive substitute Trustees or successive multiple substitute Trustees, to act instead of the aforenamed Trustee, Lender shall have full power to appoint a substitute Trustee (or, if preferred, multiple substitute Trustees) in succession who shall succeed (and if multiple substitute Trustees are appointed, each of such multiple substitute Trustees shall succeed) to all the estates, rights, powers, and duties of the aforenamed Trustee. Such appointment may be executed by any authorized agent of Lender, and if such Lender be a corporation and such appointment be executed in its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation. Borrower hereby ratifies and confirms any and all acts which the aforenamed Trustee, or Trustee's successor or successors in this trust, shall do lawfully by virtue hereof. If multiple substitute Trustees are appointed, each of such multiple substitute Trustees shall be empowered and authorized to act alone without the necessity of the joinder of the other multiple substitute Trustees, whenever any action or undertaking of such substitute Trustees is requested or required under or pursuant to this Security Instrument or applicable law.

Should any deed, conveyance, or instrument of any nature be required from Borrower by any Trustee or substitute Trustee to more fully and certainly vest in and confirm to the Trustee or substitute Trustee such estates, rights, powers, and duties, then, upon request by the Trustee or substitute Trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Borrower.

By accepting or approving anything required to be observed, performed, or fulfilled or to be given to Trustee or Lender pursuant to the Loan Documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, neither Trustee nor Lender shall be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness, or legal effect of the same, or of any term, provision, or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Lender.

**7.09    Subrogation.** To the extent that proceeds of the Note are used to pay any outstanding lien, charge or prior encumbrance against the Property, such proceeds have been or will be advanced by Lender at Borrower's request and Lender shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether said liens, charges or encumbrances are released.

**7.10    Costs and Expenses; Attorneys' Fees for Preparation and Enforcement.**

(a)        Borrower acknowledges and confirms that Lender shall impose certain administrative processing and/or commitment fees in connection with (i) the extension, renewal, modification, amendment and termination of the Loan, (ii) the release or substitution of collateral therefor, (iii) obtaining certain consents, waivers and approvals with respect to the Property, or (iv) the review of any Lease or proposed Lease or the preparation or review of any subordination, non-disturbance and attornment agreement (the occurrence of any of the above shall be called an "**Event**").    Borrower further acknowledges and confirms that it shall be responsible for the payment of all costs of reappraisal of the Property or any part thereof, whether required by law, regulation, Lender or any governmental or quasi-governmental authority.  Borrower hereby acknowledges and agrees to pay, immediately, with or without demand, all such fees (as the same may be increased or decreased from time to time), and any additional fees of a similar type or nature which may be imposed by Lender from time to time, upon the occurrence of any Event or otherwise.  Wherever it is provided for herein that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, all attorneys' fees and disbursements of Lender.

(b)        Borrower shall pay all attorneys' fees incurred by Lender in connection with (i) the preparation of the Note, this Security Instrument and the other Loan Documents, and (ii) the items set forth in Section 7.10(a) above.  In addition, Borrower shall pay to Lender on demand any and all expenses, including, without limitation, attorneys' fees and costs, incurred or paid by Lender or Trustee in protecting its interest in the Property or in collecting any amount payable hereunder or in enforcing its rights hereunder with respect to the Property (including, without limitation, commencing any foreclosure action), whether or not any legal proceeding is commenced hereunder or thereunder, together with interest thereon at the Default Rate from the date paid or incurred by Lender until such expenses are paid by Borrower.

As used in this Security Instrument, the terms "attorneys' fees" or "attorneys' fees and costs" or "attorneys' fees, costs and expenses" shall mean the reasonable attorneys' fees and the costs and expenses of counsel to Lender or Trustee (including, without limitation, in-house counsel employed by Lender), which may include, without limitation, printing, duplicating, telephone, fax, air freight and other charges, and fees billed for law clerks, paralegals, librarians, expert witnesses and others not admitted to the bar but performing services under the supervision of an attorney and all such fees, costs and expenses incurred with respect to trial, appellate proceedings, arbitrations, out-of-court negotiations, workouts and settlements, and bankruptcy or insolvency proceedings (including, without limitation, seeking relief from stay in bankruptcy proceedings), and whether or not any action or proceeding is brought or is concluded with respect to the matter for which such fees, costs and expenses were incurred, and whether or not the Lender is the prevailing party.  Lender shall also be entitled to its attorneys' fees, costs and expenses incurred in any post-judgment action or proceeding to enforce and collect the judgment.  This Section 7.10 is separate and several, shall survive the discharge of this Security Instrument, and shall survive the merger of this Security Instrument into any judgment on this Security Instrument.

**7.11    No Merger of Lease.**  If both the Borrower's and tenant's estate under any Lease or any portion thereof which constitutes a part of the Property shall at any time become vested in one owner, this Security Instrument and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger unless Lender so elects as evidenced by recording a written declaration so stating, and, unless and until Lender so elects, Lender shall continue to have and enjoy all of the rights and privileges of Lender as to the separate estates.  In addition, upon the foreclosure of the lien created by this Security Instrument on the Property pursuant to the provisions hereof, any leases or subleases then existing and affecting all or any portion of the Property shall not be destroyed or terminated by application of the law of merger or as a matter of law or as a result of such foreclosure unless Lender or any purchaser at such foreclosure sale shall so elect.  No act by or on behalf of Lender or any such purchaser

-62-

shall constitute a termination of any Lease or sublease unless Lender or such purchaser shall give written notice thereof to such tenant or subtenant.

**7.12    Governing Law.** This Security Instrument shall be governed by and construed in accordance with the laws of the State where the Property is located but not the conflict of law rules applicable in said State in cases where the parties have not expressly chosen the law of a jurisdiction to apply.

**7.13    Joint and Several Obligations.** If this Security Instrument is signed by more than one party, all obligations herein contained shall be deemed to be the joint and several obligations of each party executing this Security Instrument. Any married person signing this Security Instrument agrees that recourse may be had against community assets and against his or her separate property for the satisfaction of all obligations contained herein.

**7.14    Interpretation.** In this Security Instrument the singular shall include the plural and the masculine shall include the feminine and neuter and vise versa, if the context so requires.

**7.15    Release of Lien.** If the Secured Obligations are paid in full in accordance with the terms of this Security Instrument, the Note, and the other Loan Documents, and if Borrower shall perform each and every of the obligations to be performed and discharged in accordance with the terms of this Security Instrument, the Note and the other Loan Documents, then this conveyance shall become null and void and be released at Borrower's request and expense, and Lender shall have no further obligation to make advances under and pursuant to the provisions hereof or in the other Loan Documents.

**7.16    Counterparts.** This document may be executed and acknowledged in counterparts, all of which executed and acknowledged counterparts shall together constitute a single document. Signature and acknowledgment pages may be detached from the counterparts and attached to a single copy of this document to physically form one document, which may be recorded.

**7.17    Effect of Security Agreement; Fixture Filing.** To the extent of the existence of any Personal Property encumbered by this Security Instrument, this Security Instrument constitutes both (a) a security agreement intended to create a security interest in such Personal Property in favor of Lender; and, (b) a financing statement filed as a fixture filing in the real estate records of the county in which the Property is located with respect to any and all Fixtures included within the Personal Property with respect to any goods or other personal property that may now be or hereafter become such fixtures. The information in the subsections below this paragraph is provided in connection with the filing of this Security Instrument as a financing statement as referred to above, and the Borrower hereby represents and warrants such information to be true and complete as of the date of this Security Instrument. This Security Instrument shall be self-operative with respect to such Personal Property, but Borrower shall, upon the request of Lender, execute and deliver to Lender, in form and content satisfactory to Lender, such financing statements, descriptions of property and such further assurances as Lender may determine from time to time to be necessary or desirable to create, perfect, continue and preserve the lien and encumbrances hereof and the security interest granted herein upon and in the Personal Property specifically described herein, or generally described herein and intended to be the subject of the security interest, lien and encumbrance hereby created, granted and conveyed. Lender, at the expense of Borrower, may cause such statements, descriptions and assurances as provided in this Security Instrument to be recorded and re-recorded, filed and refiled, at such times and in such places as may be required or permitted by law to so create, perfect and preserve the lien and encumbrance hereof upon all of the Personal Property. By signing this Security Instrument, Borrower authorizes Lender to file such financing statements before, on or after the date hereof, and to file such amendments or continuation statements, all as Lender determines necessary or desirable from time to time to perfect or continue the lien of the Lender's security interest in the Personal Property.

(a)     The Borrower is the record owner of the real estate described in this Security Instrument. The name and mailing address of the record owner of the real estate described in this Security Instrument is set forth in the first paragraph of this Security Instrument.

(b)     The name, mailing address, type of organization and state of formation of the Borrower is set forth in the first paragraph of this Security Instrument. The Organizational Identification Number of the Borrower is **DE 4226007**.

(c)     The name and mailing address of the Secured Party (Lender) is:

ARTESIA MORTGAGE CAPITAL CORPORATION
1180 NW Maple Street, Suite 202
Issaquah, Washington 98027
Attn: Servicing Department

(d)     This document covers goods which are or are to become fixtures.

**7.18    Spouse's Separate Property.**  Any Borrower who is a married person expressly agrees that recourse may be had against his or her separate property, subject to the limitations on recourse set forth in Section 10 of the Note.

**7.19    Offsets.**  No Secured Obligations shall be deemed to have been offset or to be offset or compensated by all or part of any claim, cause of action, counterclaim or cross claim, whether liquidated or unliquidated, which Borrower or any successor to Borrower now or hereafter may have or may claim to have against Lender; and, in respect to the indebtedness now or hereafter secured hereby, Borrower waives, to the fullest extent permitted by law, the benefits of any law which authorizes or permits such offsets.

**7.20    Construction of this Security Instrument.**  Borrower and Lender agree that this Security Instrument shall be interpreted in a fair, equal and neutral manner as to each of the parties.

**7.21    Clerical Error.**  In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, this Security Instrument or any other Loan Document contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**7.22    Lost, Stolen, Destroyed or Mutilated Loan Documents.**  In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument or any other Loan Document, or in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan Document and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Document, and may be treated for all purposes as the original copy of such Loan Document.

**7.23    Time is of the Essence.**  Time is of the essence in the performance of each provision of this Security Instrument.

**7.24    Legislation Affecting Lender's Rights.**  If enactment or expiration of applicable laws has the effect of rendering any material provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may demand immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted under this Security Instrument.

**7.25    RESERVED.**

**7.26    Exhibits and Riders.** The exhibits and riders, if any, attached hereto are incorporated herein by reference and made a part hereof.

**7.27    Successors and Assigns.** Without in anyway limiting or affecting the provisions of Section 1.15 hereof, all of the terms, covenants, provisions and conditions herein contained shall be for the benefit of, apply to, and bind the heirs, successors and assigns of the Borrower and the Lender, and are intended and shall be held to be covenants running with the Land.

**7.28    Declaration of No Offset.** The Borrower represents and warrants to the Lender that the Borrower has no knowledge of any offsets, counterclaims or defenses to the principal of the Secured Obligations, or to any part thereof, or the interest thereon, either at law or in equity.

**7.29    Entire Agreement.** This Security Instrument and the other Loan Documents contain the entire agreement between the Borrower and the Lender relating to or connected with the Loan. Any other agreements relating to or connected with the Loan not expressly set forth in this Security Instrument and/or other Loan Documents are null and void and superseded in their entirety by the provisions of this Security Instrument and the other Loan Documents.

**7.30    No Joint Venture or Partnership.** The relationship of the Borrower and the Lender created hereby is strictly of debtor-creditor and nothing contained herein or in any other documents or instrument secured hereby shall be deemed or construed to create a partnership or joint venture between Borrower and Lender.

**7.31    No Lender Obligations.**

(a)    Notwithstanding any of the provisions contained herein with respect to Lender taking a security interest in the Leases, Lender is not undertaking the performance of any obligations under the Leases.

(b)    By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Note or the other Loan Documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

**7.32    Estoppel Certificates.** After request by Lender, Borrower, within ten (10) days, shall furnish Lender or any proposed assignee with a statement, duly acknowledged and certified, setting forth the amount of the original principal amount of the Note, the unpaid principal amount of the Note, the rate of interest of the Note, the terms of payment and maturity date of the Note, the date installments of interest and/or principal were last paid, that, except as provided in such statement, there are no defaults or events which with the passage of time or the giving of notice or both, would constitute an Event of Default under the Note or this Security Instrument,  that the Note and this Security Instrument are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification,  whether any offsets or defenses exist against the Secured Obligations and, if any are alleged to exist, a detailed description thereof,  that all Leases are in full force and effect and (provided the Property is not a residential multifamily property) have not been modified (or if modified, setting forth all modifications),  the date to which the Rents thereunder have been paid pursuant to the Leases, whether or not, to the best knowledge of Borrower, any of the tenants under the Leases are in default under the Leases, and, if any of the tenants are in default, setting forth the specific nature of all such defaults,  the amount of security deposits held by Borrower under each Lease and that such amounts are consistent with the amounts required under each Lease, and  as to any other matters reasonably

-65-

requested by Lender and reasonably related to the Leases, the Secured Obligations, the Property or this Security Instrument.

**7.33    Renewals and Extensions.**  Any renewal or extension, modification or amendment of the Note and/or this Security Instrument will not operate to release, in any manner, the liability of Borrower or any other party liable for the Loan and their respective successors in interest.

**7.34    Incorporation.**  The terms and conditions of all the other Loan Documents are hereby incorporated by reference.

**7.35    WAIVER OF TRIAL BY JURY.**  BORROWER AND LENDER BY ACCEPTANCE OF THIS SECURITY INSTRUMENT, ACKNOWLEDGE AND AGREE THAT ALTHOUGH THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, IT MAY BE WAIVED.  EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS OWN CHOICE, KNOWINGLY, VOLUNTARILY, IRREVOCABLY, UNCONDITIONALLY AND FOR THE MUTUAL BENEFIT OF BOTH BORROWER AND LENDER, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS SECURITY INSTRUMENT, THE OTHER LOAN DOCUMENTS OR THE INDEBTEDNESS.  THIS AGREEMENT OF BORROWER IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE THE FINANCING EVIDENCED BY THIS SECURITY INSTRUMENT.

**[Signatures on Following Page(s)].**

BORROWER ACKNOWLEDGES THAT THIS SECURITY INSTRUMENT PROVIDES FOR CERTAIN INDEMNIFICATIONS BY BORROWER OF LENDER PURSUANT TO SECTIONS 1.03, 1.11, 1.27, 3.01 AND 6.06.

IN WITNESS WHEREOF, Borrower has executed this Security Instrument as of the day and year first above written.

BORROWER:

DBSI COLONNADE WEST LAKE LLC,
a Delaware limited liability company

By:    DBSI Housing Inc., an Idaho corporation
Its:    Member

By:
Name:   Jeremy Swenso
Title:    Assistant Secretary

STATE OF _Idaho_ )

COUNTY OF _Ada_ )

On _Nov 15th_, 2006, before me, _Marci Burroughs_, a Notary Public, personally appeared _Jeremy Swenson_, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Marci Burroughs_
Notary Public
Print Name: _Marci Burroughs_
My commission expires: _01/13/2010_

-67-

BORROWER AND LESSEE:

DBSI MASTER LEASECO, INC.,
an Idaho corporation

By:
Name:   ~~Jeremy Swenson~~
Title:   ~~Assistant Secretary~~

STATE OF _Idaho_ )

COUNTY OF _Ada_ )

On _Nov 15th_, 2006, before me, _Marci Burroughs_, a Notary
Public, personally appeared _Jeremy Swenson_, personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within
instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and
that by his/her signature on the instrument the person, or the entity upon behalf of which the person
acted, executed the instrument.

WITNESS my hand and official seal.

_Marci Burroughs_
Notary Public
Print Name: _Marci Burroughs_
My commission expires: _(various)_



-68-

RP 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

The Property is located in Harris County, Texas, and is legally described as follows:

**TRACT I:**

**Being a tract or parcel of land situated in the David Harris Survey, Abstract No. 26 and being out of and a part of reserve "E" (restricted to commercial use) in Block One (1), of Atasca Woods, Section One 91), a subdivision in Harris County, Texas, according to the Map or Plat thereof recorded at Film Code No. 438134, of the Map Records of Harris County, Texas. Said tract or parcel of land being more particularly described by metes and bounds attached hereto and made a part hereof.**



BEING a tract or parcel of land situated in the David Harris Survey, Abstract No. 26 and being out of and a part of Reserve "E", (restricted to commercial use) in Block One (1), of ATASCA WOODS, SECTION ONE (1), a subdivision in Harris county, Texas, according to the Map or Plat thereof recorded in Film Code No. 438134, of the Map Records of Harris County and described as Tract 1; Tract 2, on Access and Parking Agreement recorded under M.C.C.F. No. X726563; Tract III benefiting Tract I recorded under H.C.C.F., No. U300001, of Harris County, Texas. Said tract or parcel of land being more particularly described by metes and bounds as follows

BEGINNING at a 5/8 inch iron rod found in the Northerly right-of-way line of Aerobic Drive, for the Southeast corner of a Lot 57, Block One (1), of said Ataswoods, Section One (1);

THENCE North, along the Easterly lines of said Block One (1) of Ataswoods, Section One (1), same being the Westerly lines of said Reserve "E", a distance of 350.82 feet to a 5/8" iron rod found at the Northeast corner of Lot 62 in said Block One (1) for a Westerly corner of the herein described tract of land;

THENCE North 59 degrees 01 minutes 07 seconds East, along the Southerly lines of Lots 60-57 of said Block One (1), a distance of 227.14 feet to an interior corner of the herein described tract of land;

THENCE North 00 degrees 15 minutes 35 seconds West, along the Easterly lines of Lots 50-57 in Block One (1) of said Ataswoods, Section, One (1), a distance of 435.62 feet, to a 5/8 iron rod found for the Northwest corner of the herein described tract of land;

THENCE 89 degrees 43 minutes 25 seconds East, departing the above referenced Easterly line of Ataswoods, Section One (1), a distance of 305.00 feet, to a 5/8" iron rod found in the Westerly right-of-way line of West Lake Houston Parkway (100' R.O.W.), for the Northeast corner of the herein described tract of land;

THENCE South 00 degrees 16 minutes 35 seconds East, along said right-of-way line, a distance of 638.63 feet to a 5/8" iron rod found for the most Easterly Southeast corner of the herein described tract of land;

THENCE South 89 degrees 43 minutes 25 seconds West, departing said right-of-way line, a distance of 54.70 feet, to a 5/8" iron rod found for corner;

THENCE South 89 degrees 43 minutes 26 seconds West, a distance of 232.24 to a 5/8" iron rod fund for corner

THENCE South 00 degrees 16 minutes 34 seconds East, a distance of 145.10 feet, to a 5/8" iron rod, found in the aforesaid Northerly right-of-way line of Aerobic Drive, for the most Southerly Southeast corner of the herein described tract of land;

THENCE South 86 degrees 39 minutes 29 seconds West, along said Northerly right-of-way line, a distance of 85.45 feet, to a 5/8" iron rod found for the point of curvature of a curve to the right having a central angle of 03 degrees 48 minutes 51 seconds, a radius of 500.00 feet and a chord bearing and distance of South 88 degrees 33 minutes 54 seconds West, 33.28 feet;

THENCE continuing along said right-of-way line and curve to the right, on arc distance of 33.28 feet, to a 5/8" iron rod found for the point of tangency;

THENCE North 89 degrees 31 minutes 40 seconds West, continuing along said right-of-way line, a distance of 127.63 feet, to the POINT OF BEGINNING and containing 6.753 Acres, 294.163 square feet of land.

### TRACT II:

**Access and Cross Parking Agreement executed by and between Richard Flyg, Southtrust Bank and Johnny Franks, Trustee, as described by instrument dated June 3, 2004, and filed for record under Harris County Clerk's File Number X726563.**

### TRACT III:

**Easement Rights benefiting Tract I as shown in Declaration of Covenants, Conditions and Restrictions filed for record under Harris County Clerk's File No. U300001.**

**EXHIBIT B**

**Assignment and Assumption of Tenants-in-Common Agreement**

**Property Management Agreement/Master Lease**

**[NOT ATTACHED TO RECORDED COPY OF THE SECURITY INSTRUMENT]**

**EXHIBIT C**

**Assumption and Modification Agreement**

**[NOT ATTACHED TO RECORDED COPY OF THE SECURITY INSTRUMENT]**

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

NOV 2 1 2006

*Beverly B. Kaufman*
COUNTY CLERK
HARRIS COUNTY, TEXAS

FILED
2006 NOV 21 PM 3: 39
*Beverly B. Kaufman*
COUNTY CLERK
HARRIS COUNTY, TEXAS

016075/260201/473079_6

-72-

MASTER LEASE AGREEMENT

BETWEEN

DBSI Colonnade West Lake LLC,
a Delaware limited liability company

(and certain other persons and entities from time to time
owning an undivided interest in the Premises),

AS LANDLORD,

And

DBSI Master Leaseco Inc.,
an Idaho corporation,

AS TENANT,

Dated _November 21_, 2006

# TABLE OF CONTENTS

SECTION ...................................................................................................................................Page

1.  PREMISES AND TERM OF LEASE.................................................................5
2.  BASE RENT AND ADDITIONAL RENT .........................................................6
3.  IMPOSITIONS .................................................................................................7
4.  REPAIRS AND MAINTENANCE OF THE PREMISES ....................................8
5.  COMPLIANCE WITH REQUIREMENTS.........................................................9
6.  INSURANCE.....................................................................................................9
7.  SURRENDER AT END OF TERM ..................................................................11
8.  LANDLORD'S RIGHT TO PERFORM TENANT'S COVENANTS...................11
9.  CHANGES AND/OR ALTERATIONS BY TENANT ........................................12
10. DISCHARGE OF LIENS.................................................................................13
11. USE OF PREMISES.........................................................................................14
12. ENTRY TO PREMISES BY LANDLORD ........................................................14
13. WAIVER OF SUBROGATION RIGHTS..........................................................14
14. INDEMNIFICATION AND WAIVER...............................................................15
15. DAMAGE OR DESTRUCTION........................................................................15
16. CONDEMNATION ..........................................................................................16
17. ASSIGNMENT, SUBLETING AND MORTGAGING........................................17
18. EVENTS OF DEFAULT AND LANDLORD'S REMEDIES...............................20
19. EARLY TERMINATION.................................................................................23
20. HAZARDOUS SUBSTANCES.........................................................................24
21. SUBORDINATION ........................................................................................25
22. WAIVER OF JURY TRIAL .............................................................................26
23. GENERAL PROVISIONS................................................................................26

## EXHIBITS

EXHIBIT A - PERMITTED EXCEPTIONS
EXHIBIT B - LAND - LEGAL DESCRIPTION
EXHIBIT C - RENT
EXHIBIT D - LEASE GUARANTY