# EXHIBIT D

# MASTER LEASE AGREEMENT

THIS MASTER LEASE AGREEMENT, made as of this 21 day of November 2006 (this "Lease"), by and between DBSI Colonnade West Lake LLC, a Delaware limited liability company having its principal office at 1550 South Tech Lane, Meridian, Idaho 83642 ("Initial Landlord"), the current owner or contract buyer of the Premises (as defined below), and all future owners of tenant in common interests in the Premises, as landlord (collectively, "Landlord") and DBSI Master Leasco, Inc., an Idaho corporation having its principal office at 1550 South Tech Lane, Meridian, Idaho 83642 ("Tenant").

## W I T N E S S E T H :

NOW, THEREFORE, in consideration of the rents, covenants and agreements hereinafter reserved and contained on the part of Tenant to be paid and performed, Landlord hereby demises and lets to Tenant and Tenant hires from the Landlord, upon and subject to the terms and conditions hereinafter expressed, the Premises (as hereinafter defined) together with the appurtenances thereunto appertaining. Subject, however to the matters, state of facts and exceptions to title described in Exhibit A attached hereto and hereby made a part hereof.

## DEFINITIONS

"Additional Rent" means all sums, other than Base Rent, payable by Tenant to Landlord (or to third parties on behalf of Landlord) pursuant to the terms of this Lease, including but not limited to the monthly installments of principal and interest payable under the Permitted Mortgage and described in Exhibit C hereto.

"Bankruptcy Code" has the meaning set forth in Section 17.8.

"Base Rent" means the amounts set forth and described on Exhibit C hereto.

"Base Term" means a term of 20 years beginning on the Commencement Date.

"Capital Expenses" means expenses of the Premises incurred with respect to the roof, exterior walls and foundation, and any expenditures for structural improvements and structural alterations to the Premises.

"Commencement Date" means Nov 21, 2006.

"Condemnation" or "Condemnation Proceedings" means any action or proceeding brought by competent governmental authority for the purpose of any taking of the fee of the Premises or Improvements or any part thereof or estate therein as a result of the exercise of the power of eminent domain, including, but not limited to, a voluntary conveyance to such authority either under threat of or in lieu of condemnation or while such action or proceeding is pending.

"Default" has the meaning set forth in Section 18, after giving effect to all applicable notice and cure periods.

"Default Rate" means the lesser of: (1) 12% per year, or (2) the highest interest rate per year permitted under the laws of the State of Texas, or under federal law, to the extent applicable.

"Existing Leases" has the meaning set forth in Section 1.3.

"Expiration Date" means Nov 20, 2026, the date that is 20 years after the Commencement Date.

"Impositions" means all taxes, assessments, charges for utilities, excises, levies, license and permit fees and other governmental impositions and charges, general and special, ordinary and extraordinary, unforeseen and foreseen, of any kind and nature whatsoever, which are imposed, levied upon or assessed against or which arise with respect to the Premises (or any portion thereof) or any rights or obligations of Tenant under this Lease, including, but not limited to, any sums payable hereunder.

"Improvements" means all buildings, structures and other improvements of any and every kind or nature now or hereafter located on the Land. Such term shall include, without limitation, all fixtures now or hereafter attached or affixed, actually or constructively thereto, including, without limitation, all pipes, engines, wiring, heating, ventilating and air-conditioning equipment and systems, plumbing and lighting fixtures, and other equipment or machinery used in or about or for the maintenance or operation of the Land or the Improvements. Such term shall not include any property owned or leased by a sublessee.

"Intangible Property" has the meaning set forth in Section 1.3.

"Land" means all the certain tract or parcel of land described in Schedule B attached hereto and hereby made a part hereof, together with all rights, ways and easements appurtenant thereto.

"Landlord" means, collectively, DBSI Colonnade West Lake LLC and those persons and entities who become owners of the Premises from time to time during the Term of this Lease.

"Lease" means this Master Lease Agreement.

"Lender" means the lender selected by the Tenant or an Affiliate of the Tenant, in its sole discretion, to make the Permitted Mortgage and such lender's successors and assigns, and any future lender that provides mortgage loan financing to the Landlord secured by the Premises or any portion thereof.

"Permitted Exceptions" means those items set forth on Exhibit A hereto.

"Permitted Mortgage" means any loan made by Lender and described on any Exhibit A and includes all of the loan documents related thereto.

"Premises" means the Land and the Improvements and all personal property owned or leased by the Landlord.

"Purchase Price" means $12,221,000.

"Reserve Account(s)" means tax and insurance impounds and any other reserves required by the Lender under the Permitted Mortgage, including such accounts funded by the Initial Landlord at the request of the Lender under the Permitted Mortgage or any future refinancing.

"Reserve Account Payments" means the monthly impound and reserve installments paid into the Reserve Accounts as required under the Permitted Mortgage.

"Requirements" means all requirements relating to land and building use, including, without limitation, planning, zoning, subdivision, environmental, toxic and hazardous waste, health, fire safety, handicapped access and any other applicable federal, state and local statutes, laws, ordinances, rules and regulations, as well as any and all encumbrances, covenants, conditions, and restrictions, foreseen or unforeseen, ordinary as well as extraordinary, which may affect the design, construction, existence or use or manner of use of the Premises or any portion thereof.

"Restoration" means the restoration, repair, replacement, rebuilding or alteration of the Premises following a casualty or a partial Taking (including, without limitation, the cost of all temporary repairs for the protection of property pending the completion of permanent restoration, repair, replacement, rebuilding or alterations), to a complete architectural unit of as nearly as possible the same value, condition and character that existed immediately prior to such casualty or Taking, to the extent permissible under applicable Requirements, including, without limitation, all zoning and use requirements and regulations.

"Service Contracts" has the meaning set forth in Section 1.3.

"Sublease" means any sublease of any or all of the Premises permitted pursuant to the terms of this Lease including, but not limited to, the Existing Leases.

"Taking" means the event of vesting of title to the Premises or any part thereof or estate therein in the condemning authority as the result of a Condemnation.

"Tenant" has the meaning set forth in the preamble to this Lease.

"Term of this Lease" or "Term" means the Base Term and any renewals or extensions thereof.

"Use" means use of the Property for commercial office purposes.

"Vesting Date" means the date of the Taking.

## 1. PREMISES AND TERM OF LEASE

1.1    The Term of this Lease shall be for a period of 20 years, commencing on the Commencement Date and terminating on the Expiration Date unless sooner terminated as hereinafter provided, upon and subject to all the terms, covenants, conditions and agreements herein contained.

1.2    As a material inducement to Landlord in the making of this Lease, Tenant does hereby represent and warrant to Landlord that Tenant is acquainted with the nature and condition, in all material respects, of the Premises, including the title of Landlord thereto, the soil and geology thereof, the manner of construction and the condition and state of repair and lack of repair of the Premises and the nature and extent of the rights of others with respect thereto, whether by way of easement, right of way, lease, possession, lien, encumbrance, license, reservation, condition or otherwise, the Requirements pertaining to the Premises and all the portions of the Premises and the condition of the Premises and all portions of the Premises with regard to the Requirements. Tenant hereby represents and warrants to Landlord that the Premises are suitable and adequate in all material respects for the Use. Tenant has thoroughly and completely examined the physical condition of and title to the Premises as well as the Requirements pertaining to the Premises and all portions of the Premises and the condition of the Premises and all portions of the Premises with regard to the Requirements and has found all of the same to be satisfactory for all purposes. Tenant hereby accepts the Premises subject to all of the foregoing and without any representation or warranty by Landlord, express or implied in fact or by law, and expressly without recourse to Landlord as to title to the Premises, the nature, the physical condition, suitability or the usability thereof.

1.3    The parties hereto acknowledge that the Premises or portions thereof may presently be the subject of (a) leases, subleases, tenancies, licenses, occupancies and rights of others, other than those established hereby, which relate to the use of the Premises or any portion thereof (collectively, the "Existing Leases") and (b) service contracts which relate to the Premises (collectively, the "Service Contracts"). Landlord hereby assigns and transfers to Tenant, to the extent transferable, as of the Commencement Date and for the Term of this Lease, all of Landlord's rights, duties and obligations under the Existing Leases and the Service Contracts, including, without limitation, the right to collect rents and other charges under the Existing Leases and to enforce the terms of the Existing Leases and the Service Contracts, and all of Landlord's rights and interest in and to any intangible property relating to the Premises, including, without limitation, all tradenames and trademarks (collectively, the "Intangible Property"). Tenant does hereby undertake, covenant and agree for and during the Term of this Lease, to do, perform and discharge any and all rights, duties and obligations in connection with matters affecting the Existing Leases, the Service Contracts, the Intangible Property, the possession of the Premises or the title thereto which Landlord might otherwise have incurred during the Term of the Lease by reason of the Existing Leases, the Service Contracts, the Intangible Property or the ownership of the Premises by Landlord. Subject to the express terms, provisions and limitations set forth in this Lease, Tenant shall indemnify, protect, defend and hold Landlord harmless from and against any and all liability, damage, loss, cost or expense (including, without limitation, attorneys' fees and expenses) actually suffered or incurred by Landlord in direct connection with any or all of the Existing Leases, the Service Contracts, the Intangible Property or the ownership of the Premises arising or first accruing during the Term of this Lease; provided, however, that such indemnity shall not be applicable with respect to any liability, damage, loss, cost or expense suffered or incurred by Landlord as a result of, or due to, any negligent or intentional act or omission of any or all of Landlord and its agents, employees, officers, directors, managers and members. Tenant's obligations under this Section 1.3 shall, as to matters arising, or accruing from facts arising, prior to the termination or expiration of this Lease, survive the expiration or sooner termination of this Lease.

1.4     Landlord makes no warranty or representation, express or implied, with respect to the Premises or the condition thereof or the location, use, description, design, merchantability, fitness for use, fitness for any particular purpose, condition or durability thereof, or its condition of title, it being agreed that all risks incident thereto are to be borne by Tenant.

1.5     Tenant shall take the Premises in an "As Is" condition as of the Commencement Date. No damage or destruction of the Premises from whatever cause prior to the Commencement Date shall in any way affect this Lease or the Base Rent or Additional Rent hereunder.

1.6     This Lease is intended to be and shall be construed as a triple net lease, pursuant to which Landlord shall not, under any circumstances or conditions, whether presently existing or hereafter arising, or whether beyond the present contemplation of the parties, be expected or required to make any payment of any kind whatsoever or be under any other obligation or liability except as expressly set forth herein. Notwithstanding any present or future law to the contrary, except as expressly set forth herein: (a) this Lease shall not be terminable by Tenant and Tenant waives all rights, if any, conferred upon Tenant by any statute, decree, order or otherwise to terminate or surrender this Lease; (b) Tenant shall not be entitled to accept and waives all rights, if any, conferred upon Tenant by any statute, decree, order or otherwise to any abatement, deferral, reduction, set-off, counterclaim, defense or deduction with respect to any Base Rent and Additional Rent, and (c) Tenant's obligations under this Lease including, but not limited to, Tenant's obligation to pay the full Base Rent and Additional Rent due hereunder, shall not be affected by reason of: (i) any damage to or destruction of the Premises, (ii) any taking of the Premises (or any part) by Condemnation or otherwise, (iii) any prohibition, limitation, restriction or prevention of Tenant's use, occupancy or enjoyment of the Premises, or any interference with such use, occupancy or enjoyment by any person or entity, public or private, (iv) any eviction by paramount title or otherwise, (v) any default by Landlord under this Lease or any other agreement, (vi) the impossibility or illegality of any required performance by Landlord, Tenant or both, (vii) any action of any judicial or governmental authority, (viii) any statute governing the relationship of tenants, which permits tenants to avoid their obligations under a lease, or (ix) any other cause whether similar or dissimilar to the foregoing.

## 2.     **BASE RENT AND ADDITIONAL RENT**

2.1     Tenant covenants to pay to Landlord, in lawful money of the United States of America, without notice or demand and without any set-off, deduction or abatement whatsoever, (a) the Base Rent in arrears on the 5th day of each calendar month following the month in which the Base Rent is earned during the Term of this Lease, and (b) Additional Rent when due. If Landlord so requests, Tenant agrees to make such payments by wire transfer of immediately available federal funds. Prorated monthly payments shall be made if the Term of this Lease begins on a date other than the first day of a month or ends on a date other than the last day of a month. Landlord hereby directs Tenant to pay each month, directly to the holder of the Permitted Mortgage, that portion of the Additional Rent constituting principal and interest under the loan secured by the Permitted Mortgage prior to the due date for such payment.

2.2     Any Base Rent or Additional Rent not paid when due shall bear interest from the due date at the Default Rate until paid in full.

2.3     Tenant shall have full and sole responsibility for funding the Reserve Account Payments as required under the Permitted Mortgage, and Landlord hereby directs Tenant to pay such payments directly to the holder of the Permitted Mortgage prior to the due date for such payments. To the extent the funds in the Reserve Accounts were paid into the Reserve Accounts by Tenant or the Initial landlord (other than initial reserves established for Capital Expenditures). Tenant shall be entitled to demand and receive funds directly from any Reserve Account established on behalf of the Landlord under the Permitted Mortgage for applicable costs and expenses required to be paid by Tenant under this Lease as allowed by the Permitted Mortgage. During the Term of this Lease, Tenant shall be deemed to have been appointed, and Landlord hereby irrevocably appoints Tenant, as Landlord's attorney-in-fact, coupled with an interest, to make such demand and receive funds from the Reserve Accounts (without notice to, or consent of, Landlord) for and on behalf of Landlord in accordance with the terms of the Permitted Mortgage. Any excess Reserve Account funds, paid by Tenant, remaining in any Reserve Account shall be returned to Tenant at the time of refinancing or at the end of the Term of this Lease.

## 3. **IMPOSITIONS**

3.1    Tenant shall pay (except as provided in Section 3.5), before any fine, if any, penalty, interest or cost may be added thereto, or become due or be imposed by operation of law for the non-payment thereof, all Impositions which at any time during the Term of this Lease may be assessed, levied, confirmed, imposed upon, or grow or become due and payable out of or in respect of, or become a lien on (a) the Premises or any part thereof or any appurtenance thereto, (b) any use or occupation of the Premises and (c) such franchises as may be appurtenant to the use of the Premises.   Upon written request of Landlord, Landlord shall promptly deliver bills for such Impositions to Tenant.

3.2    If at any time during the Term of this Lease the methods of taxation prevailing at the Commencement Date shall be altered so as to cause the whole or any part of the Impositions now levied, assessed or imposed on real estate and the improvements thereon to be levied, assessed and imposed wholly or partially as a capital levy or otherwise, on the rents received therefrom, or if as a result of any such alteration of the methods of taxation, any income, gross receipts or franchise tax, assessment, levy or other tax (including, but not limited to, any municipal, state or federal levy) or charge, or any part thereof, shall be measured by or be based, in whole or in part, upon the Premises and shall be imposed upon Landlord, then all such taxes, assessments, levies or charges or the part thereof so measured or based, shall be deemed to be included within the term "Impositions" for the purposes hereof, and Tenant shall pay and discharge the same as herein provided in respect of the payment of Impositions.

3.3    In the case of assessments for local improvements or betterments which may by law be payable in installments, Tenant (subject to Section 3.7) shall only be obligated to pay such installments which are currently due or such installments as fall due during the Term of this Lease, together with interest on deferred payments, provided that Tenant shall take such steps as may be prescribed by law to convert the payment of the assessment into installment payments, and Landlord hereby agrees to cooperate with Tenant to effect the same.   Such payments of installments and any interest thereon shall be made before any fine, penalty, interest or cost may be added thereto for non-payment of any installment or interest.

3.4    In any suit or proceeding arising out of the failure of Tenant to keep any covenant in the provisions of this Section 3, the certificate or receipt of the department, officer or bureau charged with collection of the Impositions, showing that the Impositions are due and payable or have been paid, shall be <u>prima facie</u> evidence that such Impositions were due and payable as a lien or charge against the Premises or that the same have been paid as such by Landlord.

3.5    To the extent permitted under the Permitted Mortgage, Tenant shall have the right, after prior written notice to Landlord and in accordance with this Section 3.5, to contest or review by appropriate legal proceedings or in such manner as Tenant in Tenant's opinion shall deem advisable (which proceedings or other steps taken by Tenant if instituted shall be conducted diligently and solely at Tenant's own expense and free of any expense to the Landlord) any and all Impositions levied, assessed or imposed against the Premises or taxes in lieu thereof required to be paid by Tenant, provided that such contest shall not operate to prevent or in any way impair or delay a sale of the Premises by Landlord or result in a tax sale of the Premises or any portion thereof. Landlord, at the request of Tenant, will join in any such contest or proceeding and will execute any agreement in form and substance satisfactory to Landlord in settlement of any of those contests or proceedings and any documents in implementation thereof if it is necessary to do so in order to prosecute such proceeding, but Tenant in those circumstances must defend and hold Landlord harmless from and against any and all liability, loss, cost and expense (including, without limitation, attorneys' fees and expenses) suffered or incurred by Landlord in connection therewith.   All payments required to be made by Landlord pursuant to any Impositions shall be reimbursed to Landlord by Tenant within 30 days.   In any event, no such contest shall defer or suspend Tenant's obligations to pay the Impositions as herein provided, but if by law it is necessary that such payment be suspended to preserve or perfect Tenant's contest, then the contest shall not be undertaken without there being first furnished to Landlord security in form reasonably satisfactory to Landlord, and in an amount sufficient to pay such Impositions, together with all interest and penalties thereon upon conclusion of the contest and all costs thereof that may be imposed upon Landlord or the Premises, and Tenant shall defend and hold Landlord harmless from and against any and all liability, loss, cost and expense (including, without limitation, attorneys' fees and expenses) suffered or incurred by Landlord in connection therewith.   Tenant agrees that no allegation, designation, statement, document or evidence

7

offered in any such action or proceeding for or on behalf of or in the name of Landlord or Tenant shall be admissible in evidence against Landlord's interest in the determination of the value of the Premises where such determination is required to be made by the terms hereof. Nothing in this Section 3.5 shall be in derogation of Landlord's right to contest or review any Impositions by legal proceedings or in such other manner as may be available to Landlord upon 10 days prior written notice to Tenant.

3.6    Upon written request of Landlord, Tenant shall promptly deliver to Landlord copies of all paid bills for Impositions.

3.7    Any Impositions relating to a fiscal period of the taxing authority occurring at the beginning or end of the Term of this Lease, only a part of which fiscal period is within the Term of this Lease (whether or not such Impositions are assessed, levied, imposed or become a lien or shall become payable, during the Term of this Lease) shall be apportioned and adjusted between Landlord and Tenant so that Landlord shall only be responsible in respect to that portion of such Impositions which bear the same ratio to the full Impositions that the part of the fiscal period which falls outside the Term of this Lease bears to the entire fiscal period. Tenant shall be responsible for the remainder of the Impositions.

3.8    Landlord hereby designates Tenant to act on its behalf, and, during the Term of this Lease, assigns to Tenant Landlord's rights and interest: (a) to complete, terminate or settle any appeal proceedings pending on the Commencement Date with respect to real estate tax assessments of the Premises for periods prior to the Commencement Date, (b) to determine the need to initiate an appeal of any real estate tax assessment of the Premises with respect to periods prior to or after the Commencement Date, and to complete, terminate or settle any such appeals, and (c) to engage agents or legal counsel in connection with the foregoing; provided, however, that any refunds or settlement monies resulting from such appeals shall be applied as follows: (i) first, to the payment of all costs and commissions, including attorneys' fees and costs attendant to such appeals, (ii) second, to subtenants to the extent such subtenants are entitled to a portion of such refunds or monies under their respective subleases, (iii) third, so long as Tenant is not in Default hereunder, to Tenant to the extent such refund or settlement relates to a period after the Commencement Date, and (iv) fourth, the balance to Landlord. Tenant shall pay all costs, including attorneys' fees and costs, attendant to such appeals (to the extent not covered by the application of any refunds or settlement monies) and Landlord shall have no obligation to pay the same. To the extent any refund or settlement monies are received that relate to the period after the Expiration Date, after the application set forth in clauses (i) and (ii) above, the remainder of such refunds shall be for Tenant, to the extent such refunds or settlement relates to a period of time on or prior to the Expiration Date, and to Landlord, to the extent such refunds or settlement relates to a period of time after the Expiration Date. At Tenant's sole costs and expense, Landlord shall cooperate with Tenant to the extent Landlord's participation is necessary to initiate, settle, terminate, extend or amend such appeals or to otherwise secure any refunds.

## 4.    REPAIRS AND MAINTENANCE OF THE PREMISES

4.1    Throughout the term of this lease:

4.1.1    Tenant, at Tenant's sole cost and expense, shall take good care of the Premises and shall put, keep and maintain the same and every part thereof in a condition substantially the same as the condition of the Premises on the Commencement Date (ordinary wear and tear excepted), and shall make all necessary repairs thereto of whatsoever nature or kind, interior and exterior, structural and non-structural, ordinary and extraordinary and whether now foreseeable or not foreseeable, and including, without limitation, any repairs or other work required (i) by contract or Requirements under all existing leases affecting all or any part of the Premises or (ii) following a Taking or a casualty, regardless of the availability or adequacy of any award or proceeds relating thereto; provided, however, that to the extent not covered by initial loan reserves, Landlord shall be responsible for and pay all Capital Expenses. Except for Capital Expenses, Tenant (and not Landlord) shall have full and sole responsibility for the condition, operation, repair, replacement, maintenance and management of the Premises.

4.1.2    Tenant shall not do or suffer any waste or damage, disfigurement or injury to the Premises or any part thereof.

4.1.3 In addition to the foregoing, during the existence of the Permitted Mortgage, Tenant shall further maintain and repair the Premises in accordance with Landlord's obligations under the Permitted Mortgage; provided, however, that to the extent there is a Reserve Account established and funded by Tenant after the Commencement Date under the Permitted Mortgage that are applicable to any such maintenance or repairs, to the extent permitted under the Permitted Mortgage, Tenant shall have access to such reserves paid after the Commencement Date to fund some or all of the related costs.

4.2 Throughout the Term of the Lease, Tenant shall be obligated to pay for all repairs and replacements of the Premises, excluding Capital Expenses.

4.3 To the extent that there are applicable Reserve Accounts established and funded after the Commencement Date, Tenant may first exhaust the funds available in the applicable Reserve Account prior to the requirement that Tenant advance such expenses only to the extent the funds in the Reserve Accounts were paid into the Reserve Account by Tenant pursuant to this Lease. For purposes of paying the costs for any expenditure required to be paid by Tenant, Tenant shall be entitled to demand and receive funds directly from any Reserve Account established on behalf of the Landlord under the Permitted Mortgage and funded by Tenant. Alternatively, Tenant may satisfy its funding obligation to the extent, if any, that insurance proceeds are made available to Tenant by Tenant's insurance carrier, provided that such funds are used for any expenditures required to be paid by Tenant. If sufficient funds to make the expenditures are not provided from any Reserve Account or any insurance proceeds, Tenant shall pay such costs directly.

## 5. COMPLIANCE WITH REQUIREMENTS

5.1 Throughout the Term of this Lease, Tenant shall promptly comply with all present and future Requirements. Landlord shall pay all Capital Expenses, and Tenant shall pay all other costs of complying with any such Requirements without utilizing a Reserve Account, unless the Reserve Account was established for such purpose. If Landlord receives any notices regarding Requirements, Landlord shall promptly deliver same to Tenant.

5.2 Tenant shall likewise observe and comply with the provisions of all insurance policies of which it has knowledge at any time in force with respect to the Premises.

5.3 Tenant shall have the right, after prior notice to Landlord, solely at Tenant's own expense, without cost or expense to Landlord, to contest by appropriate legal proceedings diligently conducted in good faith, in the name of Tenant, the validity or application of any Requirements; provided, however, that Tenant may delay compliance therewith until the final determination of such proceeding only if by the terms of any such Requirements, compliance therewith pending the prosecution of any such proceeding may legally be delayed without the incurrence of, or the risk of incurring, any fine, lien, charge or liability of any kind against the Premises or Tenant's leasehold interest therein and without subjecting Tenant or Landlord to the risk of any liability, civil or criminal, for failure so to comply therewith. To the extent reasonably required and at Tenant's request and sole cost and expense, Landlord hereby agrees to cooperate with and assist Tenant with such contests.

## 6. INSURANCE

6.1 Tenant shall, at Tenant's sole cost and expense, at all times throughout the Term of this Lease, maintain or cause to be maintained the insurance below enumerated on the Premises for the mutual benefit of Landlord and Tenant:

6.1.1 All Risks Property insurance on the Improvements in an amount not less than 100% of the full replacement costs of the Improvements with a Replacement Cost Endorsement and including coverage for one year's loss of rent. "Full replacement cost" as used herein means the cost of replacing the Improvements (exclusive of the cost of excavations, foundation and footings below the lowest basement floor) without deduction for physical depreciation thereof;

6.1.2 Provided that the Premises, or any portion thereof, is located in an area designated as a flood prone area participating in the National Flood Insurance Program, flood insurance in an amount equal to the full replacement cost or the maximum amount then available or evidence supplied by Tenant satisfactory to

Landlord, that either (i) neither the Premises, nor any portion thereof, is located within a 100 year flood plain as determined by the Federal Insurance Administration or (ii) such coverage is not required by the Permitted Mortgage or any lender in connection with a loan secured by the Premises;

6.1.3    Comprehensive general liability insurance including contractual liability insurance specifically covering the indemnification obligations of Tenant under this Lease (including, without limitation, the obligations referred to in Section 14.1), on an occurrence basis against claims for personal injury, including, without limitation, elevators and/or escalators) and the sidewalks, driveways and curbs adjacent thereto; and

6.1.4    An overall "umbrella" policy of $10,000,000.

6.2    All insurance provided for under this Lease shall be effected under valid enforceable policies issued by insurers with an A.M. Best rating of at least A VIII, and licensed to do business in the State where the Premises are located.  The original policies under Section 6.1 and the certificates for the policies under this Section 6.2 shall be delivered to Landlord within five days of Tenant's receipt of Landlord's written request therefor.  At least 30 days prior to the expiration date of any policy required pursuant to this Section 6, the original renewal policy (or the certificate as concerns the insurance required pursuant to Section 6.1) for such insurance shall be delivered by Tenant to Landlord, together with satisfactory evidence of payment of the premium on such policy. To the extent obtainable, all such policies shall contain agreements by the insurers that (a) no act or omission by the Tenant shall impair or affect the rights of the insured to receive and collect the proceeds under the policies; (b) such policies shall not be cancelled except upon not less than 10 days prior written notice to each named insured and loss payee; and (c) the coverage afforded thereby shall not be affected by the performance of any work in or about the Premises.

6.3    The rental value policy referred to in Section 6.1.1 shall name Landlord as the loss payee.  To the extent Tenant is in Default under this Lease, Landlord shall retain and apply the proceeds, if any, of such rental value insurance first towards the payment of any portion of Additional Rent that consists of debt service payments, second to the payment of reserves and impounds, third to the payment of Impositions, fourth to payment of Base Rent, and fifth to the balance of Additional Rent.  Any balance of such portion of the total proceeds remaining after such Default has been cured shall be paid to Tenant, unless the Tenant is again in Default under this Lease, in which case said proceeds shall be retained by Landlord (provided, however, that Landlord's retaining said proceeds shall not be deemed to release Tenant of any liability relating to Tenant's Default under this Lease, and shall not constitute the sole or exclusive remedy of Landlord).

6.4    Except as provided in Section 6.3, all policies of insurance shall name Tenant as the insured and Landlord and Lender as additional insureds and loss payees, as their respective interests may appear.  The loss, if any, under said policies referred to in Section 6.1 shall be adjusted with the insurance companies solely by Tenant, except that in case of any particular casualty occurring during the last year of the Term of this Lease or resulting in damage or destruction exceeding 10% of the Purchase Price in the aggregate, no adjustment shall be made with the insurance companies without the prior written approval of Landlord.

6.5    All policies of insurance of the kind aforesaid shall expressly provide that all losses thereunder shall be adjusted and paid as provided in Sections 6.3 and 6.4 subject to the provisions of Section 15.

6.6    Provided that Tenant complies with the provisions of Section 6.8, nothing contained in the foregoing provisions of this Section 6 shall prevent Tenant from taking out insurance of the kind and in the amount provided for under Section 6.1 under a blanket insurance policy or policies which cover the properties owned or operated by Tenant as well as the Premises; provided, however, if such insurance is provided pursuant to a blanket policy, Tenant shall obtain an "Agreed Value Endorsement" applicable to the Premises in the amount of the Purchase Price without deduction for retention or co-insurance.

6.7    All policies under Section 6.1 shall contain endorsements that the rights of the insured to receive and collect the proceeds shall not be diminished because of any additional insurance carried by Tenant on Tenant's own account.

6.8     The requirements of this Section 6 shall not be deemed or construed to negate or modify Tenant's obligations to defend and indemnify Landlord pursuant to the provisions of this Lease, or to negate or modify Tenant's obligations to restore the Premises following a Taking or casualty pursuant to the provisions of this Lease.

6.9     Notwithstanding anything herein to the contrary, the holder of the Permitted Mortgage shall be named an additional insured under any liability policies and proceeds under such other policies shall be payable to holder as a mortgagee under a standard mortgagee clause in favor of, and acceptable to, such holder.  Tenant's obligations hereunder to deliver certificates of insurance or original insurance polices to Landlord shall, during the time the Permitted Mortgage is in existence, include delivery of such items to such lender in addition to (or where necessary in lieu of) delivery of such items to Landlord.  Except as otherwise provided in Section 15 with respect to the obligation to repair the Premises during the term of he Permitted Mortgage, to the extent that any insurance proceeds are paid to the lender under the Permitted Mortgage in accordance with the requirements of the Permitted Mortgage, such payment (and, as applicable, the use of any such proceeds by Tenant to repair any related damage in accordance with the terms of the Permitted Mortgage), will be deemed to satisfy Tenant's obligations under the Lease, including Section 15, where such proceeds would, without such Permitted Mortgage, be available to Tenant to perform its repair obligations under this Lease.  Tenant's and Landlord's rights in and to any insurance proceeds are subject to the rights of the holder of the Permitted Mortgage under the Permitted Mortgage.

## 7.     **SURRENDER AT END OF TERM**

7.1     Upon the expiration or sooner termination of this Lease, Tenant shall quit and surrender the entire Premises (including, without limitation, the Improvements) to Landlord, without payment or off-set, in a condition substantially similar to the condition of the Premises on the Commencement Date, reasonable wear and tear and damage from insured casualty excepted, free and clear of all leases and occupancies other than (a) the Existing Leases (to the extent the same have not expired or have since been terminated), (b) leases and occupancies entered into in accordance with Section 17 of this Lease (and when applicable, with Landlord's approval or deemed approval) and (c) any other leases and occupancies which Landlord has expressly agreed in writing shall survive the expiration or sooner termination of this Lease, and free and clear of all liens and encumbrances other than those, if any, created by Landlord and the Permitted Exceptions.

7.2     Any personal property of Tenant which shall remain upon the Premises after the expiration or sooner termination of this Lease and the removal of Tenant, or the abandonment or vacation of the Premises by the Tenant, may, at the option of Landlord, be deemed to have been abandoned and either may be retained by Landlord as Landlord's property or may be disposed of, without accountability, in such manner as Landlord may see fit, and Tenant agrees to defend, indemnify and hold Landlord harmless from and against any and all liabilities, claims, damages, losses, charges and expenses (including, without limitation, attorneys' fees and expenses) arising in any way from such retention or disposition.

7.3     If Tenant does not vacate the Premises upon expiration or sooner termination of this Lease, then Landlord shall have the option to treat Tenant as a month-to-month tenant, subject to all of the provisions of this Lease, except that: (a) the term shall be month-to-month and (b) the rent (excluding Additional Rent which will also be payable) shall be an amount equal to 125% of the monthly installment of Base Rent.

7.4     Landlord shall not be responsible for any loss or damage occurring to any property owned by Tenant, any subtenant, any space tenant, any occupant, any business invitee or licensee.

7.5     The terms, covenants, provisions and conditions of this Section 7 shall survive the expiration or sooner termination of this Lease.

## 8.     **LANDLORD'S RIGHT TO PERFORM TENANT'S COVENANTS**

8.1     If Tenant shall at any time fail to pay any Impositions in accordance with the provisions of Section 3, to take out, pay for, maintain or deliver any of the insurance policies provided for in Section 6, fail to discharge any lien or other encumbrance that Section 10 requires Tenant to discharge, comply with the provisions of Section 20, or shall fail to make any other payment or perform any other act on Tenant's part to be made or performed pursuant to this Lease, then, after 20 days prior written notice to Tenant or without notice in case of an

emergency (which shall include, but shall not be limited to, danger to person or property or the imposition of a monetary fine or penalty on Landlord or Landlord's exposure to possible liability or where the due date for such payment or performance shall have passed or shall occur within such 20 day period) and without waiving, or releasing Tenant from any obligation of Tenant contained in this Lease, Landlord may (but shall be under no obligation to):

      8.1.1    pay all Impositions payable by Tenant pursuant to the provisions of Section 3;

      8.1.2    take out, pay for and maintain any of the insurance policies provided for in Section 6;

      8.1.3    discharge such lien or encumbrance for Tenant's account;

      8.1.4    make any payment and perform any action on Tenant's part to be made or performed pursuant to Section 20, and enter upon the Premises for that purpose and take all such action thereon as may be necessary therefor; and/or

      8.1.5    make any payment or perform any act on Tenant's part to be made or performed hereunder as provided in this Lease, and enter upon the Premises for that purpose and take all such action thereon as may be necessary therefor.

    8.2    All sums so paid by Landlord and all costs and expenses incurred by Landlord in connection with the performance of any such act, together with interest thereon at the Default Rate from the respective dates of Landlord's making of each such payment or incurring of each such cost and expense and shall be paid by Tenant to Landlord on demand. Landlord shall not be limited in the proof of any damages which Landlord may claim against Tenant arising out of or by reason of Tenant's failure to provide and keep in force insurance which Tenant is required to keep in force under this Lease. Landlord shall also be entitled to recover, as damages for such breach, the uninsured amount of any loss to the extent of any deficiency in the insurance required by the provisions of this Lease, damages, costs and expenses of suit suffered or incurred by reason of damage to, or destruction of, the Premises, or any part thereof, occurring during any period when Tenant shall have failed or neglected to provide insurance as aforesaid.

## 9.     <u>CHANGES AND/OR ALTERATIONS BY TENANT</u>

    9.1    Tenant shall have the right at any time and from time to time during the Term of this Lease, provided Tenant is not in Default under this Lease, to make, at Tenant's sole cost and expense and in its sole discretion, structural and non-structural changes and alterations in or to the Improvements without Landlord's consent, subject only, however, in all cases to the following:

      9.1.1    No change or alteration shall be undertaken until Tenant shall have procured and paid for, so far as the same may be required, from time to time, all permits and authorizations of all municipal departments and governmental subdivisions having jurisdiction over the Premises. Provided there is no Default under this Lease, Landlord shall join in the application for such permits and authorizations whenever such action is necessary; provided that Landlord shall not incur or be subject to any liability or expense as a result of joining in said application.

      9.1.2    No change or alteration shall be made that could materially reduce the value of the Premises below its value immediately before such change or alteration, result in a material change in the usefulness of the Premises from its intended Use, or that would violate the terms of any Subleases.

      9.1.3    Any change or alteration shall be made promptly and in a good and workmanlike manner and in compliance with all applicable permits and authorizations and all Requirements, and Tenant shall furnish Landlord with evidences and assurances acceptable to Landlord that all such changes and alterations shall be completed at least six months prior to the end of the Term of this Lease.

9.1.4    The cost of any such change or alteration shall be paid promptly paid by Tenant so that the Premises shall at all times be free and clear of liens for labor and materials supplied or claimed to have been supplied to the Premises.

9.1.5    Worker's compensation insurance covering all persons employed in connection with the work and with respect to whom death or bodily injury claims could be asserted against Landlord, Tenant or the Premises, and general liability insurance for the mutual benefit of Tenant and Landlord with a combined single limit of not less than $3,000,000 "per occurrence" against all claims for personal injury, bodily injury, death and property damage and all risk builder's risk as provided in Section 6.1.1 shall be maintained by Tenant, at Tenant's sole cost and expense, at all times when any work is in process in connection with any change or alteration.  All such insurance shall be provided by a company or companies with A.M. Best rating of at least A VIII, and all policies or certificates therefor issued by the respective insurers, bearing notations evidencing the payment of premiums or accompanied by other evidence of such payment, shall be delivered to Landlord prior to the commencement of any work in connection therewith.

9.1.6    All changes and alterations to the Improvements made by or on behalf of Tenant, subtenant or the occupant shall be and become the property of the Landlord and for purposes of this Lease shall be deemed to be a part of the Improvements.  Tenant shall diligently prosecute to completion all such changes and alterations once commenced, and Tenant's obligation to complete the same pursuant to the terms of this Lease shall survive the expiration or sooner termination of this Lease.

9.1.7    Any such changes and alterations provided for in this Section 9 shall be performed by Tenant in full compliance with the terms, conditions and requirements placed on the Landlord under the Permitted Mortgage as to alterations and changes to the Premises.

9.2    Tenant covenants that in performing any work or repairs to, or restoration, replacement or rebuilding of, any portion of the Improvements required or permitted to be performed by Tenant pursuant to the provisions of Sections 4, 5, 15 and 16 or any of them, Tenant shall observe and perform or cause to be performed the conditions relating to changes and alterations set forth in this Section 9.

## 10.    DISCHARGE OF LIENS

10.1    Tenant covenants and agrees that Tenant shall not create or permit to be created or to remain, and shall discharge, any lien, encumbrance or charge (levied on account of any Impositions or any mechanic's, laborer's or materialmen's lien or any mortgage, conditional sale, title retention agreement or chattel mortgage, or otherwise) which might be or become a lien, encumbrance or charge upon the Premises or any part thereof or the income therefrom, and Tenant shall not suffer any other matter or thing whereby the estate, right and interest of Tenant in the Premises or any part thereof might be impaired, provided that any Impositions may, after the same become a lien on the Premises, be paid or contested in accordance with Section 3 and any mechanic's, laborer's or materialmen's lien may be discharged in accordance with Section 10.2.

10.2    If any mechanic's, laborer's or materialmen's lien shall at any time be filed against the Premises or any part thereof, Tenant, within 30 days after notice of the filing thereof, or within such other time as is required pursuant to the Permitted Mortgage, shall cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise.  If Tenant shall fail to cause such lien to be discharged within the period aforesaid, then, in addition to any other right or remedy available to Landlord hereunder, at law or in equity, Landlord may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien by deposit or by bonding proceedings.  Any amount so paid by Landlord and all costs and expenses incurred by Landlord in connection therewith, including, without limitation, amounts paid in good faith settlement of such lien and attorneys' fees and expenses, together with interest thereon at the Default Rate from the respective dates of Landlord's making the payment or incurring the cost and expense to the date Landlord is in actual receipt of such amount from Tenant and shall be paid by Tenant to Landlord on demand.

Notice is hereby given that Landlord will not be liable for any labor, services or materials furnished or to be furnished to Tenant, or to anyone holding an interest in the Premises (or any part thereof) through or under Tenant, and that no mechanic's or other liens or any such labor, service or materials shall attach to or affect the interest of Landlord in the Premises.

## 11.     USE OF PREMISES

11.1     Tenant shall use the Premises, and cause the Premises to be used by all parties, for the Use and for no other purpose, and hereby covenants to use and operate the Premises for the Use at all times during the Term of this Lease.

11.2     Tenant shall not use or allow the Premises or any part thereof to be used or occupied for any unlawful purpose or in material violation of any certificate of occupancy or certificate of compliance or of any other material certificate, permit, law, statute, ordinance, rule or regulation or any of the other Requirements, or any lease, mortgage, easement, restriction or other material agreement covering or affecting the use of the Premises or any part thereof, and shall not suffer any act to be done or any condition to exist on the Premises or any part thereof, which may be dangerous, unless safeguarded as required by law, or which may constitute a nuisance, public or private, or which may make void or voidable, or cause the revocation of, any certificate of occupancy or certificate of compliance or any other material certificate or permit or any insurance then in force with respect thereto.

11.3     Tenant shall not suffer or permit the Premises, or any portion thereof, to be used by any other party, including the public, as such, without restriction or in such manner as might reasonably tend to impair Landlord's title to the Premises or any portion thereof, or in such manner as might reasonably make a possible claim or claims of adverse usage or adverse possession by such party or the public, as such, or of implied dedication of the Premises or any portion thereof.

11.4     Tenant shall not use or allow the Premises or any part thereof to be used or occupied in a manner that would result in the violation or breach of any of the terms of the Permitted Mortgage. Tenant shall further perform, at any time during the Term that the Permitted Mortgage is in effect, any covenants or obligations of the obligor under the Permitted Mortgage that relate to this Lease or the Premises. Such covenants and obligations shall be performed by Tenant in such a manner as to not constitute a default under the Permitted Mortgage.

## 12.     ENTRY TO PREMISES BY LANDLORD

12.1     Tenant shall permit Landlord (or if Landlord consists of more than one person or entity, any such person or entity), Lender and any of such parties' authorized representatives to enter the Premises at reasonable times upon reasonable notice, and at any time in case of an emergency for the purpose of: (a) inspecting the same, and showing the same to any prospective purchaser of Landlord's fee interest therein (or any portion thereof) or, within six months prior to the expiration of the Term of this Lease, any prospective tenants, or (b) making any necessary repairs thereto and performing any work therein that may be necessary by reason of Tenant's failure to commence (and diligently pursue the completion of) any such repairs within 20 days after prior written notice from Landlord. Nothing herein shall imply any duty upon the part of Landlord to do any such work, and performance thereof by Landlord shall not constitute a waiver of Tenant's default in failure to perform the same.

## 13.     WAIVER OF SUBROGATION RIGHTS

13.1     Landlord and Tenant hereby each release the other party, and such other party's members, managers, shareholders, partners, agents, employees, officers, directors and authorized representatives, from any claims such releasing party may have for damage to the Premises, personal property, improvements and alterations of such party in or about the Premises to the extent the same is covered by a policy of insurance insuring such party; provided, however, that this waiver shall be ineffective unless consented to by the insurance company or companies issuing the insurance policies required to be maintained by Tenant under this Lease and shall be ineffective as to any such damage not covered by insurance required to be carried hereunder or, if greater in amount, insurance actually carried. Tenant shall cause each fire or other casualty insurance policy maintained by Tenant with respect to the Premises or any portion thereof to provide that the insurance company waives all right to recovery of paid insured

claims by way of subrogation against the other party in connection with any matter covered by such policy, to the extent such waiver is available.

## 14. INDEMNIFICATION AND WAIVER

14.1     Tenant shall indemnify, defend and hold Landlord (or if Landlord is constituted of more than one person or entity, each of such persons and entities) harmless from and against any and all losses, damages, expenses, costs and liabilities actually suffered or incurred by Landlord (or if Landlord is constituted of more than one person or entity, each of such persons and entities) (collectively, "Damages") in connection with anything and everything whatsoever directly arising from or out of: (a) any injury, illness or death to any person or damage to any property from any cause whatsoever occurring in or upon or in any other way relating to the Premises, (b) the occupancy of the Premises or any part thereof by, through or under Tenant, and/or (c) any failure on Tenant's part to comply with any of the covenants, terms, conditions, representations or warranties contained in this Lease; provided, however, that in no event shall the foregoing indemnity apply to any Damages arising out of, or because of, the negligence or misconduct of any or all of Landlord and its agents, employees, officers and directors. This indemnity extends to (but is not limited to) liability for expenses (including, without limitation, reasonable attorneys' fees and out-of-pocket expenses at both trial and appellate levels) actually incurred by Landlord in defending any action or proceeding (i) instituted against Landlord by a third party, or in which the Landlord intervenes, or against Tenant in which Landlord is made a party or appears and (ii) to which the foregoing indemnity would apply.

14.2     Landlord shall not be liable to Tenant and Tenant hereby waives all claims against Landlord for any injury, illness or death of any person or damage to any property in or about the Premises unless caused by the negligence or willful misconduct of any or all of Landlord and its agents, contractors, employees, officers and directors.

14.3     The terms, covenants, provisions and conditions of this Section 14 shall survive the expiration or sooner termination of this Lease.

## 15. DAMAGE OR DESTRUCTION

15.1     In the event of any material casualty to the Premises, Tenant shall promptly give written notice thereof to Landlord. Subject to Section 15.2, Tenant shall promptly commence and proceed to complete the Restoration, prior to the expiration of the Term of this Lease, at Tenant's sole cost and expense, and whether or not the insurance proceeds, if any, shall be sufficient for the purpose, complete the Restoration.

15.2     Except as otherwise provided by the Permitted Mortgage, if, within six months prior to the expiration of the Term of this Lease, the Improvements or any part thereof shall be damaged or destroyed by fire or otherwise, and the cost of Restoration exceeds 10% of Landlord's Purchase Price and Tenant is not then in Default under this Lease, and (b) insurance proceeds payable to Landlord shall, in Landlord's sole (but reasonable) judgment, be sufficient to pay the entire cost of Restoration, then Tenant shall have the option of:

15.2.1     completing the Restoration as provided in this Lease; or

15.2.2     terminating this Lease by written notice to Landlord given within 30 days after receipt by Tenant of Landlord's estimated cost of Restoration, as aforesaid, accompanied by payment to Landlord of the Base Rent, Reserve Account Payments and all Additional Rent under this Lease, for a period of six months after the date of such termination or to the date of what would otherwise have been the Expiration Date, whichever amount is the lesser, together with an assignment of the insurance proceeds payable to Tenant with respect to the damaged Improvements.

15.3     Except as provided in Section 15.2, no destruction of or damage to the Premises or any part thereof by fire or any other casualty shall permit Tenant to surrender this Lease or shall relieve Tenant from Tenant's liability to pay the full Base Rent and Additional Rent under this Lease or from any of Tenant's other obligations under this Lease, and Tenant waives any rights now or hereafter conferred upon Tenant by statute or otherwise to quit or surrender this Lease or the Premises or any part thereof, or to any suspension, diminution, abatement or reduction of rent on account of any such destruction or damage.

15.4     Notwithstanding anything herein to the contrary, Tenant's and Landlord's rights and obligations in and to any insurance or related proceeds derived therefrom shall, in all cases, be subject to the rights of the holder of the Permitted Mortgage.

## 16.     CONDEMNATION

16.1     In case of a Taking of all of the Premises, this Lease shall terminate and expire as of the Vesting Date and the Base Rent, Reserve Account Payments and Additional Rent under this Lease shall be apportioned and paid to the Vesting Date. Landlord shall have the exclusive right to participate in the Condemnation Proceedings and Tenant shall receive the portion of the award for the Taking up to the amount of the fair market value of Tenant's tangible personal property purchased directly by Tenant located on the Premises and taken by the condemning authority, with Landlord entitled to any balance applicable to the Premises, Existing Leases, Service Contracts and Intangible Property, and no claim or demand of any kind shall be made by Landlord against Tenant, Tenant against Landlord, or any other party who could, by virtue of a claim against it, make a claim against the Landlord by reason of such termination or Taking. Tenant and Landlord hereby irrevocably assign to the other any award, compensation or other payment to which it may become entitled as provided above.

16.2     In case of a Taking of less than all of the Premises (other than for a temporary use), Landlord and Tenant shall each have the right to participate in the Condemnation Proceedings. Subject to the remaining terms of this Section 16, the Landlord shall receive the entire award for the Taking and no claim or demand of any kind shall be made by Tenant against Landlord or any other party who could, by virtue of a claim against it, make a claim against the Landlord or Tenant by reason of such Taking, and Tenant or Landlord, as provided above, hereby irrevocably assigns to the other any award, compensation or other payment to which it may become entitled by reason of such party's interest in the Premises.

In the case of a taking of more than 10% of the net rentable area of the building comprising a portion of the Improvements (other than for a temporary use), Tenant shall determine, in Tenant's reasonable discretion, whether the remaining Premises (after Restoration referred to in Section 16.4) can be used for the Use. If it is determined by Tenant that the remaining Premises cannot be used for the Use, then and in such event this Lease shall terminate as of the Vesting Date and the Base Rent, Reserve Account Payments and Additional Rent shall be apportioned and paid to the date of termination and no other claim or demand of any kind shall be made by Landlord against Tenant by reason of such termination.

16.3     If, in the case of a Taking of less than all of the Premises (other than for a temporary use), this Lease is not terminated in accordance with the provisions of Section 16.2, this Lease shall continue in full force and effect as to the remaining portion of the Premises without any reduction in the Base Rent, except as expressly provided in Section 16.5. No such partial Taking shall operate as or be deemed an eviction of Tenant from that portion of the Premises not affected by such partial Taking or in any way terminate, diminish, suspend, abate or impair the obligation of Tenant to observe and perform fully all the covenants of this Lease on the part of Tenant to be performed with respect to the remainder of the Premises unaffected by the partial Taking, except as to any reduction (if any) in the Base Rent as expressly provided in Section 16.5.

16.4     If, in the case of a Taking of less than all of the Premises (other than for a temporary use), this Lease is not terminated in accordance with the provisions of Section 16.2, Tenant, at Tenant's sole cost and expense, shall, prior to the expiration of the Term of this Lease, commence and proceed with reasonable diligence to complete the Restoration and, the award in the Condemnation Proceedings shall be utilized for Restoration of the Premises in the following manner, and subject to the following conditions and provisions. Tenant shall be entitled to utilize that portion of the award in the Condemnation Proceedings actually received by Landlord which Landlord shall pay or cause to be paid directly to Tenant. Landlord shall be entitled to the remainder of the award not needed to complete the Restoration (the "Surplus"). In the event that the cost of Restoration exceeds the award proceeds, Tenant shall pay the deficiency.

16.5     In case of a Taking of less than all of the Premises (other than for a temporary use) and if (a) this Lease shall not terminate as provided in Section 16.2, (b) Restoration has been completed by Tenant pursuant to the provisions of Section 16.4, and (c) a Surplus exists, then commencing as of the Vesting Date, the amount of the

Base Rent payable by Tenant under this Lease shall be reduced (and Tenant shall be credited for prior overpayments) by an amount reasonably determined by Landlord and Tenant. If Landlord and Tenant cannot, within 30 days, agree on the new Base Rent, either may require that the matter be submitted to binding arbitration with the American Arbitration Association.

16.6    In the event of a Taking of all or any portion of the Premises for temporary use: Tenant shall give prompt notice thereof to Landlord; the foregoing provisions of this Section 16 shall be inapplicable thereto; this Lease shall continue in full force and effect without reduction or abatement of Base Rent, Reserve Account Payments or Additional Rent; and Tenant, alone, shall be entitled to make claim for, recover and retain any award recoverable in respect of such temporary use, provided, however, that:

16.6.1    If the award is made and covers a period beyond the Term of this Lease, Landlord also shall be entitled to make claim for, participate in and receive the portion of the entire award equal to the ratio that the period of the temporary use arising after the Term of this Lease bears to the entire period of the temporary use.

16.6.2    If possession of the Premises so taken for such temporary use shall subsequently revert to Tenant prior to the expiration of this Lease, Tenant shall promptly repair and restore any damage to the Premises resulting from such Taking and Landlord shall make available to Tenant any award proceeds actually received by Landlord with respect to such Taking to be utilized for Restoration. Upon completion of such Restoration, any balance, less Base Rent and Additional Rent during the temporary use which Tenant has not previously paid, shall be paid to Tenant.

16.7    Notwithstanding anything to the contrary in this Lease, if at the time Condemnation proceeds would be payable to Tenant pursuant to this Lease, Tenant is in Default of this Lease, all such Condemnation proceeds shall be paid to Landlord, and unless any such Default is cured by Tenant within any applicable grace periods expressly set forth in this Lease, such proceeds shall be retained by Landlord, provided, however, that if such Default is monetary in nature, Landlord shall retain only that amount of proceeds necessary to cure such Default. However, Landlord's retaining said proceeds shall not be deemed to release Tenant of any liability relating to Tenant's Default under this Lease, nor shall it be deemed to constitute the sole or exclusive remedy of Landlord.

16.8    Each of Landlord and Tenant shall promptly deliver to the other any notices it receives with respect to a Condemnation Proceeding or threatened Condemnation Proceeding.

16.9    Notwithstanding anything herein to the contrary, Tenant's and Landlord's rights and obligations in and to any Condemnation Proceeding or related proceeds derived therefrom shall, in all cases, be subject to the rights of the holder of the Permitted Mortgage.

## 17.    ASSIGNMENT, SUBLETTING AND MORTGAGING

17.1    (a)    Except as herein expressly provided, the prior written consent of Landlord, which consent may be withheld for any reason or no reason, in Landlord's sole and unreasonable discretion, shall be required in order for the Tenant to sell, assign, transfer or otherwise dispose of this Lease or any interest of Tenant in this Lease or in any sublease or in any subrents whether by operation of law or otherwise.

(b)    If an assignment is consented to by Landlord, no such assignment shall be valid unless (i) such permitted assignment complies with the provision of this Lease, and (ii) there shall be delivered to Landlord in proper form for recording (and otherwise in form, scope and substance satisfactory to Landlord), on the date of assignment (x) a duplicate original of the instrument of assignment, and (y) other than an assignment accomplished in conjunction with the Permitted Mortgage as additional collateral, an instrument of assumption by the transferee of all of the Tenant's obligations under this Lease, including, without limitation, any unperformed obligations which have accrued as of the date of the assumption. Any such permitted assignee shall thereafter have all of the power, authority, rights, duties, obligations and liabilities of Tenant hereunder. Tenant shall nonetheless remain liable for the payment of all Base Rent, Reserve Account Payments and Additional Rent due hereunder and the performance of all terms, covenants and conditions to be performed by Tenant under this Lease and Tenant shall reaffirm the same to Landlord in writing, in recordable form, acceptable to Landlord, prior to, and as a condition precedent of, such transfer. Any single consent given by Landlord hereunder shall not be deemed a waiver of Landlord's right to

future requests for consent under this Section 17. If Landlord is requested to approve a proposed assignment or sublease, Tenant shall be responsible (regardless of whether Landlord approves the same) for paying the fees and expenses of Landlord's counsel for reviewing and/or preparing the appropriate materials and documents.

(c)     Without limiting in any way the rights and remedies of Landlord hereunder, at law or in equity, but in addition thereto, any purported assignment, transfer, mortgage, pledge, disposition or encumbrance in contravention of the provisions of this Section 17 shall be null and void and of no force and effect, but this shall not impair any remedy of Landlord because of Tenant having engaged in any act prohibited by, or in contravention of, the terms hereof.

17.2     (a)     Except as herein expressly provided, Tenant may sublet the whole or any portion of the Premises without the necessity of obtaining Landlord's prior consent; provided, however, that no such subletting shall be valid unless such permitted subletting complies with the provisions herein set forth. Without in any way limiting the rights and remedies of Landlord hereunder, at law or in equity, but in addition thereto, any purported subletting in contravention hereof shall not thereby impair any right or remedy available to Landlord as the result of Tenant's having engaged in an act prohibited by, or in contravention of, the terms hereof, nor shall such permitted subletting relieve Tenant of any of Tenant's obligations hereunder and Tenant assumes and shall be responsible for and shall be liable to Landlord for all acts on the part of any present or future subtenant, which, if done by Tenant would constitute a Default hereunder. Each Sublease shall be expressly subject and subordinate to this Lease. Notwithstanding anything contained herein to the contrary, Tenant shall have the right with Landlord's prior written consent to enter into Subleases that extend, or contain option terms that extend, beyond the Term of this Lease.

(b)     Each Sublease of the whole or a portion of the Premises entered into after the date hereof must in each instance contain provisions substantially as follows:

"Tenant ("Sublessee") covenants and agrees that, if by reason of a default (after the expiration of all applicable notice and grace periods) upon the part of DBSI Master Leaseco, Inc., an Idaho corporation ("Sublessor"), the tenant under the Master Lease Agreement, dated NOV. 21, 2006 between DBSI Colonnade West Lake LLC, a Delaware limited liability company, as landlord, and Sublessor, as tenant (the "Underlying Lease"), covering the Premises, a memorandum of which is recorded in the title office of the Recorder's Office for Harris County, Texas, covering the Premises, in the performance of any of the terms or provisions of the Underlying Lease or if for any other reason of any nature whatsoever the Underlying Lease and the leasehold estate of the Sublessee thereunder are terminated by summary dispossess proceeding, foreclosure or otherwise, Sublessee, at the request in writing of the then landlord under the Underlying Lease, shall attorn to and recognize such landlord as Sublessee's landlord under this lease. Sublessee covenants and agrees to execute and deliver, at any time and from time to time, upon the request of the landlord under the Underlying Lease, any instrument which may be necessary or appropriate to evidence such direct lease and attornment. Sublessee further waives the provisions of any statute or rule of law now or hereafter in effect which may terminate this lease or give or purport to give Sublessee any right of election to terminate this Lease or to surrender possession of the Premises demised hereby in the event the Underlying Lease terminates, in the event any such proceeding is brought by such landlord under the Underlying Lease or in the event of foreclosure, if such landlord shall have requested in writing that Sublessee agree that this lease shall not be affected in any way whatsoever by any such proceeding, termination or foreclosure."

Landlord hereby agrees that, if requested by a Sublessee, a Sublease shall contain, and Landlord hereby appoints Tenant as Landlord's attorney-in-fact to execute and deliver, a non-disturbance agreement from Tenant and Landlord in favor of such Sublessees.

(c)     Any such Sublease shall be accomplished in accordance with the restrictions on leasing set forth in the Permitted Mortgage and, if a desired Sublease does not meet the terms of such restrictions, Tenant shall not finalize such Sublease without obtaining, whether directly or indirectly through Landlord, the necessary consent to the form of such Sublease from the holder of the Permitted Mortgage.

17.3     Any application by Tenant for Landlord's written consent under any paragraph of this Section 17 shall be made in writing to the Landlord. Landlord's failure to disapprove any such application within five business days shall be deemed to be an approval by Landlord.

17.4     Every assignee and sublessee hereunder, if not a natural person, shall be formed and existing under the laws of a state, district or commonwealth of the United States of America.

17.5     So long as Tenant is not in Default hereunder, Tenant shall have the right to collect and receive all rents due or to become due from any present or future Sublessee for Tenant's own uses and purposes. The effective date of Landlord's right to collect rents shall be the date of the happening of a Default under Section 18. Thereupon, Landlord shall apply any net amount collected by Landlord from subtenants to the Base Rent, Reserve Account Payments or Additional Rent due under this Lease. No collection of rent by Landlord from an assignee of this Lease or from a subtenant shall constitute a waiver of any of the provisions of this Section 17 or an acceptance of the assignee or subtenant as a tenant or a release of Tenant from performance by Tenant of Tenant's obligations under this Lease. Tenant, without the prior consent of Landlord in writing, shall not directly or indirectly collect or accept any payment of subrent (exclusive of security deposits) under any Sublease more than one month in advance of the date when the same shall become due.

17.6     Any attempted subletting or assignment in violation of the requirements of this Section 17 shall be null and void and, at the option of Landlord, shall constitute a Default by Tenant under this Lease. To the extent consent is required, the giving of consent by Landlord in one instance shall not preclude the need for Tenant to obtain Landlord's consent to further sublettings (to the extent they require such consent) or assignments under this Section 17. If Landlord's approval is required and obtained, Tenant or the prospective sublessee or assignee shall be responsible for preparing the appropriate documentation and shall reimburse Landlord for Landlord's reasonable costs and expenses (including, without limitation, attorneys' fees and expenses) in reviewing and approving the sublease or assignment and related documentation.

17.7     Tenant shall not mortgage or otherwise encumber Tenant's interest in this Lease. Notwithstanding the foregoing, Landlord consents to Tenant encumbering its interest in this Lease to the Lender secured by the Permitted Mortgage, acknowledges that the Lender will be obtaining a security interest in all rents to be paid to Tenant and consents to the granting of the security interest by the Tenant. Further, Tenant agrees that upon termination of the Lease, all underlying leases of the Property shall be deemed assigned to the Landlord without any act or deed of Landlord or Tenant.

17.8     If Tenant is in Default hereunder pursuant to Section 18.1.4 and Tenant elects to assume this Lease and then proposes to assign the same pursuant to the provisions of the Bankruptcy Code, 11 U.S.C. Section 10.1 et seq. (the "Bankruptcy Code") to any person or entity who shall have made a bona fide offer to accept an assignment of this Lease on terms acceptable to Tenant, then notice of such proposed assignment, setting forth (a) the name and address of such person, (b) all the terms and conditions of such offer, and (c) the adequate assurances to be provided Landlord to ensure such person's future performance under this Lease, including, without limitation, the assurances referred to in Section 365(b)(d) of the Bankruptcy Code, shall be given to Landlord by Tenant no later than 20 days after receipt thereof by Tenant, but in any event no later than 10 days prior to the date that Tenant shall make application to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Landlord shall thereupon have the prior right and option to be exercised by notice to Tenant given at any time prior to the effective date of such proposed assignment, to accept an assignment of this Lease upon the same terms and conditions and for the same consideration, if any, as the bona fide offer made by such person less any brokerage commissions which may be payable out of the consideration to be paid by such person for the assignment of this Lease. Any and all monies or other consideration constituting Landlord's property under the preceding sentence not paid or delivered to Landlord shall be held in trust for the benefit of Landlord and shall be promptly paid to or turned over to Landlord. Any person or entity to which this Lease is assigned pursuant to the provisions of the Bankruptcy Code shall be deemed without further act or deed to have assumed all of the obligations arising under this Lease on and after the date of such assignment. Any such assignee shall upon demand execute and deliver to Landlord an instrument in form, scope and substance acceptable to Landlord, confirming such assumption.

17.9    Notwithstanding anything herein to the contrary, Landlord and Tenant shall obtain Lender's consent to any assignment or subletting of the Premises, in whole or in part, to the extent required by the loan documents executed in connection with the Permitted Mortgage.

## 18.    EVENTS OF DEFAULT AND LANDLORD'S REMEDIES

18.1    Each of the following shall be deemed a "Default" by Tenant, and after the occurrence of any of the following, Tenant shall be "in Default" under this Lease:

18.1.1    A failure on the part of Tenant to pay any installment of Base Rent, Reserve Account Payments or to pay any Additional Rent within five days of the date such Base Rent, Reserve Account Payments or Additional Rent becomes due;

18.1.2    A failure on the part of Tenant, whether by action or inaction, to observe or perform any of the other terms, covenants or conditions of this Lease, which failure is not cured within 30 days after Landlord (or if Landlord is constituted of more than one person or entity, any such properly authorized person or entity) delivers written notice of such failure to Tenant (or such other period as is required under the Permitted Mortgage), provided, however, that if such failure is subject to cure but cannot be cured within such 30 day period, Tenant shall not be in Default hereunder if it promptly commences, and diligently pursues, the curing of such failure; provided that if such cure period shall exceed 90 days, Tenant shall provide Landlord with written notice advising Landlord of the estimated cure period, which shall not exceed 180 days (except in the case of any Restoration) and Tenant shall thereafter provide Landlord, by way of monthly reports, the status of such cure. If Tenant fails to cure the failure within the originally estimated curative period, without reasonable cause, such failure shall constitute a Default hereunder.

18.1.3    The leasehold hereunder demised shall be taken on execution or other process of law in any action against Tenant;

18.1.4    If Tenant files a voluntary petition in bankruptcy or is adjudicated a bankrupt or insolvent, or files any petition or answer seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or any future applicable federal, state or other statute or law relative to bankruptcy, insolvency, or other relief for debtors, or seeks or consents to or acquiesces in the appointment of any trustee, receiver, conservator or liquidator of Tenant or of all or any substantial part of Tenant's properties or Tenant's interest in this Lease (the term "acquiesce" as used in this Section 18.1.4 includes, without limitation, the failure to file a petition or motion to vacate or discharge any order, judgment or decree within five days after entry of such order, judgment or decree); or a court of competent jurisdiction enters an order, judgment or decree approving a petition filed against Tenant seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future federal bankruptcy act, or any other present or future applicable federal, state or other statute or law relating to bankruptcy, insolvency or other relief for debtors, and Tenant acquiesces in the entry of such order, judgment or decree or such order, judgment or decree remains unvacated and unstayed for an aggregate of 120 days (whether or not consecutive) from the date of entry thereof, or any trustee, receiver, conservator or liquidator of Tenant or of all or any substantial part of Tenant's property or Tenant's interest in this Lease shall be appointed without the consent or acquiescence of Tenant and such appointment remains unvacated and unstayed for an aggregate of 120 days (whether or not consecutive);

18.1.5    If this Lease or any estate of Tenant hereunder shall be levied upon under any attachment or execution and such attachment or execution is not vacated within 120 days;

18.1.6    If Tenant or Tenant's stockholders, directors or officers shall cause or institute any proceeding, or a final and non-appealable court order shall be issued, for the dissolution or termination of Tenant or Tenant's stockholders, directors or officers as the case may be;

18.1.7    If Tenant makes a general assignment for the benefit of creditors or takes any other similar action for the protection or benefit of creditors;

18.1.8    If any material representation or warranty made by Tenant in this Lease shall be inaccurate in any material respect and such inaccuracy or the adverse effect therefrom is not remedied within ten days after Landlord delivers written notice of such inaccuracy to Tenant; or

18.1.9    If Tenant takes or fails to take any action which is in violation of the Permitted Mortgage and such violation is not cured in accordance with, and within any applicable cure periods under, the Permitted Mortgage.

18.2    In the event of any Default by Tenant as hereinabove provided in this Section 18, Landlord (or if Landlord is constituted of more than one person or entity, any such properly authorized person or entity) at any time thereafter may, at Landlord's option, give Tenant five days written notice of Landlord's intention (among other remedies available to Landlord) to: (a) terminate Tenant's possession under this Lease or (b) terminate this Lease, and thereupon, at the expiration of said five day period the Tenant's right to possession under this Lease and this Lease itself shall terminate as appropriate and the Term of this Lease shall expire as fully and completely as if that date were the date herein specifically fixed for the expiration of the Term of this Lease and Tenant shall then quit and surrender the Premises to Landlord, but Tenant shall remain liable as hereinafter provided.    Any notice hereunder may be given to Tenant by any one or more of the parties constituting Landlord if there are multiple persons or entities constituting Landlord; provided, however, that any such notice shall not be given without first obtaining the necessary approval pursuant to Section 18.8 of this Lease.

18.2.1    Upon the occurrence of any Default by Tenant under this Lease, Landlord shall have the option to pursue any one or more of the following remedies without any notice (except as otherwise specifically set forth herein) or demand for possession whatsoever: (i) with five days prior written notice, terminate this Lease, in which event Tenant shall immediately surrender the Premises to Landlord; (ii) with five days prior written notice, terminate Tenant's right to occupy and possess the Premises and re-enter and take possession of the Premises (without terminating this Lease); (iii) enter the Premises and do whatever Tenant is obligated to do under the terms of this Lease and Tenant agrees to reimburse Landlord on demand for any expenses which Landlord may incur in effecting compliance with Tenant's obligations under this Lease, and Tenant further agrees that Landlord shall not be liable for any damages resulting to Tenant from such action, and (iv) exercise all other remedies available to Landlord at law or in equity, including, without limitation, injunctive relief of all varieties.

18.2.2    In the event Landlord elects to re-enter or take possession of the Premises after Tenant's Default, Tenant hereby waives notice of such re-entry or repossession and of Landlord's intent to re-enter or retake possession.  Landlord may, without prejudice to any other remedy which Landlord may have, expel or remove Tenant and any other person who may be occupying said Premises or any part thereof.  All of Landlord's remedies shall be cumulative and not exclusive.  Forbearance by Landlord to enforce one or more of the remedies herein provided upon an event of Default shall not be deemed or construed to constitute a waiver of such Default.

18.2.3    In the event that Landlord elects to terminate this Lease, then, notwithstanding such termination, Tenant shall be liable for and shall pay to Landlord the sum of all Base Rent, Reserve Account Payments and Additional Rent accrued to the date of such termination, plus, as damages, an amount equal to the total of the reasonable and documented out-of-pocket costs of (i) recovering possession of the Premises, (ii) removing and storing Tenant's and any other occupant's (except a permitted sublessee's) property located therein, (iii) repairs to the Premises, accruing only during the period in which Tenant occupied the Premises, whether accomplished in one or more steps or phases, and (iv) collecting any of the foregoing amounts from Tenant. Notwithstanding the foregoing, Landlord shall be obligated to mitigate all damages and costs resulting from the termination of this Lease.

18.2.4    In the event that Landlord elects to take possession of the Premises and terminate Tenant's right to occupy the Premises without terminating this Lease, Tenant shall remain liable, and shall pay to Landlord on demand, any deficiency between (i) the Base Rent, Reserve Account Payments and Additional Rent due under this Lease for the remainder of the Term of this Lease, and (ii) rents, if any, which Landlord is able to collect from another tenant for the Premises during the remainder of the Term of this Lease (the "Rental Deficiency").  In addition, Tenant shall be liable for and shall pay to Landlord, on demand, an amount equal to the reasonable and documented out-of-pocket costs of (i) recovering possession of the Premises, (ii) removing and storing Tenant's and any other occupant's (except a permitted sublessee's) property located therein, (iii) reletting the

Premises (including, without limitation, brokerage commissions) as Landlord reasonably deems necessary, (iv) repairs to the Premises accruing only during the period in which Tenant occupied the Premises, whether accomplished in one or more steps or phases, and (v) collecting any of the foregoing amounts from Tenant. Notwithstanding the foregoing, Landlord shall be obligated to mitigate all damages and costs resulting from any actions taken under this Section 18.2.4. Landlord may file suit to recover any sums falling due under the terms hereof from time to time, and no delivery to or recovery by Landlord of any portion of the sums due Landlord hereunder shall be any defense in any action to recover any amount not theretofore reduced to judgment in favor of Landlord. Any sums received by Landlord through reletting shall reduce the sums owing by Tenant to Landlord hereunder, but in no event shall Tenant be entitled to any excess of any sums obtained by reletting over and above the Base Rent, Reserve Account Payments and Additional Rent. For the purpose of such reletting, Landlord is authorized to decorate or to make any repairs, changes, alterations, or additions in and to the Premises that Landlord may deem necessary or advisable, acting reasonably and in good faith. No reletting shall be construed as an election on the part of Landlord to terminate this Lease unless a written notice of such intention is given to Tenant by Landlord. Notwithstanding any such reletting without termination, Landlord at any time thereafter may elect to terminate this Lease for Tenant's previous Default if such Default has not been cured. In the alternative, Landlord may elect to terminate Tenant's right to occupy and possess the Premises and to immediately recover as damages, in lieu of the Rental Deficiency, a sum equal to the difference between (i) the total Base Rent due under this Lease for the remainder of the Term of this Lease, and (ii) the then fair market net rental value (excluding taxes, assessments, Impositions and all other items constituting Additional Rent hereunder) of the Premises during such period, discounted to present value at a rate equal to 100 basis points (1%) over the U. S. Treasury rate for the U. S. Treasury obligation maturing within six months prior to the Expiration Date, as selected by Landlord ("Discounted Future Rent"). In such event, if Landlord (having no obligation to do so) relets the Premises, Landlord shall have no responsibility to apply any rentals received by Landlord as a result of any such reletting to Tenant's obligations hereunder; and the aggregate amount of all damages due to Landlord, including the Discounted Future Rent hereunder, shall be immediately due and payable by Tenant to Landlord upon demand. In the event of a Default on the part of Tenant hereunder, Tenant shall no longer have any right, title or interest in any funds then held by Landlord pursuant to the terms of this Lease.

18.2.5    This Section 18 shall be enforceable to the maximum extent not prohibited by applicable law, and the unenforceability of any portion thereof shall not thereby render unenforceable any other portion. No act or thing done by Landlord or Landlord's agents during the Term of this Lease shall be deemed an acceptance of an attempted surrender of the Premises, and no agreement to accept a surrender of the Premises shall be valid unless made in writing and signed by Landlord. No re-entry or taking of possession of the Premises by Landlord shall be construed as an election on Landlord's part to terminate this Lease unless a written notice of such termination is given to Tenant.

18.2.6    Damages under this Section 18.2 shall include, without limitation, the following:

18.2.6(a)    all lost rentals,

18.2.6(b)    all reasonable and documented legal expenses and other related reasonable and documented out-of-pocket costs incurred by Landlord following Tenant's Default,

18.2.6(c)    all reasonable and documented out-of-pocket costs incurred by Landlord in restoring the Premises to good order and condition, or in remodeling, renovating or otherwise preparing the Premises for reletting, even if such remodeling, renovation or other preparation is done solely for the purpose of showing the Premises to prospective tenants,

18.2.6(d)    all reasonable and documented out-of-pocket costs incurred by Landlord in reletting the Premises, including, without limitation, any brokerage commissions and the value of Landlord's time, and

18.2.6(e)    all reasonable and documented out-of-pocket attorneys' fees and expenses incurred in connection with Tenant's Default under this Section 18.

18.3    If Landlord shall enter into and repossess the Premises by reason of the Default of Tenant in the performance of any of the terms, covenants or conditions herein contained, then in that event Tenant hereby covenants and agrees that Tenant shall not claim the right to redeem or re-enter the Premises or restore the operation of this Lease, and Tenant hereby waives any right to such redemption and re-entry under any present or future law, and does hereby further, for any party claiming through or under Tenant, expressly waive its right, if any, to make payment of any sum or sums of rent, or otherwise, of which Tenant shall have been in Default under any of the covenants of this Lease, and to claim any subrogation to the rights of Tenant under this Lease, or any of the covenants thereof, by reason of such payment.

18.4    Any action taken by Landlord under this Section 18 shall not operate as a waiver of any right which Landlord would otherwise have against Tenant for Base Rent, Reserve Account Payments or Additional Rent hereby reserved or otherwise, and Tenant shall remain responsible to Landlord for any loss and damage suffered by Landlord by reason of Tenant's Default or breach.  The words "re-enter" and "re-entry" as used in this Lease are not restricted to their technical legal meaning.

18.5    No receipt of monies by Landlord from Tenant after the termination or cancellation of this Lease in any lawful manner shall reinstate, continue or extend the Term of this Lease, or affect any notice given to Tenant, or operate as a waiver of the right of Landlord to enforce the payment of Base Rent, Reserve Account Payments or Additional Rent then due, or operate as a waiver of the right of Landlord to recover possession of the Premises by proper suit, action, proceeding or remedy, it being agreed that, after the service of notice to terminate or cancel this Lease, or the commencement of suit, action or summary proceedings, or any other remedy, or after a final order or judgment for the possession of the Premises, Landlord may demand, receive and collect any monies due, without in any manner affecting such notice, proceeding, suit, action, order or judgment; and any and all such monies collected shall be deducted from any amount due from Tenant.

18.6    The failure of Landlord to insist in any one or more instances upon a strict performance of any of the covenants of this Lease, or to exercise any option herein contained, shall not be construed as a waiver of or relinquishment for the future of the performance of such a covenant, or the right to exercise such option, but the same shall continue and remain in full force and effect.  The receipt by Landlord of Base Rent, Reserve Account Payments or Additional Rent, with knowledge of the breach of any covenant hereof, shall not be deemed a waiver of such breach, and no waiver by Landlord of any provision hereof shall be deemed to have been made unless expressed in writing and signed by Landlord.

18.7    All the rights and remedies herein given to Landlord for the recovery of the Premises because of the Default by Tenant in the payment of any sums which may be payable pursuant to the terms of this Lease, or the right to re-enter and take possession of the Premises upon the happening of any event of Default, or the right to maintain any action for rent or damages and all other rights and remedies allowed at law or in equity, are hereby reserved and conferred upon Landlord as distinct, separate and cumulative rights and remedies, and no one of them, whether exercised by Landlord or not, shall be deemed to be in exclusion of any of the others.

18.8    Any rights provided to Landlord pursuant to this Section 18, including the right to give notice of, or exercise rights in the event of, any default hereunder shall, where the Landlord is constituted of more than one person or entity, be subject to the rights and limitations on any such one or more constituent entities or persons by any applicable instruments governing their respective rights in and to the Premises and this Lease, including, but not limited to, any tenants in common agreement by and between the owners.  The foregoing notwithstanding, the parties hereto acknowledge and agree that the rights under the Lease, including, by way of illustration, this Section 18 to provide notice to Tenant of any Default and to exercise any remedies in the event of any such Default by Tenant may be exercised by Landlord upon the approval of at least a majority of the constituent tenants in common that at any time constitute Landlord.

## 19.    **EARLY TERMINATION**

19.1    The Tenant and the Landlord shall have the right to terminate this Lease, in their sole discretion, at any time after the expiration of the tenth year of the initial Term hereof upon one hundred eighty (180) days written notice given in accordance with Section 23.7 hereof.

19.2    The Tenant shall have the right to terminate this Lease, in its sole discretion, upon 30 days written notice to the Landlord given in accordance with Section 23.7 of this Lease if (a) the Landlord does not refinance the Permitted Mortgage upon the request of the Tenant; (b) the Landlord refinances the Permitted Mortgage without the Tenant's approval, or (c) the Landlord defaults or causes a default under the Permitted Mortgage or any refinancing thereof.

19.3    Notwithstanding the foregoing, upon the sale of the Premises, this Lease shall automatically terminate and be of no further force and effect; provided, however, that in the event of a foreclosure, the Lender may cause the assignment of this Lease so as to avoid the merger of the leasehold interest created hereby with the fee interest in the Premises or may otherwise determine that no merger has occurred or is intended to occur.

## 20.    HAZARDOUS SUBSTANCES

20.1    Tenant hereby represents, warrants, covenants and agrees to and with Landlord that all operations or activities upon, or any use or occupancy of the Premises, or any portion thereof, by Tenant, and any tenant, subtenant or occupant of the Premises, or any portion thereof, shall throughout the Term of this Lease be in all respects in compliance with all existing and future federal, state and local laws and regulations governing, or in any way relating to the generation, handling, manufacturing, treatment, storage, use, transportation, spillage, leakage, dumping, discharge or disposal of any hazardous or toxic substances, materials or wastes ("Hazardous Substances"), including, but not limited to, those substances, materials, or wastes now or hereafter listed in the United States Department of Transportation Hazardous Materials Table at Section 49 CFR 172.101 or by the Environmental Protection Agency in Section 40 CFR Part 332 and amendments thereto, or such substances, materials or wastes otherwise now or hereafter regulated under any applicable federal, state or local law.

20.2    For the purposes of this Section 20, "PCB" shall include all substances included under the definition of PCB in 40 CFR Section 761.3. Tenant hereby represents, warrants, covenants and agrees to and with Landlord that, to the best of Tenant's knowledge, (a) there is not present upon the Premises, or any portion thereof, or contained in any transformers or other equipment thereon, any PCB's, and (b) Tenant shall throughout the Term of this Lease not permit to be present upon the Premises, or any portion thereof, or contained in any transformers or other equipment thereon, any PCB's.

20.3    Tenant hereby represents, warrants, covenants and agrees to and with Landlord that, to the best of Tenant's knowledge and except as disclosed in writing to Landlord prior to the date hereof, (a) there is not present upon the Premises, or any portion thereof, any asbestos or any structures, fixtures, equipment or other objects or materials containing asbestos, and (b) Tenant shall throughout the Term of this Lease not permit to be present upon the Premises, or any portion thereof, any asbestos or any structures, fixtures, equipment or other objects or materials containing asbestos.

20.4    Tenant agrees to indemnify, protect, defend (with counsel approved by Landlord) and hold Landlord, and the directors, officers, shareholders, partners, members, employees and agents of Landlord, harmless from and against any and all claims (including, without limitation, third party claims for personal injury or real or personal property damage), actions, administrative proceedings (including, without limitation, informal proceedings), judgments, damages, punitive damages, penalties, fines, costs, liabilities (including, without limitation, sums paid in settlement of claims), losses, including, without limitation, reasonable attorneys' fees and expenses (including, without limitation, any such fees and expenses incurred in enforcing this Lease or collecting any sums due hereunder), consultant fees and expert fees, together with all other costs and expenses of any kind or nature (collectively, the "Costs") that arise directly or indirectly from or in connection with the presence or release of any Hazardous Substances in or into the air, soil, surface water, groundwater or soil vapor at, on, under, over or within the Premises, or any portion thereof from and after the Commencement Date and otherwise during the Term. In the event Landlord shall suffer or incur any such Costs, Tenant shall pay to Landlord the total of all such Costs suffered or incurred by Landlord upon demand therefor by Landlord. Without limiting the generality of the foregoing, the indemnification provided by this Section 20.4 shall specifically cover all Costs, including, without limitation, capital, operating and maintenance costs, incurred in connection with any investigation or monitoring of site conditions, any clean-up, containment, remedial, removal or restoration work required or performed by any federal, state or local governmental agency or political subdivision or performed by any nongovernmental entity or

person because of the presence or release of any Hazardous Substances in or into the air, soil, groundwater, surface water or soil vapor at, on, under, over or within the Premises (or any portion thereof), as well as any claims of third parties for loss or damage due to such Hazardous Substances. In addition, the indemnification provided by this Section 20.4 shall include, without limitation, all liability, loss and damage sustained by Landlord due to any Hazardous Substances that migrates, flows, percolates, diffuses or in any way moves onto, into or under the air, soil, groundwater, surface water or soil vapor at, on, under, over or within the Premises (or any portion thereof) after the date of this Lease, provided, however, that the provisions of this Section 20.4 shall not apply to Costs associated with the release, discharge, disposal, dumping, spilling or leaking onto the Premises of Hazardous Substances occurring (a) as a result of the negligence or misconduct of any or all of Landlord and its agents, contractors, employees, officers or directors, (b) at any time when Landlord or its agent is in control, or has taken possession of, the Premises or (c) after the expiration of this Lease (collectively, "Landlord Costs"). Landlord agrees to indemnify, protect, defend (with counsel approved by Tenant) and hold Tenant. and the directors, officers, shareholders, partners, members, employees and agents of Tenant, harmless from and against any and all Landlord Costs.

20.5    In the event any investigation or monitoring of site conditions or any clean-up, containment, restoration, removal or other remedial work (collectively the "Remedial Work") is required under any applicable federal, state or local law or regulation, by any judicial order, or by any governmental entity, Tenant shall perform or cause to be performed the Remedial Work in compliance with such law, regulation, order or agreement. All Remedial Work shall be performed by one or more contractors all of whom shall have all necessary licenses and expertise to perform such work. The contractor or contractors (selected by Tenant) shall perform the Remedial Work under the supervision of an environmental consulting engineer, selected by Tenant and approved in advance in writing by Landlord. All costs and expenses of such Remedial Work shall be paid by Tenant to the extent arising during the Term or from facts occurring during the Term or, if otherwise, by Landlord, including, without limitation, the charges of such contractor(s) and/or the environmental consulting engineer (excluding specifically, however, Landlord's attorneys' fees and expenses incurred in connection with monitoring or review of such Remedial Work). In the event Tenant shall fail to timely commence, or cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, Landlord may, but shall not be required to, cause such Remedial Work to be performed, and all costs and expenses thereof, or incurred in connection therewith, shall be Costs within the meaning this Section 20. All such Costs shall be due and payable upon demand therefor by Landlord.

20.6    Landlord reserves the right, to be exercised from time to time during the Term of this Lease, to inspect or cause Landlord's contractors and/or environmental consulting engineers to inspect the Premises in order to confirm that no Hazardous Substances are located on, in or under any portion of the Premises, provided, however, that Landlord or its contractor or engineer, as applicable, shall have provided evidence of insurance satisfactory to Tenant with respect to any actions taken on the Premises. The fees and expenses incurred by Landlord with respect to said inspections shall be paid by Landlord. If any Hazardous Substances are discovered by said inspection to be located on, in or under the Premises, Tenant shall, at Tenant's sole cost and expense if they arise during the Term or from facts occurring during the Term or otherwise at Landlord's sole cost and expense, (and in addition to Tenant's other obligations and liabilities under this Section 20): (a) forthwith have all such Hazardous Substances removed from the Premises if and to the extent required by applicable laws, ordinances, rules and regulations, (b) dispose of all Hazardous Substances so required to be removed in accordance with all applicable laws, ordinances, rules and regulations, and (c) restore the Premises, including payment to Landlord of any inspection and testing costs; provided, however, that the provisions of this Section 20.6 shall not apply to release, discharge, disposal, dumping, spilling or leaking onto the Premises of Hazardous Substances occurring (i) as a result of the negligence or misconduct of any or all of Landlord and its agents, contractors, employees, officers or directors, (ii) at any time when Landlord or its agent is in control, or has taken possession of, the Premises or (iii) after the expiration of this Lease, all of which shall be the responsibility of Landlord. Nothing contained in this Section 20.6 shall be deemed or construed to amend, modify or replace any other obligation of Tenant set forth in this Section 20.

20.7    Each of the covenants, agreements, obligations, representations and warranties of Tenant set forth in this Section 20 shall survive the expiration or sooner termination of this Lease.

## 21.    SUBORDINATION

21.1    Tenant agrees that this Lease shall be subject and subordinate at all times to the lien of the Permitted Mortgage. In the event that the holder of the Permitted Mortgage forecloses the Landlord's interest in the

Premises or accepts a deed in lieu of foreclosure from Landlord as a result of Landlord's default, this Lease shall, at such holder's election, be terminated and Tenant shall not be deemed to, or have any right to, attorn to the holder of the Permitted Mortgage.

21.2    If necessary, Tenant agrees to notify all lessees under Subleases and all lessees under Existing Leases that Tenant has assigned its rights under the Existing Leases and Subleases to the Lender. If applicable, in such notification, Tenant shall direct the lessees to make their respective lease payments directly to the Lender or into the lock box, if any, established by Landlord and Tenant for the benefit of the Lender in the event of a default under the Permitted Mortgage.

## 22.    WAIVER OF JURY TRIAL

22.1    Landlord and Tenant hereby each waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of said Premises, or any claim or injury or damage (to the extent such waiver is enforceable by law in such circumstance), and any emergency statutory or any other statutory remedy.

## 23.    GENERAL PROVISIONS

23.1    This Lease shall not be affected by any laws, ordinances or regulations, whether federal, state, county, city, municipal or otherwise, which may be enacted or become effective from and after the date of this Lease affecting or regulating or attempting to affect or regulate the Base Rent or Additional Rent herein reserved or continuing in occupancy the Tenant or any sublessees or assignees of the Tenant's interest in the Premises beyond the dates of termination of their respective leases, or otherwise.

23.2    The acceptance by Landlord of a check or checks drawn by others than Tenant shall in no way affect Tenant's liability hereunder nor shall it be deemed an approval of any assignment of this Lease or any sublease of all or a part of the Premises not consented to by Landlord or an approval of Tenant not complying with any covenant of this Lease.

23.3    This Lease (including the attached Exhibits) contains the entire agreement between the parties regarding the subject matter hereof, and any agreement hereafter made shall not operate to change, modify or discharge this Lease in whole or in part unless such agreement is in writing and signed by the party sought to be charged therewith.

23.4    Tenant agrees, in consideration of the Landlord's commitment to enter into this Lease, and the grant of the related rights to Tenant hereunder, to execute, and subject certain of its assets to, the loan documents securing the Permitted Mortgage for purposes of securing the Permitted Mortgage. Landlord and Tenant agree that Tenant shall subject its assets, as described in the applicable loan documents, to any of the foreclosure rights held by the Lender arising in, from and under such loan documents (including but not limited to any Deed of Trust, Assignment of Leases, Security Agreement and Fixture Filing and any Assignment of Leases and Rents), whether or not such foreclosure arises from any default caused by Tenant's actions or inactions, it being the express understanding of Landlord and Tenant, after due negotiation, to have Tenant's assets subjected to the rights of Lender under such loan documents for all purposes. In furtherance of the foregoing, Tenant acknowledges and agrees, and further consents to, the assignment by Landlord of Landlord's interest in and to the Lease pursuant to the loan documents, including the rights of Landlord to enforce the provisions of this Section 23.4.

23.5    Landlord and Tenant shall each, without charge, at any time and from time to time, promptly after request by the other party or by Lender, certify by written instrument, duly executed, acknowledged and delivered, to the other party or any person, firm or corporation specified by the other party:

23.5.1    that this Lease is unmodified and in full force and effect, or, if there have been any modifications, that the same is in full force and effect as modified and stating the modifications;

23.5.2   whether or not there are then any known or existing set-offs or defenses against the enforcement of any of the agreements, terms, covenants or conditions hereof and any modifications thereof upon the part of Tenant to be performed or complied with, and, if so, specifying the same;

23.5.3   the dates, if any, to which the Base Rent, Reserve Account Payments and any Additional Rent and other charges hereunder have been paid; and

23.5.4   the Base Rent, Reserve Account Payments and the current assessed Additional Rent.

23.6   The term "Landlord" as used in this Lease means only the party(ies) that have executed this Lease as landlord as of the date hereof or have assumed this Lease as of the date hereof and such other tenants in common or other owners of the Premises allowed by the Permitted Mortgage. So long as this Lease survives any such transfer and the Tenant's rights and obligations hereunder are not materially adversely affected (or the Lease is terminated pursuant to Section 19.1), Landlord may, subject to any other restrictions under applicable law or other agreements governing the interests of the owners, sell, assign, mortgage or otherwise encumber, convey or transfer its fee interest in the Premises or some or all of its interest in this Lease during the term of this Lease; provided that such assignee shall execute and deliver this Lease and agree to be bound by the terms hereof (and/or execute and deliver an instrument providing for an assignment and assumption to this effect). Neither Landlord nor any member or manager of Landlord or any entity constituting Landlord shall effectuate or permit a sale, transfer, assignment or pledge of any interest in Landlord or in such entity constituting Landlord other than as may be permitted by the Permitted Mortgage.

23.7   Any notice, demand, request or other communication which may be permitted, required or desired to be given in connection herewith shall be given in writing and directed to Landlord and Tenant as follows:

Landlord:          DBSI Colonnade West Lake LLC
                   c/o DBSI Housing Inc.
                   1550 South Tech Lane
                   Meridian, Idaho 83642
                   Attn: Douglas L. Swenson, President

and to each of the other parties or persons constituting Landlord at the addresses listed with their signature on the signature page hereof, as may be amended from time to time to reflect assignments of this Lease to additional persons or entities constituting Landlord.

Tenant:            DBSI Master Leaseco, Inc.
                   c/o DBSI Housing Inc.
                   1550 South Tech Lane
                   Meridian, Idaho 83642
                   Attn: Douglas L. Swenson, President

With a copy to
its attorney:      Hirschler Fleischer
                   Federal Reserve Bank Building
                   701 East Byrd Street
                   Richmond, Virginia 23219
                   P.O. Box 500
                   Richmond, Virginia 23218-0500
                   Attn: John M. Ramey III, Esquire
                   Fax: (804) 644-0957

Notices shall be deemed properly delivered and received (a) the same day when personally delivered; (b) one business day after timely deposit for delivery the next business day with Federal Express or another nationally recognized commercial overnight courier, charges prepaid; (c) the same day when sent by confirmed facsimile; or (d) three business days after deposit in the United States mail, by registered mail, return receipt requested, postage prepaid. Any party may change its address for delivery of notices by properly notifying

the others pursuant to this Section 23.7. The parties hereto hereby authorize their respective attorneys to give notices on their behalf.

23.8    Tenant, upon paying the Base Rent, Reserve Account Payments and Additional Rent due hereunder and performing the other terms, provisions and covenants of this Lease on Tenant's part to be performed, shall, and may, at all times during the Term of this Lease peaceably and quietly have, hold and enjoy the Premises, subject to the terms hereof, free of molestation by the Landlord.

23.9    In the event of a merger, consolidation, acquisition, sale or other disposition involving Tenant or all or substantially all the assets of Tenant to one or more other entities, in addition to the other requirements set forth in this Lease, the surviving entity or transferee of assets shall: (a) be formed and existing under the laws of a state, district or commonwealth of the United States of America, and (b) deliver to Landlord an acknowledged instrument in recordable form assuming all obligations, covenants and responsibilities of Tenant under this Lease and under any instrument executed by Tenant relating to the Premises or this Lease.

23.10    This Lease shall be construed and enforced in accordance with the laws of the State in which the Premises are located and venue with respect to any action to construe or enforce this Lease shall be laid in the State where the Premises are located.

23.11    There shall be no merger of this Lease or Tenant's leasehold estate with the fee estate in the Premises by reason of the fact that the same person acquires or holds, directly or indirectly, this Lease of the leasehold estate or any interest therein as well as any of the fee estate in the Premises. Initial Landlord and Tenant specifically waive and disclaim any merger of the fee and leasehold estates in the Premises, it being their intention to hold separate and independent estates in the Premises pursuant to this Lease.

23.12    This Lease may be executed in two or more counterparts, and all such counterparts shall be deemed to constitute but one and the same instrument.

23.13    Any consent granted by a party under this Lease shall not constitute a waiver of the requirement for consent in subsequent cases. Where Landlord's consent is required, Tenant shall be required to obtain further consent in each subsequent instance as if no consent had been given previously.

23.14    Except as otherwise provided herein in the event of any action or proceeding at law or in equity between Landlord and Tenant including an action or proceeding between Landlord and the trustee or debtor in a proceeding under the Bankruptcy Code to enforce any provision of the Lease or to protect or establish any right or remedy of either Landlord or Tenant hereunder, the unsuccessful party to such action or proceeding shall pay to the prevailing party all costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, incurred in such action or proceeding and in any appeal in connection therewith by such prevailing party, whether or not such action, proceeding or appeal is prosecuted to judgment or other final determination, together with all costs of enforcement and/or collection or any judgment or other relief. The term "prevailing party" shall include, without limitation, a party who obtains legal counsel or brings an action against the other by reason of the other's breach or default and obtains substantially the relief sought, whether by compromise, settlement or judgment. If such prevailing party shall recover judgment in any such action, proceeding or appeal, such costs, expenses and attorneys' fees and expenses shall be included in and as a part of such judgment, together with all costs of enforcement and/or collection of any judgment or other relief.

23.15    Each provision of this Lease shall be separate and independent and the breach of any provision by Landlord shall not discharge or relieve Tenant from any of Tenant's obligations, except to the extent Tenant has duly performed any such obligations of Tenant. Each provision shall be valid and shall be enforceable to the extent not prohibited by law. If any provision or its application to any persons or circumstance shall be invalid or unenforceable, the remaining provisions, or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable shall not be affected. Subject to Section 23.6, all provisions contained in this Lease shall be binding upon, inure to the benefit of, and shall be enforceable by the successors and assigns of Landlord to the same extent as if each such successor and assign were named as a party to this Lease. Subject to Section 17, all provisions contained in this Lease shall be binding upon the successors and assigns of

Tenant and shall inure to the benefit of and be enforceable by the successors and assigns of Tenant, in each case to the same extent as if each such successor and assign were named as a party.

23.16    The relationship of the parties to this Lease is landlord and tenant. Landlord is not a partner or joint venturer with Tenant in any respect or for any purpose in the conduct of Tenant's business or otherwise.

23.17    It is expressly agreed that this Lease shall not be recorded in any public office, however, simultaneously with the execution of this Lease, the parties shall execute and acknowledge a memorandum of this Lease (together with any affidavit or other instrument required in connection therewith) which shall be recorded containing the highlighted language set forth in Section 10.2 of this Lease. Within 10 days following the expiration or sooner termination of this Lease, Tenant shall execute and deliver to Landlord an instrument, in recordable form, confirming the termination of this Lease which instrument, at Landlord's option, may be placed of record in the real estate title records in the county in which the Premises are located and the cost of recording such instrument shall be shared equally by Landlord and Tenant. Tenant's obligations under the immediately preceding sentence hereof shall survive the expiration or sooner termination of this Lease.

23.18    Each person executing this Lease on behalf of Landlord does hereby represent and warrant that: (a) each entity, if any, comprising Landlord is duly organized and in good standing in the State of its organization and, if different, qualified to do business and in good standing in the State in which the Premises are located, (b) each entity, if any, comprising Landlord has full lawful right and authority to enter into this Lease and to perform all its obligations hereunder, and (c) each person (and all of the persons if more than one signs) signing this Lease on behalf of Landlord is duly and validly authorized to do so. Tenant may, in its discretion, deduct from the Base Rent, and pay directly to the applicable governmental authorities, any recurring organizational expenses and complete any recurring organizational filings, for and on behalf of the Landlord which are necessary to maintain the organizational existence of the Landlord or any one or more constituent entities constituting Landlord.

23.19    Each person executing this Lease on behalf of Tenant does hereby represent and warrant that: (a) such person is a corporation duly organized and in good standing in the State of its organization and, if different, qualified to do business and in good standing in the State in which the Premises are located, (b) Tenant has full lawful right and authority to enter into this Lease and to perform all of its obligations hereunder, and (c) each person signing this Lease on behalf of Tenant is duly and validly authorized to do so.

23.20    Except with respect to a default or breach under Section 23.6, Tenant shall look solely to Landlord's interest in the Premises (including any proceeds from the sale thereof and all insurance proceeds and condemnation awards relating thereto) for the recovery of any judgment against Landlord on account of Landlord's breach of any of Landlord's covenants or obligations under this Lease. Except with respect to a default or breach under Section 23.6, Landlord, and the directors, officers, partners, members, employees and agents of Landlord, shall never have any personal liability for any breach of any covenant or obligation of Landlord under this Lease and no recourse shall be had or be enforceable against the assets of Landlord other than the interest of Landlord in the Premises (including any proceeds from the sale thereof and all insurance proceeds and condemnation awards relating thereto) for payment of any sums due to Tenant or enforcement of any other relief based upon any claim made by Tenant for breach of any of Landlord's covenants or obligations under this Lease. Tenant's right to recover for a breach or default under Section 23.6 shall not be limited or restricted in any way and, with respect to any such breach or default under Section 23.6, Tenant shall have the right to pursue any and all remedies available to Tenant against Landlord or its members and managers.

23.21    At least as frequently as at the end of each calendar quarter during the Term of this Lease, Tenant shall deliver to Landlord (a) an operating statement with respect to the Premises for such quarter, (b) a rent roll as of the last day of such quarter setting forth each sublease of the Premises, the rent payable under each such sublease and the expiration date of each such sublease, (c) a report describing any structural alterations that have been made to the Premises during such quarter and the costs thereof, (d) Capital Expenses incurred with respect to the Property, and (d) a current list of all persons or parties that, to Tenant's best knowledge, constitute Landlord under this Lease. Tenant shall also provide to Landlord such other reports with respect to the Premises as may be required under the Permitted Mortgage. Except as otherwise required pursuant to the Permitted Mortgage, Landlord agrees that any information provided to it pursuant to this Section 23.21 shall remain confidential and shall not, except as otherwise required by applicable law or judicial order, be disclosed to anyone except (i) Landlord's employees, attorneys and

financial consultants (ii) any potential purchasers of the Premises or an undivided tenant in common interest in the Premises, (iii) any potential lender associated with any possible refinancing of the loan secured by the Permitted Mortgage, and (iv) to the extent required under the Permitted Mortgage, to the holder of the Permitted Mortgage.

23.22    Subordination. Landlord has executed and delivered, or may hereafter from time to time execute and deliver, a Permitted Mortgage. This Lease and Tenant's interest in this Lease shall be subordinate to the Permitted Mortgage, and to any and all advances made thereunder and to the interest thereon, and to all renewals, replacements, supplements, amendments, modifications and extensions thereof unless Lender elects to make certain of Tenant's rights and interest in this Lease superior thereto; and Tenant will promptly execute and deliver such agreement or agreements as may be reasonably required by the Lender. Tenant covenants it will not subordinate this Lease to any mortgage or trust deed other than the Permitted Mortgage without the prior written consent of the Lender.

23.23    Liability of Lender; Attornment. It is further agreed that (a) if any Permitted Mortgage shall be foreclosed, (i) the Lender (or its grantees) or purchaser at any foreclosure sale (or grantee in a deed in lieu of foreclosure), as the case may be, shall not be (x) liable for any act or omission of any prior landlord (including Landlord), (y) subject to any offsets or counterclaims which Tenant may have against a prior landlord (including Landlord), or (z) bound by any prepayment of Rent which Tenant may have made in excess of the amounts then due for the next succeeding month; (ii) the liability of the Lender or the purchaser at such foreclosure sale or the liability of a subsequent owner designated as Landlord under this Lease shall exist only so long as the Lender, purchaser or owner is the owner of the Premises, and such liability shall not continue or survive after further transfer of ownership; (iii) upon request of the Lender, if the Permitted Mortgage shall be foreclosed, Tenant will attorn, as Tenant under this Lease, to the purchaser at any foreclosure sale under any Permitted Mortgage, and Tenant will execute such instruments as may be necessary or appropriate to evidence such attornment; and (b) this Lease may not be modified or amended so as to reduce the payment obligations hereunder or shorten the Term provided hereunder, so as to change or eliminate any provision of Sections 23.22, 23.23, 23.24, 23.25, 23.26, 23.27, 23.28, and 23.29, or so as to otherwise adversely affect any rights of Lender under this Lease or with respect hereto, or so as to adversely affect in any other respect to any material extent the rights of Landlord or Tenant, nor shall this Lease be cancelled or surrendered, without the prior written consent, in each instance, of the Lender.

23.24    Modification Required by Lender. Should any Lender require a modification or modifications of this Lease, which modification or modifications will not cause an increased cost or expense to Landlord or Tenant or in any other way materially change the rights and obligations of Landlord or Tenant hereunder, Landlord and Tenant agree that this Lease may be so modified and agree to execute whatever documents are required therefor and deliver the same to Landlord within ten (10) days following the request therefor.

23.25    Estoppel Certificate. Tenant agrees that, from time to time upon not less than 10 days' prior request by Landlord or the Lender, Tenant (or any permitted assignee, subtenant, licensee, concessionaire or other occupant of the Premises claiming by, through or under Tenant) will deliver to Landlord, or to the Lender, a statement in writing signed by Tenant certifying (a) that this Lease is unmodified and in full force and effect (or if there have been modifications, that this Lease as modified is in full force and effect and identifying the modifications); (b) the date upon which Tenant began payments hereunder and the dates to which the payments due hereunder and other charges have been paid; (c) that Landlord has not breached any provision of this Lease, or, if breach exists , the nature thereof in detail; (d) that Tenant is in possession and paying Rent on a current basis with no rental offsets or claims; (e) that there has been no prepayment of Rent other than that provided for in this Lease; (f) that there are no actions, whether voluntary or otherwise, pending against Tenant under the bankruptcy laws of the United States or any state thereof; and (g) such other matters as may be required by Landlord or the Lender.

23.26    Communications with Lender. Tenant shall have the right to communicate with the Lender on behalf of the Landlord and to handle all day to day administration on behalf of the borrowers under the terms of the Permitted Mortgage. Without limitation of the foregoing, Tenant shall provide to Lender all reports and other information required pursuant to the terms of the Permitted Mortgage and to request Lender's approval for any matters requiring such approval in accordance with the terms of the Permitted Mortgage.

23.27    Notices and Service of Process. Landlord, including each Tenant in Common that hereafter becomes a Landlord, hereby designates Tenant as the party to receive all notices (including but not limited to service

of process) on behalf of Landlord pursuant to any documentation entered into with respect to the Premises in accordance with this Lease, including all notices from the Lender pursuant to the terms of the Permitted Mortgage. Upon receipt of such a notice, Tenant shall forward a copy of such notice to the Landlord at the last address provided to Tenant on the signature page of the Lease. Such address may be changed from time to time by a Tenant in Common by a notice given to Tenant in accordance with Section 23.7 hereof.

23.28    _Third Party Beneficiary_.  Any Lender from time to time is hereby expressly intended to be a third party beneficiary of the provisions contained herein.

23.29    _Short Form Lease_.  Should any Lender require execution of a short form of lease for recording (containing the names of the parties, a description of the Premises and the Term) or a certification from Tenant concerning this Lease in such form as may be required by a Lender, Tenant agrees to promptly execute such short form of lease or certificate and deliver the same to Landlord and Lender within 10 days following the request therefor; provided, however, that neither Landlord nor Tenant shall be liable for or otherwise be required to pay any recording costs, fees or taxes other than minimal instrument and per page charges.

23.30    _Capitalization of Tenant; Lease Guaranty_.  DBSI Master Leaseco, Inc. has a capitalization of $15,400,000.  DBSI Master Leaseco, Inc. is permitted and has loaned money to its Affiliates in connection with the acquisition of real property to be syndicated in offerings of tenant in common interests; provided, however, that such loans must be repaid in full within 180 days of the date such loan is funded, and that if any such loan is not repaid within 180 days of the date on which it is funded, DBSI Housing Inc. will, within the 180 day period, make an additional capital contribution to DBSI Master Leaseco, Inc. in an amount equal to the outstanding principal balance of such unpaid loan.  DBSI Housing Inc. shall also provide the Lease Guaranty in the form attached hereto as Exhibit D.

23.31    The Table of Contents and title headings are inserted for convenience only, and do not define or limit, and shall not be used to construe, any section to which they relate.

IN WITNESS WHEREOF, Landlord and Tenant have hereunto set their respective hands the day and year first above written.

LANDLORD:

DBSI Colonnade West Lake LLC,
a Delaware limited liability company

By:    DBSI Housing Inc.,
Its:    Sole Member

By:_____
Name: Jeremy Swenson
Title:  Assistant Secretary

TENANT:

DBSI Master Leaseco, Inc.,
an Idaho corporation

By:_____
Name:  Jeremy Swenson
Its:  Assistant Secretary

For purposes of acknowledging its obligation under Section 23.30 only, the undersigned hereby enters into this lease as of the date first written above.

DBSI Housing Inc.

By:_____
Name:    Jeremy Swenson
Title:    Assistant Secretary

## EXHIBIT A

PERMITTED EXCEPTIONS

[Include Permitted Mortgage]

Legal Description

BEING a tract or parcel of land situated in the David Harris Survey, Abstract No. 26 and being out of and a part of Reserve "E", (restricted to commercial use) in Block One (1), of ATASCA WOODS, SECTION ONE (1), a subdivision in Harris County, Texas, according to the Map or Plat thereof recorded at Film Code No. 438134, of the Map Records of Harris County, Texas, and described as Tract 1; Tract 2, an Access and Parking Agreement recorded under H.C.C.F. No. X726563; Tract III benefiting Tract 1 recorded under H.C.C.F. No. U300001. Said tract or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a 5 / 8 inch iron rod found in the Northerly right-of-way line of Aerobic Drive, for the Southeast corner of a Lot 67, Block One (1), of said Ataswoods, Section One (1);

THENCE North, along the Easterly lines of said Block One (1) of Ataswoods, Section One (1), same being the Westerly lines of said Reserve "E", a distance of 350.82 feet to a 5/8" iron rod found at the Northeast corner of Lot 62 in said Block One (1) for a Westerly corner of the herein described tract of land;

THENCE North 69 degrees 01 minutes 07 seconds East, along the Southerly lines of Lots 60-57 of said Block One (1), a distance of 227.14 feet to an interior corner of the herein described tract of land;

THENCE North 00 degrees 16 minutes 35 seconds West, along the Easterly lines of Lots 50-57 in Block One (1) of said Ataswoods, Section One (1), a distance of 435.62 feet, to a 5/8" iron rod found for the Northwest corner of the herein described tract of land;

THENCE 89 degrees 43 minutes 25 seconds East, departing the above referenced Easterly line of Ataswoods, Section One (1), a distance of 305.00 feet, to a 5/8" iron rod found in the Westerly right-of-way line of West Lake Houston Parkway (100' R.O.W.), for the Northeast corner of the herein described tract of land;

THENCE South 00 degrees 16 minutes 35 seconds East, along said right-of-way line, a distance of 638.63 feet to a 5/8" iron rod found for the most Easterly Southeast corner of the herein described tract of land;

THENCE South 89 degrees 43 minutes 25 seconds West, departing said right-of-way line, a distance of 54.70 feet, to a 5/8" iron rod found for corner;

THENCE South 69 degrees 43 minutes 26 seconds West, a distance of 232.24 to a 5/8" iron rod, found for corner;

THENCE South 00 degrees 16 minutes 34 seconds East, a distance of 145.10 feet, to a 5/8" iron rod, found in the aforesaid Northerly right-of-way line of Aerobic Drive, for the most Southerly Southeast corner of the herein described tract of land;

THENCE South 86 degrees 39 minutes 29 seconds West, along said Northerly right-of-way line, a distance of 85.45 feet, to a 5/8" iron rod found for the point of curvature of a curve to the right having a central angle of 03 degrees 48 minutes 51 seconds, a radius of 500.00 feet and a chord bearing and distance of South 88 degrees 33 minutes 54 seconds West, 33.28 feet;

THENCE continuing along said right-of-way line and curve to the right, an arc distance of 33.28 feet, to a 5/8" iron rod found for the point of tangency;

THENCE North 89 degrees 31 minutes 40 seconds West, continuing along said right-of-way line, a distance of 127.63 feet, to the POINT OF BEGINNING and containing 6.753 Acres, 294,163 square feet of land.

EXHIBIT C

RENT

(a)    **Base Rent**

Base Rent will be $321,685 for the first year, and will increase annually by 1% of the prior year's amount, to a maximum of $388,631 in year 20; provided, that, to the extent the Landlord's capital investment in the Property is reduced as a result of repayment of principal other than as a result of regular monthly loan amortization, the Base Rent payable by the Tenant shall be correspondingly reduced to result in an equivalent return on capital to the Landlord.

(b)    **Additional Rent**

Additional Rent due under this Lease shall be a combination of: (i) such amounts described as Additional Rent in the body of the Lease, and (ii) the debt service (principal and interest) due under the Permitted Mortgage (or any replacement financing). Payment of the monthly tax and insurance impounds by Tenant shall be deemed to be satisfaction of its obligation to pay any such related Impositions directly.

(c)    **Adjustments**

In the event that the amount of the principal and interest components (the "P&I Components") of the Additional Rent are increased above the original amount established under the Permitted Mortgage (the "Anticipated P&I"), as a result of a refinancing not approved by the Tenant, other than as a result of an event of default caused by the Tenant, any such increase in the P & I Components shall be paid by Landlord. Tenant shall remain responsible for any increase in, and be entitled to retain for its own account any decrease in, any monthly impound or monthly reserve installments due the lender under the Permitted Mortgage.

## EXHIBIT D

## GUARANTY

In order to induce each Tenant in Common (each a "TIC" and collectively the "TICs") to enter into that certain Master Lease Agreement dated Nov 21, 2006 (the "Lease") between Landlord (as defined in the Lease) and DBSI Master Leaseco, Inc., an Idaho corporation ("Tenant"), by and through approval of the Master Lease under Section 2 of the Tenant In Common Agreement dated _____, 2006, which has been or will be executed by each TIC based upon the representations and obligations contained herein, and in consideration of the benefits inuring to the undersigned (the "Guarantor") under the Lease and sale of the Premises (as defined in the Lease) to the TICs, the receipt and sufficiency of which is represented by the Guarantor to Landlord to be sufficient and adequate, the Guarantor hereby unconditionally guarantees the performance of all of Tenant's obligations under the Lease, including, without limitation the payment of Base Rent, Reserve Account Payments and Additional Rent (as such terms are defined in the Lease) as providing therein. This Guaranty shall remain in full force throughout the original Lease term and any renewals thereof.

Guarantor hereby waives notice of acceptance of this Guaranty and all other notices in connection herewith or in connection with the liabilities, obligations and duties guaranteed hereby, including notices to them of default by Tenant under the Lease, and hereby waive diligence, presentment, protest, and suit on the part of Landlord in the enforcement of any liability, obligation or duty guaranteed hereby.

Guarantor further agrees that Landlord shall not be first or concurrently required to enforce against Tenant or any other person, any liability, obligation or duty guaranteed hereby before seeking enforcement thereof against. The liability of Guarantor shall not be affected by any indulgence, compromise, settlement or variation of terms which may be extended to Tenant by Landlord, or agreed upon by Landlord or Tenant, and shall not be affected by any assignment or sublease by Tenant of its interest in the Lease, nor shall the liability of the Guarantor be affected by the insolvency, bankruptcy (voluntary or involuntary), or reorganization of Tenant, nor by the voluntary or involuntary liquidation, sale, or other disposition of all or substantially all of the assets of Tenant. Landlord and Tenant, without notice to or consent by Guarantor, may at any time or times enter into such modifications, extensions, amendments, or other covenants respecting the Lease as they may deem appropriate and Guarantor shall not be released thereby, but shall continue to be fully liable for the performance of all obligations to which this Guaranty applies.

Guarantor shall not sell, lease, transfer, mortgage, abandon or otherwise dispose of any of Guarantor's properties or assets, except in the ordinary course of business and unless the reduction in the net worth of Guarantor, after giving effect to such transaction, would not materially affect Guarantor' ability to perform their obligations under this Guaranty.

Guarantor further agree (1) to indemnify and hold harmless the Landlord from and against any claims, damages, expenses, or losses, including to the extent permitted by law, the reasonable fees of an attorney, resulting from or arising out of a breach of the Lease by Tenant to which this Guaranty applies, and (2) to the extent permitted by law, to pay any costs or expenses, including the reasonable fees of an attorney, incurred by Landlord in enforcing this Guaranty.

Guarantor acknowledges that the TICs may, by simple majority vote or consent, appoint one of them or a third-party attorney or agent, to prosecute the TICs rights hereunder and such party shall be entitled to bring any suit, action or proceeding against the undersigned for the enforcement of any provision of this Guaranty on behalf of all TICs and it shall not be necessary in any such suit, action or proceeding to make each TIC a party thereto.

This Guaranty is not assignable, and shall be binding upon Guarantor, its legal representatives, permitted successors and assigns, and shall inure to the benefit of Landlord and its successors and assigns on a pro rata basis, calculated upon each TIC owner's fee interest in the Premises. This Guaranty shall be governed by and construed and enforced in accordance with the laws of the State of Idaho.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed this 21 day of Nov, ___, 2006.

DBSI Housing Inc.,
an Idaho corporation,

By: _____
Name: _Jeremy Swenson_____
Title: _Assistant Secretary__