UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

JUDGE PETER J. WALSH                                                                                       824 MARKET STREET
                                                                                                          WILMINGTON, DE 19801
                                                                                                             (302) 252-2925

March 6, 2009

Stephen I. Burr
Foley & Lardner LLP
111 Huntington Avenue
Boston, Massachusetts 02199

**Re:  DBSI, Inc.**
      **Case No. 08-12687**

Dear Mr. Burr:

　　　　This is with respect to your February 27, 2009 letter which was in response to Mr. Sauther's February 20, 2009 letter to me relating to the "accountable reserves."

　　　　While your February 27, 2009 letter is helpful, it raises a number of questions that I believe need further clarification. At the outset, I wish to make clear that I do not have a full understanding of how these TIC property arrangements operate, but I assume that the appropriate Master Lessee controls the application of funds that impact the amount of the "accountable reserves." There may be in some of the pleadings in this chapter 11 case a copy of a standard Master Lease. However, I do not believe I have ever examined any such document; hence my inquiries here may reflect some ignorance of the content of those documents. Incidently, as I advised Mr. Nestor in my February 20, 2009 letter

to him, I have received quite a number of complaining letters over the last several months regarding the "accountable reserves." I recently received a March 2, 2009 letter from a Barbara A. Robbins regarding her understanding (as reflected in various attachments to her letter) of the "accountable reserves" issue. That letter (Doc. # 2240) gives me some further understanding of the issue.

       Here are my comments and questions:

   (1) Your letter makes clear that the term "accountable reserves" "was never intended to refer to a segregated bank account . . . but rather to refer to an accounting entry in the liability section of the Master Lessee's balance sheet reflecting an obligation of the Master Lessee to pay certain property expenses . . . . " (Doc. # 2117, p. 1.) You further note that the reserve is "a line item liability on the Master Lessee's balance sheet, as a general unsecured obligation to the owners of the property." (Doc. # 2117, p. 1.) That statement appears to be inconsistent with Ms. Robinson's statement in her March 2, 2009 letter: "These Accountable Reserves stick with the property and then, years later, if the property is sold or the master lease is ended, the balance in the account is given back to the owners after the property changes hands." (Doc. # 2240, p. 1.) Do you agree that that statement is not consistent with your statements? Please explain.

   (2) What restrictions, if any, were on the officers and/or directors of the Master Lessee regarding the use of cash or other

3

assets that bear upon the amount of the "accountable reserves" liability at any given time?  In that regard, does the Master Lessee owe a fiduciary duty to the TIC owners?

(3)  Your letter states: "Upon the sale of the property, any amounts remaining on the line item reserve would be credited (i.e. returned) to the owners."  (Doc. # 2117, p. 2.)  Would that also be the case upon the termination of, or assumption and assignment of, the related Master Lease?  Since on page 1 of your letter you state that the reserve is "a general unsecured obligation to the owners of the property," how does that reserve get returned to the owners?  Does this not assume that the Master Lessee's balance sheet reflects available cash (or other assets) sufficient to effect that return?

(4)  In paragraph 3 you state that "to the extent there was any meeting of the minds, it was as set forth in the PPMs and memorialized and signed in the Master Leases."  (Doc. # 2117, p. 2.)  What do the Master Leases say regarding this meeting of the minds relative to the "accountable reserves"?

(5)  As I understand it, the "accountable reserves" reflects the amount of money received by the Master Lessee either from the TIC investors or the TIC lenders at the commencement of the venture.  Please advise.

(6)  In paragraph 4(a) you take exception to Mr. Sauther's statement that "the accountable reserves . . . were the property of

4

the investor owners." (Doc. # 2117, p. 2.) However, it is my understanding that the monies for the reserves came from the TIC owners investment and/or from the TIC lenders to whom the TIC owners are liable. How is Mr. Sauther not correct in his statement?

(7) In paragraph 4(b) you quote Mr. Sauther as stating that "the accountable reserves . . . were only to be used for tenant improvements, leasing commissions and capital improvements specific to the property." You state: "There is no such statement in the PPMs." However, Mr. Sauther's February 20, 2009 letter has an attachment captioned "Estimated Use of Proceeds," which I assume is a page from a PPM. In note 6 of that attachment it states: "Accountable reserves for tenant improvements, leasing commissions and capital improvements cannot be used for operations . . . ." Is not that statement tantamount to what Mr. Sauther stated in his letter?

(8) In paragraph 4(d) you contest Mr. Sauther's statement that "the accountable reserves . . . were not to be used for operational purposes of DBSI, Inc." (Doc. # 2117, p. 3.) Is that not what the above quoted statement from Mr. Sauther's PPM says? In paragraph 4(d) you further state: "The only charges against accountable reserves were for tenant improvements, leasing commissions and capital expenditures . . . ." I assume that those

charges relate solely to the particular property for which the accountable reserves were established.  Please advise.

(9)  With respect to each of the TIC deals, can we assume that at any given time the applicable Master Lessee held available funds equal to the applicable "accountable reserves" liability at that time?  If so, will those funds be viewed as trust fund monies or will the TIC owners only be deemed general unsecured creditors of their respective Master Lessee debtor?

(10) Were the "accountable reserves" impacted by the sale of Master Leases or the rejection of Master Leases, and if so, how?

The bottom line question is: Can you confirm with respect to each of the TIC deals that no funds have been expended by the Master Lessee in a manner that is inconsistent with, or that has adversely impacted on, the right of the TIC owners to have returned to them an amount equal to the "accountable reserve" at the commencement of the venture, minus that which has been expended on tenant improvements, leasing commissions and capital improvements related to the subject property?  If so confirmed, with respect to each of the TIC deals, will the extant "accountable reserves" amount be returned to the TIC owners?

                                        Very truly yours,

                                        /s/ Peter J. Walsh

                                        Peter J. Walsh

PJW:ipm

cc:  Michael R. Nestor
     Donald J. Detweiler
     Mr. Jack Sauther