

**FOLEY**

FOLEY & LARDNER LLP

ATTORNEYS AT LAW

ONE DETROIT CENTER
500 WOODWARD AVENUE, SUITE 2700
DETROIT, MI 48226
TELE: 313.234.7100

November 18, 2009

<u>VIA OVERNIGHT DELIVERY</u>

Client/ Matter
086253-0172

Honorable Peter J. Walsh
United States Bankruptcy Court
District of Delaware
824 Market Street
Wilmington, DE 19801

   Re: DBSI, Inc. – "Accountable Reserves" Issue
      Case No. 08-12687

Dear Judge Walsh:

  We are writing to you regarding our previous correspondence with the Court concerning DBSI, Inc. ("DBSI") and the "accountable reserves" issue. This letter is sent to provide necessary modifications and supplementation to our previous communications with Your Honor.[1]

  The prior course of correspondence with the Court began on February 20, 2009 when the Court sent a letter to DBSI's bankruptcy counsel requesting a response to a letter from a Tenant in Common investor who was "complaining about DBSI's handling of 'accountable reserves.'" (Feb. 20, 2009 Letter from the Court to M. Nestor). Following the Court's February 20, 2009 Letter, Foley & Lardner LLP ("F&L") and the Court exchanged additional letters regarding the "accountable reserves" issues, including a letter from F&L to the Court on February 27, 2009, a letter from the Court to F&L on March 6, 2009, and finally a letter from F&L to the Court on March 12, 2009.

  As F&L noted in its February 27, 2009 and March 12, 2009 correspondence, F&L's statements to the Court were based on the research conducted as of the dates of its letters as well as a review of a limited amount of offering documents and certain factual information received from DBSI as of the dates of its letters. Subsequent to the exchange of correspondence with the Court, F&L conducted additional factual and legal research regarding the "accountable reserves" issues. Based on that additional research, as mentioned above, we now supplement our prior correspondence to the Court in the following respects.

---

[1] A draft of this letter was sent to the Trustee. The Trustee did not authorize, approve, direct or object to this letter.

BOSTON JACKSONVILLE MILWAUKEE SAN DIEGO SILICON VALLEY
BRUSSELS LOS ANGELES NEW YORK SAN DIEGO/DEL MAR TALLAHASSEE
CHICAGO MADISON ORLANDO SAN FRANCISCO TAMPA
DETROIT MIAMI SACRAMENTO SHANGHAI TOKYO
                      WASHINGTON, D.C.

LACA_2370397.6


FOLEY & LARDNER LLP

Honorable Peter J. Walsh
November 18, 2009
Page 2

1. **Wide Variance of Relevant Language**

Our prior letters were based on a review of a limited number of offering documents, specifically those about which questions or concerns were raised by investors or your Honor. We have now reviewed at least the potentially material provisions of the offering documents of 209 tenant in common offerings by DBSI and its affiliates, which were all the offering documents which could be located by DBSI. Of these 209 offerings, 131 were so-called real estate (i.e., not securities) offerings by For 1031 LLC, Spectrus or other DBSI affiliates. These offering documents were in the form of a "Due Diligence Binder" ("DDB"), not in the form of a securities private placement memorandum ("PPM"). While the offerings conducted through a DDB ("DDB Offerings") included an equivalent of a master lease as described in our letters, this master lease was referred to as a "NNN Lease." The remaining 78 offerings which were reviewed were conducted as securities, not real estate offerings, utilizing a PPM and a document designated as "Master Lease."

In our earlier letters to the Court, we used the terms "PPM" and "Master Lease" in a generic sense. Those words were intended to refer to both PPMs and DDBs, and to both NNN Leases and Master Leases. What our subsequent research has indicated is that there were significant differences between the DDB offerings and the PPM offerings as to the manner in which the issue of accountable reserves was addressed. One example of those differences is that while in the DDB offerings the NNN Leases contained the language about accountable reserves discussed in our letters, in the PPM offerings the Master Leases did not contain any discussions of the accountable reserves. In other words, in the PPM offerings the only document which made any reference to accountable reserves was the PPM itself, not the Master Lease.

There were also significant differences in the manner in which the subject of accountable reserves was addressed within the DDB offerings and PPM offerings. For example, with respect to the DDBs, only 45 have a description of accountable reserves in a footnote to the "Estimated Use of Proceeds" table. Similarly, only 44 of the 78 PPMs contain such a footnote.

In light of our prior correspondence, we felt it important to bring to the Court's attention that such differences exist, and to the extent our prior letters on this subject may create the impression that there were no differences in the manner in which the accountable reserves were addressed across all DBSI offerings, we wanted to correct that impression.

2. **"No Fiduciary Duty/No-Commingling"**

Our further research revealed one disclosure that appeared in about 30% of the DBSI offerings we have now reviewed (i.e. 65 of the 209 offerings). This language was found only in the PPMs, not the DDBs, and reads as follows:



### FIDUCIARY DUTIES OF THE COMPANY AND DBSI HOUSING INC.

None of the Company, DBSI Housing Inc. or any Tenant in Common will have a fiduciary duty to the other Tenants in Common, as would be applicable to an investment in a corporation, limited liability company or partnership. Similarly, DBSI Housing Inc. will not have a fiduciary duty to the Purchasers under the Master Lease.

The funds of the Company will not be commingled with the funds of any other person or entity except for operating revenues from the Property.

(See, e.g., Atlantic Boulevard PPM, at 39, attached as Ex. A.)

Given that this language was not referenced in our prior responses to the Court, we wanted to make the Court aware of its existence in some of the PPMs.

Should your Honor have any questions regarding the foregoing, we would be pleased to address them. Thank you for your continued time and attention to this matter.

Respectfully submitted,

Stephen I. Burr

Salvatore A. Barbatano

cc: Honorable James R. Zazzali
Richard L. Schepacarter
Anthony M. Gruppuso
Michael R. Nestor

**Net Worth of DBSI Housing Inc.**

As of the date of this Memorandum, DBSI Housing Inc. represents, and at the closing of subscriptions for the Interests, DBSI Housing Inc. will represent, that it has an unaudited net worth in excess of $70,000,000. Prospective Purchasers should be aware that most of the available net worth of DBSI Housing Inc. is in the form of nonliquid and noncurrent assets, consisting of interests in limited partnerships and limited liability companies with extensive real estate interests and extensive interests in other operating business entities. DBSI Housing Inc. also has substantial contingent liabilities by virtue of its general partner position in numerous partnerships and its guarantee of numerous bond offerings and other debts secured by various of the controlled real estate and other interests (and such debt has been deducted in computing the estimated net worth available to DBSI Housing Inc.) including properties requiring master lease payments to tenant in common owners. DBSI Housing Inc. represents that the aggregate master lease payments due are currently less than the aggregate subtenant lease payments collected at the properties. See Exhibit E, "Financial Statement of DBSI Housing Inc.; Prior Performance Schedule."

**Loan History**

Since 1999, DBSI Housing Inc. and its Affiliates have entered into, or taken property subject to, 101 loans totaling approximately $198 million. As of the date of this Memorandum, 26 of those loans, totaling $58,200,178, have been satisfied in full. Since 1979, DBSI Housing Inc. and its Affiliates have never had any lender foreclose on a property securing a loan, nor has DBSI Housing Inc. or any of its Affiliates filed for bankruptcy.

## PRIOR PERFORMANCE

See Exhibit E, "Financial Statement of DBSI Housing Inc.; Prior Performance Schedule," for a description of the financial condition, current assets and liabilities, balance sheet and Prior Performance of DBSI Housing Inc.

---

**FIDUCIARY DUTIES OF THE COMPANY AND DBSI HOUSING INC.**

None of the Company, DBSI Housing Inc. or any Tenant in Common will have a fiduciary duty to the other Tenants in Common, as would be applicable to an investment in a corporation, limited liability company or partnership. Similarly, DBSI Housing Inc. will not have a fiduciary duty to the Purchasers under the Master Lease.

The funds of the Company will not be commingled with the funds of any other person or entity except for operating revenues from the Property.

---

# EXHIBIT A