Jane N. Braga
20965 O'Brien Court
Sonora, CA 95370

July 5, 2010

United States Bankruptcy Court
For the District of Delaware
824 North Market Street
3rd Floor
Wilmington, Delaware 19801

Chapter 11
Case No. 08-12687 (PJW)
In re: DBSI, Inc., et. al.

As former DBSI investor in FOR 1031 Quorum LLC I am writing to update the
court of our situation given the actions of the DBSI administrative officers, i.e.
Doug Swenson, et. al.

In 2004 we invested $890,000 with FOR 1031 in Quorum LLC. We owned an 8.9%
interest in the property. Our return was $5,000 a month. Our contract stated
that the loan Doug Swenson secured for the property was a nonrecourse loan. This
was intended as our retirement income. My husband was a financial advisor for
American Express. I am a public schoolteacher. In September of 2008 we
received a phone call from another investor in the Quorum property informing us
of financial problems with the property and with DBSI in general. Subsequently,
we learned that FOR 1031/DBSI neglected the Quorum property; that they used
monies from other properties to pay us our returns; that they refinanced the
property at the end of 2008 removing FOR 1031 as the party responsible for the
$10 million dollar loan and naming the investors as the responsible parties,
unbeknownest to us; and DBSI filed for bankruptcy.

One may ask, What is the human cost of this debacle? Let me share with you the
cost to us. In 2006 my husband retired. In June of 2008 he was diagnosed with
Alzheimer's Disease. When the failure of DBSI eliminated our $5000 monthly
income my husband was disabled, not able to return to work. We now survive on my

teacher's salary. I am hoping to refinance the loan on our home through the government program. We struggle to make ends meet. I need to work as long as I can to try to increase my Teacher's Retirement. Unfortunately, at a time when my husband needs my help and support more than ever, my time and energies are spent trying to maintain our financial security. It is best for my husband to stay in familiar environments as change is difficult for Alzheimer's patients but we are looking at the possibility of having to move if we cannot afford to stay in our home. Without our additional retirement income I cannot afford to retire and look after my husband.

I am very angry and resentful of the actions of the operating officers of DBSI. Did they ever once stop to think about what impact their careless actions would have on their investors? Our lives are forever changed due to their reckless decisions. Ours is just one of the many stories of the lives these people have altered.

It has become clear that their actions and the subsequent bankruptcy of DBSI was not an accident nor was it the result of bad luck. Decisions were deliberately made to defraud and/or cheat their investors. From the beginning DBSI seems to have been aware that the investments they were marketing were Securities Investments which fell under very different guidelines than the ones they used. They refinanced our property changing the loan from nonrecourse to recourse, in direct contradiction of the contract we had signed. They neglected repairs to the property and they did not seek tenants for a year. Even at the end when they were preparing to file for bankruptcy they made no attempt to any fair settlement with investors. Instead they held a phone conference in which they offered to turn over the empty, neglected building to the investors, together with the $10 million bank loan for which we later learned we were now held liable. The actions and decisions of the DBSI Board of Directors were deliberate and calculated. The innocent parties in this situation are the investors. Please keep this in mind in your decisions regarding the fate of DBSI.

Respectfully,

Jane N. Braga