**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| DBSI INC., et al., | Case No. 08-12687 (PJW) |
| | Jointly Administered |
| Debtors. | |

**SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
FILED BY THE CHAPTER 11 TRUSTEE AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

Dated: August 17, 2010

**GIBBONS P.C.**

William R. Firth, III (Bar No. 4356)
1000 N. West Street, Suite 1200
Wilmington, DE 19801-1058
T (302) 295-4875
F (302) 295-4876
E-mail: wfirth@gibbonslaw.com

- and -

Karen A. Giannelli
Mark B. Conlan
Natasha M. Songonuga (Bar No. 5391)
One Gateway Center
Newark, NJ 07102-5310
E-mail: kgiannelli@gibbonslaw.com
E-mail: mconlan@gibbonslaw.com
E-mail: nsongonuga@gibbonslaw.com
T (973) 596-4500
F (973) 596-0545

*Attorneys for James R. Zazzali, Chapter 11 Trustee*

**GREENBERG TRAURIG, LLP**

Donald J. Detweiler (No. 3087)
Sandra G. M. Selzer (No. 4283)
Dennis A. Meloro (No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
T (302) 661-7000
F (302) 661-7360
E-mail: detweilerd@gtlaw.com

and

Michael H. Goldstein
Nathan A. Schultz
Adam M. Starr
2450 Colorado Avenue
Suite 400 East
Santa Monica, CA 90404
T (310) 586-7700
F (310) 586-7800

*Attorneys for Official Committee of Unsecured Creditors*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................... 1

**ARTICLE I**      DEFINED TERMS AND RULES OF INTERPRETATION ......................... 2

    A.      Rules of Construction. ..................................................................... 2

    B.      Defined Terms. ............................................................................... 2

    C.      Rules of Interpretation. ................................................................. 26

    D.      Time Periods .................................................................................. 26

    E.      Exhibits and Schedules .................................................................. 26

**ARTICLE II**     OVERVIEW OF CLASSIFICATION AND TREATMENT OF
               CLAIMS AND INTERESTS ............................................................... 27

    A.      Summary ......................................................................................... 27

    B.      Classification. ................................................................................ 27

    C.      Treatment Satisfies Allowed Claims and Allowed Interests. ........ 77

    D.      Intercompany Claims ..................................................................... 77

**ARTICLE III**    TREATMENT OF UNCLASSIFIED CLAIMS AND INTERESTS ............ 77

    A.      General Administrative Claims ..................................................... 77

    B.      Administrative TIC Rent Claims and Administrative TIC Expense
               Claims ............................................................................................ 78

    C.      Claims Covered by the Cost Allocation and Professional Fees Protocol ...... 78

    D.      Administrative Bar Dates .............................................................. 79

    E.      Priority Tax Claims. ...................................................................... 80

    F.      Statutory Fees. ............................................................................... 80

**ARTICLE IV**     CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
               AND INTERESTS ............................................................................. 81

    A.      Classification and Treatment of Claims and Interest Against all
               Note/Fund Consolidated Debtors. ................................................. 81

    B.      Classification and Treatment of Claims and Interest Against All DBSI
               Consolidated Debtors. ................................................................... 85

    C.      Elimination of Classes .................................................................. 88

    D.      Allowed Claims and Interests ........................................................ 89

    E.      Nonconsensual Confirmation ........................................................ 89

**ARTICLE V**      INTERCOMPANY CLAIMS AND CLAIMS SETTLEMENT ................... 89

|   | A. | Intercompany Claims | 90 |
|   | B. | Global Claims Settlement Between the Plan Debtors | 91 |
| **ARTICLE VI** | | **MEANS OF IMPLEMENTING THIS PLAN** | 93 |
|   | A. | Implementation of the Plan | 93 |
|   | B. | Substantive Consolidation | 93 |
|   | C. | Corporate Action | 96 |
|   | D. | Entity Governance | 96 |
|   | E. | Discharge of the Chapter 11 Trustee and Counsel | 96 |
|   | F. | Dissolution of Official Committee | 97 |
|   | G. | Wind-Down/Abandonment | 97 |
|   | H. | Dismissal of Non-Plan Debtors | 97 |
|   | I. | Nullification of Anti-Assignment or Other Transfer Provisions With Respect to the Transfer of Interests | 98 |
|   | J. | Payment of Administrative and Priority Claims | 98 |
|   | K. | TIC Claims Protocol | 102 |
|   | L. | Note/Fund Claims Protocol | 104 |
|   | M. | Liquidating Trusts | 106 |
|   | N. | Trust Oversight Committee | 117 |
|   | O. | Estate Representative | 118 |
|   | P. | Liability; Indemnification | 118 |
|   | Q. | Retention of Professionals | 118 |
|   | R. | Retention of Causes of Action/Preservation of Rights | 119 |
|   | S. | Successors | 120 |
| **ARTICLE VII** | | **DISTRIBUTIONS UNDER THIS PLAN** | 120 |
|   | A. | Timing of Distributions | 120 |
|   | B. | Reserves | 121 |
|   | C. | Provisions Regarding Distribution | 123 |
|   | D. | Cancellation of Notes and Instruments | 125 |
|   | E. | No Post-petition Interest on Claims | 126 |
|   | F. | No Post-Effective Date Interest on Claims | 126 |
|   | G. | Penalty-Based Claims Disallowed | 126 |
|   | H. | Withholding Taxes | 126 |
|   | I. | Reports | 127 |

**ARTICLE VIII**   CLAIMS ADMINISTRATION AND DISPUTED CLAIMS ..................... 127

   A.       Reservation of Rights to Object to Claims ................................................ 127

   B.       Objections to Claims ................................................................................ 127

   C.       Determination of Claims ........................................................................... 127

   D.       No Distributions Pending Allowance ........................................................ 128

   E.       Claim Estimation ..................................................................................... 128

   F.       Claims Paid or Payable by Third Parties .................................................. 128

   G.       Allowance of Claims Subject to Section 502 of the Bankruptcy Code ....... 129

**ARTICLE IX**   EXECUTORY CONTRACTS AND UNEXPIRED LEASES; D&O OBLIGATIONS AND EMPLOYEE BENEFIT PLANS ........................... 129

   A.       Rejection of Executory Contract and Unexpired Leases ............................ 129

   B.       Rejection of D&O Indemnification Obligations ......................................... 130

   C.       Rejection of Employee Benefit Plan ......................................................... 130

   D.       Rejection Damages Bar Date ..................................................................... 130

   E.       Insurance Policies ..................................................................................... 130

   F.       Surety Bonds ............................................................................................ 131

**ARTICLE X**   CONDITIONS PRECEDENT TO EFFECTIVE DATE; REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION OF THE PLAN ............................................................................................ 131

   A.       Conditions to Confirmation ...................................................................... 131

   B.       Conditions to Occurrence of the Effective Date ........................................ 132

   C.       Waiver of Conditions ................................................................................ 133

   D.       Revocation, Withdrawal, or Non-Consummation of Plan .......................... 133

**ARTICLE XI**   EFFECT OF CONFIRMATION AND INJUNCTION .............................. 133

   A.       Compromise of Controversies .................................................................. 133

   B.       Binding Effect of Plan .............................................................................. 134

   C.       Binding Effect on Claims and Interests ..................................................... 134

   D.       Property Free and Clear ............................................................................ 134

   E.       Plan Injunction ......................................................................................... 134

   F.       Continuation of Existing Injunctions and Stays ........................................ 137

   G.       Limitation of Liability of Exculpated Persons ........................................... 137

   H.       General Releases by Holders of Claims or Interests .................................. 138

   I.       No Effect on Objections to Fee Applications ............................................. 138

J.      Good Faith ................................................................................ 138

**ARTICLE XII**    ADMINISTRATIVE PROVISIONS .......................................... 138

A.      Retention of Jurisdiction ............................................................ 138

B.      Miscellaneous ............................................................................ 140

**ARTICLE XIII**    CONFIRMATION REQUEST .................................................. 147

## EXHIBITS

EXHIBIT 1     DBSI Liquidating Trust Agreement ..........................................................

EXHIBIT 2     DBSI Real Estate Liquidating Trust Agreement ......................................

EXHIBIT 3     DBSI Estate Litigation Trust Agreement ..................................................

EXHIBIT 4     Private Actions Trust Agreement ..............................................................

# PRELIMINARY STATEMENT[1]

The Debtors are a complex web of affiliated organizations, with a historical base of operations that have raised more questions than answers, as detailed at length in the reports filed by the Court-appointed Examiner. The Chapter 11 Trustee and the Official Committee of Unsecured Creditors have worked together to develop this comprehensive Second Amended Joint Chapter 11 Plan of Liquidation, which charts a course for efficiently concluding the Chapter 11 Cases in a manner that maximizes value for all Creditors.

The Plan navigates the factual and legal challenges presented by the Debtors' organizational structure, past and present operations and the realities of the real estate and technology markets in which their remaining assets are concentrated. Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, businesses, results of operations and Assets, as well as a summary and analysis of the Plan. All Holders of Claims against, and Interests in, the Plan Debtors should read the Disclosure Statement and the Plan carefully and consult with their counsel and other applicable professionals before voting to accept or reject the Plan.

By the Plan, the Assets of the Plan Debtors will be marshaled for the benefit of Creditors. Specifically, non-litigation Assets will be allocated to two different trusts: (i) a DBSI Liquidating Trust, for the benefit of the Creditors of the DBSI Consolidated Debtors (generally, the Plan Debtors who were involved in the tenant-in-common operations and investments in the technology corporations); and (ii) a DBSI Real Estate Liquidating Trust, for the benefit of the Creditors of the Note/Fund Consolidated Debtors (generally, the Plan Debtors that issued various debt and equity interests through private placements for the purpose of investing in various real estate and other ventures). A DBSI Estate Litigation Trust will be formed to hold Estate Causes of Action and a Private Actions Trust will be formed to hold Non-Estate Causes of Action. The DBSI Liquidating Trust and the DBSI Real Estate Liquidating Trust will be the beneficiaries of the DBSI Estate Litigation Trust. Among other things, the Plan provides for: (i) the payment in full of Allowed Administrative Claims and Allowed Priority Claims; (ii) the satisfaction, in full, of Allowed Secured Claims; (iii) the distribution to Holders of Allowed General Unsecured Claims of Beneficial Interests in a Trust which entitles them to a Pro Rata share of the assets of such Trust, (iv) the funding of the Trusts to enable them to operate and pursue litigation claims; (v) a global settlement of various intercompany claims and guaranty claims in order to streamline and maximize the recoveries to Creditors; (vi) the substantive consolidation of the DBSI Consolidated Debtors (including DBSI and certain Non-Debtor Affiliates of DBSI), (vii) the substantive consolidation of the Note/Fund Consolidated Debtors; and (viii) the vesting of authority in the Chapter 11 Trustee of the means to implement the foregoing.

**The Plan and the Global Settlement embodied in the Plan represent a proposed compromise resolution of the relief sought by the Chapter 11 Trustee outside the context of the Plan in the Sub Con Motion. Both the Chapter 11 Trustee's proposal of the Plan and the Global Settlement are made in their entirety without prejudice to the Chapter 11**

---

[1] Capitalized terms not otherwise defined shall have the meanings ascribed thereto in Section B of Article I of the Plan.

**Trustee's position, and any position the Creditors' Committee may choose to take, in connection with the Sub Con Motion in the event the Plan is not confirmed.**

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed.  If the Plan is not confirmed, the Bankruptcy Court may order the case dismissed, or converted to a case under chapter 7 of the Bankruptcy Code, or the Plan Proponents or other parties in interest may propose a different plan.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.    Rules of Construction.**

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Article I of the Plan.  Any term used in the Plan that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine.

**B.    Defined Terms.**

1.1    ***Accountable Reserves*** means the portion of the funds paid by the purchasers of tenant-in-common interests intended to be used for certain improvements and maintenance on their tenant-in-common owned properties, which funds were instead treated as mere liabilities and used to meet the daily cash needs of the DBSI enterprise, including, but not limited to, the Accountable Reserves paid by the unit holders in properties whose ownership was held in the form of real estate investment trust or otherwise.

1.2    ***Administrative Claim*** means a Claim for costs and expenses of administration that is allowable and entitled to priority under Sections 503, 507(a)(2) and/or 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any post-petition tax claims, any actual and necessary expenses of preserving the Estate of a Plan Debtor, any actual and necessary expenses of operating the business of a Plan Debtor, and any fees or charges assessed against the Estate of a Plan Debtor under 28 U.S.C. Section 1930.

1.3    ***Administrative Claim Objection Deadline*** shall have the meaning set forth in Article III of this Plan.

1.4    ***Administrative Rent Claims*** means collectively Administrative TIC Rent Claims and Allowed Administrative TIC Expense Claims.

1.5    ***Administrative TIC Expense Claims*** means a Claim of a supplier of goods or services provided post-petition with respect to a TIC-owned property for which DBSI was the

masterlessee, and as to which TIC-owned property no settlement was consummated pursuant to the Property Cash Settlement Protocol Order.

1.6    ***Administrative TIC Rent Claim*** means a Claim of a TIC Investor for unpaid post-petition rent with respect to a TIC-owned property for which DBSI was the masterlessee, and as to which TIC-owned property no settlement was consummated pursuant to the Property Cash Settlement Protocol Order.

1.7    ***Administrative TIC Rent/Expense Claims Protocol*** means the protocol for payment of Allowed Administrative TIC Rent Claims and Allowed Administrative TIC Expense Claims as described in Article VI of the Plan.

1.8    ***Affiliate*** shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

1.9    ***Allowed*** when used with respect to a Claim against a Plan Debtor or property of a Plan Debtor, means a Claim that is not a Disallowed Claim and: (a) which has been listed on the Schedules of such Plan Debtor as other than disputed, contingent or unliquidated and as to which no proof of Claim or objection has been timely Filed; (b) as to which a proof of Claim has been timely Filed, or deemed timely Filed by order of the Bankruptcy Court, and either (i) no objection thereto has been timely Filed, and no application, motion, complaint or provision to subordinate or otherwise limit recovery has been made (a "*Claim Opposition*") or (ii) the time to File a Claim Opposition has expired and the Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (c) which has been allowed under the provisions of this Plan; (d) which is a Professional Claim for which a fee award amount has been approved by Final Order of the Bankruptcy Court; or (e) which is allowed pursuant to any stipulation of amount and nature of Claim executed by a Trustee and Holder of the Claim on or after the Effective Date.  To the extent the term "Allowed" is used in the Plan with respect to a specified Class of Claims or an unclassified category of Claims (i.e., "Allowed [Class designation/unclassified Claim category] Claim"), the resulting phrase shall mean an Allowed Claim of the specified Class or unclassified category of Claims.

1.10    ***Assets*** means with respect to a specific Plan Debtor and its Estate, and any other Entity whose assets are transferred to a Trust under the Plan, collectively, any and all property of such Plan Debtor or its Estate, or other Entity, of every kind and character, wherever located, whether real or personal, tangible or intangible, and including, without limitation: (i) Cash (including, without limitation, the residual balance of any reserves established under this Plan), (ii) Causes of Action (including, without limitation, Avoidance Actions), (iii) stock, membership, partnership, or beneficial interests in any Debtor or non-debtor Entity, or other person including, but not limited to, the Subsidiary Interests, (iv) such assets as specifically identified elsewhere in the Plan; and (v) all files, books, records and rents, issues, profits and proceeds relating to the foregoing.

1.11    ***Avoidance Action*** means all Causes of Action arising or brought pursuant to Sections 329, 510, 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including without limitation, the avoidance and recovery of preferential and fraudulent transfer claims held by any

Plan Debtor or Consolidated Non-Debtor, whether or not litigation is commenced to prosecute such action.

1.12    ***Ballot*** means the ballot or ballots, the form of which has been approved by the Bankruptcy Court, accompanying the Disclosure Statement provided to each Holder of a Claim entitled to vote to accept or reject this Plan or make another election for treatment of such Claim under this Plan.

1.13    ***Bankruptcy Code*** means title 11 of the United States Code, Sections 101-1532, as now in effect or as hereafter amended, and applicable to the Chapter 11 Cases.

1.14    ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases.

1.15    ***Bankruptcy Rules*** means, as the context requires, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, and/or the local bankruptcy rules for the Bankruptcy Court, and/or the Federal Rules of Civil Procedure, in each case as now in effect or as the same may from time to time hereafter be amended and as applicable to these Chapter 11 Cases.

1.16    ***Bar Date*** means the date or dates established by the Bankruptcy Court as the last date for filing proofs of claim against the Plan Debtors, including those Bar Dates established pursuant to the Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [Docket No. 3206], the Order Amending Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving Manner of Notice Thereof [Docket No. 3624], and any Order entered pursuant to the Property Cash Settlement Protocol Order.  The Plan does not affect or extend any date established by any other Order and the earliest date applicable to the filing or assertion of any Claim shall govern and control.

1.17    ***Beneficial Interest*** means, collectively, or individually if the context requires, the DBSI Liquidating Trust Beneficial Interest and/or the DBSI Real Estate Liquidating Trust Beneficial Interest.

1.18    ***Bond Claims*** means claims for return of principal and interest owing to Holders of bonds issued by DBSI 2001A, DBSI 2001B, DBSI 2001C, DBSI GCC or DBSI REFC.

1.19    ***Business Day*** means any day that is not a Saturday, a Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

1.20    ***Cash*** means cash or cash equivalents, including but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.21    ***Causes of Action*** means, except as provided otherwise in the Plan, the Confirmation Order or any document, instrument, release or other agreement entered into in connection with the Plan, any and all claims, rights of action, proceedings, choses in action,

causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, without limitation, the Avoidance Actions), whether in law or in equity, including, but not limited to, under the Bankruptcy Code, whether known or unknown, matured, unmatured, disputed, undisputed, direct, indirect, secured or unsecured, derivative, or otherwise and whether asserted or unasserted, held by the (a) Plan Debtors, (b) their Estates, (c) any Creditor or holder of an Interest against one or more of the Estates, (d) any Entity whose assets or the ownership interests of which are transferred to a Trust under the Plan, including any Consolidated Non-Debtor, (e) the Chapter 11 Trustee, or (g) a Trustee or Litigation Trustee, including without limitation, an action that is or may be pending on the Effective Date or instituted by a Trustee after the Effective Date against any Person.

1.22    ***Chapter 11 Case(s)*** means, (a) when used with reference to a particular Plan Debtor, the case under Chapter 11 of the Bankruptcy Code commenced by such Plan Debtor in the Bankruptcy Court and jointly administered under Case No. 08-12687 (PJW), and (b) when used with reference to all Plan Debtors, the cases pending under Chapter 11 for the Plan Debtors in the Bankruptcy Court and jointly administered under Case No. 08-12687 (PJW).

1.23    ***Chapter 11 Trustee*** means James R. Zazzali duly appointed as the chapter 11 trustee for the Debtors pursuant to the Bankruptcy Court's orders directing the appointment of a chapter 11 trustee [Docket No. 4240] and approving the appointment of James R. Zazzali as chapter 11 trustee [Docket No. 4330].

1.24    ***Claim*** means "claim" as such term is defined in Section 101(5) of the Bankruptcy Code and, except as otherwise provided in the context, means a claim against any of the Plan Debtors or their Estates, including, without limitation: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and including, without limitation, any Claim which any Affiliate may have against another Affiliate.

1.25    ***Claims and Noticing Agent*** means Kurtzman Carson Consultants LLC.

1.26    ***Claims Objection Deadline*** means the last day for filing objections to Claims, other than Administrative Claims and Professional Fee Claims, which day shall be the later of (a) one hundred and eighty (180) days after the Effective Date or (b) such other date as the Bankruptcy Court may order.  The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion; provided that any hearing on said motion is held on or before the date that is no more than thirty (30) days after the Claims Objection Deadline.  In the event that such motion to extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Claims Objection Deadline.

1.27    *Class* means a category of Holders of Claims or Interests as set forth in Article II of the Plan pursuant to Bankruptcy Code Section 1122.

1.28    *Confirmation* means entry by the Bankruptcy Court of the Confirmation Order.

1.29    *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court docket in the jointly administered Chapter 11 Cases.

1.30    *Confirmation Hearing* means the hearing before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.31    *Confirmation Order* means the order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

1.32    *Consolidated Non-Debtor(s)* means individually and collectively, as the context requires, DBSI Redemption, DBSI Investments, Stellar and the Non-Debtor Affiliates described on Schedule 1 to the Disclosure Statement.

1.33    *Contributed Non-Estate Causes of Action* means the Non-Estate Causes of Action held by an Electing Creditor that are contributed to the Private Actions Trust pursuant to Private Actions Trust Election.

1.34    *Converted Affiliate(s)* means, individually or collectively, as the context requires, one or more Entities that Filed a petition commencing a chapter 11 case and which chapter 11 case has been converted by notice and/or Order in the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, as more particularly set forth on Schedule 9 to the Disclosure Statement.

1.35    *Cost Allocation and Professional Fees Protocol* means the protocol for allocation of certain Administrative Expenses, including Professional Fee Claims, set forth in Article VI (J)(3) of the Plan.

1.36    *Cost Allocation Motion* means collectively the motions [Docket Nos. 2495 and 4959] seeking approval of the Cost Allocation Order.

1.37    *Cost Allocation Order* means collectively, (i) Order Pursuant to Sections 105, 363 and 364 of the Bankruptcy Code Authorizing and Approving Protocol for Allocation of Costs of Chapter 11 Cases entered in the Chapter 11 Cases on March 31, 2009 [Docket No. 3139] and (ii) Order Pursuant to Sections 105(a), 363 and 364 of the Bankruptcy Code Respecting Use of Cash Approved Under Protocol for Payment of Costs of Chapter 11 Cases entered in the Chapter 11 Cases on January 12, 2010 [Docket No. 5080].

1.38    *Cramdown Plan* means the Plan if confirmed by the Bankruptcy Court pursuant to Section 1129(b) of the Bankruptcy Code.

1.39    ***Creditor*** means "creditor" as defined in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against any Plan Debtor or Holder of any Claim against property of any Plan Debtor as defined in Section 102(2) of the Bankruptcy Code.

1.40    ***Creditors' Committee*** means the official committee of unsecured Creditors appointed in the Chapter 11 Cases, as such committee may be constituted from time to time.

1.41    ***DBSI*** means DBSI Inc.

1.42    ***DBSI 2001A*** means DBSI 2001A Funding Corporation.

1.43    ***DBSI 2001B*** means DBSI 2001B Funding Corporation.

1.44    ***DBSI 2001C*** means DBSI 2001C Funding Corporation.

1.45    ***DBSI 2005*** Notes means DBSI 2005 Secured Notes Corporation.

1.46    ***DBSI 2006 LOF*** means DBSI 2006 Land Opportunity Fund LLC.

1.47    ***DBSI 2006 Notes*** means DBSI 2006 Secured Notes Corporation.

1.48    ***DBSI 2008 DOF*** means DBSI 2008 Development Opportunity Fund LLC.

1.49    ***DBSI 2008 LOF*** means DBSI 2008 Land Option Fund LLC.

1.50    ***DBSI 2008 Notes*** means DBSI 2008 Notes Corporation.

1.51    ***DBSI Asset Management*** means DBSI Asset Management LLC.

1.52    ***DBSI Consolidated Debtors*** means, collectively, DBSI, Inc., DBSI Asset Management LLC, DBSI Development Services LLC, DBSI Discovery Real Estate Services LLC, DBSI Land Development LLC, DBSI Properties Inc., DBSI Realty Inc., DBSI Securities Corporation, DBSI/Western Technologies, LLC, DCJ, Inc., FOR 1031 LLC, Spectrus Real Estate Inc., and the Consolidated Non-Debtors.

1.53    ***DBSI Investments*** means DBSI Investments Limited Partnership.

1.54    ***DBSI Securities*** means DBSI Securities Corporation.

1.55    ***DBSI Development*** means DBSI Development Services LLC.

1.56    ***DBSI Discovery*** means DBSI Discovery Real Estate Services LLC.

1.57    ***DBSI Estate Litigation Trust*** means the trust created pursuant to the DBSI Estate Litigation Trust Agreement on the Effective Date in accordance with the Plan, the Confirmation Order and the DBSI Estate Litigation Trust Agreement, the purposes of which are to (a) hold, prosecute and/or settle the Estate Causes of Action for the benefit of the Holders of DBSI Estate Litigation Trust Beneficial Interests, (b) perform all other obligations pursuant to and consistent with the DBSI Estate Litigation Trust Agreement, and any other Orders entered by the

Bankruptcy Court, and (c) otherwise act as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d). For the avoidance of doubt, references in the Plan to "the DBSI Estate Litigation Trust" shall be construed as "the DBSI Estate Litigation Trustee, for the benefit of Holders of DBSI Estate Litigation Trust Beneficial Interests," as the context requires.

1.58    ***DBSI Estate Litigation Trust Agreement*** means the agreement to be executed as of the Effective Date establishing the DBSI Estate Litigation Trust pursuant to the Plan in substantially the form attached as Exhibit 3 to the Plan.

1.59    ***DBSI Estate Litigation Trust Assets*** shall mean all Estate Causes of Action, any proceeds thereof, and Cash contributed to the DBSI Estate Litigation Trust on or about the Effective Date in accordance with the Global Claims Settlement.

1.60    ***DBSI Estate Litigation Trust Beneficial Interest*** shall mean a beneficial interest in the DBSI Estate Litigation Trust, the total of which will be allocated 60% to the DBSI Real Estate Liquidating Trust and 40% to the DBSI Estate Liquidating Trust pursuant to, and in accordance with, the Global Claims Settlement and the Plan.

1.61    ***DBSI Estate Litigation Trust Operating Expenses*** means with respect to the DBSI Estate Litigation Trust any and all costs and expenses, including litigation expenses and professional fees, incurred before or after the Effective Date in connection with the administration of the DBSI Estate Litigation Trust, or incurred in implementing the Plan, the Confirmation Order, and the DBSI Estate Litigation Trust Agreement.

1.62    ***DBSI Estate Litigation Trust Operating Expense Reserve*** means the reserve established in accordance with Article VII herein for the payment of DBSI Estate Litigation Trust Operating Expenses, which reserve may be augmented by the DBSI Estate Litigation Trustee as set forth in the DBSI Estate Litigation Trust Agreement.

1.63    ***DBSI Estate Litigation Trust Professionals*** means the DBSI Estate Litigation Trustee, counsel to the DBSI Estate Litigation Trustee and such other professionals retained by the DBSI Estate Litigation Trustee to assist in the administration and all other duties of the DBSI Estate Litigation Trust.

1.64    ***DBSI Estate Litigation Trustee*** means the Person appointed to act as trustee of the DBSI Estate Litigation Trust in accordance with the terms of this Plan, the Confirmation Order, and the DBSI Estate Litigation Trust Agreement, or any successor appointed in accordance with the terms of the DBS Estate Litigation Trust Agreement, which Person shall be, as Trustee, subject, in all respects, to the jurisdiction of the Bankruptcy Court.

1.65    ***DBSI Excluded Assets*** means (i) any and all stock, membership, partnership, ownership, economic, other beneficial interest, or management rights, or Claims that the DBSI Consolidated Debtors have in, against or otherwise related to the DBSI Real Estate Liquidating Trust Assets and/or the Note/Fund Consolidated Debtors, and (ii) all Estate Causes of Action transferred to the DBSI Estate Litigation Trust.

1.66    ***DBSI GCC*** means DBSI Guaranteed Capital Corporation.

1.67    ***DBSI Investments*** means DBSI Investments Limited Partnership.

1.68    ***DBSI Land Development*** means DBSI Land Development LLC.

1.69    ***DBSI LIDF*** means DBSI 2007 Land Improvement & Development Fund LLC.

1.70    ***DBSI Liquidating Trust*** means the trust created pursuant to the DBSI Liquidating Trust Agreement on the Effective Date in accordance with the Plan, the Confirmation Order and the DBSI Liquidating Trust Agreement, the purposes of which include, without limitation: (i) to receive the DBSI Liquidating Trust Assets for the benefit of the Holders of DBSI Liquidating Trust Beneficial Interests and otherwise to act as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d); (ii) to collect and sell, dispose, or otherwise realize value of any kind whatsoever in respect of the DBSI Liquidating Trust Assets; (iii) to preserve and distribute the consideration to be distributed to Holders of DBSI Liquidating Trust Beneficial Interests pursuant to the Plan, the DBSI Liquidating Trust Agreement, the Confirmation Order, and such other Orders as may be entered by the Bankruptcy Court; (iv) to prosecute or settle objections to Disputed Claims against each of the DBSI Consolidated Debtors; (v) to prosecute or settle Causes of Action that are part of the DBSI Liquidating Trust Assets; and (vi) to perform all other obligations pursuant to the Plan, the DBSI Liquidating Trust Agreement, and any other Orders entered by the Bankruptcy Court.  For the avoidance of doubt, references in the Plan to "the DBSI Liquidating Trust" shall be construed as "the DBSI Liquidating Trustee, for the benefit of Holders of Beneficial Interests in the DBSI Liquidating Trust" as the context requires.

1.71    ***DBSI Liquidating Trust Agreement*** means the agreement to be executed as of the Effective Date establishing the DBSI Liquidating Trust pursuant to the Plan in substantially the form attached as Exhibit 1 to the Plan.

1.72    ***DBSI Liquidating Trust Assets*** means: (i) Cash held by the DBSI Consolidated Debtors after funding their pro rata portion of the S/A/P Claims Reserve in accordance with Article VII of the Plan and their share of the Chapter 11 Costs in accordance with the Cost Allocation and Professional Fees Protocol; (ii) the DBSI Consolidated Debtors' stock, membership, partnership, ownership, management, economic, or other beneficial interests in, , and any claims of the DBSI Consolidated Debtors against, those entities identified on the "Schedule of DBSI Consolidated Debtors' Interests in Non-Debtor Entities, Non-Plan Debtors, Converted Affiliates and Dissolved Entities" set forth in Schedule 5 to the Disclosure Statement, (iii) proceeds from the TICPM APA; (iv) all Causes of Action arising after the Effective Date in connection with the other DBSI Liquidating Trust Assets; (v) all Objection Rights with respect to the DBSI Consolidated Debtors; (vi) the Technology Companies Transferred Properties (vii) forty percent 40% of the DBSI Estate Litigation Trust Beneficial Interests; (viii) five percent (5%) of the total number of Private Actions Trust Beneficial Interests; and (ix) all other Assets of the DBSI Consolidated Debtors; provided, however, that the DBSI Liquidating Trust Assets shall not include any claims released pursuant to the Global Claims Settlement and shall not include any DBSI Excluded Assets.

1.73    ***DBSI Liquidating Trust Beneficial Interest*** shall mean a beneficial interest in the DBSI Liquidating Trust that will be allocated to a holder of an Allowed Claim against a DBSI

Consolidated Debtor in full and complete satisfaction, release, exchange and discharge of such Allowed Claim or Allowed Interest pursuant to, and in accordance with, the Plan.

1.74    ***DBSI Liquidating Trust Operating Expenses*** means with respect to the DBSI Liquidating Trust any and all costs and expenses, including litigation expenses and professional fees, incurred before or after the Effective Date in connection with the administration of the DBSI Liquidating Trust, or incurred in implementing the Plan, the Confirmation Order, and the DBSI Liquidating Trust Agreement.

1.75    ***DBSI Liquidating Trust Operating Expense Reserve*** means the reserve established in accordance with Article VII herein for the payment of DBSI Liquidating Trust Operating Expenses, which reserve may be augmented by the DBSI Liquidating Trustee as set forth in the DBSI Liquidating Trust Agreement.

1.76    ***DBSI Liquidating Trust Professionals*** means the DBSI Liquidating Trustee, counsel to the DBSI Liquidating Trustee and such other professionals retained by the DBSI Liquidating Trustee to assist in the administration and all other duties of the DBSI Liquidating Trust, including, without limitation, liquidating the DBSI Liquidating Trust Assets, commencing and prosecuting the Causes of Action and Claims reconciliation process, and making distributions of the DBSI Liquidating Trust Beneficial Interests.

1.77    ***DBSI Liquidating Trustee*** means the Person appointed to act as trustee of the DBSI Liquidating Trust in accordance with the terms of this Plan, the Confirmation Order, and the DBSI Liquidating Trust Agreement, or any successor appointed in accordance with the terms of the DBSI Liquidating Trust Agreement, which Person shall be, as Trustee, subject, in all respects, to the jurisdiction of the Bankruptcy Court.

1.78    ***DBSI Owned Real Estate SPEs*** means the entities listed under the heading "DBSI Owned Real Estate SPEs" on the "Schedule of DBSI Owned Real Estate SPEs and DBSI Real Estate Managed LPs" set forth in Schedule 6 to the Disclosure Statement.

1.79    ***DBSI Owned Real Estate SPE Interests*** means any and all stock, membership, partnership, ownership, management, economic or other beneficial interests in, and any claims of the DBSI Consolidated Debtors or the Note/Fund Consolidated Debtors against, the DBSI Owned Real Estate SPEs.

1.80    ***DBSI Properties*** means DBSI Properties Inc.

1.81    ***DBSI Real Estate Liquidating Trust*** means the trust created pursuant to the DBSI Real Estate Liquidating Trust Agreement on the Effective Date in accordance with this Plan, the Confirmation Order and the DBSI Real Estate Liquidating Trust Agreement, the purposes of which include, without limitation: (i) to receive the DBSI Real Estate Liquidating Trust Assets for the benefit of the Holders of DBSI Real Estate Liquidating Trust Beneficial Interests and otherwise to act as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d); (ii) to collect and sell, dispose, or otherwise realize value of any kind whatsoever in respect of the DBSI Real Estate Liquidating Trust Assets; (iii) to preserve and distribute the consideration to be distributed to Holders of DBSI Real Estate Liquidating Trust Beneficial Interests and Limited Beneficial Interests pursuant to the Plan, the DBSI Real Estate Liquidating

Trust Agreement, the Confirmation Order, and such other Orders as may be entered by the Bankruptcy Court; (iv) to prosecute or settle objections to Disputed Claims against each of the Note/Fund Consolidated Debtors; (v) to prosecute or settle Causes of Action that are part of the DBSI Real Estate Liquidating Trust Assets; and (vi) to perform all other obligations pursuant to this Plan, the DBSI Real Estate Liquidating Trust Agreement, and any other Orders entered by the Bankruptcy Court.  For the avoidance of doubt, references in this Plan to "the DBSI Real Estate Liquidating Trust" shall be construed as "the DBSI Real Estate Liquidating Trustee, for the benefit of holders of beneficial interests in the DBSI Real Estate Liquidating Trust" as the context requires.

1.82    ***DBSI Real Estate Liquidating Trust Agreement*** means the agreement to be executed as of the Effective Date establishing the DBSI Real Estate Liquidating Trust pursuant to the Plan in substantially the form attached as Exhibit 2 to the Plan.

1.83    ***DBSI Real Estate Liquidating Trust Assets*** means (i) Cash held by the Note/Fund Consolidated Debtors after funding the S/A/P Claims Reserve in accordance with Article VII of the Plan and their share of the Chapter 11 Costs in accordance with the Cost Allocation and Professional Fees Protocol; (ii) the Note/Fund Owned SPE Interests; (iii) the DBSI Owned Real Estate SPE Interests; (iv) the DBSI Real Estate Managed LP Interests; (v) the Kastera Transferred Properties; (vi) the DBSI Consolidated Debtors' stock, membership, partnership, ownership, economic, or other beneficial interest in the Note/Fund Consolidated Debtors; ( vii) any Causes of Action arising after the Effective Date in connection with the other DBSI Real Estate Liquidating Trust Assets; (viii) any Objection Rights with respect to the Note/Fund Consolidated Debtors; (ix) sixty percent (60%) of the DBSI Estate Litigation Trust Beneficial Interests; (x) fifteen percent (15%) of the total number of Private Actions Trust Beneficial Interests; and (xi) and all other assets of the Note/Fund Consolidated Debtors, except the Note/Fund Excluded Assets and as otherwise provided for in the Plan.

1.84    ***DBSI Real Estate Liquidating Trust Beneficial Interest*** means a beneficial interest in the DBSI Real Estate Liquidating Trust that will be allocated to a holder of an Allowed Claim against a Note/Fund Consolidated Debtor in full and complete satisfaction, release, exchange and discharge of such Allowed Claim pursuant to, and in accordance with, the Plan, which, for avoidance of doubt, excludes Limited Beneficial Interests.

1.85    ***DBSI Real Estate Liquidating Trust Operating Expenses*** means with respect to the DBSI Real Estate Liquidating Trust any and all costs and expenses, including litigation expenses and professional fees, incurred before or after the Effective Date in connection with the administration of the DBSI Real Estate Liquidating Trust, incurred in implementing the Plan, the Confirmation Order, and the DBSI Real Estate Liquidating Trust Agreement.

1.86    ***DBSI Real Estate Liquidating Trust Operating Expense Reserve*** means the reserve established in accordance with Article VII herein for the payment of DBSI Real Estate Liquidating Trust Operating Expenses, which reserve may be augmented by the DBSI Real Estate Liquidating Trustee as set forth in the DBSI Real Estate Liquidating Trust Agreement.

1.87    ***DBSI Real Estate Managed LPs*** means the entities listed under the heading "DBSI Real Estate Managed LPs" on the "Schedule of DBSI Owned Real Estate SPEs and DBSI Real Estate Managed LPs "set forth in Schedule 6 annexed to the Disclosure Statement.

1.88    ***DBSI Real Estate Managed LP Interests*** means any and all stock, membership, partnership, ownership, management, economic, or other beneficial interest in, and any claims of the DBSI Consolidated Debtors or the Note/Fund Consolidated Debtors against, the DBSI Real Estate Managed LPs.

1.89    ***DBSI Redemption*** means DBSI Redemption Reserve Fund, an Idaho general partnership.

1.90    ***DBSI Real Estate Liquidating Trust Professionals*** means the DBSI Real Estate Liquidating Trustee, counsel to the DBSI Real Estate Liquidating Trustee and such other professionals retained by the DBSI Real Estate Liquidating Trustee to assist in the administration and all other duties of the DBSI Real Estate Liquidating Trust, including, without limitation, liquidating the DBSI Real Estate Liquidating Trust Assets, commencing and prosecuting the Causes of Action and claims reconciliation process, and making distributions to Holders of Beneficial Interests in the DBSI Real Estate Liquidating Trust.

1.91    ***DBSI Real Estate Liquidating Trustee*** means the Person appointed to act as trustee of the DBSI Real Estate Liquidating Trust in accordance with the terms of this Plan, the Confirmation Order, and the DBSI Real Estate Liquidating Trust Agreement, or any successor appointed in accordance with the terms of the DBSI Real Estate Liquidating Trust Agreement.

1.92    ***DBSI Realty*** means DBSI Realty Inc.

1.93    ***DBSI REFC*** means DBSI Real Estate Funding Corporation.

1.94    ***DBSI STDF*** means DBSI Short-Term Development Fund LLC.

1.95    ***DCJ*** means DCJ Inc.

1.96    ***De Minimis Distribution*** shall have the meaning set forth in Article VII of this Plan.

1.97    ***Debt*** means liability on a Claim.

1.98    ***Debtor(s)*** means, individually or collectively, as the context requires, one or more Entities that Filed a petition commencing a Chapter 11 Case and which Chapter 11 Case is currently pending.

1.99    ***Deficiency Claim*** means, with respect to a Claim that is partially secured by a Lien on, or security interest in, property of a specific Plan Debtor, or that has the benefit of partial rights of setoff under Section 553 of the Bankruptcy Code, the amount by which the Allowed amount of such Claim exceeds the value of the property of such Plan Debtor securing such Claim or the amount subject to setoff, as applicable, as determined by the Bankruptcy Court pursuant to Sections 506(a), 553, and/or 1129(b)(2)(A)(i)(II) of the Bankruptcy Code.

1.100  **_Disallowed_** when used with respect to a Claim against a Plan Debtor or property of a Plan Debtor, means a Claim or any portion thereof that (i) has been disallowed by Final Order, (ii) is Scheduled as zero or as contingent, disputed, or unliquidated and, in either instance, as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or this Plan, (iii) is not Scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or this Plan, (iv) has been withdrawn by agreement of the Debtors and the Holder thereof, (v) has been withdrawn by the Holder thereof; (vi) is disallowed under the Plan; or (vii) is the subject of a Proof of Claim or request for payment of an Administrative Claim, or is Scheduled, and such Claim is a Disputed Claim, but only during such time as it remains a Disputed Claim.

1.101  **_Disclosure Statement_** means the disclosure statement(s) for the Plan approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017 (including all schedules and exhibits thereto), as such disclosure statements may be amended or modified from time to time.

1.102  **_Disputed_** when used with respect to a Claim against a Plan Debtor or property of a Plan Debtor, means a Claim to the extent that: (a) the allowance of such Claim is the subject of an objection, adversary proceeding, appeal or motion to estimate that has been timely Filed by a party in interest and which objection, appeal or motion has not been determined by a Final Order, or (b) during the period prior to the deadline fixed by the Plan or the Bankruptcy Court for objecting to such Claim, such Claim is in excess of the amount Scheduled as other than disputed, unliquidated or contingent.  In the event that any part of a Claim is Disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of voting and distribution under this Plan unless the Chapter 11 Trustee or the Trustee, as applicable, and the Holder thereof agree otherwise.  To the extent the term "Disputed" is used in the Plan with respect to a specified Class of Claims or an unclassified category of Claims (i.e. "Disputed [Class designation/unclassified Claim category] Claim"), the resulting phrase shall mean a Disputed Claim of the specified Class or unclassified category of Claims.

1.103  **_Disputed Unsecured Claims Reserve_** means a reserve to be established by the Trustee for each Trust for the benefit of Holders of Disputed Unsecured Claims under said Trust, in accordance with Article VII(B)(3) of this Plan.

1.104  **_Distribution_** means any distribution pursuant to the Plan to Holders of Allowed Claims.

1.105  **_Effective Date_** means the Business Day on which this Plan becomes effective as provided in Article XI hereof.

1.106  **_Electing Creditor_** means any Creditor Holding an Allowed Claim who also elects to assign and contribute such Holder's Non-Estate Causes of Action to the Private Actions Trust pursuant to the terms of the Private Actions Trust Agreement.

1.107    **Entity** means an "entity" as defined in Section 101(15) of the Bankruptcy Code.

1.108    **Estate(s)** means, individually or collectively, as the context requires, (i) when used in reference to time periods prior to the Effective Date, the estates created in the Chapter 11 Cases for the Plan Debtors pursuant to Section 541 of the Bankruptcy Code, and (ii) when used in reference to time periods subsequent to (and including) the Effective Date, the Assets that are distributable to holders of Beneficial Interests of the DBSI Liquidating Trust and/or the DBSI Real Estate Liquidating Trust in accordance with the Plan.

1.109    **Estate Causes of Action** means Avoidance Actions and all other Causes of Action held by any or all of the Estates, including, but not limited to, any adversary proceeding that is pending on the Effective Date, and shall exclude, for avoidance of doubt, (i) any Cause of Action arising after the Effective Date in connection with any Asset of the DBSI Liquidating Trust or the DBSI Real Estate Liquidating Trust, and (ii) Objection Rights, provided, however, that (x) to the extent any Estate Cause of Action involving an adversary proceeding that is pending on the Effective Date relates to a common set of facts or legal issues also implicated by an Objection Right, the DBSI Estate Litigation Trustee shall have authority to file, settle, compromise, withdraw or litigate to judgment such Estate Cause of Action and Objection Right, in coordination and cooperation with the applicable Trustee, and (y) to the extent any Estate Cause of Action involving an adversary proceeding that is commenced after the Effective Date relates to a common set of facts or legal issues also implicated by an Objection Right, there shall be coordination and cooperation as needed between the applicable Trustee and the DBSI Estate Litigation Trustee regarding the preservation, assertion, prosecution and any settlement of such related Objection Right and Estate Cause of Action.

1.110    **Estate Representative** means the Trustee for the applicable Trust.

1.111    **Examiner** means Joshua R. Hochberg, appointed as the Examiner in the Chapter 11 Cases pursuant to the Bankruptcy Court's Order Approving Appointment of Examiner [Docket No. 3308].

1.112    **Executory Contract** means any executory contract or unexpired lease subject to Section 365 of the Bankruptcy Code, between any Plan Debtor and any other Person.

1.113    **Exculpated Parties** means, collectively, (i) the Chapter 11 Trustee, the Trustee, the Trust Oversight Committee and its members, the Estates, the Trust, the Litigation Trust, and the Creditors' Committee and its members, and (ii) the respective attorneys, crisis managers, financial advisors, and professionals of a party identified in the immediately preceding clause.

1.114    **Exhibit** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

1.115    **Fee Application** means an application Filed with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules for payment of a Professional Fee Claim.

1.116   *Fee Examiner* means Stuart Maue appointed as the Fee Examiner in these Chapter 11 Cases pursuant to the Bankruptcy Court's Order Appointing Fee Examiner [Docket No. 3358].

1.117   *File, Filed or Filing* means properly and timely file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, as reflected on the official docket of the Bankruptcy Court for the Chapter 11 Cases, and served on Persons, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or order of the Bankruptcy Court.

1.118   *Final Decree* means the decree contemplated under Bankruptcy Rule 3022.

1.119   *Final Order* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Cases or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, or the time to take any further appeal, petition for certiorari, or move for new trial, reargument or rehearing shall have expired.

1.120   *FOR 1031* means FOR 1031 LLC.

1.121   *General Administrative Claim* means any Administrative Claim that is not (a) an Administrative TIC Rent Claim, (b) an Administrative TIC Expense Claim, (c) a Professional Fee Claim, or (d) an Administrative Claim that is otherwise subject to the Cost Allocation and Professional Fees Protocol.

1.122   *General Administrative Claim Bar Date* means the date that is thirty (30) days after the notice of the Effective Date is Filed with the Bankruptcy Court and served, or such other date as the Bankruptcy Court determines as the last date for filing a request for payment of a General Administrative Claim and Administrative TIC Expense Claim.

1.123   *General Unsecured Claims* means all Unsecured Claims other than an Unsecured Note Claim, Unsecured Bond Claim, Unsecured Preferred Interest Claim, Unsecured Non-Preferred Interest Claim, Unsecured Sharing Unit Interest Claim, Unsecured Proforma/Land Bank Accountable Reserves Claim, Unsecured Subordinated Non-Preferred Interest Claim, Unsecured Unsettled TIC Claim, Settled TIC Claim or Subordinated Claim.

1.124   *Global Claims Settlement* means the global Intercompany Claims and Guaranteed Note/Fund Debt settlement described in Article V of this Plan.

1.125   *Guaranteed Note/Fund Debt* means, collectively, the obligations of any Note/Fund Consolidated Debtor guaranteed by DBSI to the holders of debt issued by the

Note/Fund Consolidated Debtors and the guaranties of DBSI in favor of the Note/Fund Consolidated Debtors.

1.126   **Holder** means an Entity holding a Claim, Interest or a Beneficial Interest, or any authorized agent thereof.

1.127   **Impaired** means when used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

1.128   **Indemnification Obligation** means any obligation of the Plan Debtors to indemnify, reimburse or provide contribution to any present or former officer, director, or employee, or any present or former professionals, advisors, or representatives of the Plan Debtors, pursuant to by-laws, articles of incorporation, contract, or otherwise as may be in existence immediately prior to the Petition Date.

1.129   **Intercompany Claim** means any Claim against any Plan Debtor by any other Debtor, any Non-Debtor Affiliate or any Converted Affiliate, whether accruing before or after the Petition Date, as more fully described in Article V of the Plan, including, without limitation: (a) any account reflecting intercompany book entries by a DBSI Consolidated Debtor with respect to a Note/Fund Consolidated Debtor; (b) any account reflecting intercompany book entries held by a Note/Fund Consolidated Debtor with respect to a DBSI Consolidated Debtor; (c) any Claim reflected in such book entries that is held by a DBSI Consolidated Debtor against a Note/Fund Consolidated Debtor; (d) any Claim reflected in such book entries that is held by a Note/Fund Consolidated Debtor against a DBSI Consolidated Debtor; (e) any derivative Claim asserted by or on behalf of a Note/Fund Consolidated Debtor against a DBSI Consolidated Debtor; and (f) any derivative Claim asserted by or on behalf of a DBSI Consolidated Debtor against a Note/Fund Consolidated Debtor.

1.130   **Interest** means an "equity security" as defined in Section 101(16) of the Bankruptcy Code and includes any legal, equitable, or contractual rights arising from any share or other instrument evidencing an ownership in the Plan Debtors, whether or not transferable or denominated "stock" or any similar security, and any partnership, membership interest, beneficial interest, warrants, options, or other rights to purchase or acquire any equity interest, or the right to payment or compensation based on such interest, provided, however, that Interests shall not include Preferred Interest Claims, Non-Preferred Interest Claims, Sharing Unit Interest Claims or Subordinated Non-Preferred Interest Claims.

1.131   **IRC** means the Internal Revenue Code of 1986, as amended.

1.132   **IRS** means the Internal Revenue Service.

1.133   **Kastera** means Kastera LLC.

1.134   **Kastera Homes** means Kastera Homes LLC.

1.135   **Kastera Development** means Kastera Development LLC.

1.136   ***Kastera Entities*** means, collectively, Kastera, Kastera Homes and Kastera Development.

1.137   ***Kastera Snake River*** means Kastera Snake River 94, LLC

1.138   ***Kastera Transferred Properties*** means any stock, membership, partnership, or beneficial interest (direct or indirect) owned by any of the Kastera Entities, including, but not limited to, in Kastera Snake River, Kastera Majestic View LLC, Kastera Pavilion Commons LLC, and South Cavanaugh, LLC.

1.139   ***Lien*** means any mortgage, lien, pledge, security interest or other charge or encumbrance of any kind in, upon, or affecting any Asset of a Debtor as contemplated by Section 101(37) of the Bankruptcy Code.

1.140   ***Limited Beneficial Interest*** means a limited beneficial interest in the DBSI Real Estate Liquidating Trust that will be allocated to Holders of Allowed Unsecured Sharing Unit Interest Claims and Allowed Unsecured Non-Preferred Interest Claims in full and complete satisfaction, release, exchange and discharge of such Allowed Claims pursuant to, and in accordance with, the Plan, which shall entitle the Holder of such limited beneficial interest to share ratably in the Sharing/Non-Preferred Interest Recovery Pool based upon the Participation Amount for the Holder of such limited beneficial interest, as set forth on Schedule 12 to the Disclosure Statement, as compared in relation to the aggregate total of the Participation Amounts for all Holders of limited beneficial interests.

1.141   ***Liquidation Analysis*** means the liquidation analysis annexed to the Disclosure Statement as Exhibit D.

1.142   ***Litigation Trust*** means, collectively, and individually if the context requires, the DBSI Estate Litigation Trust and/or the Private Actions Trust.

1.143   ***Litigation Trust Agreement*** means, collectively, and individually if the context requires, the DBSI Estate Litigation Trust Agreement and/or the Private Actions Trust Agreement.

1.144   ***Litigation Trust Assets*** means, individually and collectively, as the context requires, the DBSI Estate Litigation Trust Assets and/or the Contributed Non-Estate Causes of Action held in the Private Actions Trust.

1.145   ***Litigation Trustee*** means, collectively, and individually if the context requires, the DBSI Estate Litigation Trustee and/or the Private Actions Trustee.

1.146   ***Local Rules*** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

1.147   ***Maturity Date*** means, with respect to any Claim arising pursuant to a written agreement, the maturity date of such Claim under such agreement, without acceleration, and determined without reference to any default under such agreement(s).

1.148   **Miscellaneous Secured Claim** means a Secured Claim not otherwise classified under the Plan that is (a) secured by a valid and perfected Lien on property in which a Plan Debtor's Estate has an interest or (b) subject to setoff under Section 553 of the Bankruptcy Code and such right of setoff has been asserted by the Holder of such right as required by Article VII(C)(7) hereof, to the extent of the value of the Holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code Section 506(a) or, in the case of setoff, pursuant to Bankruptcy Code Section 553.

1.149   **Net Distributable Cash** shall mean, with respect to a distribution to the Holder of an Allowed Claim, the total net Cash proceeds of the Trust, less the amount, if any, of Cash required to pay Trust Operating Expenses and the expenses incurred (or to be incurred) with respect to the receipt and distribution of such Cash, and the Cash required to make distributions to any senior Class of Claims.

1.150   **Non-Debtor Affiliate** means any Affiliate of the Plan Debtors that has not Filed a Chapter 11 petition.

1.151   **Non-Estate Causes of Action** are those Causes of Action which are held by a TIC Investor, or a Holder of a Note Claim, a Bond Claim, a Preferred Unit, a Sharing Unit or a Non-Preferred Unit, arising from any matter involving the Plan Debtors and Consolidated Non-Debtors against: (i) all current and former officers, directors, members, shareholders or employees of any of the Plan Debtors; (ii) all Persons or Entities that conducted transactions with any of the Plan Debtors, including, without limitation, investment bankers and lenders; and (iii) all Persons or Entities that provided professional services to any of the Plan Debtors, including, without limitation, all attorneys, accountants, auditors, financial advisors and other parties providing services to the Plan Debtors in connection with the public issuance of debt or equity, including, without limitation, all underwriters, due diligence providers, or securities brokers/dealers; provided, however, Non-Estate Causes of Action shall exclude (a) contract claims against third parties, (b) claims for violations of securities laws that are currently being asserted in the class action styled Myles W. and Jannelle S. Spann Trust v. DBSI, Inc., et al., Case No CV OC 0820435, Fourth Judicial District Court, Ada County, Idaho (the "<u>Spann Action</u>"); and (c) other claims currently being asserted in class actions relating to the Plan Debtors, if any ("Other Class Actions").  A non-exclusive list of potential defendants in the Non-Estate Causes of Action is attached to the Disclosure Statement as Schedule 11.

1.152   **Non-Plan Debtors** means, collectively, One-Executive Tower LLC, DBSI Alma/121 Office Commons LLC, DBSI Cottonwood Plaza Development LLC, DBSI Draper Technology 21 LLC, DBSI Escala LLC, DBSI Telecom Office LLC, Belton Town Center Acquisition LLC, DBSI Broadway Plaza LeaseCo LLC, DBSI Flowood Plaza LLC, DBSI Lexington LLC, DBSI Meridian 184 LLC, DBSI One Hernando Center North LLC, South Cavanaugh LLC, DBSI 121/Alma Land L.P., FOR 1031 Broadway Plaza LLC, Florissant Market Place Acquisition LLC, FOR 1031 Brookhollow One LLC, DBSI Brookhollow One LLC, DBSI Lone Peak Parkway LLC, DBSI Lansdowne I LP, DBSI Surprise Farms LLC, DBSI E-470 East LLC, and DBSI Colony West Development LLC.

1.153    ***Non-Preferred Interest Claims*** means Claims for a fixed percentage annual return payable to holders of Sharing Units issued by DBSI 2006 LOF or Non-Preferred Units issued by DBSI STDF, respectively, that are, pursuant to the Waterfall Rights, (i) subordinated to a portion of the fixed annual return payable to holders of Preferred Units, and (ii) senior to any return of investment payable to holders of Preferred Units.

1.154    ***Non-Preferred Units*** means membership interests in DBSI STDF that, pursuant to the Waterfall Rights, are (i) entitled to share in the profits and losses of DBSI STDF, and (ii) subordinated to the payment of both Preferred Interest Claims and Non-Preferred Interest Claims against DBSI STDF.

1.155    ***Note Claims*** means Claims for return of principal and interest owing to Holders of notes issued by DBSI 2005 Notes, DBSI 2006 Notes, DBSI 2008 Notes, DBSI 2008 DOF or DBSI LIDF.

1.156    ***Note/Fund Consolidated Debtors*** means, collectively, DBSI 2001A Funding Corporation, DBSI 2001B Funding Corporation, DBSI 2001C Funding Corporation, DBSI 2005 Secured Notes Corporation, DBSI 2006 Secured Notes Corporation, DBSI 2008 Notes Corporation, DBSI 2008 Development Opportunity Fund LLC, DBSI 2007 Land Improvement & Development Fund LLC, DBSI 2006 Land Opportunity Fund LLC, DBSI Guaranteed Capital Corporation, DBSI Real Estate Funding Corporation and DBSI Short-Term Development Fund LLC.

1.157    ***Note/Fund Excluded Assets*** means the (i) any and all stock, membership, partnership, ownership, economic, other beneficial interest, or management rights, and Claims that the Note/Fund Consolidated Debtors have with respect to the DBSI Liquidating Trust, the DBSI Liquidating Trust Assets and the DBSI Consolidated Debtors, and (ii) all Causes of Action transferred to the DBSI Estate Litigation Trust.

1.158    ***Note/Fund Owned SPEs*** means the entities listed on the "Schedule of Note/Fund Owned SPEs" set forth in Schedule 7 to the Disclosure Statement.

1.159    ***Note/Fund Owned SPE Interests*** means any and all stock, membership, partnership, ownership, management, economic, or other beneficial interest in, and any claims of the DBSI Consolidated Debtors or the Note/Fund Consolidated Debtors against, the Note/Fund Owned SPEs.

1.160    ***Objection Rights*** means, except as otherwise provided in the Plan, the right to assert any objection to a Claim or Interest and any such objection, including all factual and legal bases for such objection, and all Causes of Action upon which such objection is based.

1.161    ***Operating Costs*** has the meaning ascribed to it in the Cost Allocation Motion.

1.162    ***Operating Expense Reserve*** means a reserve to be established by the Trustee for a Trust to pay for all costs and expenses (including professional fees) for carrying out the provisions of this Plan and the Trust, including a provision for funding the S/A/P Claims Reserve.

- 19 -

1.163    *Order* means any order entered by the Bankruptcy Court in connection with the Chapter 11 Cases.

1.164    *Participation Amount* means the sum of the fixed percentage annual return and the full return of investment (excluding profit and loss sharing) calculated as of the Petition Date and set forth on Schedule 12 to the Disclosure Statement for a Holder of (a) Sharing Units in DBSI 2008 DOF, DBSI LIDF, or DBSI 2006 LOF, (b) Non-Preferred Units in DBSI STDF, or (c) Subordinated Non-Preferred Interest Claims in DBSI 2006 LOF or DBSI STDF; provided, however, that solely for purposes of calculating the amount of any distributions from the Sharing/Non-Preferred Interest Recovery Pool, the Participation Amount set forth on Schedule 12 for Holders of Allowed Unsecured Non-Preferred Interest Claims against DBSI STDF and DBSI 2006 LOF shall be reduced by the amount of such Holders' Allowed Unsecured Non-Preferred Interest Claims.

1.165    *Penalty-Based Claims* means any Claim for any non-compensatory penalties, fines, or forfeiture, or for multiple, exemplary, special or punitive damages, to the extent that such fine, penalty, forfeiture or damages are not compensation for actual pecuniary loss suffered by the holder of such Claim.

1.166    *Person* means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or other Entity.

1.167    *Petition Date* means the date on which a Plan Debtor commenced a Chapter 11 Case.

1.168    *Plan* means this Joint Chapter 11 Plan of Liquidation, including the exhibits and all supplements, appendices and/or schedules thereto, either in its current form or as the same may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

1.169    *Plan Debtor(s)* means,  individually or collectively, as the context requires, DBSI Inc., DBSI Asset Management LLC, DBSI Development Services LLC, DBSI Discovery Real Estate Services LLC, DBSI Land Development LLC, DBSI Properties Inc., DBSI Realty Inc., DBSI Securities Corporation, DBSI/Western Technologies, LLC, DCJ, Inc., FOR 1031 LLC, Spectrus Real Estate Inc., DBSI 2001A Funding Corporation, DBSI 2001B Funding Corporation, DBSI 2001C Funding Corporation, DBSI 2005 Secured Notes Corporation, DBSI 2006 Secured Notes Corporation, DBSI 2008 Notes Corporation, DBSI 2008 Development Opportunity Fund LLC, DBSI 2007 Land Improvement & Development Fund LLC, DBSI 2006 Land Opportunity Fund LLC, DBSI Guaranteed Capital Corporation, DBSI Real Estate Funding Corporation, and DBSI Short-Term Development Fund LLC.

1.170    *Plan Documents* means the Plan, together with any contract, instrument, release, or other agreement or document executed in connection with the Plan.

1.171    *Plan Proponents* means the Chapter 11 Trustee and the Creditors' Committee.

1.172    ***Preferred Interest Claims*** means Claims of Holders of Preferred Units for: (a) a fixed percentage annual return that is senior to any distribution to Holders of Non-Preferred Units pursuant to the Waterfall Rights; (b) an additional fixed percentage annual return (payable to Holders of Preferred Units issued by DBSI STDF only) that is subordinated to Non-Preferred Interest Claims pursuant to the Waterfall Rights; and (c) full return of investment that is subordinated to Non-Preferred Interest Claims pursuant to the Waterfall Rights.

1.173    ***Preferred Units*** means membership units issued by DBSI 2006 LOF or DBSI STDF that are, pursuant to the Waterfall Rights, entitled to a return of investment senior to the full return of investment payable to Holders of (a) Non-Preferred Units in the case of DBSI STDF, or (b) Sharing Units in the case of DBSI 2006 LOF.

1.174    ***Priority Claim*** means a Claim to the extent that it is of the kind described in, and entitled to priority under Sections 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

1.175    ***Priority Tax Claim*** means a Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

1.176    ***Private Actions Trust*** means the trust established on the Effective Date pursuant to Article VI(M) of the Plan to hold the Contributed Non-Estate Causes of Action.

1.177    ***Private Actions Trust Agreement*** means the agreement to be executed as of the Effective Date establishing the Private Actions Trust pursuant to the Plan, in the form attached to the Plan as Exhibit 4.

1.178    ***Private Actions Trust Beneficial Interest*** shall mean (a) a beneficial interest in the Private Actions Trust that will be allocated to each Electing Creditor in full and complete satisfaction, release, exchange and discharge of such Electing Creditor's interest in its Contributed Non-Estate Causes of Action pursuant to, and in accordance with, the Plan; (b) one or more beneficial interests in the Private Actions Trust that will be allocated to (i) the DBSI Liquidating Trust in amount equal to five percent (5%) of the total number of all such beneficial interests issued, and (ii) the DBSI Real Estate Liquidating Trust in amount equal to fifteen percent (15%) of the total number of all such beneficial interests issued.

1.179    ***Private Actions Trust Beneficiaries*** means, individually or collectively, as the context requires, any holder or holders of a Private Actions Trust Beneficial Interest.

1.180    ***Private Actions Trust Election*** means the agreement of an Electing Creditor to contribute and assign such Holder's Non-Estate Causes of Action to the Private Actions Trust, which election shall be evidenced by the submission of an election form attached to the Disclosure Statement as Exhibit E and shall be in return for Private Actions Trust Beneficial Interest(s) allocated pursuant to, and in accordance with, the Plan and the Private Actions Trust Agreement.

1.181    ***Private Actions Trustee*** means the Person appointed pursuant to the Private Actions Trust Agreement to act as trustee of and administer the Private Actions Trust and identified at or before the Confirmation Hearing.

1.182    *Professional* means any professional employed or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

1.183    *Professional Fee Claim* means a Claim of a Professional for compensation for services and/or reimbursement of expenses pursuant to Sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 Cases.

1.184    *Proforma/Land Bank Accountable Reserves Claim* means a Claim by a tenant-in-common owner of any real property that was managed by DBSI or one of its Affiliates under an asset management agreement but as to which there was no masterlease agreement with DBSI or any of its Affiliates.

1.185    *Proof of Claim* means a proof of claim filed in the Chapter 11 Cases pursuant to Section 501 of the Bankruptcy Code and/or pursuant to any Order, together with supporting documents.

1.186    *Property Cash Settlement Protocol Order* means Order Authorizing the Debtors to Enter Into Settlements of Property Cash and Lender and Escrow Reserves Pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Section 105(a) [Docket No. 3525].

1.187    *Pro Rata* means proportionately so that, with respect to a Claim, the ratio of (a)(i) the amount of property distributed on account of such Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims in the Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Classes included in such distribution.

1.188    *Protected Party* means any of the Plan Debtors, the Creditors' Committee, the Chapter 11 Trustee, the DBSI Liquidating Trustee, the DBSI Real Estate Liquidating Trustee, the Estates, the DBSI Liquidating Trust, the DBSI Real Estate Liquidating Trust, the Trust Oversight Committee and its members, and their respective Professionals.

1.189    *Regulatory Claims* means any Claim Filed by a state or federal governmental or regulatory agency, except a Claim held by a governmental unit for a tax assessed or assessable against the Plan Debtors.

1.190    *S/A/P Claims* means, collectively, Miscellaneous Secured Claims, Administrative Claims, Priority Claims and Priority Tax Claims.

1.191    *S/A/P Claims Reserve* means the Reserve to be established and maintained, in accordance with Article VII of the Plan, by the Estate Representative, to fund: (i) the Distribution to Holders of Allowed S/A/P Claims to the extent such S/A/P Claims are not paid on the Effective Date; (ii) any Disputed S/A/P Claim to the extent such Claim becomes an Allowed S/A/P Claim; and (iii) the fees and expenses of the Estate Representative and his/her professionals.

1.192    *Scheduled* means, with respect to any Claim, the status, priority and amount, if any, of such Claim as set forth in the Schedules.

1.193    ***Schedule*** means each Plan Debtor's schedules of assets and liabilities Filed with the clerk of the Bankruptcy Court pursuant to pursuant to Section 521(a) of the Bankruptcy Code and Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

1.194    ***Secured Claim*** means a Claim that is secured by a Lien, or that has the benefit of rights of setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the Creditor's interest in the Plan Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined by the Bankruptcy Court pursuant to Sections 506(a), 553, and/or 1129(b)(2)(A) of the Bankruptcy Code, as applicable.

1.195    ***Settled TIC Claim*** means a Claim reserved by a TIC Investor under a settlement agreement that was consummated with the Debtors or the Chapter 11 Trustee prior to the Effective Date.

1.196    ***Sharing/Non-Preferred Interest Recovery Pool*** means a portion of the proceeds realized by the DBSI Real Estate Liquidating Trust solely from its ownership of DBSI Estate Litigation Trust Beneficial Interests calculated so that the ratio of (a)(i) the amount of such portion of proceeds to (ii) the total amount of such proceeds, is the same as the ratio of (b)(i) the aggregate sum of the Participation Amounts to (ii) the aggregate sum of the Participation Amounts plus the aggregate amounts of all Allowed Unsecured Claims against the Note/Fund Consolidated Debtors (excluding Allowed Unsecured Sharing Unit Interest Claims and Unsecured Non-Preferred Interest Claims).

1.197    ***Sharing Unit Interest Claims*** means Claims for a fixed percentage annual return and the full return of investment (excluding profit and loss sharing) calculated as of the Petition Date and payable to holders of Sharing Units issued by DBSI LIDF or DBSI 2008 DOF, respectively.

1.198    ***Sharing Units*** means membership interests in DBSI 2006 LOF, DBSI 2008 DOF or DBSI LIDF, respectively, that are (a) entitled to share in the profits and losses of such Plan Debtors, and (b) subordinated to the payment of (i) both Preferred Interest Claims and Non-Preferred Interest Claims in the case of DBSI 2006 LOF, or (ii) Unsecured Note Claims in the case of DBSI 2008 DOF and DBSI LIDF.

1.199    ***SOFA*** means each Plan Debtor's statement of financial affairs Filed with the clerk of the Bankruptcy Court pursuant to pursuant to Section 521(a) of the Bankruptcy Code and Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

1.200    ***Solicitation*** means the solicitation by the Plan Proponents of acceptances of the Plan.

1.201    ***Solicitation Procedures Order*** means the Order establishing procedures for Solicitation under Bankruptcy Code Sections 105, 1125, 1126 and 1128 and Bankruptcy Rules 2002, 3017, 2018 and 3020, as applicable.

1.202    ***Spectrus*** means Spectrus Real Estate Inc.

- 23 -

1.203    ***Stellar*** means Stellar Technologies, LLC.

1.204    ***Subordinated Claim*** means any Claim that (i) is subordinate in right of payment to another Class of Claims by (a) an agreement that is enforceable pursuant to Section 510(a) of the Bankruptcy Code or (b) Order pursuant to Sections 509(c) or 510(c) of the Bankruptcy Code, (ii) arises from rescission of a purchase or sale of a security of any Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of such a Claim, or (iii) is for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages arising before the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the Holder of such Claim.

1.205    ***Subordinated Non-Preferred Interest Claims*** means any claims of holders of Non-Preferred Units issued by DBSI 2006 LOF or DBSI STDF other than Non-Preferred Interest Claims, which Subordinated Non-Preferred Interest Claims are subordinated to Preferred Interest Claims pursuant to the Waterfall Rights.

1.206    ***Subsidiary Interest*** means any stock, membership, partnership or beneficial interest (direct or indirect) held in another Person.

1.207    ***Supplemental Plan Documents*** means, collectively, those Exhibits or other documents included (or to be included) in an appendix to the Plan and filed with the Bankruptcy Court at least ten (10) calendar days prior to the Voting Deadline.

1.208    ***Taxes*** means any and all taxes, levies, imposts, assessments, or other charges of whatever nature imposed at any time by a Governmental Unit or by any political subdivision or taxing authority thereof or therein and all interest, penalties, or similar liabilities with respect thereto.

1.209    ***Technology Companies Transferred Properties*** means, all Assets of Stellar and iTerra Communications LLC ("iTerra") including, without limitation, any stock, membership, partnership, or beneficial interest in, or Secured or Unsecured Claims against, Wavetronix LLC, GigOptix Inc., and Bio-Reaction Industries LLC, or any successor to any of the foregoing.

1.210    ***TIC*** means tenant-in-common.

1.211    ***TIC Investor*** means a TIC investor who invested in certain real properties that were majority owned by unaffiliated third parties as of the Petition Date and managed by the Plan Debtors and/or an Affiliate thereof under masterleases, operating agreements, or management agreements.

1.212    ***TICPM APA*** means that certain Asset Purchase Agreement by and among DBSI and certain other Debtor Affiliates and TIC Properties Management, LLC dated January 30, 2009 and approved by the Bankruptcy Court on February 5, 2009, a summary and copy of which are attached as Schedule 8 to the Disclosure Statement.

1.213    ***TIC Property Assets*** means all Assets related to certain real properties that were majority owned by unaffiliated third parties as of the Petition Date and managed by the Plan

Debtors and/or an Affiliate thereof under masterleases, operating agreements, or management agreements, including the Interests in and Assets owned by DBSI MasterLeaseCo., Inc. and/or FOR 1031.

1.214   **Trust** means, collectively, and individually if the context requires, the DBSI Liquidating Trust and/or the DBSI Real Estate Liquidating Trust.

1.215   **Trust Agreement** means, collectively, and individually if the context requires, the DBSI Liquidating Trust Agreement and/or the DBSI Real Estate Liquidating Trust Agreement.

1.216   **Trust Assets** means, individually and collectively, as the context requires, the DBSI Liquidating Trust Assets and/or the DBSI Real Estate Liquidating Trust Assets.

1.217   **Trust Operating Expenses** means the DBSI Real Estate Liquidating Trust Operating Expenses and the DBSI Liquidating Trust Operating Expenses, as applicable.

1.218   **Trust Oversight Committee** means the committee of Creditors formed on the Effective Date upon the dissolution of the Creditors' Committee to serve as an oversight committee over the Trust and the Litigation Trust, as applicable, and comprised of not less than three and not more than seven members of the Creditors' Committee or as otherwise identified in the Supplemental Plan Documents filed prior to the Voting Deadline.

1.219   **Trustee** means, collectively, and individually if the context requires, the DBSI Liquidating Trustee and/or the DBSI Real Estate Liquidating Trustee.

1.220   **Unclassified Claims** means Administrative Claims and Priority Tax Claims.

1.221   **Unimpaired** means, when used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is not Impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.222   **Unsecured** when used in reference to a Claim, means any Claim against any DBSI Consolidated Debtor or Note/Fund Consolidated Debtor, as applicable, that is not a Secured Claim, Administrative Claim, Priority Tax Claim, Priority Claim or Miscellaneous Secured Claim, provided that Unsecured Claims shall include, without limitation, any Deficiency Claim.

1.223   **Unsettled TIC Claim** means any pre-petition Claim relating to any Unsettled TIC Property, including any Claim (a) against DBSI as masterlessee, (b) against DBSI as guarantor, or (c) for Accountable Reserves.

1.224   **Unsettled TIC Property** means any real property for which DBSI or one of its Affiliates was the masterlessee under a masterlease which was rejected in the Chapter 11 Cases and for which neither the Debtors nor the Chapter 11 Trustee has consummated a settlement with the tenant-in-common investors in such real property prior to the Effective Date.

1.225   **U.S. Trustee** means the Office of the United States Trustee for Region III.

1.226   ***Voting Deadline*** means the date and time, as fixed by an Order and set forth in the Disclosure Statement, by which all Ballots to accept or reject the Plan must be received in order to be counted.

1.227   ***Voting Units*** means a membership interest in a Note/Fund Consolidated Debtor which represents both management rights as well as a share in the profits and losses of the Debtor.

1.228   ***Waterfall Rights*** means with respect to DBSI STDF and DBSI 2006 LOF, the priority of payments as between Preferred Interest Claims, Non-Preferred Interest Claims and Subordinated Non- Preferred Interest Claims as described in the private placement memorandum and as provided for in the organizational documents applicable to each of such Note/Fund Consolidated Debtors.

1.229   ***Western Electronics*** means DBSI Western Electronics, LLC.

1.230   ***Western Tech*** means DBSI/Western Technologies, LLC.

**C.    Rules of Interpretation.**

For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (c) unless otherwise specified, all references in the Plan to Articles, Sections, Schedules and Exhibits are references to Articles, Sections, Schedules and Exhibits of or to the Plan; (d) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for ease of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (f) unless otherwise specified, the term "including" is intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to" whenever possible; and (g) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**D.    Time Periods.**

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  If any act under this Plan is required to be made or performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**E.    Exhibits and Schedules.**

All Exhibits and Schedules to the Plan and the Disclosure Statement (including, without limitation, the Supplemental Plan Documents) are hereby incorporated by reference and made part of this Plan as if set forth fully herein.

## ARTICLE II
## OVERVIEW OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.      Summary.**

The categories of Claims and Interests listed below classify Claims (except for Professional Fee Claims and other Administrative Claims subject to the Cost Allocation and Professional Fees Protocol) and Interests for all purposes, including voting, confirmation and distribution pursuant to this Plan and pursuant to Sections 1122 and 1123 of the Bankruptcy Code.

**B.      Classification.**

The Claims against and Interests in the Plan Debtors shall be classified as specified below (other than Professional Fee Claims and other Administrative Claims subject to the Cost Allocation and Professional Fees Protocol) and shall be treated in accordance with Article IV below.  Consistent with Section 1122 of the Bankruptcy Code, a Claim or Interest is classified by the Plan in a particular Class only to the extent the Claim or Interest is within the description of the Class, and a Claim or Interest is classified in a different Class to the extent it is within the description of that different Class.  A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

To the extent there are no Claims in a certain Class against a particular Plan Debtor at the time of the Confirmation Hearing, that Class shall be deemed not to exist for any purpose whatsoever in respect of that Plan Debtor.

| Summary of Classification and Treatment of Administrative and Priority Tax Claims Against All Plan Debtors under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT (EXCLUDES INTERCOMPANY CLAIMS)** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY\*** |
| N/A | General Administrative Claims against all Plan Debtors | $280,000 | Paid in Cash equal to the amount of such Allowed Administrative Claim on the Effective Date, or if Disputed, from the S/A/P Claims Reserve , without interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| N/A | Administrative TIC Rent Claims and Administrative TIC Expense Claims against DBSI | $388,289 | Paid in Cash on the Effective Date in accordance with the Administrative TIC Rent/Expenses Claims Protocol, in the Allowed amount of such Claim, which shall not include any interest, penalty or premium. | Unimpaired – not entitled to vote. | 100% |
| N/A | Administrative Claims covered by the Cost Allocation and Professional Fees Protocol | $11,000,000 | Paid in full in Cash on the Effective Date unless the Holders of such Claims and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date) agrees otherwise. | Unimpaired – not entitled to vote. | 100% |
| N/A | Priority Tax Claims against all Plan Debtors | $1,045,000 | Paid in Cash equal to the amount of such Allowed Priority Tax Claim from the S/A/P Claims Reserve, without interest, penalty, or premium, which payment may be made (a) in full on the Effective Date, or (b) in equal periodic payments made on or before the last Business Day of every fiscal quarter after the Effective Date, over a period not exceeding five years after the assessment of the tax on which such Claim is based, totaling the principal amount of such Claim, plus interest on any outstanding balance, calculated from the Effective Date at a rate to be determined pursuant to Section 511 of the Bankruptcy Code. | Unimpaired – not entitled to vote. | 100% |

\*  Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests in DBSI 2005 Notes under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 1A | Priority Claims against DBSI 2005 Notes | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 1B | Miscellaneous Secured Claims against DBSI 2005 Notes | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 1C-(a) | General Unsecured Claims against DBSI 2005 Notes | None | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired - entitled to vote | 18.5% |

[*] Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests in DBSI 2005 Notes under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY***|
| 1C-(b) | Unsecured Note Claims against DBSI 2005 Notes | $59,257,933 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |
| 1D | Subordinated Claims against DBSI 2005 Notes | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 1E | Interests in DBSI 2005 Notes | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests in DBSI 2006 Notes under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY[*] |
| 2A | Priority Claims against DBSI 2006 Notes | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 2B | Miscellaneous Secured Claims against DBSI 2006 Notes | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 2C-(a) | General Unsecured Claims against DBSI 2006 Notes | None | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired - entitled to vote | 18.5% |

[2] Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests in DBSI 2006 Notes under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY***|
| 2C-(b) | Unsecured Note Claims against DBSI 2006 Notes | $80,326,532 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |
| 2D | Subordinated Claims against DBSI 2006 Notes | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 2E | Interests in DBSI 2006 Notes | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests in DBSI 2008 Notes under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY[*] |
| 3A | Priority Claims against DBSI 2008 Notes | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 3B | Miscellaneous Secured Claims against DBSI 2008 Notes | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 3C-(a) | General Unsecured Claims against DBSI 2008 Notes | None | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired - entitled to vote | 18.5% |

[*] Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
|-------|-------------|------------------|------------------------------------------|----------------------|---------------------|
| **Summary of Classification and Treatment of Claims Against and Interests in DBSI 2008 Notes under the Plan** | | | | | |
| 3C-(b) | Unsecured Note Claims against DBSI 2008 Notes | $91,564,756 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |
| 3D | Subordinated Claims against DBSI 2008 Notes | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 3E | Interests in DBSI 2008 Notes | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests in DBSI 2008 DOF under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY[*] |
| 4A | Priority Claims against DBSI 2008 DOF | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 4B | Miscellaneous Secured Claims against DBSI 2008 DOF | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 4C-(a) | General Unsecured Claims against DBSI 2008 DOF | None | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired - entitled to vote | 18.5% |

[*] Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests in DBSI 2008 DOF under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
| 4C-(b) | Unsecured Note Claims against DBSI 2008 DOF | $10,281,964 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |
| 4C-(c) | Unsecured Sharing Unit Interest Claims against DBSI 2008 DOF | XX | Holders of such Claims will receive a Limited Beneficial Interest in the DBSI Real Estate Liquidating Trust, which Limited Beneficial Interest shall entitle the Holder thereof to a share in the Sharing/Non-Preferred Interest Recovery Pool. | Impaired – entitled to vote. | Unknown |
| 4D | Subordinated Claims against DBSI 2008 DOF | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 4E | Sharing Unit Interests in DBSI 2008 DOF | $2,938,600 | Holders of such Interests will neither retain nor receive any property on account of such Sharing Units Interests. | Impaired – not entitled to vote. | 0% |
| 4F | Voting Unit Interests in DBSI 2008 DOF | | Holders of such Interests will neither retain nor receive any property on account of such Voting Units Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests in DBSI LIDF under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 5A | Priority Claims against DBSI LIDF | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 5B | Miscellaneous Secured Claims against DBSI LIDF | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 5C-(a) | General Unsecured Claims against DBSI LIDF | $43,017 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired - entitled to vote | 18.5% |

[*] Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests in DBSI LIDF under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY***|
| 5C-(b) | Unsecured Note Claims against DBSI LIDF | $25,484,140 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |
| 5C-(c) | Unsecured Sharing Unit Interest Claims against DBSI LIDF | XX | Holders of such Claims will receive a Limited Beneficial Interest in the DBSI Real Estate Liquidating Trust, which Limited Beneficial Interest shall entitle the Holder thereof to share in the Sharing/Non-Preferred Interest Recovery Pool. | Impaired - entitled to vote. | Unknown |
| 5D | Subordinated Claims against DBSI LIDF | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 5E | Sharing Unit Interests in DBSI LIDF | $39,288,969 | Holders of such Interests will neither retain nor receive any property on account of such Sharing Units Interests. | Impaired – not entitled to vote. | 0% |
| 5F | Voting Unit Interests in DBSI LIDF | | Holders of such Interests will neither retain nor receive any property on account of such Voting Units Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests in DBSI 2006 LOF under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY[*]** |
| 6A | Priority Claims against DBSI 2006 LOF | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 6B | Miscellaneous Secured Claims against DBSI 2006 LOF | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 6C-(a) | General Unsecured Claims against DBSI 2006 LOF | None | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |

[*] Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests in DBSI 2006 LOF under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 6C-(b) | Unsecured Preferred Interest Claims against DBSI 2006 LOF | $20,273,057 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets, subject to the Waterfall Rights of the Holders of Allowed Unsecured Non-Preferred Interest Claims against DBSI 2006 LOF, in Class 7C-(c). | Impaired – entitled to vote. | 18.5% |
| 6C-(c) | Unsecured Non-Preferred Interest Claims against DBSI 2006 LOF | $824,136 | Paid their share of the distribution payable to the Holders of Allowed Unsecured Preferred Interest Claims under Class 7C-(b), calculated in accordance with the Waterfall Rights.  Holders of such Claims also will receive a Limited Beneficial Interest in the DBSI Real Estate Liquidating Trust, which Limited Beneficial Interest shall entitle the Holder thereof to share in the Sharing/Non-Preferred Interest Recovery Pool. | Impaired – entitled to vote. | 18.5% |
| 6D-(a) | Subordinated Non-Preferred Interest Claims against DBSI 2006 LOF | $10,261,994 | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 6D-(b) | Subordinated Claims against DBSI 2006 LOF | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 6E | Sharing Unit Interests in DBSI 2006 LOF | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |
| 6F | Voting Unit Interests in DBSI 2006 LOF | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests in DBSI REFC under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
| 7A | Priority Claims against DBSI REFC | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 7B | Miscellaneous Secured Claims against DBSI REFC | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |

* Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests in DBSI REFC under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 7C-(a) | General Unsecured Claims against DBSI REFC | $95,500 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired - entitled to vote | 18.5% |
| 7C-(b) | Unsecured Bond Claims against DBSI REFC | $43,347,331[3] | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |
| 7D | Subordinated Claims against DBSI REFC | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 7E | Interests in DBSI REFC | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

[3] The estimated Allowed amount for Class 7C-(b) reflects the application of the proposed Note/Fund Claims Protocol and does not include or reflect any value for guaranty claims that might be asserted by Holders of Bond Claims against DBSI REFC, which are proposed to be resolved in accordance with the Global Claims Settlement.

| Summary of Classification and Treatment of Claims Against and Interests in DBSI STDF under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY\*** |
| 8A | Priority Claims against DBSI STDF | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 8B | Miscellaneous Secured Claims against DBSI STDF | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 8C-(a) | General Unsecured Claims against DBSI STDF | $400 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |

\* Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests in DBSI STDF under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 8C-(b) | Unsecured Preferred Interest Claims against DBSI STDF | $13,929,281 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets, subject to the Waterfall Rights of the Holders of Allowed Unsecured Non-Preferred Interest Claims against DBSI STDF, in Class 8C-(c). | Impaired – entitled to vote. | 18.5% |
| 8C-(c) | Unsecured Non-Preferred Interest Claims against DBSI STDF | $100,435 | Paid their share of the distribution payable to the Holders of Allowed Unsecured Preferred Interest Claims under Class 8C-(b), calculated in accordance with the Waterfall Rights.  Holders of such Claims also will receive a Limited Beneficial Interest in the DBSI Real Estate Liquidating Trust, which Limited Beneficial Interest shall entitle the Holder thereof to share in the Sharing/Non-Preferred Interest Recovery Pool**.** | Impaired – entitled to vote. | 18.5% |
| 8D-(a) | Subordinated Non-Preferred Interest Claims against DBSI STDF | $7,645,410 | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 8D-(b) | Subordinated Claims against DBSI STDF | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 8E | Non-Preferred Unit Interests in DBSI STDF | | Holders of such Interests will neither retain nor receive any property on account of such Non-Preferred Units Interests. | Impaired – not entitled to vote. | 0% |
| 8F | Voting Unit Interests in DBSI STDF | | Holders of such Interests will neither retain nor receive any property on account of such Voting Units Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests In DBSI 2001A under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY***  |
| 9A | Priority Claims against DBSI 2001A | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 9B | Miscellaneous Secured Claims against DBSI 2001A | None[4] | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 9C-(a) | General Unsecured Claims against DBSI 2001A | 0 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |

* Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

[4] The Bank of Cascades, as Indenture Trustee for the holders of notes issued by DBSI 2001A, DBSI 2001B, and DBSI 2001C has asserted a Secured Claim, in whole or in part against each of DBSI 2001A, DBSI 2001B, and DBSI 2001C. The Plan Proponents dispute this classification of the Bank of Cascades alleged Claim.

| Summary of Classification and Treatment of Claims Against and Interests In DBSI 2001A under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
| 9C-(b) | Unsecured Bond Claims against DBSI 2001A | $4,221,854 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |
| 9D | Subordinated Claims against DBSI 2001A | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 9E | Interests in DBSI 2001A | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| | Summary of Classification and Treatment of Claims Against and Interests In DBSI 2001B under the Plan | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY[*]** |
| 10A | Priority Claims against DBSI 2001B | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 10B | Miscellaneous Secured Claims against DBSI 2001B | None[5] | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 10C-(a) | General Unsecured Claims against DBSI 2001B | None | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |

[*] Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

[5] The Bank of Cascades, as Indenture Trustee for the holders of notes issued by DBSI 2001A, DBSI 2001B, and DBSI 2001C has asserted a Secured Claim, in whole or in part against each of DBSI 2001A, DBSI 2001B, and DBSI 2001C. The Plan Proponents dispute this classification of the Bank of Cascades alleged Claim.

| Summary of Classification and Treatment of Claims Against and Interests In DBSI 2001B under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
| 10C-(b) | Unsecured Bond Claims against DBSI 2001B | $9,524,821 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |
| 10D | Subordinated Claims against DBSI 2001B | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 10E | Interests in DBSI 2001B | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests In DBSI 2001C under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY*** |
| 11A | Priority Claims against DBSI 2001C | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 11B | Miscellaneous Secured Claims against DBSI 2001C | None[6] | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 11C-(a) | General Unsecured Claims against DBSI 2001C | None | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |

* Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

[6] The Bank of Cascades, as Indenture Trustee for the holders of notes issued by DBSI 2001A, DBSI 2001B, and DBSI 2001C has asserted a Secured Claim, in whole or in part against each of DBSI 2001A, DBSI 2001B, and DBSI 2001C. The Plan Proponents dispute this classification of the Bank of Cascades alleged Claim.

| Summary of Classification and Treatment of Claims Against and Interests In DBSI 2001C under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY\*** |
| 11C-(b) | Unsecured Bond Claims against DBSI 2001C | $9,272,068 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |
| 11D | Subordinated Claims against DBSI 2001C | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 11E | Interests in DBSI 2001C | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests In DBSI GCC under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY** * |
| 12A | Priority Claims against DBSI GCC | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 12B | Miscellaneous Secured Claims against DBSI GCC | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 12C-(a) | General Unsecured Claims against DBSI GCC | None | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |

* Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests In DBSI GCC under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY[*] |
| 12C-(b) | Unsecured Bond Claims against DBSI GCC | $15,703,942 | Holders of such Claims will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Real Estate Liquidating Trust Assets. | Impaired – entitled to vote. | 18.5% |
| 12D | Subordinated Claims against DBSI GCC | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 12E | Interests in DBSI GCC | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests In DBSI under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY** * |
| 13A | Priority Claims against DBSI | $17,529 | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 13B-(a) | Miscellaneous Secured Claims against DBSI | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Allowed Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |

* Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY * |
|---|---|---|---|---|---|
| 13B-(b) | Disputed Secured Claims of M&I against DBSI | $9,525,416.24[7] | Satisfied in whole or in part by (i) payment in Cash from the Setoff Funds, or (ii) the transfer of all or any portion of the Assets, if any, securing such Claim, up to the Allowed amount of such Claim as determined by the Bankruptcy Court in the M&I Action, or such other treatment as may be agreed to by the Holder and the Plan Proponents (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date) and approved by the Bankruptcy Court. | Impaired - entitled to vote. | Unknown |
| 13C-(a) | General Unsecured Claims against DBSI | $67,200,000 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 13C-(b) | Unsecured Unsettled TIC Claims against DBSI | $140,000,000 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, in accordance with the TIC Claims Protocol, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |

(Table title: **Summary of Classification and Treatment of Claims Against and Interests In DBSI under the Plan**)

---

[7] M&I has asserted a Secured Claim against DBSI in the amount of $74,480,246. The Plan Proponents believe that a large portion of such claim is not valid. To the extent M&I proves a Claim in excess of the $9,525,416.24 being held by M&I in certain accounts bearing DBSI's tax identification number (the "Setoff Funds"), such Claim is included in Class 13C-(a). The Setoff Funds are the subject of an adversary proceeding commenced by M&I against DBSI on November 18, 2008, captioned *M&I Marshall & Ilsley Bank, N.A. v. DBSI, Inc.*, Adv. Pro. No. 08-51807(PJW) (the "M&I Action").

| Summary of Classification and Treatment of Claims Against and Interests In DBSI under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY** * |
| 13C-(c) | Unsecured Settled TIC Claims for Accountable Reserves against DBSI | $54,000,000 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, in accordance with the TIC Claims Protocol, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 13C-(d) | Unsecured Proforma/Land Bank Accountable Reserves Claims against DBSI | $8,300,000 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, in accordance with the TIC Claims Protocol, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 13D | Subordinated Claims against DBSI | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 13E | Interests in DBSI | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests In DBSI Development under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY[*] |
| 14A | Priority Claims against DBSI Development | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 14B | Miscellaneous Secured Claims against DBSI Development | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Allowed Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 14C | General Unsecured Claims against DBSI Development | $60,242 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 14D | Subordinated Claims against DBSI Development | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |

[*] Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests In DBSI Development under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 14E | Interests in DBSI Development | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
|---|---|---|---|---|---|
| 15A | Priority Claims against DBSI Discovery | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 15B | Miscellaneous Secured Claims against DBSI Discovery | $145,596 | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Allowed Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 15C | General Unsecured Claims against DBSI Discovery | $206,756 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 15D | Subordinated Claims against DBSI Discovery | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |

The heading spanning the table:

**Summary of Classification and Treatment of Claims Against and Interests In DBSI Discovery under the Plan**

* Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests In DBSI Discovery under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
| 15E | Interests in DBSI Discovery | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests In DBSI Land Development under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
| 16A | Priority Claims against DBSI Land Development | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 16B | Miscellaneous Secured Claims against DBSI Land Development | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Allowed Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 16C | General Unsecured Claims against DBSI Land Development | None | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 16D | Subordinated Claims against DBSI Land Development | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |

* Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests In DBSI Land Development under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 16E | Interests in DBSI Land Development | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests In DBSI Properties under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 17A | Priority Claims against DBSI Properties | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 17B | Miscellaneous Secured Claims against DBSI Properties | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Allowed Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 17C | General Unsecured Claims against DBSI Properties | $152,897 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 17D | Subordinated Claims against DBSI Properties | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |

[*] Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests In DBSI Properties under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
| 17E | Interests in DBSI Properties | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| | Summary of Classification and Treatment of Claims Against and Interests In DBSI Realty under the Plan | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 18A | Priority Claims against DBSI Realty | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 18B | Miscellaneous Secured Claims against DBSI Realty | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Allowed Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 18C | General Unsecured Claims against DBSI Realty | $392,506 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 18D | Subordinated Claims against DBSI Realty | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |

[*] Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests In DBSI Realty under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
| 18E | Interests in DBSI Realty | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| | Summary of Classification and Treatment of Claims Against and Interests In DBSI Asset Management under the Plan | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 19A | Priority Claims against DBSI Asset Management | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 19B | Miscellaneous Secured Claims against DBSI Asset Management | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Allowed Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 19C | General Unsecured Claims against DBSI Asset Management | None | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |

[*]  Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests In DBSI Asset Management under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 19D | Subordinated Claims against DBSI Asset Management | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 19E | Interests in DBSI Asset Management | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests In FOR 1031 under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY***  |
| 20A | Priority Claims against FOR 1031 | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 20B-(a) | Miscellaneous Secured Claims against FOR 1031 | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Allowed Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 20B-(b) | Disputed Secured Claims of M&I against FOR | None[8] | Satisfied in whole or in part by the transfer of all or any portion of the Assets, if any, securing such Claim, or such other treatment as may be agreed to by the Holder and the Plan Proponents (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date) and approved by the Bankruptcy Court. | Impaired - entitled to vote. | Unknown |

* Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

[8] M&I has asserted a Secured Claim against FOR 1031 in the amount of $15,388,566. The Plan Proponents believe that no portion of such Claim is secured. To the extent M&I proves a claim against FOR 1031 in excess of the value of the Assets, if any, securing such Claim, such Claim is included in Class 20C.

| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
|-------|-------------|------------------|------------------------------------------|----------------------|---------------------|
| 20C | General Unsecured Claims against FOR 1031 | $344,805 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 20D | Subordinated Claims against FOR 1031 | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |
| 20E | Interests in FOR 1031 | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

The table header reads: **Summary of Classification and Treatment of Claims Against and Interests In FOR 1031 under the Plan**

| Summary of Classification and Treatment of Claims Against and Interests In Spectrus under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY\*** |
| 21A | Priority Claims against Spectrus | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 21B | Miscellaneous Secured Claims against Spectrus | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Allowed Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 21C | General Unsecured Claims in Spectrus | $10,398 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 21D | Subordinated Claims against Spectrus | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |

\* Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests In Spectrus under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
| 21E | Interests in Spectrus | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests In Western Tech under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY[*] |
| 22A | Priority Claims against Western Tech | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 22B | Miscellaneous Secured Claims against Western Tech | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Allowed Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 22C | General Unsecured Claims against Western Tech | $673,914 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 22D | Subordinated Claims against Western Tech | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |

[*] Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests In Western Tech under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 22E | Interests in Western Tech | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests In DBSI Securities under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY***  |
| 23A | Priority Claims against DBSI Securities | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 23B | Miscellaneous Secured Claims against DBSI Securities | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Allowed Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 23C | General Unsecured Claims against DBSI Securities | $44,617 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 23D | Subordinated Claims against DBSI Securities | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |

* Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests In DBSI Securities under the Plan | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **DESCRIPTION** | **ESTIMATED AMOUNT** | **TREATMENT OF ALLOWED CLAIMS WITHIN CLASS** | **IMPAIRMENT AND VOTING** | **ESTIMATED RECOVERY**[*] |
| 23E | Interests in DBSI Securities | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

| Summary of Classification and Treatment of Claims Against and Interests In DCJ under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
| 24A | Priority Claims against DCJ | None | Paid in Cash equal to the amount of such Allowed Priority Claim from the S/A/P Claims Reserve, which payment shall not include any interest, penalty, or premium. | Unimpaired – not entitled to vote. | 100% |
| 24B | Miscellaneous Secured Claims against DCJ | None | At the option of the Trustee or Estate Representative: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Allowed Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date). | Unimpaired – not entitled to vote. | 100% |
| 24C | General Unsecured Claims against DCJ | $2,968 | Holders of such Claims will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claims, which Beneficial Interest shall entitle the Holder thereof to a Pro Rata share of the Net Distributable Cash from the DBSI Liquidating Trust Assets. | Impaired – entitled to vote. | 6% |
| 24D | Subordinated Claims against DCJ | Unknown | Holders of such Claims will neither retain nor receive any property on account of such Claims. | Impaired – not entitled to vote. | 0% |

* Estimated recoveries do not include potential recoveries on Estate Causes of Action, including Avoidance Actions.

| Summary of Classification and Treatment of Claims Against and Interests In DCJ under the Plan | | | | | |
|---|---|---|---|---|---|
| CLASS | DESCRIPTION | ESTIMATED AMOUNT | TREATMENT OF ALLOWED CLAIMS WITHIN CLASS | IMPAIRMENT AND VOTING | ESTIMATED RECOVERY* |
| 24E | Interests in DCJ | | Holders of such Interests will neither retain nor receive any property on account of such Interests. | Impaired – not entitled to vote. | 0% |

## C.    Treatment Satisfies Allowed Claims and Allowed Interests.

The treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Entity holding an Allowed Claim or an Allowed Interest may have in or against the Plan Debtors.  The treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Entity holding a Beneficial Interest or a Limited Beneficial Interest may have in or against the DBSI Liquidating Trust and/or the DBSI Real Estate Liquidating Trust.  This treatment supersedes and replaces any agreements or rights those Entities have in or against the applicable Plan Debtor or its property.  All Distributions under the Plan or the DBSI Liquidating Trust or the DBSI Real Estate Liquidating Trust will be tendered to the Person holding the Allowed Claim in accordance with the terms of this Plan.  **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF (I) ANY CLAIM THAT IS NOT AN ALLOWED CLAIM, OR (II) ANY INTEREST THAT IS NOT AN ALLOWED INTEREST.**

## D.    Intercompany Claims.

Intercompany Claims will not be separately classified and shall be treated as provided in Article V of this Plan.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS AND INTERESTS

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under this Plan.  They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code.  As such, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article and paid on the Effective Date or thereafter from the S/A/P Reserve unless otherwise noted herein.

## A.    General Administrative Claims

Except to the extent that a Holder of an Allowed General Administrative Claim agrees to less favorable treatment, or as otherwise provided for in the Plan, on the later of (a) the Effective Date, (b) the date on which its General Administrative Claim becomes Allowed, or (c) the date on which its General Administrative Claim becomes payable under any agreement relating

thereto, each Holder of an Allowed General Administrative Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Administrative Claim against the DBSI Consolidated Debtors or the Note/Fund Consolidated Debtors, as applicable, Cash equal to the unpaid portion of such General Administrative Claim from the S/A/P Claims Reserve; provided, however, that any Allowed General Administrative Claim (x) incurred post-petition by the Chapter 11 Trustee or the Plan Debtors in the ordinary course of businesses or (y) arising pursuant to one or more post-petition agreements or transactions entered into by any Plan Debtor or the Chapter 11 Trustee with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the Chapter 11 Trustee or the Trustee, on the one hand, and the Holder of such General Administrative Claim, on the other.  The Holder of an Allowed General Administrative Claim shall not be entitled to, and shall not be paid, any interest, penalty, or premium thereon, and any interest, penalty, or premium asserted with respect to a General Administrative Claim shall be deemed Disallowed and expunged without the need for any further Order of the Bankruptcy Court.

## B.    Administrative TIC Rent Claims and Administrative TIC Expense Claims

Each Administrative TIC Rent Claim and Administrative TIC Expense Claim shall be allowed or Disallowed, in accordance with the Administrative TIC Rent Expense Claims Protocol set forth in Article VI(J)(2) herein.  On the Effective Date, the Estate Representative shall cause to be paid to each Holder of an Allowed Administrative TIC Rent Claim or Allowed Administrative TIC Expense Claim, in full and final satisfaction, settlement, release, and extinguishment of such Claim, Cash equal to the Allowed amount of such Administrative TIC Rent Claim or Administrative TIC Expense Claim as set forth in Schedule 2 to the Disclosure Statement, unless the Holder agrees or shall have agreed to other treatment of such Claim.  The Holder of an Allowed Administrative TIC Rent Claim or Allowed Administrative TIC Expense Claim shall not be entitled to, and shall not be paid, any interest, penalty, premium, fees or expenses thereon, and except as provided by the Administrative TIC Rent/Expense Claims Protocol, any Administrative TIC Rent Claim and any Administrative TIC Expense Claim, including any interest, penalty, premium, fees or expenses asserted with respect thereto shall be deemed Disallowed and expunged without the need for any further Order of the Bankruptcy Court.

## C.    Claims Covered by the Cost Allocation and Professional Fees Protocol

Each Holder of an Allowed Professional Fee Claim, and each of the Chapter 11 Trustee, the Examiner and any Entity retained pursuant to Section 363 of the Bankruptcy Code, in connection with the fees and expenses payable to each such Person or Entity, shall receive, in full and final satisfaction, settlement, release, and extinguishment of such Claim, Cash equal to the Allowed amount of such Claims in accordance with the Cost Allocation and Professional Fees Protocol set forth in Article VI(J)(3) herein, unless such Person or Entity agrees or shall have agreed to other treatment of such Claim, and such Person or Entity shall not be entitled to, and shall not be paid, any interest, penalty, or premium thereon.

### D.    Administrative Bar Dates

#### 1.    General Administrative Claim Bar Date

Except for Administrative TIC Rent Claims and Administrative Claims covered by the Cost Allocation and Professional Fees Protocol, requests for payment of Administrative Claims (including Administrative TIC Expense Claims) must be Filed and served on counsel for the Chapter 11 Trustee, counsel for the Creditors' Committee, counsel for the Trustee and the U.S. Trustee no later than (a) thirty (30) days after a notice of the Effective Date is Filed with the Bankruptcy Court and served, or (b) such later date, if any, as the Bankruptcy Court shall order upon application made prior to the end of such 30-day period. Holders of Administrative Claims (including, without limitation, the Holders of any Claims for federal, state or local taxes) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against the Plan Debtors, the Estates, the Trust or any of their property. Notwithstanding the foregoing, any bar dates established during the course of the Chapter 11 Cases shall remain in full force and effect.

All objections to allowance of Administrative Claims (other than Administrative TIC Rent Claims and Administrative Claims covered by the Cost Allocation and Professional Fees Protocol) that are timely Filed must be Filed by any parties in interest no later than ninety (90) days after the Administrative Claim Bar Date (the "Administrative Claim Objection Deadline"). The Administrative Claim Objection Deadline may be initially extended for an additional ninety (90) days at the sole discretion of the Trustee upon the filing of a notice of the extended Administrative Claim Objection Deadline with the Bankruptcy Court. Thereafter, the Administrative Claim Objection Deadline may be further extended by an Order of the Bankruptcy Court upon application by the Trustee, which Order may be granted without notice to any Creditors. If no objection to the applicable Administrative Claim is Filed on or before the Administrative Claim Objection Deadline, as may be extended, such Administrative Claim will be deemed Allowed, subject to the Bankruptcy Court's discretion to extend such bar date retroactively.

#### 2.    Professional Claims Bar Date

All Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of Sections 327, 328, 330, 331, 363, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, *inter alia*, any compensation requested by any Professional or any other Person for making a substantial contribution in the Chapter 11 Cases) shall File and serve on counsel for the Chapter 11 Trustee, counsel for the Trustee, counsel for the Creditors' Committee, counsel for the Fee Examiner, and the U.S. Trustee, an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than (a) forty-five (45) days after the Confirmation Date, or (b) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period. The review of final applications for payment of fees and expenses by Professionals shall only be subject to review by the Fee Examiner for the quarterly period (or part thereof) not previously reviewed by the Fee Examiner.

Objections to Professional Claims or Claims of other Persons for compensation or reimbursement of expenses Filed pursuant to Article III must be Filed and served on counsel for the Chapter 11 Trustee, counsel for the Trustee, counsel for the Creditors' Committee, counsel for the Fee Examiner, the U.S. Trustee, and the Professionals or other Persons to whose application the objections are addressed on or before (a) thirty (30) days after the Professional Files such Professional Claim or (b) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 30-day period or upon agreement between the Trustee, and the affected Professional or other Person.

The costs of a Trust, including without limitation, the fees and expenses of the Trustee and any professionals retained by the Trustee, shall be borne entirely by the applicable Trust and may be paid without further application or order of the Bankruptcy Court.

**E.      Priority Tax Claims.**

With respect to each Allowed Priority Tax Claim not paid prior to the Effective Date, the Estate Representative shall cause to be paid to each Holder of an Allowed Priority Tax Claim, in full and final satisfaction, settlement, and release of such Allowed Priority Tax Claim, Cash from the S/A/P Claims Reserve, (a) in accordance with Bankruptcy Code Section 1129(a)(9)(C) and (D), equal Cash payments, occurring on or before the last Business Day of every fiscal quarter after the Effective Date, over a period not exceeding five (5) years after the assessment of the tax on which such Claim is based, totaling the principal amount of such Claim, plus interest on any outstanding balance of such Allowed Priority Tax Claim, calculated from the Effective Date at a rate to be determined pursuant to Section 511 of the Bankruptcy Code; (b) such other treatment agreed to by the Holder of such Allowed Priority Tax Claim and the Chapter 11 Trustee and/or the Estate Representative in writing, provided, however, that the Estate Representative shall have the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty. Notwithstanding the foregoing, or anything to the contrary in the Plan, no Distribution shall be made to the Holder of any Allowed Priority Tax Claim unless (a) the Trust has sufficient available Cash to pay, or reserve for, as the case may be, the value of all Administrative Claims, or (b) the Trust Oversight Committee consents to all or any portion of such Distribution. Holders of Priority Tax Claims will be paid in full on account of their Claims and are not entitled to vote on the Plan.

**F.      Statutory Fees.**

All fees due and payable pursuant to 28 U.S.C. Section 1930 and not paid prior to the Effective Date shall be paid in Cash from the S/A/P Claims Reserve.  After the Effective Date, the Trustee shall pay quarterly fees to the U.S. Trustee, in Cash from the Operating Expense Reserve of the DBSI Liquidating Trust and the DBSI Real Estate Liquidating Trust, as applicable, until the Chapter 11 Case for each applicable Plan Debtor is (i) closed, and a final decree is entered, or (ii) converted to a case under chapter 7 of the Bankruptcy Code.  In addition, each Trust shall File post-Confirmation quarterly reports in conformance with the U.S. Trustee guidelines.  Notwithstanding anything to the contrary in this Plan, the U.S. Trustee shall not be required to File a request for payment of its quarterly fees, which will be deemed Administrative Claims against the applicable Plan Debtors and their Estates.

**ARTICLE IV**
**CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

As required by the Bankruptcy Code, this Plan places Claims and Interests into various Classes according to their right to priority and other relative rights. This Plan specifies whether each Class of Claims or Interests is Impaired or Unimpaired, and this Plan sets forth the treatment each Class will receive. Each Holder of an Allowed Claim in an Impaired Class that is entitled to vote pursuant to this Article IV of the Plan shall be entitled to vote to accept or reject the Plan.

The Plan also provides for substantive consolidation of the Plan Debtors' Assets and liabilities into two liquidating trusts - DBSI Real Estate Liquidating Trust and the DBSI Liquidating Trust - for voting and distribution purposes.

A.    **Classification and Treatment of Claims and Interest Against all Note/Fund Consolidated Debtors.**

1.    **Unimpaired Classes of Claims Against All Note/Fund Consolidated Debtors**

(a)    *Priority Claims against all Note/Fund Consolidated Debtors (Classes 1A, 2A, 3A, 4A, 5A, 6A, 7A, 8A, 9A, 10A, 11A and 12A)*

(i)    Classification:  Classes 1A, 2A, 3A, 4A, 5A, 6A, 7A, 8A, 9a, 10A, 11A and 12A (the "Note/Fund Priority Classes") consist of all Priority Claims against a particular Note/Fund Consolidated Debtor. These Classes are Unimpaired by the Plan and Holders of Claims in the Note/Fund Priority Classes are deemed to have accepted the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

(ii)    Treatment:  Unless the Holder of a Claim in the Note/Fund Priority Classes and the Chapter 11 Trustee (if prior to or on the Effective Date) or the applicable Trustee (if after the Effective Date) agree to a different treatment, on, or as soon as reasonably practicable after, the later of (a) the Effective Date, or (b) the date on which a Note/Fund Priority Class Claim becomes an Allowed Claim, each Holder of an Allowed Note/Fund Priority Class Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Note/Fund Priority Class Claim, Cash, without interest, penalty, or premium thereon, from the S/A/P Claims Reserve equal to the unpaid portion of such Allowed Note/Fund Priority Class Claim. Any interest, penalty, or premium asserted with respect to a Priority Claim in the Note/Fund Priority Classes shall be deemed Disallowed and expunged without the need for any further Order of the Bankruptcy Court.

(b)    *Miscellaneous Secured Claims against all Note/Fund Consolidated Debtors (Classes 1B, 2B, 3B, 4B, 5B, 6B, 7B, and 8B, 9B, 10B, 11B and 12B)*

(i)    Classification:  Classes 1B, 2B, 3B, 4B, 5B, 6B, 7B, 8B, 9B, 10B, 11B and 12B ("Note/Fund Miscellaneous Secured Classes") consist of all Miscellaneous Secured Claims against a particular Note/Fund Consolidated Debtor. The Claims in the Note/Fund

Miscellaneous Secured Classes are Unimpaired and Holders of such Claims are not entitled to vote on the Plan.

        **(ii)**    <u>Treatment</u>:  On, or as soon as reasonably practicable after, the later of (a) the Effective Date, or (b) the date on which a Note/Fund Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, at the option of the Estate Representative, an Allowed Miscellaneous Secured Claim against a Note/Fund Consolidated Debtor will be: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date).

      To the extent there is sufficient value in the assets securing any Allowed Note/Fund Miscellaneous Secured Claim as contemplated by Section 506(b) of the Bankruptcy Code, such Allowed Miscellaneous Secured Claim shall include: (a) if the Note/Fund Miscellaneous Secured Claim arises from a written agreement, interest accrued (i) from the Petition Date to the Maturity Date at the non-default rate of interest under such agreement, and (ii) from the Maturity Date to the Effective Date at the lesser of (A) the non-default rate of interest under the agreement and (B) the federal judgment rate of interest; (b) if the Note/Fund Miscellaneous Secured Claim is a tax claim, interest at a rate to be determined pursuant to Section 511 of the Bankruptcy Code; and (c) any reasonable fees, costs, or charges payable under the agreement or State statute giving rise to such Note/Fund Miscellaneous Secured Claim.

        **(c)**    ***Special Provision Regarding Unimpaired Claims***

      Except as otherwise provided in the Plan, the Confirmation Order, any other Order of the Bankruptcy Court, or any document or agreement enforceable pursuant to the terms of the Plan, nothing shall affect the rights and defenses, both legal and equitable, of the Chapter 11 Trustee, the Trust and the applicable Trustee with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

        **2.**    **Impaired Classes of Claims**

        **(a)**    ***Unsecured Claims against all Note/Fund Consolidated Debtors (Classes 1C-(a), 1C-(b), 2C-(a), 2C-(b), 3C-(a), 3C-(b), 4C-(a), 4C-(b), 4C-(c), 5C-(a), 5C-(b), 5C-(c), 6C-(a), 6C-(b), 6C-(c), 7C-(a), 7C-(b), 8C-(a), 8C-(b), 8C-(c), 9C-(a), 9C-(b), 10C-(a), 10C-(b), 11C-(a), 11C-(b), 12C-(a) and 12C-(b))***

        **(i)**    <u>Classification</u>:  Classes 1C-(a), 1C-(b), 2C-(a), 2C-(b), 3C-(a), 3C-(b), 4C-(a), 4C-(b), 4C-(c), 5C-(a), 5C-(b), 5C-(c), 6C-(a), 6C-(b), 6C-(c), 7C-(a), 7C-(b), 8C-(a),

8C-(b), 8C-(c), 9C-(a), 9C-(b), 10C-(a), 10C-(b), 11C-(b), 12C-(a) and 12C-(b) (the "Note/Fund Unsecured Classes") consist of all Allowed Unsecured Claims against each Note/Fund Consolidated Debtor, including, without limitations, General Unsecured Claims, Unsecured Note Claims, Unsecured Bond Claims, Unsecured Preferred Interest Claims, Unsecured Non-Preferred Interest Claims, and Unsecured Sharing Unit Interest Claims against each Note/Fund Consolidated Debtor.  The Note/Fund Unsecured Classes are Impaired and each Holder of a Claim in the Note/Fund Unsecured Classes is entitled to vote to accept or reject the Plan.

>    **(ii)**    Treatment of Allowed Unsecured Class Claims:

>    >    **(1)**    Treatment of Allowed Unsecured Class Claims (except Allowed Unsecured Class Claims in Classes 4C-(c), 5C-(c), 6C-(b), 6C-(c), 8C-(b), and 8C-(c))

On the Effective Date, each Holder of an Allowed Claim in the Note/Fund Unsecured Classes (except Allowed Note/Fund Unsecured Class Claims in Classes 4C-(c), 5C-(c), 6C-(b), 6C-(c), 8C-(b), and 8C-(c)) will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claim, which Beneficial Interest shall entitle such Holder, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Note/Fund Unsecured Class Claim (except Allowed Note/Fund Unsecured Class Claims in Classes 4C-(c), 5C-(c), 6C-(b), 6C-(c), 8C-(b), and 8C-(c)), to a Pro Rata share of the Net Distributable Cash of the DBSI Real Estate Liquidating Trust Assets.

>    >    **(2)**    Treatment of Allowed Unsecured Sharing Unit Interest Claims (Classes 4C-(c) and 5C-(c))

Each Holder of an Allowed Unsecured Sharing Unit Interest Claim in Classes 4C-(c) and 5C-(c), respectively, will receive a Limited Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claim, which Limited Beneficial Interest shall entitle such Holder, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Claim, to share in the Sharing/Non-Preferred Interest Recovery Pool.

>    >    **(3)**    Treatment of Allowed Unsecured Preferred Interest Claims and Unsecured Non-Preferred Interest Claims (Classes 6C-(b), 6C-(c), 8C-(b), and 8C-(c))

Unsecured Preferred Interest Claims and Unsecured Non-Preferred Interest Claims with respect to DBSI 2006 LOF and DBSI STDF, Classes 6C-(b), 6C-(c), 8C-(b), and 8C-(c), respectfully, are the most senior Claims against such Plan Debtor Entities after Secured Claims and therefore, are the functional equivalent of Unsecured Class Claims in Classes 1C-(a), 1C-(b), 2C-(a), 2C-(b), 3C-(a), 3C-(b), 4C-(a), 4C-(b), 5C-(a), 5C-(b), 6C-(a), 7C-(a), 7C-(b), 8C-(a), 9C-(a), 9C-(b), 10C-(a), 10C-(b), 11C-(a), 11C-(b), 12C-(a), 12C-(b), 13C, 14C, 15C, 16C, 17C, 18C, 19C, 20C, 21C, 22C, 23C, and 24C (i.e., indebtedness versus equity), and are to be distinguished from the Interests in DBSI 2006 LOF and DBSI STDF.  Accordingly, each Holder of an Allowed Unsecured Preferred Interest Claims and Unsecured Non-Preferred Interest Claims with respect to DBSI 2006 LOF and DBSI STDF shall receive equivalent treatment to all other Allowed Unsecured Claims, subject to Waterfall Rights, as applicable.

**(A)** ***Allowed Unsecured Preferred Interest Claims
(Classes 6C-(b) and 8C-(b))***

On the Effective Date, each Holder of an Allowed Unsecured Preferred Interest Claim against DBSI 2006 LOF or DBSI STDF, as applicable, Classes 6C-(b) and 8C-(b), respectively will receive a Beneficial Interest in the DBSI Real Estate Liquidating Trust on account of such Allowed Claim, which Beneficial Interest shall entitle such Holder, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Claim, to a Pro Rata share of the DBSI Real Estate Liquidating Trust Assets on account of such Allowed Claim, subject to the Waterfall Rights of the Holders of Allowed Unsecured Non-Preferred Interest Claims against DBSI 2006 LOF and DBSI STDF, in Classes 6C-(c) and 8C-(c), as applicable.

The Distributions payable to the Holders of Allowed Unsecured Preferred Interest Claims against DBSI 2006 LOF and DBSI STDF shall be determined by aggregating the Allowed Unsecured Preferred Interest Claims and the Allowed Unsecured Non-Preferred Interest Claims. As aggregated, such total Allowed Claims will share in the Pro Rata Distributions made from the DBSI Real Estate Liquidating Trust Assets, subject to the Waterfall Rights.

**(B)** ***Allowed Unsecured Non-Preferred Interest Claims
(Classes 6C-(c) and 8C-(c))***

Each Holder of an Allowed Unsecured Non-Preferred Interest Claim against DBSI 2006 LOF or DBSI STDF, as applicable, Classes 6C-(c) and 8C-(c), respectively, will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Claim: (i) their share of the Distribution payable to the Holders of Allowed Unsecured Preferred Interest Claims under Classes 6C-(b) and 8C-(b), as applicable, calculated in accordance with the Waterfall Rights; and (ii) a Limited Beneficial Interest in the DBSI Real Estate Liquidating Trust, which Limited Beneficial Interest shall entitle such Holder to share in the Sharing/Non-Preferred Interest Recovery Pool.

**(b)** ***Subordinated Non-Preferred Interest Claims and Subordinated
Claims against all Note/Fund Consolidated Debtors (Classes 1D, 2D,
3D, 4D, 5D, 6D-(a), 6D-(b), 7D, 8D-(a), and 8D-(b), 9D, 10D, 11D and
12D)***

**(i)** Classification:  Classes 1D, 2D, 3D, 4D, 5D, 6D-(a), 6D-(b), 7D, 8D-(a), 8D-(b), 9D, 10D, 11D and 12D consist of all Subordinated Non-Preferred Interest Claims or Subordinated Claims, including, but not limited to, Regulatory Claims, fraud or rescission claims, and Penalty-Based Claims, against the Note/Fund Consolidated Debtors (collectively, the "Note/Fund Subordinated Classes").  The Note/Fund Subordinated Classes are Impaired, but because Holders of Claims in these Classes are not expected to retain or receive any property on account of such Claims, each Holder of Claim in the Note/Fund Subordinated Classes is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

**(ii)** Treatment:  On the Effective Date, all Claims in the Note/Fund Subordinated Classes shall be deemed eliminated, cancelled and/or extinguished and No Holder

of a Note/Fund Subordinated Class Claim shall be entitled to, nor shall it receive or retain, any property or interests in property on account of such Claim.

      (c)      ***Interests in all Note/Fund Consolidated Debtors (Classes 1E, 2E, 3E, 4E, 4F, 5E, 5F, 6E, 6F, 7E, 8E, and 8F, 9E, 10E, 11E and 12)***

      **(i)**      <u>Classification</u>: Classes 1E, 2E, 3E, 4E, 4F, 5E, 5F, 6E, 6F, 7E, 8E, 8F, 9E, 10E, 11E and 12E consist of all Interests in the Note/Fund Consolidated Debtors, including Sharing Unit Interests, Voting Unit Interests, and Non-Preferred Unit Interests. The Interests Classes are Impaired by the Plan, but because Holders of Interests in these Classes are not expected to retain or receive any property on account of such Interests, each Holder of an Interest in any Note/Fund Consolidated Debtor is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

      **(ii)**      <u>Treatment</u>: No Holder of an Interest in any Note/Fund Consolidated Debtor shall be entitled to, nor shall such Holder receive or retain, any property or interests in property on account of such Interest. The entry of the Confirmation Order shall act as an order approving and effecting the cancellation of all Interests, Sharing Unit Interests, Voting Unit Interests, and Non-Preferred Unit Interests, as applicable (and all securities convertible or exercisable for or evidencing any other right in or with respect to the Interests) in the Note/Fund Consolidated Debtors outstanding immediately prior to the Effective Date without any conversion thereof or Distribution with respect thereto.

**B.**      **Classification and Treatment of Claims and Interest Against All DBSI Consolidated Debtors.**

      **1.**      **Unimpaired Classes of Claims Against All DBSI Consolidated Debtors**

      (a)      ***Priority Claims against all DBSI Consolidated Debtors (Classes 13A, 14A, 15A, 16A, 17A, 18A, 19A, 20A, 21A, 22A, 23A, and 24A)***

      **(i)**      <u>Classification</u>: Classes 13A, 14A, 15A, 16A, 17A, 18A, 19A, 20A, 21A, 22A, 23A, and 24A (the "DBSI Priority Claims") consist of Allowed Priority Claims against a particular DBSI Consolidated Debtor. These Classes are Unimpaired by the Plan and Holders of Claims in the DBSI Priority Classes are not entitled to vote to accept or reject the Plan.

      **(ii)**      <u>Treatment</u>: Unless the Holder of a Claim in the DBSI Priority Classes and the Chapter 11 Trustee (if prior to or on the Effective Date) or the applicable Trustee (if after the Effective Date) agree to a different treatment, on, or as soon as reasonably practicable after, the later of (a) the Effective Date, or (b) the date on which a DBSI Priority Class Claim becomes an Allowed Claim, each Holder of an Allowed Note/Fund Priority Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed DBSI Priority Class Claim, Cash, without interest, penalty, or premium thereon, from the S/A/P Claims Reserve equal to the unpaid portion of such Allowed DBSI Priority Class Claim. Any interest, penalty, or premium asserted with respect to a Priority Claim in the DBSI Priority Classes shall be deemed Disallowed and expunged without the need for any further Order of the Bankruptcy Court.

    **(b)**    ***Miscellaneous Secured Claims against all DBSI Consolidated Debtors (Classes 13B, 14B, 15B, 16B, 17B, 18B, 19B, 20B, 21B, 22B, 23B, and 24B).***

    **(i)**    <u>Classification</u>:  Classes 13B-(a), 14B, 15B, 16B, 17B, 18B, 19B, 20B, 21B, 22B, 23B, and 24B ("DBSI Miscellaneous Secured Classes") consist of all Miscellaneous Secured Claims against a particular DBSI Consolidated Debtor.  Claims within the DBSI Miscellaneous Secured Classes are Unimpaired and Holders of such Claims are not entitled to vote on the Plan.

    **(ii)**    <u>Treatment</u>:  On the Effective Date, or as soon as reasonably practicable after, the later of (a) the Effective Date, or (b) the date on which a DBSI Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim, at the option of the Estate Representative, an Allowed DBSI Miscellaneous Secured Claim will be: (1) paid in Cash from the S/A/P Claims Reserve, up to the Allowed amount of such Claim, (2) satisfied in whole or in part by the transfer of all or any portion of the Assets securing such Claim, (3) paid in deferred periodic Cash payments from the S/A/P Claims Reserve, having a present value on the Effective Date equal to the Allowed amount of the Claim that is not otherwise satisfied as of the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing the Claim, (4) such other treatment as would provide the "indubitable equivalent" of the Allowed Claim, or (5) such other treatment as may be agreed to by the Holder and the Chapter 11 Trustee (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date).

    To the extent there is sufficient value in the assets securing any Allowed DBSI Miscellaneous Secured Claim as contemplated by Section 506(b) of the Bankruptcy Code, such Allowed DBSI Miscellaneous Secured Claim shall include: (a) if the DBSI Miscellaneous Secured Claim arises from a written agreement, interest accrued (i) from the Petition Date to the Maturity Date at the non-default rate of interest under such agreement, and (ii) from the Maturity Date to the Effective Date at the lesser of (A) the non-default rate of interest under the agreement and (B) the federal judgment rate of interest; (b) if the Miscellaneous Secured Claim is a tax claim, interest at a rate to be determined pursuant to Section 511 of the Bankruptcy Code; and (c) any reasonable fees, costs, or charges payable under the agreement or State statute giving rise to such Miscellaneous Secured Claim.

    **2.**    **Impaired Classes of Claims against all DBSI Consolidated Debtors**

    **(a)**    ***Disputed Secured Claims of M&I - (Classes 13B-(b) and 20B-(b))***

    **(i)**    <u>Classification</u>:  Classes 13B-(b) and 20B-(b) comprise M&I Marshall & Ilsley Bank's ("M&I") Disputed Secured Claims against DBSI and FOR 1031.  These Classes are Impaired by the Plan, and M&I as the Holder of Claims in these Class shall be entitled to vote to accept or reject the Plan.

    **(ii)**    <u>Treatment</u>:  The Disputed Secured Claim of M&I against DBSI is currently the subject of an adversary proceeding commenced by M&I against DBSI on November 18, 2008,  captioned *M&I Marshall & Ilsley Bank, N.A. v. DBSI, Inc.*, Adv. Pro. No.

08-51807(PJW) (the "M&I Action"), in which M&I alleged that it has a valid right of setoff against funds in excess of $9,500,000 being held by M&I in certain accounts bearing DBSI's tax identification number (the "Setoff Funds"). Unless otherwise agreed by M&I and the Plan Proponents (if prior to the Effective Date) or the Estate Representative (if on or after the Effective Date): (x) the amount of M&I's Allowed Secured Claim, if any, against DBSI will be determined in the M&I Action and shall be payable to the extent Allowed in whole or in part (i) from the Setoff Funds, or (ii) by the transfer of all or any portion of the Assets, if any, securing such Claim; and (y) M&I's Allowed Secured Claim, if any, against FOR 1031 will be satisfied in whole or in part by the transfer of all or any portion of the remaining Assets, if any, securing such Claim. Any Allowed General Unsecured Claim of M&I shall be treated as a General Unsecured Claim classified under Classes 13C-(a) and/or 20C, as applicable.

To the extent there is sufficient value in the assets securing Allowed Classes 13B-(b) and 20B-(b) Secured Claims as contemplated by Section 506(b) of the Bankruptcy Code, such Allowed Secured Claims shall include: if the Classes 13B-(b) and 20B-(b) Secured Claims arise from a written agreement, interest accrued (i) from the Petition Date to the Maturity Date at the non-default rate of interest under such agreement, and (ii) from the Maturity Date to the Effective Date at the lesser of (A) the non-default rate of interest under the agreement and (B) the federal judgment rate of interest.

(b)    ***Unsecured Claims against all DBSI Consolidated Debtors (Classes 13C-(a), 13C-(b), 13C-(c), 13C-(d),14C, 15C, 16C, 17C, 18C, 19C, 20C, 21C, 22C, 23C, and 24C)***

(i)    Classification: Classes 13C-(a), 13C-(b), 13C-(c), 13C-(d), 14C, 15C, 16C, 17C, 18C, 19C, 20C, 21C, 22C, 23C, and 24C (the "DBSI Unsecured Classes") consist of all Unsecured Claims against each DBSI Consolidated Debtor. The DBSI Unsecured Classes are Impaired and each Holder of a Claim in the DBSI Unsecured Classes is entitled to vote to accept or reject the Plan.

(ii)    Treatment: On the Effective Date, each Holder of an Allowed Claim in the DBSI Unsecured Classes (except for Classes 13C-(b), 13C-(c) and 13C-(d)) will receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claim, which Beneficial Interest shall entitle such Holder, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed DBSI Unsecured Class Claim a Pro Rata share of the Net Distributable Cash of the DBSI Liquidating Trust Assets.

In accordance with the TIC Claims Protocol: (1) each Holder of an Allowed Unsecured Unsettled TIC Claim (Class 13C-(b)) in the DBSI Unsecured Classes shall receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claim equal to the Pro Rata share of the sum of the (A) Rejection Damage Claim, (B) unpaid rent due on the Petition Date, and (C) Accountable Reserves; (2) each Holder of an Allowed Unsecured Settled TIC Claim (Class 13C-(c)) in the DBSI Unsecured Classes shall receive a Beneficial Interest in the DBSI Liquidating Trust on account of such Allowed Claim equal to the Holder's Pro Rata share of the Accountable Reserves; and (3) each Holder of an Allowed Unsecured Proforma/Land Bank Accountable Reserves Claim (Class 13C-(d)) in the DBSI Unsecured Classes shall receive a Beneficial Interest in the DBSI Liquidating Trust on account of such

Allowed Claim equal to the Holder's Pro Rata share of the Accountable Reserves.  Except for Management Rejection Claims (as defined in Article VI(K) of the Plan, all other Claims asserted by the Holders of Unsecured Unsettled TIC Claims, Unsecured Settled TIC Claims and Unsecured Proforma/Land Bank Accountable Reserves Claims, shall be deemed Disallowed and expunged upon the Effective Date.

**(c)**    ***Subordinated Claims against all DBSI Consolidated Debtors (Classes 13D, 14D, 15D, 16D, 17D, 18D, 19D, 20D, 21D, 22D, 23D, and 24D)***

**(i)**    <u>Classification</u>:  Classes 13D, 14D, 15D, 16D, 17D, 18D, 19D, 20D, 21D, 22D, 23D, and 24D consist of all Subordinated Claims, including, but not limited to, Regulatory Claims, fraud claims, and Penalty-Based Claims, against the DBSI Consolidated Debtors (collectively, the "DBSI Subordinated Classes").  The DBSI Subordinated Classes are Impaired, but because Holders of Claims in these Classes are not expected to retain or receive any property on account of such Claims, each Holder of a Claim in the DBSI Subordinated Classes is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

**(ii)**    <u>Treatment</u>:  On the Effective Date, all Claims in the DBSI Subordinated Classes shall be deemed eliminated, cancelled and/or extinguished and no Holder of a DBSI Subordinated Class Claim shall be entitled to, nor shall it receive or retain, any property or interests in property on account of such DBSI Subordinated Class Claim.

**(d)**    ***Interests in All DBSI Consolidated Debtors (Classes  13E, 14E, 15E, 16E, 17E, 18E, 19E, 20E, 21E, 22E, 23E, and 24E)***

**(i)**    <u>Classification</u>:  Classes 13E, 14E, 15E, 16E, 17E, 18E, 19E, 20E, 21E, 22E, 23E, and 24E consist of all Interests in the DBSI Consolidated Debtors.  The Interests Classes are Impaired by the Plan, but because Holders of Interests in these Classes are not expected to retain or receive any property on account of such Interests, each Holder of an Interest against any DBSI Consolidated Debtor is not entitled to vote to accept or reject the Plan.

**(ii)**    <u>Treatment</u>:  No Holder of an Interest in any of the DBSI Consolidated Debtors shall be entitled to, nor shall it receive or retain, any property or interests in property on account of such Interest.  The entry of the Confirmation Order shall act as an order approving and effecting the cancellation of all Interests (and all securities convertible or exercisable for or evidencing any other right in or with respect to the Interests) in the DBSI Consolidated Debtors outstanding immediately prior to the Effective Date without any conversion thereof or Distribution with respect thereto.

## C.    Elimination of Classes

Any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan, and (b) determining whether it has accepted or rejected the Plan under Section 1129(a)(8) of the Bankruptcy Code.

D.    **Allowed Claims and Interests**

Notwithstanding any provision herein to the contrary, the Estate Representative, Trustee of the DBSI Real Estate Liquidating Trust and the Trustee of the DBSI Liquidating Trust, as applicable, shall make Distributions only to Holders of Allowed Claims.  A Holder of a Disputed Claim shall receive only a Distribution on account thereof when and to the extent that its Disputed Claim shall become an Allowed Claim.

E.    **Nonconsensual Confirmation**

If any Impaired Class fails to accept this Plan, the Plan Proponents intend to request that the Bankruptcy Court confirm this Plan as a Cramdown Plan pursuant to Section 1129(b) of the Bankruptcy Code with respect to such Class.

**ARTICLE V**
**INTERCOMPANY CLAIMS AND CLAIMS SETTLEMENT**

The Chapter 11 Trustee determined, after months of factual investigation, that the Plan Debtors and their businesses were actively run as a unified enterprise under the common ownership and control of a small group of insiders, leading to transactions of fantastic and tortured complexity which could not practically be unraveled.  In furtherance of this unified enterprise, Cash was commingled and distributed between the Debtors and their Affiliates as needs presented, without regard for source or restrictions on use.  For example, Accountable Reserves received from TIC Investors were freely used to pay DBSI operational expenses and certain obligations of the Note/Fund Consolidated Debtors.  Similarly, investor funds given to the Note/Fund Consolidated Debtors for investments in real property owned by DBSI-owned special purpose entities were used instead to pay debts owed to the TIC Investors who were the owners of real properties that DBSI had sold to them, or to purchase additional real properties for future sales to TIC Investors to raise more cash, or simply to meet obligations to earlier investors.  As a result, a great many transfers by and among the Debtors and their Affiliates were either constructively or actually fraudulent, or otherwise structured in a way which gives rise to a myriad of Claims between the Plan Debtors.  Due to these inter-entity transactions, the Chapter 11 Trustee determined that an attempt to trace all the different transfers and litigate the competing rights and Claims among the Debtors would involve years of contentious litigation and administratively bankrupt the Estates.  As a result, on January 19, 2010, the Chapter 11 Trustee Filed a lengthy and detailed motion for an order substantively consolidating the Debtors' Chapter 11 Estates.  This motion was objected to by several Creditors of the Note/Fund Consolidated Debtors, and the Chapter 11 Trustee and the objecting Creditors thereafter engaged in substantial discovery proceedings, which if not otherwise resolved would likely continue for several months at significant costs to the Estates and objecting Creditors.

This Plan proposes and embodies a global settlement of all Intercompany Claims and substantive consolidation issues as described below.  Accordingly, in recognition of the costs, delay and adverse impact of separately resolving and/or litigating the issues raised by the various inter-entity transactions, on the Effective Date, the Chapter 11 Trustee, on behalf of the Plan Debtors, their Estates and all Creditors who claim by, through and under the Plan Debtors, agrees

to be bound by the following provisions relating to the treatment of Intercompany Claims and the Global Claims Settlement between and among the Plan Debtors.

**A.      Intercompany Claims**[9]

**1.      Intercompany Claims of Note/Fund Consolidated Debtors Against Other Note/Fund Consolidated Debtors and of DBSI Consolidated Debtors Against Other DBSI Consolidated Debtors**

Pursuant to the Schedules, certain Note/Fund Consolidated Debtors have liquidated Intercompany Claims against each other, which total approximately $3,744,474 as of the Petition Date.  Pursuant to the Schedules, certain of the DBSI Consolidated Debtors have liquidated Intercompany Claims against each other, which Claims total approximately $378,942,244 as of the Petition Date.

As a result of the substantive consolidation of the DBSI Consolidated Debtors and the Note/Fund Consolidated Debtors, as applicable, except as otherwise expressly provided for herein, the Holders of the foregoing Intercompany Claims will not receive any Distribution under the Plan on account of such Claims; provided, however, that notwithstanding that no such Distributions shall be provided, the Plan shall not, in any way, impair, affect, diminish or cause a waiver of any Cause of Action held by any DBSI Consolidated Debtor or any Note/Fund Consolidated Debtor against any non-debtor Person, including, but not limited to, a Cause of Action based upon an Intercompany Claim, and the DBSI Estate Litigation Trust's rights with respect to such Estate Causes of Action shall be preserved and unimpaired by the Plan in all respects.

**2.      Affiliates' Intercompany Claims**

Various Non-Debtor Affiliates, Converted Affiliates and Non-Plan Debtors may have Claims against the DBSI Consolidated Debtors and/or the Note/Fund Consolidated Debtors (collectively, the "Affiliates' Intercompany Claims").  Pursuant to Article V(A)(2) of the Plan, the Affiliates' Intercompany Claims will be subordinated to all Allowed Unsecured Claims against the applicable DBSI Consolidated Debtor or Note/Fund Consolidated Debtor and no Distributions shall be made under the Plan on account thereof, provided, however, that such treatment of these Affiliates' Intercompany Claims shall not, in any way, impair, affect, diminish or cause a waiver of any Cause of Action held by a DBSI Consolidated Debtor or a Note/Fund Consolidated Debtor against any other non-debtor Person, and the DBSI Estate Litigation Trust's rights with respect to such Estate Causes of Action shall be preserved and unimpaired by the Plan in all respects.

---

[9] The Plan Proponents' reference herein to the Intercompany Claims scheduled by the Plan Debtors shall not constitute an admission by the Plan Proponents that these amounts are true or correct or that any of the Plan Debtors has any liability for these Intercompany Claims.

B.      **Global Claims Settlement Between the Plan Debtors**

        Pursuant to the Schedules, various Note/Fund Consolidated Debtors have liquidated
Intercompany Claims against various DBSI Consolidated Debtors (which Claims total
approximately $67,849,833).  On the other hand, pursuant to the Schedules, various DBSI
Consolidated Debtors have liquidated Intercompany Claims against various Note/Fund
Consolidated Debtors (which Claims total approximately $8,005,064).  In addition, certain of the
DBSI Consolidated Debtors, TIC Investors or other Holders of Claims against the DBSI
Consolidated Debtors, as applicable, possibly could assert Claims against certain Note/Fund
Consolidated Debtors (collectively, the "DBSI Note/Fund Claims"), arising from, among other
things, (a) management and related fees, expenses, services due and owing by the Note/Fund
Consolidated Debtors to one or more of the DBSI Consolidated Debtors, which obligations are
estimated to be no less than $19,000,000, (b) the use of some portion of the Accountable
Reserves (which Accountable Reserves total in the aggregate approximately $81,000,000) to pay
obligations of Note/Fund Consolidated Debtors, and (c) the alleged facilitation by the Note/Fund
Consolidated Debtors of the acts that may amount to fraud on the  TIC Investors.  Similarly,
certain of the Note/Fund Consolidated Debtors or Holders of Claims or Interests related thereto
possibly could assert Claims against certain of the DBSI Consolidated Debtors (the "Note/Fund
DBSI Claims") arising from, among other things, (a) direct or indirect guarantees by DBSI in
favor of the Note/Fund Consolidated Debtors and/or their investors, (b) the use of funds
originating from certain Note/Fund Consolidated Debtors to pay TIC rent or other obligations of
the DBSI Consolidated Debtors, (c) the use of funds originating from certain Note/Fund
Consolidated Debtors to invest in the Technology Companies (as defined below), and (d) the
alleged facilitation by the DBSI Consolidated Debtors of the acts that may amount to fraud on
the Note/Fund Consolidated Debtors' investors.

        In addition, it is clear that significant moneys from the Accountable Reserves revenue
and other funds derived from the DBSI Consolidated Debtors and the Note/Fund Consolidated
Debtors were invested in Stellar, Western Tech, and certain technology-related non-debtor
companies (collectively, the "Technology Companies"), including Western Electronics,
Wavetronix LLC, iTerra Communications LLC, GigOptix Inc., and Bio-Reaction Industries
LLC, either directly or through DBSI Redemption and/or DBSI GCC.

        In recognition of the Intercompany Claims between the Note/Fund Consolidated Debtors
and the DBSI Consolidated Debtors, Note/Fund DBSI Claims and the DBSI Note/Fund Claims,
and in settlement thereof, except as expressly provided in the Plan, on the Effective Date:

        **(i)**      No Distributions shall be made on any Intercompany Claims
between the Note/Fund Consolidated Debtors and the DBSI Consolidated Debtors and such
Claims shall be preserved solely as necessary for any Estate Causes of Action to obtain recovery
from any Entity other than a Plan Debtor or an Entity whose Assets are transferred to a Trust
under the Plan;

        **(ii)**      The Note/Fund Consolidated Debtors and all Holders of Claims
and Interests related thereto shall be deemed to have waived and released all Claims, including,
without limitation, the Note/Fund DBSI Claims, against the DBSI Consolidated Debtors, the
DBSI Liquidating Trust and the DBSI Liquidating Trust Assets;

**(iii)**    The DBSI Consolidated Debtors and all Holders of Claims or Interests related thereto, shall be deemed to have waived and released all Claims, including, without limitation, the DBSI Note/Fund Claims, against the Note/Fund Consolidated Debtors, the DBSI Real Estate Liquidating Trust and the DBSI Real Estate Liquidating Trust Assets;

**(iv)**    The Note/Fund Consolidated Debtors and all Holders of Claims and Interests related thereto shall be deemed to have waived and released all Claims against the Technology Companies, and all debts or purported security interests in favor of such Holders are deemed waived and extinguished;

**(v)**    All future proceeds from the TICPM APA shall be due and payable to the DBSI Liquidating Trust and become part of the DBSI Liquidating Trust Assets;

**(vi)**    To the extent necessary to fund Effective Date obligations under the Plan, the Note/Fund Consolidated Debtors shall make a loan to the DBSI Consolidated Debtors, which borrowing shall be: (i) documented by a promissory note; (ii) carry a then market rate of interest; (iii) be payable as an expense of the DBSI Liquidating Trust when funds become available or as otherwise provided in the loan documents; and (iv) be secured by the DBSI Liquidating Trust Assets;

**(vii)**    The DBSI Real Estate Liquidating Trust shall contribute $1,000,000 to the DBSI Estate Litigation Trust, which shall consist of an interest free loan secured by all Assets of the DBSI Estate Litigation Trust to be repaid with the first dollars of any net litigation recoveries obtained by the DBSI Estate Litigation Trust subject to expense reserves which the DBSI Estate Litigation Trustee determines are prudent in the exercise of his business judgment, in consultation with the Trust Oversight Committee;

**(viii)**    The DBSI Real Estate Liquidating Trust shall contribute $1,000,000 to the Private Actions Trust, which shall (x) consist of an interest free loan secured by all Assets of the Private Actions Trust to be prepaid with the first dollars of any net litigation recoveries obtained by the Private Actions Trust subject to expense reserves which the Private Actions Trustee determines are prudent in the exercise of his business judgment, in consultation with the Trust Oversight Committee, (y) entitle the DBSI Liquidating Trust to receive and the DBSI Liquidating Trust shall receive on the Effective Date five percent (5%) of the total number of Private Actions Trust Beneficial Interests, and (z) entitle the DBSI Real Estate Liquidating Trust to receive and the DBSI Real Estate Liquidating Trust shall receive on the Effective Date fifteen percent (15%) of the total number of Private Actions Trust Beneficial Interests;

**(ix)**    Neither the DBSI Real Estate Liquidating Trust nor the DBSI Liquidating Trust, nor the beneficiaries of either Trust, shall have any right to prosecute an Intercompany Claim, a Note/Fund DBSI Claim or a DBSI Note/Fund Claim against either Trust or any Plan Debtor, or an Entity whose Assets are transferred to a Trust under the Plan, for any purpose; provided, however, that notwithstanding that no Distribution shall be made on any such Intercompany Claims or DBSI Note/Fund Claims, the Plan shall not, in any way, impair, affect, diminish or cause a waiver of any Estate Cause of Action to obtain recovery from any Entity other than a Plan Debtor or an Entity where Assets are transferred to a Trust under the Plan, and

the DBSI Estate Litigation Trust's rights with respect to such Estate Causes of Action shall be preserved and unimpaired by the Plan in all respects; and

**(x)**     Neither the Estates, the DBSI Consolidated Debtors, the Note/Fund Consolidated Debtors, nor the DBSI Estate Litigation Trust, shall assert any Claim or Estate Cause of Action against any TIC Investor or any Holder of a Note Claim, Bond Claim, Preferred Interest Claim, Non-Preferred Interest Claim or a Sharing Unit Interest Claim for recovery of payments of TIC rent under a masterlease or payments of principal or interest for any bond, note or unit investment, and all such claims shall be waived and extinguished on the Effective Date.

### ARTICLE VI
### MEANS OF IMPLEMENTING THIS PLAN

**A.     Implementation of the Plan**

The Plan Proponents propose that the Plan be implemented and consummated through the means contemplated by Sections 1123(a)(5)(B), (D), (E), (F) and (G) and 1123(b)(2), (b)(3) and (b)(4) of the Bankruptcy Code on and after the Effective Date.

**B.     Substantive Consolidation**

**1.     DBSI Real Estate Liquidating Trust**

**(a)     *The Note/Fund Consolidated Debtors.***

The Plan contemplates, and confirmation of the Plan shall authorize, approve and cause, the substantive consolidation of the Note/Fund Consolidated Debtors on the Effective Date such that: (a) the DBSI Real Estate Trust Assets will be aggregated in the DBSI Real Estate Liquidating Trust and administered, managed, liquidated and distributed, as provided for in the Plan and the DBSI Real Estate Liquidating Trust Agreement, for the benefit of the holders of Allowed Claims against the Note/Fund Consolidated Debtors, on an aggregated Pro Rata basis, but subject to the Waterfall Rights as among certain holders of Allowed Claims; (b) the liabilities of the Note/Fund Consolidated Debtors shall be deemed merged; (c) all guarantees, if any, by one Note/Fund Consolidated Debtor of the obligations of any other Note/Fund Consolidated and any joint or several liability of any of the Note/Fund Consolidated Debtors shall be deemed to be one obligation of all of the Note/Fund Consolidated Debtors; and (d) except for the purpose of voting on the Plan, each and every Claim Filed or to be Filed in the Chapter 11 Cases against any of the Note/Fund Consolidated Debtors shall be deemed Filed against the Note/Fund Consolidated Debtors and shall be deemed one Claim against and a single obligation of all of the Note/Fund Consolidated Debtors.

Notwithstanding the substantive consolidation of the Note/Fund Consolidated Debtors, all Estate Causes of Action held by the separate Estate of each Note/Fund Consolidated Debtor, including, but not limited to, Avoidance Actions against non-debtor Persons, shall be preserved and the DBSI Litigation Trustee shall have the right to prosecute such Estate Causes of Action, in accordance with Article VI(R) of the Plan.  Except as expressly provided in the Plan, the substantive consolidation of the Note/Fund Consolidated Debtors shall not affect any insurance

policies of the Note/Fund Consolidated Debtors, proceeds of such policies or distributions under such policies.

### (b)    *Kastera LLC*

Immediately prior to the Effective Date, the Chapter 11 Trustee shall be authorized to (i) assume the Operating Agreement of Kastera, (ii) remove all existing managers and officers of Kastera, and (iii) cause the dissolution of Kastera, and in furtherance thereof cause the transfer to the DBSI Real Estate Liquidating Trust of all of the Assets of Kastera, (except Causes of Action of Kastera, which shall be transferred to the DBSI Estate Litigation Trust), including, without limitation, Kastera's ownership interests in Kastera Homes, Kastera Development, Kastera Snake River 94 and DBSI Pristine Meadows LLC ("Pristine Meadows").  On the Effective Date, the DBSI Real Estate Liquidating Trustee shall be appointed, authorized and vested with all the managerial powers on behalf of Kastera and shall become the sole member of Kastera Homes, Kastera Development, Kastera Snake River and Pristine Meadows.  The DBSI Real Estate Liquidating Trustee shall be authorized to cause the Kastera Transferred Properties to be administered, managed, liquidated and distributed in accordance with the Plan, the DBSI Real Estate Liquidating Trust Agreement and the Confirmation Order, which shall supersede the existing operating agreements with respect to any of the Kastera Subsidiary Interests.

### 2.    The DBSI Liquidating Trust

### (a)    *The DBSI Consolidated Debtors*

The Plan contemplates, and confirmation of the Plan shall authorize, approve and cause, the substantive consolidation of the DBSI Consolidated Debtors, effective as of November 10, 2008, such that (b) the DBSI Liquidating Trust Assets will be aggregated in the DBSI Liquidating Trust and administered, managed, liquidated and distributed, as provided for in the Plan and the DBSI Liquidating Trust Agreement, for the benefit of the holders of Allowed Claims against the DBSI Consolidated Debtors, on an aggregated Pro Rata basis; (b) the liabilities of the DBSI Consolidated Debtors shall be deemed merged; and (c) except for the purpose of voting on the Plan, each and every Claim Filed or to be Filed in the Chapter 11 Cases against more than one of the DBSI Consolidated Debtors shall be deemed Filed against the DBSI Consolidated Debtors and shall be deemed to be one Claim against and a single obligation of all of the DBSI Consolidated Debtors.

Notwithstanding the substantive consolidation of the DBSI Consolidated Debtors, all Estate Causes of Action held by the separate Estate of each DBSI Consolidated Debtor, including, but not limited to, Avoidance Actions against non-debtor Persons, shall be preserved and the DBSI Liquidating Trustee shall have the right to prosecute such Estate Causes of Action, in accordance with Article VI(R) of the Plan.  Except as expressly provided in the Plan, the substantive consolidation of the DBSI Consolidated Debtors shall not affect any insurance policies of the DBSI Consolidated Debtors, proceeds of such policies or distributions due under such policies.

### (b)    *Consolidated Non-Debtors*

The Plan contemplates, and confirmation of the Plan shall authorize, approve and cause, the substantive consolidation of the Consolidated Non-Debtors into DBSI, effective as of November 10, 2008.  As a result, the Assets, liabilities of, and Interests in, the Consolidated Non-Debtors shall be deemed Assets and liabilities of, and Interests in, DBSI.  The Assets of the Consolidated Non-Debtors shall be part of the DBSI Liquidating Trust Assets, except as otherwise provided for in the Plan.  The Claims against, and Interests in, the Consolidated Non-Debtors shall be Claims against, and Interests in DBSI and shall be treated in accordance with the provisions of the Plan classifying and treating Claims against and Interests in DBSI.

Upon the substantive consolidation of the Consolidated Non-Debtors into DBSI, all Estate Causes of Action held by the separate Estate of each Consolidated Non-Debtor, including, but not limited to, Avoidance Actions against non-debtor transferees, including preferential and fraudulent transfer Claims, shall be available and preserved and the DBSI Estate Litigation Trustee shall have the right to prosecute such Estate Causes of Action, in accordance with Article VI(R) of the Plan.

**THE PLAN CONTEMPLATES THE DBSI ESTATE LITIGATION TRUSTEE HAVING THE RIGHT TO BRING AVOIDANCE ACTIONS ON BEHALF OF THE CONSOLIDATED NON-DEBTORS AS IF SUCH ENTITIES WERE DEBTORS AS OF NOVEMBER 10, 2008.  THUS, WITH RESPECT TO THE CONSOLIDATED NON-DEBTORS, THE APPLICABLE LOOK-BACK PERIOD FOR PURPOSES OF AVOIDANCE ACTIONS UNDER CHAPTER 5 OF THE BANKRUPTCY CODE AND APPLICABLE NON-BANKRUPTCY LAW WILL RUN FROM NOVEMBER 10, 2008. PERSONS LISTED ON SCHEDULE 10 TO THE DISCLOSURE STATEMENT MAY BE SUBJECT TO AVOIDANCE ACTIONS BROUGHT BY THE DBSI ESTATE LITIGATION TRUSTEE.**

### (c)    *Stellar*

In furtherance of the substantive consolidation of Stellar as a Consolidated Non-Debtor as set forth above, immediately prior to the Effective Date, the Chapter 11 Trustee shall be authorized to (i) exercise all of the authority of Stellar under its operating agreement, and, to the extent necessary to exercise such authority, to assume the operating agreement of Stellar (ii) exercise all of the authority of Stellar under the operating agreements of each of iTerra, Bio-Reaction, and Wavetronix, and (iii) cause the dissolution of Stellar and iTerra, and in furtherance thereof cause the transfer to the DBSI Liquidating Trust of all of the Assets of Stellar and iTerra (except Causes of Action, which shall be transferred to the DBSI Estate Litigation Trust), including, without limitation, their respective interests in the Technology Companies Transferred Properties.

### (d)    *Western Tech*

Immediately prior to the Effective Date, the Chapter 11 Trustee shall be authorized to assume the operating agreement of Western Electronics and exercise all of the authority of Western Tech thereunder to cause the transfer to the DBSI Liquidating Trust of all of Western

Tech's Assets (except Estate Causes of Action, which shall be transferred to the DBSI Estate Litigation Trust), including, without limitation, its Interest in Western Electronics.

### C.    Corporate Action

On the Effective Date, (i) the matters under this Plan involving or requiring corporate action of the Chapter 11 Trustee on behalf of the Plan Debtors, their subsidiaries or any Entity that is or becomes a Trust Asset, including, but not limited to, actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to this Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the Chapter 11 Trustee on behalf of the Plan Debtors or their Affiliates or any Entity that is or becomes a Trust Asset; and (ii) the Trustee shall be authorized to act on behalf of, and to bind each Entity, as its legal representative, that is or becomes a Trust Asset. To the extent necessary, or to the extent requested by the Plan Proponents or the Trustee, the Chapter 11 Trustee shall, and is hereby authorized to, adopt such resolutions, make such amendments, execute such documents, and take such actions, to cause the Plan Debtors and the Estates to implement the provisions of the Plan.

### D.    Entity Governance

From and after the Effective Date, the DBSI Liquidating Trustee as to the DBSI Consolidated Debtors, and the DBSI Real Estate Liquidating Trustee as to the Note/Fund Consolidated Debtors, shall have the sole authority: (i) to manage and wind-down the affairs of such Entities; (ii) to exercise all authority of such Entities to manage and wind-down the affairs of the Non-Debtor Affiliates and all other Entities the ownership interests of which are included within the Trust; (iii) to abandon any asset or interest transferred to the Trust which is determined in such Trustee's discretion to be burdensome or of inconsequential value; and (iv) to implement the provisions of the Plan, notwithstanding the provisions of any Entity governance document or agreement to the contrary.  The respective Trustee may employ one or more Persons to assist in the performance of the Trustee's duties under the Plan.

### E.    Discharge of the Chapter 11 Trustee and Counsel

On the Effective Date, the Chapter 11 Trustee and his counsel shall be deemed discharged from any further duties in respect of the Chapter 11 Cases, including any duties under Sections 1106(a)(3) and (4) of the Bankruptcy Code; provided, however, that the Chapter 11 Trustee shall not be deemed to be discharged until he has taken the actions required of him under the Plan, including, but not limited to, those actions required of him in Article VI of the Plan, and provided further that, notwithstanding the discharge of the Chapter 11 Trustee and his counsel as of the Effective Date, to the extent that the Chapter 11 Trustee and his counsel are called upon to provide services or incur expenses with respect to any matter relating to the Plan and the Trust as to which the Chapter 11 Trustee is authorized hereunder to implement, carry out and/or participate in, the Chapter 11 and his counsel shall be entitled to compensation for such services and reimbursement of such expenses, and no bar date shall apply to such claims, which claims shall be paid as an administrative expense of the applicable Trust which is benefited by such actions, subject to the procedures governing presentation and payment of such fees and expenses.

**F.        Dissolution of Official Committee**

On the Effective Date, the Creditors' Committee shall dissolve automatically as to the Estates and the Chapter 11 Cases, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code; provided that such parties shall continue to be bound by any obligations arising under confidentiality agreements or joint defense/common interest agreements (whether formal or informal) entered during the Chapter 11 Cases, which shall remain in full force and effect according to their terms, and provided further that, the Creditors' Committee and its Professionals and agents shall continue to have a right to be heard with respect to any and all (i) applications for Professional Fee Claims; (ii) requests for compensation and reimbursement of expenses pursuant to Section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases; (iii) requests for allowance and payment of Administrative Claims, (iv) implementation of the Cost Allocation and Professional Fees Protocol, the Administrative TIC Rent/Expense Protocol and the TIC Claims Protocol, (v) any matter set forth in the Plan that provides for participation by the Creditors' Committee; (vi) any adversary proceeding, contested matter, motion or objection to Claim pending as of the Effective Date, and any subsequent proceeding with respect thereto, and (vii) motions or other actions seeking enforcement or implementation of the provisions of the Plan, any documents executed in connection with the Plan or the Confirmation Order.

Notwithstanding the dissolution of the Creditors Committee as of the Effective Date, to the extent that a Professional employed by the Creditors Committee is called upon to provide services, or incur expenses, with respect to matters that the Creditors Committee is authorized hereunder to continue to participate in, such Professional Persons shall be entitled to compensation for such services, and reimbursement of such expenses, and no bar date shall apply to such claims and such claims shall be paid as an expense of the applicable Trust which is benefited by such actions, subject to the procedures governing presentation and payment of such fees and expenses.

**G.        Wind-Down/Abandonment**

The Trustee, as applicable, shall oversee the wind-down or other disposition of all Non-Debtor Affiliates in which one or more of the DBSI Consolidated Debtors or the Note/Fund Consolidated Debtors holds a majority interest and shall transfer the net proceeds from disposition of such Non-Debtor Affiliates to the Trust to be distributed in accordance with the Plan.  The powers and authority of the Trustee are more fully set forth in the Plan and the applicable Trust Agreement.

**H.        Dismissal of Non-Plan Debtors**

Unless otherwise set forth in a Notice to be filed by the Chapter 11 Trustee on or before the Effective Date, the Clerk of the Court shall be directed in the Confirmation Order to dismiss the Chapter 11 Case of each Non-Plan Debtor.

I.      **Nullification of Anti-Assignment or Other Transfer Provisions With Respect to the Transfer of Interests**

The Plan contemplates the transfer to the DBSI Real Estate Liquidating Trust of Interests of and in the Note/Fund Consolidated Debtors in various Entities as identified more fully in the definition of DBSI Real Estate Liquidating Trust Assets.  To the extent that any agreement, document, charter document (including, without limitation, any operating agreement, shareholders' agreement, by-laws, or partnership agreement), statute, rule or other restriction (collectively, a "Restriction") prohibits, limits, or impairs, in any respect, such transfer by the Note/Fund Consolidated Debtors, such Restriction shall be unenforceable solely for purposes of allowing the transfer of the DBSI Real Estate Liquidating Trust Assets to the DBSI Real Estate Liquidating Trust.

The Plan contemplates the transfer to the DBSI Liquidating Trust of Interests of the DBSI Consolidated Debtors in various Entities as identified more fully in the definition of the DBSI Liquidating Trust Assets.  To the extent that any Restriction prohibits, limits, or impairs, in any respect, such transfer by the DBSI Consolidated Debtors, such Restriction shall be unenforceable solely for purposes of allowing the transfer of the DBSI Liquidating Trust Assets to the DBSI Liquidating Trust.

Notwithstanding the ownership by the DBSI Liquidating Trust or the DBSI Real Estate Liquidating Trust of both fee title to a parcel of real property and/or a mortgage, a deed of trust or other encumbrance on such title, it is intended that such interests remain as separate assets and that there shall be no merger of title.

J.      **Payment of Administrative and Priority Claims**

1.      **Administrative Claims and Priority Claims:**

Allowed Administrative Claims and Allowed Priority Claims against the Plan Debtors will be funded from the S/A/P Claims Reserve.

2.      **Administrative TIC Rent/Expense Claims Protocol**

This protocol governs the allowability of Administrative TIC Rent Claims and Administrative TIC Expense Claims for all purposes in these Chapter 11 Cases, including voting and Distribution.  Upon the Effective Date, Administrative TIC Rent Claims shall automatically be Allowed in accordance with this protocol in the amounts set forth in Schedule 2 to the Disclosure Statement without any further notice, filing or Order of the Bankruptcy Court.  In contrast, in order to be entitled to a Distribution, Administrative TIC Expense Claims must be allowable under this protocol and timely Filed by the General Administrative Claim Bar Date.  Any allowable and timely Filed Administrative TIC Expense Claim shall be deemed Allowed or Disallowed according to this Administrative TIC Rent/Expense Claims Protocol without the need for any objection thereto to be Filed with the Bankruptcy Court or any further hearing or Order.

### (a)    *Relevant Background*

The Bankruptcy Court entered three separate orders in November, 2008, December, 2008 and January, 2009 (collectively, the "Cash Collateral Orders") authorizing and approving the use of cash collateral with respect to the TIC Property Assets.  [Docket Nos. 294, 519 and 1005]. The Cash Collateral Orders provided for two distinct "waterfall" protocols to be followed in the payment of post-petition claims related to the TIC Property Assets, as follows:  (A) the November, 2008 Cash Collateral Order provided for payment of post-petition Claims in the following order of priority: (i) property operating expenses, (ii) debt service, (iii) Chapter 11 expenses, (iv) Taxes, and (v) asset management fees, before payment of post-petition rent to tenant-in-common ("TIC") owners; and (B) the December, 2008 and January, 2009 Cash Collateral Orders provided for payment of post-petition Claims in the following order of priority: (i) property operating expenses, Chapter 11 expenses, (iii) debt service, (iv) Taxes, (v) asset management fees, and (vi) tenant improvements, before payment of post-petition rent to TIC owners.  As illustrated above, regardless of which waterfall protocol governed, the post-petition rent due to the TIC owners had the lowest payment priority after payment of (i) property operating costs, (ii) debt service, (iii) Chapter 11 expenses, (iv) Taxes, (v) asset management fees, and (vi) tenant improvement costs.

On or before January 30, 2009, with approval from the Bankruptcy Court, the Debtors either assumed and assigned or rejected all of their masterleases related to the TIC Property Assets.  In connection with certain of the masterleases under which DBSI was the masterlessor, and which were rejected by DBSI, DBSI and the affected TIC owners entered into settlement agreements, the form of which was approved by the Bankruptcy Court (the "Settlement Agreements").  Under the Settlement Agreements, the settling TICs' post-petition rent claims were waived and any unpaid property operating costs, debt service, taxes, third party asset management fees and tenant improvement costs (the "TIC Expenses") were assumed by the TIC owners.  However, in connection with 71 of the masterleases that were rejected and under which DBSI was the masterlessee, no settlement was consummated (the "Unsettled TIC Properties"). With respect to the Unsettled TIC Properties, several TIC owners have Filed motions and/or Claims against DBSI's Estate for payment of their post-petition rent Claims (herein the Administrative TIC Rent Claims).  In addition, certain unpaid TIC Expense Claims (herein the Administrative TIC Expense Claims) may exist related to the Unsettled TIC Properties.

### (b)    *Description of the Administrative TIC Rent/Expense Claims Protocol*

The Administrative TIC Rent Claims and any Administrative TIC Expense Claims are limited under Section 503(b) of the Bankruptcy Code to the amount of the benefit received by DBSI's Estate subsequent to the Petition Date.  DBSI's Estate, unlike a debtor-occupant or beneficial user of real property, gained no benefit from use or enjoyment of the respective properties other than the excess Cash flow, if any, accruing from its "sandwich" tenancy during the post-petition period.  Therefore, the benefit to DBSI's Estate can, in respect to each Unsettled TIC Property, be measured in discreet financial terms -- that being the amount by which each respective Unsettled TIC Property's Cash balance increased after the Petition Date, after giving effect to the payments made from each such Property's Cash under the Cash Collateral Orders.

In accordance with Section 503(b) of the Bankruptcy Code and the mandates of the Cash Collateral Orders, the Plan Proponents undertook the following analysis to determine the amount, if any, of allowable Administrative TIC Rent Claims and Administrative TIC Expense Claims:

       **(i)**      first, the Unsettled TIC Properties were segregated into two groups according to which of the two waterfall protocols governed the use of their Cash under the governing Cash Collateral Order;

       **(ii)**     second, the bank account for each Unsettled TIC Property was reviewed and the Cash balance for each such Property as of the Petition Date was compared to the Cash balance of that same Unsettled TIC Property as of January 30, 2009 (the "Rejection Date Balance") ;

       **(iii)**    third, where the Rejection Date Balance was greater than the Petition Date Cash balance, DBSI, as masterlessee, was deemed to have received a net benefit in the amount of such increase, and the allowability of any Administrative TIC Rent Claims and Administrative TIC Expense Claims was then determined by application of the waterfall protocol under the governing Cash Collateral Order; and

       **(iv)**    fourth, where the Rejection Date Balance is equal to or less than the Petition Date Cash balance, DBSI was deemed to have received no net benefit and all Administrative TIC Expense Claims and/or Administrative TIC Rent Claims are deemed to be Disallowed.

       **(c)**     ***Application of the Administrative TIC Rent/Expense Claims Protocol***

       **(i)**      Where there is a decrease in an Unsettled TIC Property's Cash balance as between the Petition Date and the Rejection Date Balance, DBSI's Estate is deemed to have received no benefit and, therefore, no Distribution will be made on account of any Administrative TIC Expense Claims and Administrative TIC Rent Claims asserted in connection with such Unsettled TIC Property ("Protocol Result 1");

       **(ii)**     Where there is an increase in an Unsettled TIC Property's Cash balance as between the Petition Date and the Rejection Date Balance and, such increase is sufficient to pay all Allowed Administrative TIC Expense Claims and all Allowed Administrative TIC Rent Claims related to such Property, Holders of such Allowed Administrative TIC Expense Claims and Allowed Administrative TIC Rent Claims shall receive a Cash payment equal to the Allowed amount of such Claims ("Protocol Result 2");

       **(iii)**    Where there is an increase in an Unsettled TIC Property's Cash balance as between the Petition Date and the Rejection Date Balance and, such increase is sufficient to pay all Allowed Administrative TIC Expense Claims but is insufficient to pay all Allowed Administrative TIC Rent Claims in full, Holders of Allowed Administrative TIC Expense Claims shall receive a Cash payment equal to the Allowed amount of their Claims and Holders of Allowed Administrative TIC Rent Claims shall receive a Cash payment equal to the amount of the increase in the Cash balance after payment of all Allowed Administrative TIC Expense Claims ("Protocol Result 3"); and

(iv)    Where there is an increase in an Unsettled TIC Property's Cash balance as between the Petition Date and the Rejection Date Balance, and such increase is insufficient to pay all Allowed Administrative TIC Expense Claims, Holders of Allowed Administrative TIC Expense Claims shall receive a Pro-Rata payment from such Cash balance in full satisfaction of their Allowed Claims and no Distribution will be made on account of any Administrative TIC Rent Claims asserted in connection with such Unsettled TIC Property ("Protocol Result 4").

**HOLDERS OF ADMINISTRATIVE TIC RENT CLAIMS SHOULD REFER TO SCHEDULE 2 TO THE DISCLOSURE STATEMENT FOR DETAILS BY PROPERTY REGARDING THE APPLICATION OF THE ADMINISTRATIVE TIC RENT/EXPENSE CLAIMS PROTOCOL AND THE DEEMED ALLOWABLE AMOUNT OF ADMINISTRATIVE RENT CLAIMS.**

(d)    *Illustration*

An example of Protocol Results 1 through 4 is presented in the table below for illustrative purposes only.

| Unsettled TIC **Property** | Cash Balance | | | Unpaid Admin. TIC Expense **Claims** | Admin. TIC **Rent Claim** | Deemed Allowable Admin. TIC Expense **Claims** | Deemed Allowable Admin. TIC Rent **Claims** | **Protocol Results** |
|---|---|---|---|---|---|---|---|---|
| | **Petition Date** | **Rejection Date** | **Inc/Dec** | | | | | |
| Property A | $100,000 | $70,000 | ($30,000) | $25,000 | $35,000 | $0 | $0 | Protocol Result 1 |
| Property B | $100,000 | $180,000 | $80,000 | $25,000 | $35,000 | $25,000 | $35,000 | Protocol Result 2 |
| Property C | $100,000 | $150,000 | $50,000 | $25,000 | $35,000 | $25,000 | $25,000 | Protocol Result 3 |
| Property D | $100,000 | $120,000 | $20,000 | $25,000 | $35,000 | $20,000 | $0 | Protocol Result 4 |

3.    **Cost Allocation and Professional Fees Protocol**

This protocol governs allocation and payment of costs of the Chapter 11 Cases incurred and projected from the Petition Date to the Confirmation Date, including operating expenses, Professional Fee Claims and the post-petition fees and expenses payable to the Chapter 11 Trustee, the Examiner, the members of the Creditors' Committee and any Entity retained pursuant to Section 363 of the Bankruptcy Code (collectively, the "Chapter 11 Costs").

(a)    *Relevant Background*

By Order Filed on March 31, 2009, the Bankruptcy Court approved a protocol for allocation of costs of the Chapter 11 Cases (the "March 2009 Allocation Order"). The March 2009 Allocation Order allocated the cost of the Chapter 11 Cases from the Petition Date to May 31, 2009 in the aggregate amount of $19,512,000 as follows: (i) $11,164,000 to the Note/Fund

Consolidated Debtors and $8,348,000 to the DBSI Consolidated Debtors (other than the Consolidated Non-Debtors).

Activities related to the TIC Property Assets dominated this case in its early months. However, with the approval by the Bankruptcy Court of a protocol for settlement with the tenant-in-common owners (the "TIC Owners"), there was an anticipation of the near completion by the Debtors of the activities in respect to the divestiture of the TIC Property Assets by May 31, 2009. In fact, the Debtors' activities to settle with the TIC Owners and to transfer the TIC Property Assets to the TIC Owners or their representative managers continued into late August 2009 at which point a series of Chapter 7 conversions of certain special purposes Entities was commenced which rid the Debtors of administrative responsibilities and costs of these Entities and substantially reduced the cost associated with the TIC related assets.

As a result, the Debtors' staffing levels decreased markedly during the period after April 2009 and the volume of TIC related activities diminished to a fraction of previous levels of effort by late in the Spring of 2009. The protocol recognizes the additional cost of these TIC activities prior to June 1, 2009 by adjusting the allocation reflected in the March 2009 Allocation Order as set forth below.

### (b)    *Description of Cost Allocation and Professional Fees Protocol*

The following protocol shall govern allocation and payment of the Chapter 11 Costs:

(i)    the allocation approved in the March 2009 Allocation Order shall be adjusted so that for the period from the Petition Date through May 31, 2009, the Chapter 11 Costs shall be allocated 70% to the DBSI Consolidated Debtors and 30% to the Note/Fund Consolidated Debtors to more accurately reflect the level of activity in the Chapter 11 Cases during this timeframe; and

(ii)    for the period from June 1, 2009 to the Confirmation Date, the Chapter 11 Costs shall be allocated to the DBSI Consolidated Debtors and the Note/Fund Consolidated Debtors in ratable proportion to the estimated realizable liquidation values of their respective Assets, in the approximate ratio of 20% and 80% respectively.

### K.    TIC Claims Protocol

This protocol governs the allowability of Unsettled TIC Claims, Settled TIC Claims and Proforma/Land Bank Accountable Reserves Claims. Upon the Effective Date, Unsettled TIC Claims, Settled TIC Claims and Proforma/Land Bank Accountable Reserves Claims shall automatically be Allowed or Disallowed in accordance with this TIC Claims Protocol in the amounts set forth in Schedule 3 to the Disclosure Statement without any further notice, filing, objection or Order of the Bankruptcy Court.

### (a)    *Relevant Background*

On or before January 30, 2009, with approval from the Bankruptcy Court, the Debtors either assumed and assigned or rejected all of their masterleases related to real property for which DBSI or one of its Affiliates was the masterlessee under a masterlease (collectively, the

"TIC Properties") with certain TIC Investor.  In connection with the rejected masterleases, on May 13, 2009, the Bankruptcy Court entered an Order authorizing the Debtors to enter into settlements of property Cash and lender escrow reserves with the TIC Investors, who owned the vast majority of the equity in the TIC Properties and approving global settlement terms (the "Global Settlement Terms") to be used in negotiations between the Debtors and the TIC Investors.  Thereafter, DBSI and certain TIC Investors entered into settlement agreements, embodying the Global Settlement Terms (the "Settlement Agreements").  Under the Settlement Agreements, among other things, the settling TIC Investors' rejection damage Claims and pre-petition rent Claims were waived.  However, under the Settlement Agreements, the settling TIC Investors' Claims for Accountable Reserves were preserved.  Accordingly, the Settled TIC Claims are the Unsecured Claims of the settling TIC Investors, which were not waived under the Settlement Agreements, consisting of Claims for Accountable Reserves.

The Unsettled TIC Claims are the Unsecured Claims of the TIC Investors who did not consummate a settlement of their pre-petition Claims, including pre-petition rent Claims, rejection damage Claims, and Claims for Accountable Reserves.  The Unsettled TIC Claims are voluminous and vary in nature and amount.  Given the large number, vastly different assertions of value and complexity of the Unsettled TIC Claims, coupled with the likely prohibitive cost of examining and reconciling such Claims individually, the Plan Proponents propose the protocol described below to estimate the Unsettled TIC Claims for all purposes in the Chapter 11 Cases, including voting, allowance and Distribution.

The Proforma/Land Bank Accountable Reserves Claims are the Unsecured Claims for Accountable Reserves of tenant-in-common owners of real properties which were managed by DBSI or one of its Affiliates under an asset management agreement but as to which real properties there were no masterlease agreements with DBSI or any of its Affiliates.

### (b)    *Description of the TIC Claims Protocol*

#### (i)    The Unsettled TIC Claims

To the extent there are Claims of the TIC Owners for damages resulting from the termination of a masterlease with DBSI or one of its Affiliates, the Unsettled TIC Claims are limited under Section 502(b)(6) of the Bankruptcy Code to: (i) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, following the earlier of (A) the Petition Date, and (B) the date on which such TIC Owner repossessed or the Debtor-masterlessee surrendered the Unsettled TIC Property (the "Rejection Damage Claim"); and (ii) any unpaid rent due under such masterlease, without acceleration, on the earlier of such dates.  The protocol incorporates the mandates of Section 502(b)(6) as to all Unsettled TIC Claims and provides for each Holder of an Unsettled TIC Claim to receive an Allowed Claim in the amount of their Pro Rata share of the sum of (i) the Rejection Damage Claim, and (ii) the unpaid rent due on the Petition Date.  In addition, the protocol adds to such Allowed Claim the Holder's Pro Rata share of the Accountable Reserves.

#### (ii)    The Settled TIC Claims

The protocol provides for the allowance of an Unsecured Settled TIC Claim in the amount equal to the Holder's Pro Rata share of the Accountable Reserves.  All other Claims asserted by the Holders of Settled TIC Claims, including Claims based upon fraud, shall be deemed Disallowed.

**(iii)**    The Proforma/Land Bank Accountable Reserves Claims

The protocol provides for the allowance of an Unsecured Proforma/Land Bank Accountable Reserves Claim in an amount equal to the Holder's Pro Rata share of the Accountable Reserves.  Except for Claims, if any, for damages resulting from the rejection of their asset management agreements (the "Management Rejection Claims"), all other Claims asserted by the Holders of Proforma/Land Bank Accountable Reserves Claims, including Claims based upon fraud, shall be deemed Disallowed.  Any Management Rejection Claims, which are timely Filed and Allowed, shall be treated as General Unsecured Claims against the applicable Plan Debtor.

**(c)    *Application of the TIC Claims Protocol***

**(i)**    Each Holder of a Settled TIC Claim shall have a deemed allowable Unsecured Settled TIC Claim equal to its Pro Rata share of the Accountable Reserves;

**(ii)**    Each Holder of an Unsettled TIC Claim shall have a deemed allowable Unsecured Unsettled TIC Claim equal to its Pro Rata share of the sum of the (A) Rejection Damage Claim, (B) unpaid rent due on the Petition Date, and (C) Accountable Reserves;

**(iii)**    Each Holder of an Proforma/Land Bank Accountable Reserves Claim shall have a deemed allowable Unsecured Proforma/Land Bank Accountable Reserves Claim equal to its Pro Rata share of the Accountable Reserves; and

**(iv)**    Except for Claims, if any, asserted by the Holders of Proforma/Land Bank Accountable Reserves Claims for damages resulting from the rejection of their asset management agreements, all other Claims asserted by the Holders of Settled TIC Claims, Unsettled TIC Claims or Proforma/Land Bank Accountable Reserves Claims shall be deemed Disallowed and expunged upon the Effective Date.

**HOLDERS OF SETTLED TIC CLAIMS, UNSETTLED TIC CLAIMS AND PROFORMA/LAND BANK ACCOUNTABLE RESERVES CLAIMS SHOULD REFER TO SCHEDULE 3 TO THE DISCLOSURE STATEMENT FOR DETAILS BY PROPERTY REGARDING THE APPLICATION OF THE TIC CLAIMS PROTOCOL AND THE DEEMED ALLOWED AMOUNT OF THEIR CLAIMS.**

**L.    Note/Fund Claims Protocol**

This protocol governs the allowability of Note Claims, Bond Claims, Preferred Interest Claims, Non-Preferred Interest Claims and Sharing Unit Interest Claims.  Upon the Effective Date, any Scheduled or timely Filed Note Claims, Bond Claims, Preferred Interest Claims and Non-Preferred Interest Claims shall automatically be Allowed or Disallowed in accordance with

this protocol in the amounts set forth in Schedule 4 to the Disclosure Statement without any further notice, filing, objection or Order of the Bankruptcy Court.  Upon the Effective Date, any Scheduled or timely Filed Sharing Unit Interest Claims shall automatically be Allowed or Disallowed in accordance with this protocol in the amounts set forth in Schedule 12 to the Disclosure Statement without any further notice, filing, objection or Order of the Bankruptcy Court.

### 1.    Note Claims and Bond Claims

Note Claims and Bond Claims shall be allowable in the aggregate amount of (1) the principal amount of such Claims, plus (2) accrued and unpaid interest on such Claim as of the Petition Date.

### 2.    Preferred Interest Claims

Preferred Interest Claims shall be allowable in the aggregate amount of: (1) the fixed percentage annual return payable and calculated as of the Petition Date to Holders of Preferred Units that is senior to any payment to Holders of Non-Preferred Units or Sharing Units in accordance with the Waterfall Rights; (2) the additional fixed percentage annual return payable and calculated as of the Petition Date to Holders of Preferred Units issued by DBSI STDF only that is senior to any return of investment to Holders of Non-Preferred Units issued by DBSI STDF in accordance with the Waterfall Rights and (3) the return of investment payable to holders of Preferred Units in accordance with the Waterfall Rights.

### 3.    Non-Preferred Interest Claims

Non-Preferred Interest Claims shall be allowable in the amount of fixed percentage annual return payable and calculated as of the Petition Date to Holders of Non-Preferred Units or Sharing Units that is senior to any return of investment payable to holders of Preferred Units in accordance with the Waterfall Rights.

### 4.    Sharing Unit Interest Claims

Holders of Sharing Unit Interest Claims listed in the Schedule of Participation Amounts attached to the Disclosure Statement as Schedule 12 shall have an Allowed Sharing Unit Interest Claim in the applicable Participation Amount solely for purposes of sharing in the Sharing/Non-Preferred Interest Recovery Pool.

Except for Note Claims, Bond Claims, Preferred Interest Claims, Non-Preferred Interest Claims and Sharing Unit Interest Claims, all other Claims asserted by the Holders of Note Claims, Bond Claims, Preferred Interest Claims, Non-Preferred Interest Claims and Sharing Unit Interest Claims shall be deemed Disallowed and expunged upon the Effective Date.

**(I) HOLDERS OF NOTE CLAIMS, BOND CLAIMS, PREFERRED INTEREST CLAIMS AND NON-PREFERRED INTEREST CLAIMS AND (II) HOLDERS OF SHARING UNIT INTEREST CLAIMS SHOULD REFER TO SCHEDULES 4 AND 12 TO THE DISCLOSURE STATEMENT, RESPECTIVELY, FOR DETAILS REGARDING THE APPLICATION OF THE NOTE/FUND CLAIMS PROTOCOL AND**

**THE DEEMED ALLOWED AMOUNT OF THEIR CLAIMS OR THE PARTICIPATION AMOUNT OF THEIR CLAIMS, AS APPLICABLE.**

**M.    Liquidating Trusts**

    **1.    Trust**

        **(a)    *Formation of Trust***

On the Effective Date, each Trust shall be formed.  On the Effective Date, the Chapter 11 Trustee shall execute the Trust Agreement on behalf of the Estates, the Trust Agreement shall be effective, and the Trustee shall be authorized to implement the Trust.  The Holders of Claims shall be the sole beneficiaries of the DBSI Liquidating Trust and the DBSI Real Estate Liquidating Trust.

        **(b)    *Trust Agreement***

The Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations, appointment, and removal of the Trustee and to ensure the treatment of the Trust as a liquidating trust for federal income tax purposes.  In the event a provision of the Plan conflicts with a provision of the Trust Agreement, the provision of the Trust Agreement shall control.  In the event a provision of the Confirmation Order conflicts with a provision of the Trust Agreement, the provision of the Confirmation Order shall control.

        **(c)    *Appointment of the Trustee***

The Plan Proponents shall File the final Trust Agreement with the Bankruptcy Court as part of the Supplemental Plan Documents, which Trust Agreement shall propose the Trustee. The Trustee shall be appointed by the Bankruptcy Court in the Confirmation Order and shall commence serving as the Trustee on the Effective Date; provided, however, that the party or parties appointed as Trustee shall be permitted to act in accordance with the terms of the Trust Agreement from the Confirmation Date through the Effective Date and shall be entitled to seek compensation in accordance with the terms of the Trust Agreement and the Plan.

The Trustee shall be deemed a representative of the applicable Estates in accordance with Section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Plan and the DBSI Liquidating Trust Agreement or the DBSI Real Estate Liquidating Trust Agreement, as applicable, to the extent not inconsistent with the status of the Trust as a "liquidating trust" for federal income tax purposes within the meaning of Treasury Regulation 301.7701-4(d).

The Confirmation Order shall state that without the permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced in any forum other than the Bankruptcy Court against the Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Trustee.

### (d)    *Purpose of the Trust*

The Trust shall be established for the sole purpose of liquidating and distributing the Trust Assets in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  Consistent with requirements imposed by the IRS, all parties shall treat the Trust as a liquidating trust for all federal income tax purposes.  The Trust shall not be deemed to be the same legal entity as any of the Plan Debtors, but only the assignee of certain assets and liabilities of the Plan Debtors and a representative of the Estates for delineated purposes within the meaning of Section 1123(b)(3) of the Bankruptcy Code.  Neither the Trust nor any portion thereof, nor any reserve, account or fund established by the Plan shall be treated as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9(b)(1).

### (e)    *Term and Compensation of the Trustee*

The Trustee shall be compensated as set forth in the Trust Agreement and shall not be required to File a fee application to receive compensation.  The Trustee may be removed as provided for in the Trust Agreement.

In the event of the death or incompetency (in the case of a Trustee that is a natural person), dissolution (in the case of a Trustee that is a corporation or other entity), bankruptcy, insolvency, resignation, or removal of the Trustee, a successor trustee shall be appointed as set forth in the Trust Agreement.

### (f)    *Liquidation of Trust Assets; Responsibilities of Trustee Subject in all Respects to the Trust Agreement*

Subject in all respects to the Trust Agreement:

(i)    The Trustee shall be vested with the rights, powers and benefits set forth in the Trust Agreement;

(ii)    The Trustee, in his/her reasonable business judgment and in an expeditious but orderly manner, shall liquidate and convert to Cash the Trust Assets, make timely Distributions and not unduly prolong the duration of the Trust unless the Trustee determines, in his sole discretion, that retention of any or all Trust Assets is likely to result in increased value of such Trust Asset(s) and is otherwise in the best interests of the Holders of Beneficial Interests.  The Trustee shall distribute the proceeds of liquidation of the Trust Assets in accordance with the Plan and the Trust Agreement; and

(iii)    The Trustee shall be expressly authorized to do the following consistent with the Trust Agreement, as applicable:

- open and maintain bank accounts in the name of the Trust, draw checks and drafts thereon on the sole signature of the Trustee, and terminate such accounts as the Trustee deems appropriate;

- 107 -

- sell or liquidate any Trust Asset as provided for in the Trust Agreement, without further approval of or application to the Bankruptcy Court;

- execute any documents, File any pleadings, and take any other actions related to, or in connection with, the liquidation of the Trust Assets and the exercise of the Trustee's powers granted herein, including the exercise of the Plan Debtors' or the Creditors' Committee's respective rights to conduct discovery and oral examination of any party under Rule 2004 of the Federal Rules of Bankruptcy Procedure;

- hold legal title to any and all rights of the beneficiaries in or arising from the Trust Assets, including the right to vote any Claim or Interest in an unrelated case under the Bankruptcy Code and to receive any distribution thereon;

- protect and enforce the rights to the Trust Assets by any method it deems appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

- subject to the Trust Agreement, consent to any action that the Trustee determines, in his sole discretion, is in the best interest of the beneficiaries of the Trust, including, but not limited to any consensual corporate action on behalf of any Entity that is or becomes a Trust Asset, including, but not limited to, settling any Claims;

- deliver Distributions as may be authorized by the Plan;

- File, if necessary, any and all tax returns with respect to the Trust; pay taxes, if any, properly payable by the Trust; and make Distributions to the beneficiaries net of such taxes in accordance with the requirements hereof;

- make all necessary filings in accordance with any applicable law, statute or regulation;

- determine and satisfy any and all liabilities created, incurred or assumed by the Trust;

- invest moneys received by the Trust or otherwise held by the Trust in accordance with Article VI of the Plan;

- in the event that the Trustee determines that the beneficiaries or the Trust may, will or have become subject to adverse tax

consequences, take such actions that will, or are intended to, alleviate such adverse tax consequences;

- utilize the Trust Assets to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs necessary or advisable to insure the acts and omissions of the Trustee;

- obtain unsecured or secured credit to fund Trust administration, litigation or for any other purpose consistent with the Trust Agreement;

- create one or more Entities for the purpose of holding or managing Trust Assets, or in connection with the sale or other disposition thereof, or for any other purpose consistent with the Plan, Confirmation Order, and the Trust Agreement;

- take any and all actions deemed necessary in the Trustee's business judgment to preserve and enhance the value of the Trust Assets, including, but not limited to, maintaining and improving real property entitlements;

- without the prior approval of the Bankruptcy Court, compromise, settle, decline to object to, and/or allow any Disputed Claim asserted in an amount less than (i) $200,000 for an S/A/P Claim or (ii) $1,000,000 for an Unsecured Claim;

- preserve and maintain all documents and electronic data (including, but not limited to, emails and email server back-up tapes) (collectively, the "Records") transferred to or otherwise acquired by the Trust and/or the Trustee in accordance with the Plan and the Trust Agreement;

- prepare and File post-Confirmation quarterly reports in conformance with the U.S. Trustee guidelines; and

- request an expedited determination of taxes of the Trust under Section 505(b) of the Bankruptcy Code for all returns Filed for, or on behalf of, the Trust for all taxable periods through the dissolution of the Trust.

(g)    ***Vesting of Assets in the Trust; Assumption of Plan Obligations***

(i)    Vesting of Certain Assets in the Trust.

On the Effective Date, the DBSI Real Estate Liquidating Trust Assets shall vest in, and constitute assets of, the DBSI Real Estate Liquidating Trust, and each applicable Note/Fund

- 109 -

Consolidated Debtor shall be deemed for all purposes to have transferred legal and equitable title of all DBSI Real Estate Liquidating Trust Assets of its Estate to the DBSI Real Estate Liquidating Trust for the benefit of the Holders of DBSI Real Estate Liquidating Trust Beneficial Interests received on account of Allowed Claims against such Note/Fund Consolidated Debtor, whether or not such Claims are Allowed Claims as of the Effective Date.

On the Effective Date, the DBSI Liquidating Trust Assets shall vest in, and constitute assets of, the DBSI Liquidating Trust, and each applicable DBSI Consolidated Debtor shall be deemed for all purposes to have transferred legal and equitable title of all DBSI Liquidating Trust Assets of its Estate to the DBSI Liquidating Trust for the benefit of the Holders of DBSI Liquidating Trust Beneficial Interests received on account of Allowed Claims against such DBSI Consolidated Debtor, whether or not such Claims are Allowed Claims as of the Effective Date.

(ii)    Transfer of Trust Assets by the Chapter 11 Trustee

On the Effective Date or as soon as practicable thereafter, the Chapter 11 Trustee on behalf of the Plan Debtors shall take all actions reasonably necessary to transfer control of the applicable Trust Assets to the applicable Trust.  Upon the transfer of control of Trust Assets in accordance with this section, neither the Plan Debtors nor the Estates shall have any further interest in or with respect to the Trust Assets or the Trust.  The Trust Assets shall vest in the Trust free and clear of any and all Liens, Claims, Interests, and encumbrances asserted against any of the Plan Debtors, except as otherwise provided in the Plan.  From and after the Effective Date, the Trustee can operate, use, sell dispose, encumber, transfer, convey the Trust Assets without any supervision or approval of the Bankruptcy Court and free of any restrictions of the Chapter 11 Cases or the Bankruptcy Rules, except as otherwise provided for herein, in the Confirmation Order or in the Trust Agreement.  The Chapter 11 Trustee is authorized to take such actions as required to transfer the Trust Assets to the Trusts, including executing instruments of transfer including deeds in lieu.

(iii)    Treatment of Transfer of Trust Assets

For federal income tax purposes, all parties (including the Estates, the Trustee, and the Holders of Claims) shall treat the transfer of the applicable Trust Assets to the applicable Trust in accordance with the terms of this Plan as a transfer to the Holders of the Claims that have a Beneficial Interest in the Trust, with the Holders of Claims receiving an undivided interest in the Trust Assets, as applicable, with respect to which their Claim relates, followed by a transfer of the applicable Assets of the Trust by such Holders to the applicable Trust, and the beneficiaries of the Trust shall be treated as the grantors and owners of such beneficiaries' respective portion of the Trust.

(iv)    Valuation of Trust Assets

As soon as possible after the Effective Date, the Trustee shall (i) determine the fair market value, as of the Effective Date, of the Trust Assets based on its own good-faith determination, provided that nothing herein shall be construed to prevent the Trustee (if on or after the Effective Date) from seeking a judicial valuation of the Trust Assets as of the Effective Date by the Bankruptcy Court, and (ii) apprise the Holders of Beneficial Interests in writing of

such valuation (and indicate in such writing each Holder's percentage ownership interest in the Trust based on each such Holder's relative Beneficial Interest in the Trust or portion thereof as of the Effective Date). The valuation shall be used consistently by all parties, including, without limitation, the Estates, the Trustee and Holders of Unsecured Claims, for all federal income tax purposes.

(v)    Payments by the Trust

The Trust shall make Distributions to Holders of Beneficial Interests in accordance with Article IV of the Plan.

**THE CREDITORS OF ANY ENTITY OTHER THAN THE DBSI CONSOLIDATED DEBTORS OR THE NOTE/FUND CONSOLIDATED DEBTORS, INCLUDING THE ENTITIES LISTED ON SCHEDULES 5, 6 AND 7 TO THE DISCLOSURE STATEMENT, SHALL LOOK ONLY TO THE ASSETS OF THE APPLICABLE ENTITY FOR SATISFACTION OF THEIR CLAIMS AND SHALL HAVE NO RECOURSE TO THE ASSETS OF THE TRUST.**

(h)    ***Investment Powers of the Trustee and Permitted Cash Expenditures***

All funds held by the Trustee shall be invested in Cash or short-term highly liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Trust Agreement; provided, however, that the right and power of the Trustee to invest Trust Assets, the proceeds thereof, or any income earned by the Trust, shall be limited to the right and power that a liquidating trust is permitted to exercise pursuant to the Treasury Regulations, any amended Treasury Regulations, or as set forth in IRS rulings, notices, or other IRS pronouncements. The Trustee may expend the Cash of the Trust (x) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective Trust Assets during liquidation, (y) to pay reasonable administrative expenses (including, but not limited to, any taxes imposed on the Trust) and (z) to satisfy other liabilities incurred by the Trust in accordance with the Plan or the Trust Agreement.

(i)    ***Reporting Duties of Trustee***

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Trustee), the Trustee shall File returns for the Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a). The Trustee shall also send to each Holder of a Beneficial Interest in the Trust an annual statement setting forth the Holder's share of items of income, gain, loss, deduction or credit and provide to all such holders information for reporting such items on their federal income tax returns, as appropriate. The Trustee shall File (or cause to be Filed) any other statements, returns or disclosures relating to the Trust that are required by any Governmental Unit.

Allocations of Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed

distribution, the Trust had distributed all of its other Assets (valued for this purpose at their tax book value) to the Holders of the Beneficial Interests in the Trust (treating any Holder of a Disputed Claim, for this purpose, as a current Holder of a Beneficial Interest in the Trust entitled to distributions), taking into account all prior and concurrent distributions from the Trust (including all distributions held in reserve pending the resolution of Disputed Claims). Similarly, taxable loss of the Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Trust Assets.  For this purpose, the tax book value of the Trust Assets shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Trust, adjusted in either case in accordance with tax accounting principles prescribed by the IRC, the regulations and other applicable administrative and judicial authorities and pronouncements.

The Trustee shall File (or cause to be Filed) any other statements, returns or disclosures relating to the Trust that are required by any governmental unit.

### (j)    *Registry of Beneficial Interests; Non-Transferability*

To evidence the Beneficial Interest in the Trust of each Holder of such a Beneficial Interest, the Trustee shall maintain a registry of such Holders.

Upon issuance thereof, Beneficial Interests in the Trust shall be non-transferable, except with respect to a transfer by will or under the laws of descent and distribution.  Any such transfer, however, shall not be effective until and unless the Trustee receives written notice of such transfer.

### (k)    *Termination of the Trust*

The Trust shall terminate after its liquidation, administration and distribution of the Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth herein or in the Trust Agreement.  The Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that, within a period of six (6) months prior to such termination date or any extended termination date, the Trustee may extend the term of the Trust if it is necessary to facilitate or complete the liquidation of the Trust Assets administered by the Trust; provided further, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Trust as a "liquidating trust" for federal income tax purposes within the meaning of Treasury Regulations 301.7701-4(d).

### 2.    Litigation Trust

### (a)    *Formation of Litigation Trust*

On the Effective Date, each Litigation Trust shall be formed.  On the Effective Date, the Chapter 11 Trustee shall execute the Litigation Trust Agreement on behalf of the Estates, the Litigation Trust Agreement shall be effective, and the Litigation Trustee shall be authorized to implement the Litigation Trust.

### (b)    *Litigation Trust Agreement*

The Litigation Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations, appointment, and removal of the Litigation Trustee and to ensure the treatment of the Litigation Trust as a liquidating trust for federal income tax purposes.  In the event a provision of this Plan conflicts with a provision of the Litigation Trust Agreement, the provision of the Plan shall control.  In the event a provision of the Confirmation Order conflicts with a provision of the Litigation Trust Agreement, the provision of the Confirmation Order shall control.

### (c)    *Appointment of the Litigation Trustee*

The Plan Proponents shall File the final Litigation Trust Agreement with the Bankruptcy Court as part of the Supplemental Plan Documents, which Litigation Trust Agreement shall propose the Litigation Trustee.  The Litigation Trustee shall be appointed by the Bankruptcy Court in the Confirmation Order and shall commence serving as the Litigation Trustee on the Effective Date; provided, however, that the Litigation Trustee shall be permitted to act in accordance with the terms of the Litigation Trust Agreement from the Confirmation Date through the Effective Date and shall be entitled to seek compensation in accordance with the terms of the Litigation Trust Agreement and the Plan.  The same Person may be designated as

The DBSI Estate Litigation Trustee shall be deemed a representative of the applicable Estates in accordance with Section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Plan and the DBSI Estate Litigation Trust Agreement, including, without limitation, the powers of a trustee under Sections 704, 108 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules (including commencing, prosecuting or settling Estate Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges), to the extent not inconsistent with the status of the DBSI Estate Litigation Trust as a "liquidating trust" for federal income tax purposes within the meaning of Treasury Regulation 301. 7701-4(d).

The Confirmation Order shall state that without the permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced in any forum other than the Bankruptcy Court against the DBSI Estate Litigation Trustee in its official capacity, with respect to its status, duties, powers, acts, or omissions as Litigation Trustee.

### (d)    *Purpose of the Litigation Trust*

The Litigation Trust shall be established for the sole purpose of liquidating and distributing the Litigation Trust Assets in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Consistent with requirements imposed by the IRS, all parties shall treat the Litigation Trust as a liquidating trust for all federal income tax purposes.

Specifically, the Private Actions Trust will be established to hold, prosecute and liquidate the Contributed Non-Estate Causes of Action.  To the extent that any Non-Estate Causes of Action cannot be transferred to the Private Actions Trust because of a restriction on

transferability under applicable non-bankruptcy law that is not superseded or preempted by Section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Non-Estate Causes of Action shall be deemed to have been retained by the grantor, as applicable, and the Private Actions Trustee shall be deemed to have been designated as a representative of such grantor to enforce and pursue such Non-Estate Causes of Action on behalf of such grantor. Notwithstanding the foregoing, all net proceeds of such Non-Estate Causes of Action shall be transferred to the Private Actions Trust Beneficiaries consistent with the other provisions of this Plan and the Private Actions Trust Agreement.

The DBSI Estate Litigation Trust will be established to hold, prosecute and liquidate the Estate Causes of Action and any Objection Right involving an adversary proceeding that is pending on the Effective Date and that relates to a common set of facts or legal issues also implicated by an Estate Cause of Action. On the Effective Date, all Estate Causes of Action shall vest in, and constitute assets of, the DBSI Estate Litigation Trust, and the Note/Fund Consolidated Debtors and the DBSI Consolidated Debtors shall be deemed for all purposes to have transferred legal and equitable title of all DBSI Estate Litigation Trust Assets of their Estate to the DBSI Estate Litigation Trust for the benefit of the Holders of DBSI Estate Litigation Trust Beneficial Interests.

The Litigation Trust shall not be deemed to be the same legal entity as any of the Plan Debtors. The DBSI Estate Litigation Trust shall be deemed to be the assignee of certain assets and liabilities of the Plan Debtors and a representative of the Estates for delineated purposes within the meaning of Section 1123(b)(3) of the Bankruptcy Code. Neither the Litigation Trust nor any portion thereof, nor any reserve, account or fund established by the Plan shall be treated as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9(b)(1).

### (e)      *Term and Compensation of the Litigation Trustee*

The Litigation Trustee shall be compensated as set forth in the Litigation Trust Agreement and shall not be required to File a fee application to receive compensation. The Litigation Trustee may be removed as provided for in the Litigation Trust Agreement.

In the event of the death or incompetency (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is a corporation or other entity), bankruptcy, insolvency, resignation, or removal of the Trustee, a successor trustee shall be appointed as set forth in the Trust Agreement.

### (f)      *Distributions by the Litigation Trust*

The DBSI Liquidating Trust and the DBSI Real Estate Liquidating Trust shall be the sole holders of beneficial interests in the DBSI Estate Litigation Trust, the total of which will be allocated 60% to the DBSI Real Estate Liquidating Trust and 40% to the DBSI Estate Liquidating Trust pursuant to, and in accordance with, the Global Claims Settlement and the Plan.

There shall be a total of one million (1,000,000) units of Private Actions Trust Beneficial Interests. The DBSI Real Estate Liquidating Trust shall receive 15% or 150,000 units of Private

Actions Trust Beneficial Interests and the DBSI Liquidating Trust shall receive 5% or 50,000 units of Private Actions Trust Beneficial Interests, in accordance with the Global Claims Settlement.  The remaining 800,000 Private Actions Trust Beneficial Interests will be allocated to the Electing Creditors, in return for their Contributed Non-Estate Causes of Action, ratably based upon the amount of the Allowed Unsecured Claim or the Participation Amount, as applicable, held by each Electing Creditor as compared in relation to the aggregate total of the Allowed Unsecured Claims amounts and Participation Amounts of all Electing Creditors.  If there is a recovery on account of a Cause of Action that is asserted by both the DBSI Estate Litigation Trust and the Private Actions Trust, and the recovery is not allocated by court order, the recovery shall be allocated 50% to the DBSI Estate Litigation Trust and 50% to the Private Actions Trust.

A secondary purchaser of a Non-Estate Cause of Action may participate in the Private Actions Trust only if such purchaser has received a lawful and valid assignment of such Non-Estate Cause of Action from the original holder of such Cause of Action and has elected to assign such Non-Estate Cause of Action to the Private Actions Trust.

**(g)** ***Liquidation of Litigation Trust Assets; Responsibilities of Litigation Trustee Subject in all Respects to the Litigation Trust Agreement***

Subject in all respects to the Litigation Trust Agreement:

**(i)** The Litigation Trustee shall be vested with the rights, powers and benefits set forth in the Litigation Trust Agreement;The Litigation Trustee, in his/her reasonable business judgment and in an expeditious but orderly manner, shall liquidate and convert to Cash the Litigation Trust Assets, make timely distributions to the beneficiaries of the Litigation Trust Assets and not unduly prolong the duration of the Litigation Trust.  The liquidation of the Litigation Trust Assets may be accomplished either through the sale of Causes of Action, or through prosecution or settlement of any Causes of Action, or otherwise;

**(iii)** The Litigation Trustee shall distribute the proceeds of liquidation of the Litigation Trust Assets in accordance with the Plan and the Litigation Trust Agreement; and

**(iv)** The Litigation Trustee shall be expressly authorized to do the following consistent with the Litigation Trust Agreement:

- prosecute, collect, compromise and settle any Causes of Action in accordance with the Litigation Trust Agreement and without further approval of or application to the Bankruptcy Court;

- open and maintain bank accounts in the name of the Litigation Trust, draw checks and drafts thereon on the sole signature of the Litigation Trustee, and terminate such accounts as the Litigation Trustee deems appropriate;

- 115 -

- execute any documents, File any pleadings, and take any other actions related to, or in connection with, the liquidation of the Litigation Trust Assets and the exercise of the Litigation Trustee's powers granted herein;

- File, if necessary, any and all tax returns with respect to the Litigation Trust; pay taxes, if any, properly payable by the Litigation Trust; and make distributions to the beneficiaries of the Litigation Trust Assets net of such taxes in accordance with the requirements hereof;

- obtain unsecured or secured credit to fund Litigation Trust administration, litigation or for any other purpose consistent with the Litigation Trust Agreement;

- determine and satisfy any and all liabilities created, incurred or assumed by the Litigation Trust;

- invest moneys received by the Litigation Trust or otherwise held by the Litigation Trust in accordance with Article VI of the Plan; and

- exercise all other powers consistent with the Plan and the Litigation Trust Agreement, as necessary and appropriate.

(h)    *Reporting Duties of Litigation Trustee*

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee), the Litigation Trustee shall File returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a).  The Litigation Trustee shall also send to each beneficiary of the Litigation Trust Assets an annual statement setting forth the beneficiaries' share of items of income, gain, loss, deduction or credit and provide to all such parties information for reporting such items on their federal income tax returns, as appropriate.  The Litigation Trustee shall File (or cause to be Filed) any other statements, returns or disclosures relating to the Litigation Trust that are required by any Governmental Unit.

3.    **Registry of Beneficial Interests in Litigation Trust; Non-Transferability**

To evidence the beneficial interest in the Litigation Trust of each holder of such a beneficial interest, the Litigation Trustee shall maintain a registry of such holders.

Upon issuance thereof, beneficial interests in the Litigation Trust shall be non-transferable, except with respect to a transfer by will or under the laws of descent and

distribution.  Any such transfer, however, shall not be effective until and unless the Litigation Trustee receives written notice of such transfer.

### 4.    Termination of the Litigation Trust

The Litigation Trust shall terminate after its liquidation, administration and distribution of the Litigation Trust Assets in accordance with the Plan and its full performance of all other duties and functions set forth herein or in the Litigation Trust Agreement.  The Litigation Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that, within a period of six (6) months prior to such termination date or any extended termination date, the Litigation Trustee may extend the term of the Litigation Trust if it is necessary to facilitate or complete the liquidation of the Litigation Trust Assets administered by the Litigation Trust; provided further, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Litigation Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a "liquidating trust" for federal income tax purposes within the meaning of Treasury Regulations 301.7701-4(d).

## N.    Trust Oversight Committee

As of the Effective Date, one Trust Oversight Committee shall be appointed which shall have such responsibilities and authority with respect to the Trust and the Litigation Trust as is set forth in the Trust Agreement and the Litigation Trust Agreement.  The Trust Oversight Committee shall initially be comprised of not less than three and not more than seven members of the Creditors' Committee.  The Trust Oversight Committee shall have the right to employ professionals, which may also have been employed previously at the expense of the Debtor's estates.  To the extent there is a dispute between the Trust and/or the Litigation Trust, the Trust Oversight Committee may retain conflicts counsel to advise the Trust Oversight Committee.  The fees, costs and expenses of the Trust Oversight Committee and the professionals employed by the Trust Oversight Committee shall be an expense of the Trust and/or the Litigation Trust, paid by the Trust and/or Litigation Trust, as applicable.  In summary and without limitation, pursuant to and as set forth more fully in the Trust Agreement and the Litigation Trust Agreement: (i) each Trustee and Litigation Trustee shall provide regular written reports to the Trust Oversight Committee no less than monthly; (ii) each Trustee and Litigation Trustee shall meet with the Trust Oversight Committee no less than quarterly; (iii) each Trustee and Litigation Trustee shall provide to the Trust Oversight Committee such additional information as the Trust Oversight Committee request; (iv) subject to any guidelines, specific requirements and limitations set forth more specifically in the applicable Trust Agreement and Litigation Trust Agreement as applicable, proposed professional compensation arrangements, financings, borrowings, loans, dispositions, expenditures, litigation settlements and other non-ordinary course acts of the Trustee and the Litigation Trustee shall require consultation with, and the approval of, the Trust Oversight Committee, subject to a de minimis dollar amount threshold; and (v) subject to the approval of the Bankruptcy Court, the Trust Oversight Committee shall have the right to remove and replace any Trustee or Litigation Trustee in accordance with the standard set forth in the applicable Trust Agreement or Litigation Trust Agreement.  Any dispute regarding the Trust Oversight Committee and a Trustee or a Litigation Trustee may be submitted to the Bankruptcy Court for resolution.

## O.    Estate Representative

On the Effective Date, the Estate Representative shall be vested with the authority to administer the S/A/P Claims Reserve, object to and settle claims to be paid from the S/A/P Claims Reserve, and to close the Chapter 11 Cases.  The fees and expenses of the Estate Representative, including counsel for the Estate Representative, shall be paid from the S/A/P Claims Reserve.

## P.    Liability; Indemnification

Neither the Trustee, the Litigation Trustee, the Trust Oversight Committee and its members, their designees or professionals, or any duly designated agent or representative of the Trustee, the Litigation Trustee or the Oversight Committee, nor their respective employees, shall be liable for the act or omission of any other designee, agent or representative of the Trustee, the Litigation Trustee or the Trust Oversight Committee, nor shall the Trustee, the Litigation Trustee or the Trust Oversight Committee and its members, be liable for any act or omission taken or omitted to be taken in their capacity as Trustee, Litigation Trustee and Trust Oversight Committee, as applicable, other than for specific acts or omissions resulting from such Trustee's, Litigation Trustee's or Trust Oversight Committee's willful misconduct, or gross negligence. The Trustee, the Litigation Trustee and the Trust Oversight Committee and its members may, in connection with the performance of their functions and in their sole and absolute discretions, consult with their attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, the Trustee, the Litigation Trustee and the Trust Oversight Committee and its members shall not be under any obligation to consult with their attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Trustee, the Litigation Trustee or the Trust Oversight Committee and its members unless such determination is based on willful misconduct or gross negligence.  The Trust and the Litigation Trust, as applicable, shall indemnify and hold harmless the Trustee, the Trust Oversight Committee and its members and the Litigation Trust, their designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Trust, the Litigation Trust or the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct or gross negligence.

## Q.    Retention of Professionals

The Trustee and the Litigation Trustee, as applicable, may retain Professionals, including but not limited to, counsel, accountants, investment advisors, auditors and other agents on behalf of the Trust and/or the Litigation Trust as necessary or desirable to carry out their obligations

- 118 -

hereunder and under the Trust Agreement and/or the Litigation Trust Agreement.  More specifically, the Trustee and the Litigation Trustee may retain counsel in any matter related to administration of the Plan.  The same professionals may be employed by and represent both the Trust and the Litigation Trust, and said trusts may employ any professional, that has served as a professional for any Trust, the Chapter 11 Trustee, or the Creditors' Committee in the Chapter 11 Cases.  Professionals retained by the Trust and/or the Litigation Trust shall be paid by the Trust or the Litigation Trust, as applicable, without further review or order of the Bankruptcy Court.

**R.    Retention of Causes of Action/Preservation of Rights**

Except as otherwise provided in the Plan, the Confirmation Order or in any Plan Documents, in accordance with Section 1123(b) of the Bankruptcy Code, (i) any and all Estate Causes of Action, including preferential and fraudulent transfers and other Avoidance Actions of the Note/Fund Consolidated Debtors, the DBSI Consolidated Debtors, and the Consolidated Non-Debtors, including, without limitation, DBSI Investments, DBSI Redemption, Stellar and the Non-Debtor Affiliates described in Schedule 1 to the Disclosure Statement, shall remain Assets of the Estates, shall be part of the Assets of the DBSI Estate Litigation Trust and shall vest in the DBSI Estate Litigation Trust with the DBSI Estate Litigation Trustee being the representative of the Estates with respect to such Causes of Action, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such Estate Causes of Action have been listed or referred to in the Plan, the Disclosure Statement, or any other document Filed with the Bankruptcy Court, and (ii) neither the Chapter 11 Trustee, the Plan Debtors nor their Estates waive, release, relinquish, forfeit, or abandon (nor shall they be estopped or otherwise precluded or impaired from asserting) any Estate Causes of Action that constitutes property of the Plan Debtors or their Estates: (a) whether or not such Estate Cause of Action has been listed or referred to in the Plan, the Disclosure Statement, or any other document Filed with the Bankruptcy Court, (b) whether or not such state Estate Cause of Action is currently known to the Chapter 11 Trustee, and (c) whether or not a defendant in any litigation relating to such Estate Cause of Action Filed a Proof of Claim in the Chapter 11 Cases, Filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.

Notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any Estate Cause of Action, or potential Estate Cause of Action, in the Plan, the Disclosure Statement, or any other document Filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release or alter the Chapter 11 Trustee's, the Estates', or the DBSI Estate Litigation Trustee's right to commence, prosecute, defend against, settle, and realize upon any Estate Cause of Action that the Plan Debtors and their Estates have or may have as of the Confirmation Date.

Solely for the avoidance of doubt, except as expressly provided in the Plan, the DBSI Estate Litigation Trustee, shall, after the Effective Date, retain the rights of each Consolidated Non-Debtor, to prosecute any Cause of Action that could have been brought by such Consolidated Non-Debtor at any time, including Avoidance Actions.  A non-exclusive list of

potential defendants that may be subject to Estate Causes of Action, including Avoidance Actions is attached to the Disclosure Statement as Exhibit 17.

Subject to the limitations expressly set forth in the DBSI Estate Litigation Trust Agreement, the DBSI Estate Litigation Trustee, in its sole discretion and in accordance with the best interests of the Estates, retains the right to enforce, commence, prosecute, defend against, recover on account of, and settle any claims, demands, rights, defenses and Estate Causes of Action that any Plan Debtor or any Estate may hold against any Entity, including any action for violation of the automatic stay.  All such retained claims, demands, rights, defenses and Estate Causes of Action shall constitute part of the DBSI Estate Litigation Trust Assets.  Any and all fees, costs, and expenses incurred in respect of the prosecution of Estate Causes of Action by the DBSI Estate Litigation Trustee shall be payable and paid by the DBSI Estate Litigation Trustee from the DBSI Estate Litigation Trust Assets.

**S.      Successors**

The Trust shall be the successor to the Plan Debtors, the Chapter 11 Trustee and/or the Creditors' Committee for the purposes of Sections 1123, 1129, and 1145 of the Bankruptcy Code.  The DBSI Estate Litigation Trust shall be the successor to all pending Estate Causes of Action and other litigation-related matters and shall succeed to the attorney-client privilege of the Plan Debtors and/or the Chapter 11 Trustee with respect to all Estate Causes of Action and other litigation-related matters, and the DBSI Estate Litigation Trustee may waive the attorney-client privilege with respect to any Estate Causes of Action or other litigation-related matter, or portion thereof, in the DBSI Estate Litigation Trustee's discretion.

**ARTICLE VII**
**DISTRIBUTIONS UNDER THIS PLAN**

**A.      Timing of Distributions**

**1.      Distributions on Account of Allowed S/A/P Claims.**

The Estate Representative shall establish the S/A/P Claims Reserve on the Effective Date and pay any Allowed S/A/P Claim, in Cash from the S/A/P Claims Reserve, except as otherwise provided in this Plan, as soon as practicable after the later of (a) the Effective Date, and (b) the date upon which any such Claim becomes an Allowed Claim.  To the extent required, the S/A/P Claims Reserve shall be augmented by the Trusts after the Effective Date.

**2.      Interim Distributions on Account of Allowed Unsecured Claims.**

The Trustee shall (a) make annual interim Distributions on account of Beneficial Interests from the Net Distributable Cash of the applicable Trust then available on account of Beneficial Interests, provided that any such Distribution is warranted, economical and not unduly burdensome to the Trust, and (b) have the right to make more frequent interim Distributions to Holders of Beneficial Interests if the Trustee determines that such interim Distributions are warranted, economical and not unduly burdensome to the Trust; provided, however, that any such Distribution(s) shall only be made if the Operating Expense Reserve for the Trust is fully funded and will remain fully funded after such interim Distributions are made.  The Operating

Expense Reserve shall include a reserve for such amount as the Trustee believes is reasonably necessary to meet contingent liabilities, to maintain the value of the Trust Assets during liquidation, and to satisfy other liabilities or expenses incurred by the Trust in accordance with the Plan or the Trust Agreement.

This provision shall be interpreted to be consistent with Revenue Procedure 94-45 Section 3.10.

### 3.    Final Distributions on Allowed Unsecured Claims

On or before the termination of the Trust, the Trustee shall distribute, all remaining Trust Assets, as applicable, to holders of Beneficial Interests.

### 4.    Delivery of Distributions, Address of Holder

For purposes of all notices and Distributions under the Plan, the Trustee shall be entitled to rely on the name and address of the holder of each Claim as specified by, and Distributions to Holders of Claims shall be made by regular U.S. first class mail to, the following addresses:  (1) the address set forth on the respective Filed proof of Claim of such holder, or, if such Holder notified the Balloting Agent of a change of address following the filing of a Claim, at the address noted therein; or (2) the address reflected on the Schedule.  The Trustee shall be under no duty to attempt to locate Holders of Allowed Claims who are entitled to unclaimed Distributions.  The date of delivery shall be the date an item is provided to the United States Postal Service for delivery by first class mail.

## B.    Reserves

### 1.    Operating Expense Reserve

On the Effective Date, the applicable Trustee shall establish the Operating Expense Reserve from the DBSI Liquidating Trust Assets, DBSI Real Estate Liquidating Trust Assets, the DBSI Estate Litigation Trust Assets, or the Private Actions Trust Assets, as applicable, to fund administrative and all other miscellaneous needs of the Trusts pursuant to the Plan, Confirmation Order and Trust Agreements.  The initial amount of the Trust Operating Expense Reserve shall be based on the Trustee's good faith estimate of the amount necessary to complete the applicable Trust's obligations under this Plan and the Trust Agreements.  The Trust shall pay all costs and expenses related to carrying out its obligations under this Plan and the Trust Agreement from the Operating Expense Reserve for the Trust and, in the Trustee's discretion, may add additional amounts to the Operating Expense Reserve for administration and other miscellaneous needs of the Trust without further notice or motion in accordance with the terms of the Plan, Confirmation Order and Trust Agreement.  To the extent required, the DBSI Liquidating Trust and the DBSI Real Estate Liquidating Trust may borrow and lend funds between them and any such borrowings shall be: (i) documented by a promissory note; (ii) carry a then market rate of interest; (iii) be payable as an expense of the borrowing Trust when funds become available or as otherwise provided in the loan documents; and (iv) be secured by the borrowing Trust's assets.

## 2.    S/A/P Claims Reserve

As soon as practicable after the transfer of the designated DBSI Real Estate Liquidating Trust Assets and the DBSI Liquidating Trust Assets to the Trust, as applicable, the Estate Representative shall establish a S/A/P Claims Reserve for all Disputed S/A/P Claims and Allowed S/A/P Claims not paid prior to the Effective Date, which Reserve shall be funded (i) from the Assets transferred to the DBSI Real Estate Liquidating Trust for Disputed S/A/P Claims asserted only against one or more of the Note/Fund Consolidated Debtors, (ii) from the Assets transferred to the DBSI Liquidating Trust for Disputed S/A/P Claims asserted only against one or more of the DBSI Consolidated Debtors, (iii) in accordance with the Cost Allocation and Professional Fees Protocol for any Disputed S/A/P Claim that falls within the definition of Chapter 11 Costs, and (iv) proportionally from the Assets transferred to the Trusts for Disputed S/A/P Claims asserted against one or more of the Note/Fund Consolidated Debtors and one or more of the DBSI Consolidated Debtors based on the facts and circumstances of the applicable Claim.

The amount reserved for each Disputed Administrative Claim and each Allowed Administrative Claim not paid prior to the Effective Date shall be the lower of (i) the amount set forth in the request for payment of Administrative Claim Filed by the Holder of such Claim, or, if no such request has been Filed, the amount set forth for such Claim in the Plan Debtors' books and records, and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article VIII of this Plan; provided, however, that where a Creditor holds a Claim for which more than one Plan Debtor is alleged to be liable, the Estate Representative shall contribute to an S/A/P Claims Reserve on account of only one such Claim.

The amount reserved for a Disputed Priority Tax Claim, Disputed Priority Claim, or Disputed Miscellaneous Secured Claim or for an Allowed Priority Tax Claim, Allowed Priority Claim, or Allowed Miscellaneous Secured Claim that is not paid prior to the Effective Date shall be the lower of (i) the amount set forth in the Proof of Claim Filed by the Holder of such Claim, or, if no Proof of Claim has been Filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed, and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court pursuant to Article VIII of this Plan; provided, however, that where a Creditor holds a Claim for which more than one Plan Debtor is alleged to be liable, the Estate Representative shall contribute to an S/A/P Reserve on account of only one such Claim.

As soon as practicable after (and to the extent that) a Disputed S/A/P Claim becomes an Allowed S/A/P Claim, the Estate Representative shall make a payment from the S/A/P Claims Reserve to the Holder of such Claim in the Allowed amount of such Claim, unless such Claim is an Allowed Miscellaneous Secured Claim for which the Estate Representative elects an alternate treatment pursuant to Article IV of this Plan.  After (and to the extent) a Disputed S/A/P Claim is determined not to be an Allowed S/A/P Claim, the portion of the S/A/P Claims Reserve reserved for such Claim shall be released from the S/A/P Claims Reserve and turned over to the Trustee for the Trust to which the Assets of the Plan Debtor against which the Claim was asserted have been transferred.  Any amount remaining in the S/A/P Claims Reserve following the final disposition of all S/A/P Claims shall constitute a Trust Asset, allocated and released from the S/A/P Claims Reserve and distributed to the applicable Trust.  If at any time the Estate

Representative determines the amount reserved in the S/A/P Claims Reserve is insufficient to satisfy all Disputed S/A/P Claims and Allowed S/A/P Claims not previously paid, the Estate Representative may request that the applicable Trust add additional amounts to the S/A/P Claims Reserve from the Trust Assets, without further notice or motion in accordance with the terms of the Plan, Confirmation Order and Trust Agreement.  Any dispute relating to the S/A/P Claims Reserve may be brought before the Bankruptcy Court.

### 3.    Disputed Unsecured Claims Reserves

Prior to making any Distributions on account of Beneficial Interests distributed to Holders of Unsecured Claims, the Trustee shall establish a Disputed Claims Reserve for the payment of any Disputed Unsecured Claims to the extent such Disputed Unsecured Claims become Allowed Unsecured Claims that would be entitled to receive Beneficial Interests.  With respect to any interim Distribution made to Holders of Beneficial Interests, the amount reserved for each Disputed Unsecured Claim shall be the amount that the holder of such Disputed Claim would have been entitled to receive under the Plan if it was an Allowed Unsecured Claim based upon the Claim being in the lower of (i) the amount set forth in Proof of Claim Filed by the Holder of such Claim, or if no Proof of Claim has been Filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed and (ii) the estimated amount of such Claim for Distribution purposes, as determined by the Bankruptcy Court pursuant to Article VIII of the Plan.  As soon as practicable after (and to the extent) that a Disputed Unsecured Claim becomes an Allowed Unsecured Claim, the applicable Trustee shall register and distribute a Beneficial Interest on account of such Allowed Unsecured Claim and make a payment from the applicable Disputed Unsecured Claims Reserve to the Holder of such Beneficial Interest based on the proportionate amount, if any, that the Trust has paid on account of such Beneficial Interests, and any remaining amount reserved on account of such Claim shall be released from the applicable Disputed Unsecured Claims Reserve and distributed to the applicable Trust as Trust Assets.  After (and to the extent) a Disputed Unsecured Claim becomes a Disallowed Claim, the portion of the applicable Disputed Unsecured Claims Reserve reserved for such Claim shall be released from the applicable Disputed Unsecured Claims Reserve and distributed to the applicable Trust as Trust Assets.  Any amount remaining in a Disputed Unsecured Claims Reserve following the final disposition of all Disputed Unsecured Claims shall be released from the applicable Disputed Unsecured Claims Reserve and distributed to the applicable Trust as Trust Assets.

## C.    Provisions Regarding Distribution

### 1.    Dates of Distribution

The sections of the Plan on treatment of Administrative Expenses, Claims, and Interests specify the times for Distributions.  Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or Distribution shall instead be made, without interest, on the immediately following Business Day.  Distributions due on the Effective Date will be paid on such date or as soon as practicable thereafter; provided, that if other provisions of the Plan require the surrender of securities or establish other conditions precedent to receiving a Distribution, the Distribution may be delayed until such surrender occurs or conditions are satisfied.

2.        **Manner of Distribution**

Notwithstanding any other provisions of the Plan or the Trust Agreement providing for a Distribution or payment in Cash, at the option of the Trustee, any Distributions under the Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer, or by ACH, or as otherwise required or provided in applicable agreements or by any other means agreed to by the payor and payee.  Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan.  Any Cash Distributions or payments will be issued to Holders in whole cents (rounded to the nearest whole cent when and as necessary).

3.        **De Minimis Distributions**

All Distributions less than $1,000 (De Minimis Distributions) will be held by the Trust for the benefit of the Holders of Allowed Claims entitled to De Minimis Distributions.  When the aggregate amount of De Minimis Distributions held by the Trust for the benefit of a Creditor exceeds $1,000.00, the Trust will distribute such De Minimis Distributions to such Creditor.  If, at the time that the final Distribution under the Plan is to be made, the De Minimis Distributions held by the Trust for the benefit of a Creditor total less than $1,000.00, such funds shall at such time be distributed to such Creditor.

4.        **Delivery of Distribution**

Subject to Bankruptcy Rule 9010, except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims or Allowed Administrative Expense Claims shall be made by the Chapter Trustee (if prior to the Effective Date), or the Trustee (if after the Effective Date) (i) at the addresses set forth on the Proofs of Claim Filed by such Holders, (ii) at the addresses set forth in any written notices of address changes Filed with the Claims Agent after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules filed with the Bankruptcy Court or on the books and records of the Plan Debtors if no Proof of Claim has been Filed.

5.        **Undeliverable Distributions**

If payment or Distribution to the Holder of an Allowed Claim under the Plan is returned for lack of a current address for the Holder or otherwise, and such payment or Distribution is not claimed after six (6) months of such attempted payment or Distribution, the payment or Distribution and any further payment or Distribution to the Holder shall be distributed to the Holders of Allowed Claims in the appropriate Class or Classes, and the Allowed Claim shall be deemed satisfied and released, with no recourse to the Trust, the Trustee or the Trust Assets, to the same extent as if payment or Distribution had been made to the Holder of the Allowed Claim.

6.        **Conditions to Receiving Distributions**

As a condition to receiving any Distribution under the Plan, each Holder of an Allowed Claim shall have executed and delivered such agreements, documents, and instruments as may be reasonably required by the Chapter 11 Trustee or the Trustee.  Any Holder of an Allowed Claim that fails to execute and deliver such agreements, documents, and instruments or fails to

- 124 -

take such action as may be reasonably requested by the Chapter 11 Trustee or the Trustee before the first anniversary of the later to occur of (a) the availability of the agreements, documents, and instruments required by the Chapter 11 Trustee or the Trustee and (b) the Effective Date may not participate in any Distribution under the Plan with respect to such Allowed Claim.  Any Distribution forfeited hereunder shall be ratably reallocated among complying Holders of the applicable Class.

## 7.    Setoffs and Recoupments

The Chapter 11 Trustee, if before the Effective Date, or the Trustee, if after the Effective Date, may, to the extent permitted by Sections 502(h), 553, and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, set off against or recoup from any Allowed Administrative Claim or Allowed Claim on which payments are to be made pursuant to the Plan, any Claims or rights and Causes of Action of any nature whatsoever that the Chapter 11 Trustee, the Plan Debtors, the Estates, the Creditors' Committee or the Trust may have asserted in writing against the Holder of such Allowed Administrative Claim or Allowed Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Estates, the Chapter 11 Trustee, the Creditors' Committee or the Trust of any right of setoff or recoupment that the Chapter 11 Trustee, the Creditors' Committee, the Trust or the Estates may have against the Holder of such Claim, nor of any other claim or Cause of Action.  For the sake of clarity, nothing set forth in Article VII of this Plan is intended to, nor shall it, affect the Global Claims Settlement as set forth in Article V of the Plan.

## 8.    Distributions in Satisfaction; Allocation

Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Interests in the Plan Debtors, the Trust, the Trust Assets and the Estates and the Assets of the Plan Debtors, the Trust, the Trust Assets and the Estates, whether known or unknown, arising or existing prior to the Effective Date.  Distributions received in respect of Allowed Unsecured Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest, if any.

## 9.    No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a Proof of Claim was first Filed after the applicable bar Date shall be a Disallowed Claim, and the Trustee shall not make any Distribution to a Holder of such a Claim; provided, however, that to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated) and would be an Allowed Claim but for the lack of a timely Proof of Claim, the Trustee shall treat such Claim as an Allowed Claim in the amount in which it was so listed.

## D.    Cancellation of Notes and Instruments

As of the Effective Date, all notes, agreements and securities evidencing Claims or Interests and the rights thereunder of the Holders thereof shall, with respect to the Plan Debtors,

be canceled and deemed null and void and of no further force and effect, and the Holders thereof shall have no rights against the Plan Debtors, the Trust, the Trust Assets or the Estates, and such instruments shall evidence no such rights, except the right to receive the Distributions provided for in the Plan.

From and after the Effective Date, the Trust shall be deemed the sole capital stockholder, shareholder, or managing member, as applicable, of each Entity that is or becomes a Trust Asset and shall be invested with all the rights and powers exercisable by a sole capital stockholder, shareholder, or managing member, as applicable, under the respective corporate governance documents law applicable to the Entity that is or becomes a Trust Asset.

## E.    No Post-petition Interest on Claims

Unless otherwise specifically provided for in the Plan and except as set forth in Article IV of the Plan, the Confirmation Order, or a post-petition agreement in writing between the Chapter 11 Trustee and a Holder of a Claim and approved by an Order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  In addition, and without limiting the foregoing or any other provision of the Plan, Confirmation Order or Trust Agreement, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

## F.    No Post-Effective Date Interest on Claims

Except to the extent provided in the Plan, or with respect to Priority Tax Claims to the extent required by law, post-Effective Date interest shall not accrue on account of any Claim, and the DBSI Liquidating Trustee or the DBSI Real Estate Liquidating Trustee, as applicable, will not distribute post-Effective Date interest on account of any Claim.

## G.    Penalty-Based Claims Disallowed

Penalty-Based Claims shall not be compensable and shall constitute Disallowed Claims.

## H.    Withholding Taxes

Pursuant to Section 346(f) of the Bankruptcy Code, the Chapter 11 Trustee, if on the Effective Date, and the Trustee, if after the Effective Date, shall be entitled to deduct any federal, state or local withholding taxes from any payments under the Plan.  From and as of the Effective Date, the Trustee shall comply with all reporting obligations imposed on it by any Governmental Unit in accordance with applicable law with respect to such withholding taxes.  As a condition to making any Distribution under the Plan, the Chapter 11 Trustee, if on the Effective Date, and the Trustee, if after the Effective Date, may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Chapter 11 Trustee, if on the Effective Date, and the Trustee, if after the Effective Date, to comply with applicable tax reporting and withholding laws.

**I.      Reports**

From the Effective Date until a Final Decree is entered, the Trustee shall, within thirty (30) days of the end of each fiscal quarter, File with the Bankruptcy Court and submit to the U.S. Trustee quarterly reports setting forth all receipts and disbursements as required by the U.S. Trustee guidelines.

## ARTICLE VIII
## CLAIMS ADMINISTRATION AND DISPUTED CLAIMS

**A.      Reservation of Rights to Object to Claims**

Unless a Claim or Interest is expressly described as an Allowed Claim or Allowed Interest pursuant to or under the Plan, or otherwise becomes an Allowed Claim or Allowed Interest prior to the Effective Date, upon the Effective Date, the Trustee shall be deemed to have a reservation of any and all rights, interests and objections of the Chapter 11 Trustee, the Creditors' Committee or the Estates to any and all Claims or Interests and motions or requests for the payment of or on account of Claims or Interests, whether administrative expense, priority, secured or unsecured, including without limitation any and all rights, interests and objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, Subordinated Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.  The Chapter 11 Trustee's or the Trustee's failure to object to any Claim or Interest in the Chapter 11 Cases shall be without prejudice to the Trustee's rights to contest or otherwise defend against such Claim or Interest in the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of such Claim or Interest.

**B.      Objections to Claims**

Prior to the Effective Date, the Chapter 11 Trustee shall be responsible for pursuing (and the Creditors' Committee may pursue) any objection to the allowance of any Claim or Interest. From and after the Effective Date, except as otherwise provided in the Plan, the Trustee will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making Distributions, if any, with respect to all Claims and Interests (including those Claims or Interests that are subject to objection by the Chapter 11 Trustee, the Trustee and/or the Plan Debtors as of the Effective Date).  Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections to Claims or Interests by the Trustee will be Filed and served not later than 1 year after the Effective Date, provided that the Trustee may request (and the Bankruptcy Court may grant) extensions of such deadline, or of any Bankruptcy Court approved extensions thereof, by filing a motion with the Bankruptcy Court without any requirement to provide notice to any party, based upon a reasonable exercise of the Trustee's business judgment.  A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

**C.      Determination of Claims**

Except as otherwise agreed by the Plan Proponents or the Trustee, any Claim as to which a Proof of Claim or motion or request for payment was timely Filed in the Chapter 11 Cases, or

deemed timely Filed by order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending) liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties without the need for Bankruptcy Court approval, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim or (c) an application to otherwise limit recovery with respect to such Claim, Filed by the Chapter 11, Trustee, the Plan Debtors, the Trustee, or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such Claim.  Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with the Plan.  Nothing contained in Article VIII herein shall constitute or be deemed a waiver of any Claims, rights, interests or Causes of Action that the Chapter 11 Trustee, the Plan Debtors, the Estates, or the Trustee may have against any Person or Entity in connection with or arising out of any Claim or Claims, including without limitation any rights under 28 U.S.C. Section 157.

**D.      No Distributions Pending Allowance**

No payments or Distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Trustee may, in its discretion, make a Distribution pursuant to the Plan on account of the portion of such Claim that is an Allowed Claim.

**E.      Claim Estimation**

In addition to, and in no way limiting the Administrative TIC Rent/Expense Claim Protocol, the TIC Claims Protocol and the Note/Fund Claims Protocol, in order to effectuate Distributions pursuant to the Plan and avoid undue delay in the administration of the Chapter 11 Cases, the Chapter 11 Trustee (if on or prior to the Effective Date) and the Trustee (if after the Effective Date), after notice and a hearing (which notice may be limited to the Holder of such Disputed Claim), shall have the right to seek an Order pursuant to Section 502(c) of the Bankruptcy Code, estimating or limiting the amount of (i) property that must be withheld from or reserved for Distribution purposes on account of such Disputed Claim(s), (ii) such Claim for claim allowance or disallowance purposes, or (iii) such Claim for any other purpose permitted under the Bankruptcy Code; provided, however, that the Bankruptcy Court shall determine (i) whether such Claims are subject to estimation pursuant to Section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any.

**F.      Claims Paid or Payable by Third Parties**

The Chapter 11 Trustee (if prior to the Effective Date) and the Trustee (if after the Effective Date) shall reduce in part or in full the Distribution payable to the Holder of a Claim to the extent that the Holder of such Claim receives payment in full or in part on account of such Claim from a party that is not a DBSI Consolidated Debtor or a Note/Fund Consolidated Debtor.

Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a DBSI Consolidated Debtor or a Note/Fund Consolidated Debtor on account of such Claim, such Holder shall, within two (2) weeks of receipt thereof, repay or return the Distribution to the Trustee, to the extent the Holder's total recovery on account of such Claim from the their party and under the Plan exceeds the amount of such Claim.  The failure of such holder to timely repay or return such Distribution shall result in the Holder owing the applicable Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified herein until the amount is repaid.

**G.     Allowance of Claims Subject to Section 502 of the Bankruptcy Code**

Allowance of Claims shall be in all respects subject to the provisions of Section 502 of the Bankruptcy Code, including without limitation subsections (b), (d), (e), (g), and (i) thereof. Except as otherwise provided in the Plan, with respect to any Objection Rights, including, but not limited to Objection Rights under Section 502(d) of the Bankruptcy Code, there shall be coordination and cooperation between the applicable Trustee and the DBSI Estate Litigation Trustee to the extent necessary to preserve such Objection Rights, including, but not limited to, the joining of any Estate Cause of Action with an Objection Rights proceeding in order to preserve the Estates' Section 502(d) rights and the assertion of Section 502(d) as an affirmative defense to the allowability of any Claim subject to an Avoidance Action, even if such Avoidance Action is not timely Filed, subject to the rights of Holders of such Claim to contest the availability thereof.

**ARTICLE IX**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES; D&O OBLIGATIONS AND**
**EMPLOYEE BENEFIT PLANS**

**A.     Rejection of Executory Contract and Unexpired Leases**

On the Effective Date, except for any executory contract and/or unexpired leases (i) that was previously assumed or rejected by an Order of the Bankruptcy Court or otherwise pursuant to Section 365 of the Bankruptcy Code or (ii) that is subject to a pending motion to assume or reject before the Bankruptcy Court, each executory contract entered into by any of the Plan Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code, effective as of the Confirmation Date, except as otherwise provided in the Plan.  The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejection pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the Confirmation Date.

Nothing contained in the Plan or this Disclosure Statement shall constitute an admission by the Plan Proponents that any contract or lease subject to Article V is in fact an executory contract or unexpired lease or that any of the Plan Debtors has any liability thereunder, except as otherwise provided in the Plan.

**B.      Rejection of D&O Indemnification Obligations**

Without limiting the generality of Article IX(A) above, and solely for the avoidance of doubt, the obligations of the Plan Debtors to indemnify any Person or Entity having served as one of their officers and directors, or currently serving as one of their employees, by reason of such Person's or Entity's service in such capacity, to the extent provided in the Plan Debtors' corporate governance documents or under any of the Plan Debtors' directors and officers insurance policies, or by a written agreement with the Plan Debtors or by the applicable states' corporation law, each as applicable, shall be deemed and treated as executory contracts that are rejected by the Plan Debtors pursuant to the Plan and Section 365 of the Bankruptcy Code as of the Effective Date.  The unsecured rejection damage Claim of any Person or Entity entitled to indemnification under any such documents shall be deemed to be zero and such Person or Entity shall receive no Distribution on account of such Claim.

**C.      Rejection of Employee Benefit Plan**

Without limiting the generality of Article IX A above, and for the avoidance of doubt, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Plan Debtors applicable to their employees, retirees and past directors and the employees and retirees of their subsidiaries, including all savings plans, retirement plans, pension plans, healthcare plans, disability plans, severance benefit plans, incentive plans, life and accidental death and dismemberment insurance plans, shall be deemed and treated as executory contracts that are rejected by the Plan Debtors pursuant to the Plan and Section 365 of the Bankruptcy Code as of the Effective Date.

**D.      Rejection Damages Bar Date**

Except with respect to Administrative TIC Rent Claims governed by the Administrative TIC Rent/Expense Claims Protocol and the Settled TIC Claims and Unsettled TIC Claims governed by the TIC Claims Protocol, and except to the extent another Bar Date applies pursuant to an Order, any Proofs of Claim with respect to a Claim arising from the rejection of executory contracts under the Plan (including Claims under Section 365(d)(3) of the Bankruptcy Code) must be Filed with the Claims Agent, within thirty (30) days after the entry of the Confirmation Order, or such Claim shall not be entitled to a Distribution or be enforceable against the Plan Debtors' and their Estates, the Trust, the Trustee, their successors, their assigns, or their Assets. Any Allowed Claim arising from the rejection of an Executory Contract shall be treated as a General Unsecured Claim.  Nothing in the Plan extends or modifies any previously applicable Bar Date.

**E.      Insurance Policies**

To the extent that any or all of the insurance policies of the Plan Debtors (except as set forth Article IX(B) above), including those set forth in a Supplemental Plan Document, (the "Designated Insurance Policies") are considered to be executory contracts, then notwithstanding anything contained in the Plan to the contrary, the Plan shall constitute a motion to assume the Designated Insurance Policies in connection with the Plan and to assign them to the Trust. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall

constitute approval of such assumption and assignment pursuant to Section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Estates, and all parties in interest in the Chapter 11 Cases.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date of the Plan, no payments are required to cure any defaults of the Plan Debtors existing as of the Confirmation Date with respect to each Designated Insurance Policy. To the extent that the Bankruptcy Court determines otherwise with respect to any Designated Insurance Policy, the Chapter 11 Trustee reserves the right to seek rejection of such insurance policy or other available relief.  The Plan shall not affect contracts that have been assumed and assigned by Order of the Bankruptcy Court prior to the Confirmation Date.

For the avoidance of doubt, all rights under any Designated Insurance Policy that is not considered to be an Executory Contract, and all rights under any other insurance policies under which the Plan Debtors may be beneficiaries, (including the rights to make, amend, prosecute, and benefit from claims) shall be preserved and shall vest in the applicable Trust pursuant to Article VI of the Plan and Section 1123(a)(5)(B) of the Bankruptcy Code.

Nothing in the Plan or this Disclosure Statement, any schedule or exhibit to the Plan or the Disclosure Statement, any Supplemental Plan Document, or any Order confirming the Plan, shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses, if any, of insurers under their respective insurance policies or applicable non-bankruptcy law.

## F.    Surety Bonds

Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all surety bonds of the Plan Debtors and any agreement, documents or instruments relating thereto, shall continue in full force and effect. Nothing contained in the Plan shall constitute or deemed a waiver of any cause of action that the Estates may hold against any entity, including the issuer of the surety bond, under any surety bonds.

## ARTICLE X
## CONDITIONS PRECEDENT TO EFFECTIVE DATE; REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION OF THE PLAN

## A.    Conditions to Confirmation

- Confirmation of the Plan is conditioned upon satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Plan Proponents:

- The Bankruptcy Court shall have approved a disclosure statement to the Plan in form and substance acceptable to the Chapter 11 Trustee, in consultation with the Creditors' Committee;

- The Bankruptcy Court shall have signed the Confirmation Order and entered it on the docket of the Chapter 11 Cases, which Confirmation Order shall be in the form and substance satisfactory to the Plan Proponents, which shall be in full force and effect and which shall, *inter alia*, find and determine that the provisions of the Plan and Confirmation Order are integrated with each other and are nonseverable and mutually dependent; and

- The Confirmation Order shall not be subject to any stay of effectiveness.

**B.    Conditions to Occurrence of the Effective Date**

The Effective Date shall not occur, and the Plan shall not become effective, unless and until each of the following conditions precedent shall have been satisfied in full or waived by the Plan Proponents in accordance with this Article X:

- The Bankruptcy Court shall have approved the Global Claims Settlement set forth in Article V of the Plan;

- The Bankruptcy Court shall have approved the Administrative TIC Rent/Expense Claims Protocol, the TIC Claims Protocol, the Note/Fund Claims Protocol and the Cost Allocation and Professional Fees Protocol;

- The Bankruptcy Court shall have approved and authorized the transfer of the designated assets to the DBSI Liquidating Trust and the DBSI Real Estate Liquidating Trust, as applicable, including, without limitation, the transfer of (i) all of the assets of Kastera, including Kastera's ownership interests in Kastera Homes, Kastera Development, Kastera Snake River and Pristine Meadows LLC; (ii) all of the assets of Stellar, and (iii) all of the assets of Western Tech;

- The Confirmation Order (i) shall have been entered by the Bankruptcy Court, (ii) shall not be subject to any stay of effectiveness, and (iii) shall have become a Final Order;

- The Confirmation Date shall have occurred, and no request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending;

- The S/A/P Claims Reserve shall have been funded;

- The Trust shall have been formed, and all formation documents for such entities shall have been properly executed and Filed as required by the Plan and applicable law, and the assets to be transferred to the Trusts shall have been transferred;

- The appointment of the Trustee shall have been approved by order of the Bankruptcy Court;

- There shall not be in effect on the Effective Date (i) any order entered by the Bankruptcy Court, (ii) any order, opinion, ruling from other court or governmental entity or (iii) any applicable law, any of which stays, restrains, enjoins or otherwise prohibits or makes illegal the consummation of any transactions contemplated by the Plan; and

- All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Plan Proponents.

## C.    Waiver of Conditions

Each of the conditions precedent set forth above may be waived in whole or in part, by the Plan Proponents, at any time without notice, without leave or order of the Bankruptcy Court and without any formal action.

## D.    Revocation, Withdrawal, or Non-Consummation of Plan

If after the Confirmation Order is entered, each of the conditions to effectiveness has not been satisfied or duly waived on or by ninety (90) days after the Confirmation Date, then upon motion by the Chapter 11 Trustee (in consultation with the Creditors' Committee), the Confirmation Order may be vacated by the Bankruptcy Court; provided however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to effectiveness is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  As used in the preceding sentence, a condition to effectiveness may only be waived by a writing executed by the Chapter 11 Trustee (in consultation with the Creditors' Committee).  If the Confirmation Order is vacated pursuant to Article X(D) of the Plan, the Plan shall be null and void in all respects, and nothing contained in the Plan, the Disclosure Statement, nor any pleadings Filed in connection with the approval thereof shall (i) constitute a waiver or release of any Claims against or Interests in the Plan Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Plan Debtors (iii) prejudice in any manner the rights of the Chapter 11 Trustee in the Chapter 11 Cases, or (iv) constitute an admission of any fact or legal position or a waiver of any legal rights held by any party prior to the Confirmation Date.

## ARTICLE XI
## EFFECT OF CONFIRMATION AND INJUNCTION

## A.    Compromise of Controversies

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and all other compromises and settlement provided for in the Plan, and the Bankruptcy Court's findings shall constitute its

- 133 -

determination that such compromises and settlement are in the best interests of the Estates, creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness.

## B.     Binding Effect of Plan

Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, subject to the occurrence of the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, the Plan Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not the Holder has Filed a Claim.  The rights, benefits and obligations of any Person named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person.

## C.     Binding Effect on Claims and Interests

Except as provided in the Plan or Confirmation Order, as of the Effective Date the rights afforded hereunder and the treatment of Claims and Interests hereunder will be the sole treatment of such Claims and Interests under the Plan and the Trusts.  Except as provided in the Plan or the Confirmation Order, all Claims, or other debts that arose before the Confirmation Date and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based on such debt is Filed or deemed Filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such debt is allowed pursuant to Section 502 of the Bankruptcy Code or (c) the Holder of a Claim or based on such debt has accepted the Plan, shall not have any right or remedy under the Plan or the Trust, or with respect to the Assets of the Trust, other than to receive the Distributions provided for in the Plan.  As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Trusts, their respective successors or property, any other or further claims, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date.

## D.     Property Free and Clear

Except as otherwise provided in the Plan, the Trust Agreement, or the Confirmation Order, all Assets that shall vest in the Trust shall be free and clear of all Claims, Interests, Liens, charges or other encumbrances of Creditors and Interest Holders.  Following the Effective Date, the Trustee may transfer and dispose of any such Assets free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

## E.     Plan Injunction

On the Effective Date, except as otherwise expressly provided herein, the documents executed pursuant to the Plan or the Confirmation Order:

(a)      All Persons who have been, are or may be Holders of Claims against or Interests in a Plan Debtor shall be enjoined from taking any of the following actions against or affecting a Plan Debtor, its Estate, the DBSI Liquidating Trust, the DBSI Real Estate Liquidating Trust, the DBSI Liquidating Trustee, the DBSI Real Estate Liquidating Trustee, or the respective Assets of the foregoing, including the applicable Trust Assets, with respect to such Claims or Interests:

(i)      commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against a Plan Debtor, its Estate, the DBSI Liquidating Trust, the DBSI Real Estate Liquidating Trust, the DBSI Liquidating Trustee, the DBSI Real Estate Liquidating Trustee, or the respective Assets of the foregoing, including the applicable Trust Assets, provided that, with respect to any suit, action or other proceeding pursued by the DBSI Liquidating Trust or the DBSI Real Estate Liquidating Trust, as applicable, nothing herein shall limit asserting or pursuing in such suit, action or other proceeding (A) all arguments in or objections or defenses to such suit, action or other proceedings and (B) all claims and counterclaims that relate in any way to the facts, circumstances, transactions or occurrences that are the subject of such suit, action or other proceeding (each referred to as a "Related Claim"), to the extent such Related Claims have not been released, or are otherwise prohibited, by the Plan, and provided further that, notwithstanding anything herein to the contrary, any Claims that are Related Claims asserted by any adverse party in any suit, action or other proceeding, pursued by the applicable Trust (Y) may be, to the extent permitted by applicable law, asserted defensively in such suit, action or other proceeding, including, without limitation, for purposes of setoff, recoupment, reduction of damages or otherwise, without limitation hereunder; and (Z) may be, to the extent permitted by applicable law, liquidated in such suit, action or other proceeding and Allowed, subject to receiving the treatment provided to such Claims under the Plan and subject to the rights of the applicable Trustee to contest such assertions, arguments, objections, defenses and/or claims on any grounds;

(ii)      enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order against a Plan Debtor, its Estate, the DBSI Liquidating Trust or the DBSI Real Estate Liquidating Trust, as applicable, the Trustee, or the respective Assets or property of the foregoing, including the Trust Assets;

(iii)      creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any Lien against a Plan Debtor, its Estate, the DBSI Liquidating Trust or the DBSI Real Estate Liquidating Trust, as applicable, the Trustee, or the respective Assets or property of the foregoing, including the Trust Assets, other than as contemplated by the Plan;

(iv)      except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligations due a Plan Debtor, its Estate, the DBSI Liquidating Trust or the DBSI Real Estate Liquidating Trust, as applicable, the Trustee, or the respective Assets or property

- 135 -

of the foregoing, including the Trust Assets, other than as contemplated by the Plan; and

(v)    proceeding in any manner whatsoever that does not conform to or comply with the provisions of the Plan or the settlements set forth herein.

(b)    All Persons that have held, currently hold, or may hold Claims against or Interests in the Plan Debtors or the Estates that arose prior to the Effective Date (including but not limited to states and other governmental units, and any state official, employee, or other entity acting in an individual or official capacity on behalf of any state or other governmental units) are permanently enjoined from, on account of such Claims or Interests: (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of any Protected Party; (ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against any Protected Party or any property of any Protected Party; (iii) creating, perfecting, or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party or any property of any Protected Party; (iv) asserting or effecting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against obligation due to any Protected Party or any property of any Protected Party; and (v) taking any act, in any manner, in any place whatsoever, that does not conform to, comply with, or that is inconsistent with any provision of the Plan.  Any Person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

(c)    All Distributions made pursuant to the Plan shall be as a restructuring and not a refinancing, and in exchange for, and in complete satisfaction, release, discharge and settlement of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims or Interests from and after the Petition Date through the Effective Date against the Plan Debtors, their Estates, the DBSI Liquidating Trust or the DBSI Real Estate Liquidating Trust, as applicable, the Trustee, or the respective Assets or property of the foregoing, including the Trust Assets.

(d)    By accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim receiving Distributions under the Plan shall be deemed to have specifically consented to the injunctions set forth in Article XI(E) hereof.

Nothing contained in Article XI(E) of the Plan shall enjoin or prohibit (i) the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the Distribution provisions of the Plan or (ii) the interpretation or enforcement by any party in interest of any of the obligations of the Plan Debtors, the Trustee, or the Trust under the Plan.

The Confirmation Order also shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any Claim or Cause of Action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on

- 136 -

which the payments due under Article IV of the Plan have been made or are not yet due under Article IV of this Plan.

## F.    Continuation of Existing Injunctions and Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, the Plan, by orders of the Bankruptcy Court, or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the Trust.

## G.    Limitation of Liability of Exculpated Persons

On and after the Confirmation Date, the Exculpated Parties shall neither have nor incur any liability for, and each Exculpated Party is hereby released from, any claim, cause of action or liability to any other Exculpated Party, to any Holder of a Claim or Interest, or to any other party in interest, for any act or omission that occurred during the Chapter 11 Cases or in connection with the preparation and filing of the Chapter 11 Cases, the formulation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, and/or the administration of the Plan or the Trust and/or the property to be distributed under the Plan or the Trust, except for claims, causes of action or liabilities arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan and such reasonable reliance shall constitute an absolute defense to any such claim, cause of action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections and benefits of Section 1125(e) of the Bankruptcy Code. Except as provided in Article X of the Plan, as to the Exculpated Parties, no provision of the Plan or the Disclosure Statement shall be deemed to act upon or release any claims, Causes of Action or liabilities that the Trust, the Plan Debtors, the Estates, or any party in interest may have against or to any Person for any act, omission, or failure to act that occurred prior to the Effective Date, nor shall any provision of the Plan be deemed to act to release any Causes of Action.

The limitation of liability for Exculpated Parties in this Plan is contemplated by the Bankruptcy Code and consistent with applicable governing law. See 11 U.S.C. Sections 1103 and 1125(e). Exculpation provisions like those contained in the Plan are customary in Chapter 11 cases in this District and have been upheld in cases where they have been challenged. See, e.g., In re PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. Del. 2000) (approving a plan with an exculpation provision that protected the debtors, creditor representative and the committee as well as their professionals and agents from "any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan or the Administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence"); In re eToys, Inc., 331 B.R. 176, 187 (Bankr. D. Del. 2005) (approving an exculpation provision that stated that certain professionals would not be liable for "any act taken or omission occurring on or after the Petition Date in connection with or related to

the Debtors, the Plan Administrator or the Chapter 11 Cases . . . except for acts constituting willful misconduct or gross negligence").

## H.     General Releases by Holders of Claims or Interests

Without limiting any other applicable provisions of, or releases contained in, the Plan, as of the Effective Date, in consideration for the obligations of the Plan Debtors, the DBSI Liquidating Trust or the DBSI Real Estate Liquidating Trust, as applicable, or the Trustee under the applicable Trust Agreement and the Plan, each Holder of a Claim or Interest who votes in favor of the Plan, to the fullest extent permissible under applicable law, shall be deemed to forever release, waiver and discharge all Claims relating to a Plan Debtor, the Chapter 11 Cases, the Estates, the Plan, the Plan Exhibits, or the Disclosure Statement that such Holder has, had or may have against any Protected Party, but excluding, and not releasing, any right to enforce the obligations of such party under the Plan and/or the applicable Trust Agreement.

## I.     No Effect on Objections to Fee Applications

Except as provided in Article III of the Plan, and the Cost Allocation and Professional Fees Protocol, nothing contained in the Plan shall affect the rights of parties in interest to object to Fee Applications or obviate the power of the Bankruptcy Court to issue orders with respect to Fee Applications.

## J.     Good Faith

Confirmation of the Plan shall constitute a finding that:  (i) the Plan has been proposed by the Plan Proponents in good faith and in compliance with applicable provisions of the Bankruptcy Code; (ii) is in furtherance of and compliant with the Chapter 11 Trustee's fiduciary duties; and (iii) all Persons' solicitations of acceptances or rejections of the Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

## ARTICLE XII
## ADMINISTRATIVE PROVISIONS

## A.     Retention of Jurisdiction

Pursuant to Sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, on or after the Confirmation Date, and notwithstanding the entry of the Confirmation Order or occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction of the Chapter 11 Cases and all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan, to the fullest extent permitted by law, including, among other things, jurisdiction:

- to hear non-core proceedings related to the Chapter 11 Cases, including, without limitations, matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan;

- to hear and determine all Causes of Action by or on behalf of the Plan Debtors, the DBSI Litigation Trustee, and the Private Actions Trustee; and proceedings to recover Assets of the Estates or of the Trust, wherever located;

- over motions to assume, reject, or assume and assign executory contracts or unexpired leases, and the allowance or disallowance of any Claims resulting therefrom;

- over disputes concerning the ownership of Claims or Interests;

- over disputes concerning the distribution or retention of consideration under the Plan;

- over objections to Claims, motions to allow late-Filed Claims, and motions to estimate Claims;

- over proceedings to determine the extent, validity, and/or priority of any Lien asserted against property of the Plan Debtors, the Estates, or the Trust, or property abandoned or transferred by the Plan Debtors, the Chapter 11 Trustee, the Estates, or the Trustee;

- over proceedings to determine the amount, if any, of interest to be paid to Holders of Allowed Unsecured Claims if any Allowed Unsecured Claims are paid in full pursuant to the terms of the Plan;

- over matters related to the Assets of the Estates or of the Trust, including, without limitation, liquidation of Trust Assets; provided that except as otherwise provided in the Plan, the Confirmation Order or the Trust Agreement, Trustee shall have no obligation to obtain the approval or authorization of the Bankruptcy Court or File a report to the Bankruptcy Court concerning the sale, transfer, assignment or other disposition of Trust Assets; and provided further that the Trustee may seek orders of the Bankruptcy Court approving the sale, transfer, assignment or other disposition of Trust Assets as appropriate to facilitate such transactions;

- over matters relating to the subordination of Claims or Interests;

- to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

- to consider and approve modifications of or amendments to the Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

- to issue orders in aid of execution, implementation, or consummation of the Plan;

- over disputes arising from or relating to the Plan, the Confirmation Order, or any agreements, documents, or instruments executed in connection therewith;

- over requests for allowance and/or payment of Claims entitled to priority under Section 507(a)(2) of the Bankruptcy Code and any objections thereto;

- over all Fee Applications;

- over matters concerning state, local, or federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

- over conflicts and disputes between the Trustee, the Trust, and Holders of Claims or Interests;

- over any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

- over matters concerning the Plan Debtors' insurance policies, if any, including jurisdiction to re-impose the automatic stay or its applicable equivalent provided in the Plan;

- to issue injunctions, provide declaratory relief, or grant such other legal or equitable relief as may be necessary or appropriate to restrain interference with the Plan, the Plan Debtors, the Estates or their property, the Chapter 11 Trustee, Creditors' Committee, the Trust or its property, the Trustee, the Private Actions Trust or the Private Actions Trustee, the Professionals, or the Confirmation Order;|

- to hear and determine all matters related to (i) the winding up of the Plan Debtors and its Non-Debtor Affiliates, and (ii) the activities of the Trustee or the Private Actions Trustee;

- to enter a Final Decree closing the Chapter 11 Cases;

- to enforce all orders previously entered by the Bankruptcy Court; and

- over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or the Plan.

## B.  Miscellaneous

### 1.  Effectuating Documents and Further Transactions

The Chapter 11 Trustee, if on or prior to the Effective Date, and the applicable Trustee, if after the Effective Date, shall be authorized to execute, deliver, File or record such contracts, instruments, releases and other agreements and documents, and take such other actions on behalf of the Plan Debtors' Estates, as are necessary or appropriate to effectuate the transactions provided for in the Plan and the Trust, without any further action by or approval of the Bankruptcy Court.

### 2.    Final Order

Except as otherwise expressly provided herein, any requirement in the Plan for a Final Order may be waived by the Plan Proponents if prior to the Effective Date upon written notice to the Bankruptcy Court.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any Order that is not a Final Order.

### 3.    Amendments and Modifications

The Plan Proponents may modify the Plan at any time prior to the Confirmation Hearing in accordance with Section 1127(a) of the Bankruptcy Code.  After the Confirmation Date and prior to "substantial consummation" (as such term is defined in Section 1101(2) of the Bankruptcy Code) of the Plan with respect to any Plan Debtor, the Plan Proponents (jointly and not severally), may modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code by the filing a motion on notice to the Bankruptcy Rule 2002 service list only, and the solicitation of all Creditors and other parties in interest shall not be required unless directed by Bankruptcy Court.

### 4.    Withholding and Reporting Requirements

In connection all instruments issued in connection herewith and Distributions under this Plan, the Plan Proponents (if prior to or on the Effective Date) or the Trustee (if after the Effective Date) shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions under the Plan shall be subject to any such withholding and reporting requirements; provided, however, that any party entitled to receive any Distribution under the Plan shall be required to deliver to the Trustee or some other Person designated by the Trustee an appropriate Form W-9 for (if the payee is a foreign Person) Form W-8 to avoid the incurrence of certain federal income withholding tax obligations on its respective Distribution.  Notwithstanding the above, each Holder of an Allowed Claims that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including, withholding and other tax obligations, on account of such Distribution.  Any party issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### 5.    Expedited Tax Determination

The Chapter 11 Trustee is authorized to request an expedited determination of taxes under Section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors after the Petition Date through and including the Effective Date.

### 6.    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under Sections 1101 and 1127(b) of the Bankruptcy Code.

### 7.        No Waiver

Neither the failure to list a Claim in the Schedules filed by the Plan Debtors, the failure of any Person to object to any Claim for purposes of voting, the failure of any Person to object to a Claim prior to Confirmation or the Effective Date, the failure of any Person to assert a Cause of Action prior to Confirmation or the Effective Date, the absence of a proof of Claim having been Filed with respect to a Claim, nor any action or inaction of any Person with respect to a Claim, or Cause of Action other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Estates or their successors or representatives, before or after solicitation of votes on the Plan or before or after Confirmation or the Effective Date to (a) object to or examine such Claim, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any Causes of Action.

### 8.        Limitations on Effect of Confirmation

Nothing contained in the Plan will limit the effect of Confirmation as described in Section 1141 of the Bankruptcy Code.

### 9.        Tax Exemption

Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of any security, or the execution, delivery or recording of an instrument of transfer on or after the Confirmation Date, including the transfer of all Assets to the Trust shall be deemed to be made pursuant to and under the Plan, including, without limitation, any such acts by the Plan Proponents, if on the Effective Date, and the Trustee, if after the Effective Date (including, without limitation, any subsequent transfers of property by the Trust or the Trustee), and shall not be taxed under any law imposing a stamp tax, transfer tax or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order and the Plan, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

### 10.        Securities Exemption

Any rights issued under, pursuant to or in effecting the Plan and the offering and issuance thereof by any party, including without limitation the Estates or the Trust, shall be exempt from section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for Distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation Section 1145 of the Bankruptcy Code.

### 11.        Non-Severability

Except as specifically provided herein, the terms of the Plan constitute interrelated compromises and are not severable, and no provision of those Articles may be stricken, altered, or invalidated, except by amendment of the Plan by the Plan Proponents; provided, however, if,

prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## 12. Revocation

The Plan Proponents reserve the right to revoke and withdraw the Plan prior to the Confirmation Date in whole or as to any one or more of the Plan Debtors. If the Plan Proponents (jointly) revoke or withdraw the Plan, then the Plan shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Plan Debtors, the Chapter 11 Trustee, the Estates, the Creditors' Committee, or any other Person or to prejudice in any manner the rights of the Plan Debtors, the Chapter 11 Trustee, the Estates, the Creditors' Committee, or any other Person in any further proceedings involving the Estates, or be deemed an admission by the Plan Debtors, the Chapter 11 Trustee or the Creditors' Committee, including with respect to the amount or allowability of any Claim or the value of any property of the Estates.

## 13. Controlling Documents

In the event and to the extent that any provision of the Plan or the Trust Agreement is inconsistent with any provision of the Disclosure Statement, the provisions of the Plan or Trust Agreement, as applicable, shall control and take precedence. In the event and to the extent that any provision of the Trust Agreement is inconsistent with any provision of the Plan, the Trust Agreement shall control and take precedence. In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of the Plan or the Trust Agreement, the provisions of the Confirmation Order shall control and take precedence.

## 14. Governing Law

Except to the extent the Bankruptcy Code and the Bankruptcy Rules are applicable, or to the extent an exhibit to the Plan or an agreement, document, or instrument executed in connection with the Plan provides otherwise (in which case the governing law specified therein shall be applicable), the rights, duties, and obligations arising under the Plan, shall be governed by, and construed and enforced in accordance with, the federal laws of the United States and, to the extent there is no applicable federal law, the laws of the State of Delaware (without giving effect to the principles of conflicts of law thereof). With respect to the Plan Debtors incorporated in Delaware, corporate governance matters shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles. Corporate governance matters relating to any Plan Debtor not incorporated in

Delaware shall be governed by the law of the state of incorporation of the applicable Plan Debtor.

**15.      Filing of Additional Documents**

Copies of certain supplemental documents related to the Plan, including the Trust Agreements for the four trusts to be formed pursuant to the Plan, will be filed no later than September 13, 2010 and made available at www.kccllc.net/DBSI or by contacting KCC at (888) 830-4648.

**16.      Notices**

All notices or requests of the Plan Proponents or the Trust under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery or (iii) reputable overnight delivery services, all charges prepaid, and shall be deemed to have been given when received by the following parties:

**Counsel to the Chapter 11 Trustee:**

**GIBBONS P.C.**

1000 N. West Street, Suite 1200
Wilmington, DE 19801-1058
Attn:   William R. Firth, III, Esq.

- and -

**GIBBONS P.C.**

One Gateway Center
Newark, NJ 07102-5310
Attn:   Karen A. Giannelli, Esq.
        Mark B. Conlan, Esq.
        Natasha M. Songonuga, Esq.

**Counsel to the Creditors' Committee:**

**GREENBERG TRAURIG, LLP**

2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
Attn:   Michael H. Goldstein, Esq.
        Nathan A. Schultz, Esq.

– and –

**GREENBERG TRAURIG, LLP**

The Nemours Building
1007 North Orange Street
Suite 1200
Wilmington, DE 19801
Attn:   Donald J. Detweiler, Esq.

**DBSI Liquidating Trust or the DBSI Liquidating Trustee:**

Conrad Myers
6327 SW Capitol Highway
Suite 222
Portland, OR 97201

**DBSI Real Estate Liquidating Trust or the DBSI Real Estate Liquidating Trustee:**

Conrad Myers
6327 SW Capitol Highway
Suite 222
Portland, OR 97201

**DBSI Estate Litigation Trust or the DBSI Estate Litigation Trustee:**

James R. Zazzali, Esq.
Gibbons P.C.
One Gateway Center
Newark, NJ 07102

**Private Actions Trust or the Private Actions Trustee:**

 James R. Zazzali, Esq.
Gibbons P.C.
One Gateway Center
Newark, NJ 07102

**17.    No Admissions**

Notwithstanding anything contained in the Plan to the contrary, nothing contained in the Plan shall be deemed an admission by the Plan Proponents with respect to any matter therein, including, without limitation, liability on any Claim or the propriety of a Claim's classification.

**18.    Non-Consensual Confirmation**

Pursuant to the "cramdown" provisions of Section 1129 of the Bankruptcy Code, the Bankruptcy Court can confirm the Plan if at least one Impaired Class of Claims has accepted the Plan (with such acceptance being determined without including the acceptance of any "insider" in such Class) and, as to each Impaired Class of Claims against or Interests in the Plan Debtors that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Impaired Class.

- 145 -

### 19.    Causes of Action

In accordance with Section 1123(b) of the Bankruptcy Code, and not withstanding substantive consolidation of the applicable Plan Debtors, even after confirmation of the Plan, the DBSI Estate Litigation Trustee will retain and may enforce any claims, demands, rights and Causes of Action that the Plan Debtors and their Estates may have against any Person or Entity, including claims for preference, fraudulent conveyance and setoff.  In pursuing any such claims, the DBSI Litigation Trustee will act in the best interest of the Estates.  Accordingly, except as expressly provided in the Plan, a Holder of a Claim may be subject to one or more such claims brought by the Trustee, even if such Holder voted in favor of the Plan.

## ARTICLE XIII
## CONFIRMATION REQUEST

The Plan Proponents hereby request confirmation of this Plan as a Cramdown Plan with respect to any Impaired Class that does not accept this Plan or is deemed to have rejected this Plan.

Respectfully submitted,

Dated: August 17, 2010                    **JAMES R. ZAZZALI, CHAPTER 11 TRUSTEE**

_____

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF DBSI, INC. ET AL.**

BY:_____

NAME: Russell Firkins
TITLE:  Member of the Committee

## ARTICLE XIII
## CONFIRMATION REQUEST

The Plan Proponents hereby request confirmation of this Plan as a Cramdown Plan with respect to any Impaired Class that does not accept this Plan or is deemed to have rejected this Plan.

Respectfully submitted,

Dated: August 17, 2010

**JAMES R. ZAZZALI, CHAPTER 11 TRUSTEE**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DBSI, INC. ET AL.**

BY:_____

NAME: Russell Firkins
TITLE: Member of the Committee